1  **CRAVATH, SWAINE & MOORE LLP**
2  J. Wesley Earnhardt (*pro hac vice*)
   Helam Gebremariam (*pro hac vice*)
3  Worldwide Plaza
   825 Eighth Avenue
4  New York, NY 10019
   Telephone:  (212) 474-1000
5  Facsimile:  (212) 474-3700
   wearnhardt@cravath.com
6  hgebremariam@cravath.com
7  Attorneys for Defendants
8
   *(additional counsel on signature page)*
9

10          **UNITED STATES DISTRICT COURT**
11    **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

12  LOCAL 272 LABOR-MANAGEMENT           Case No. 2:23-cv-03661
    PENSION FUND, CENTRAL
13  PENNSYLVANIA TEAMSTERS PENSION
    FUND, CENTRAL PENNSYLVANIA           **REPLY IN SUPPORT OF**
14  TEAMSTERS PENSION FUND –             **DEFENDANTS' CONSOLIDATED**
    RETIREMENT INCOME PLAN 1987,         **MOTION TO DISMISS**
15                                       **CONSOLIDATED COMPLAINT**
    CENTRAL PENNSYLVANIA TEAMSTERS
16  HEALTH AND WELFARE FUND AND
    JOHN P. TALBOT, on Behalf of Themselves
17  and All Others Similarly Situated,
                                         Date:    March 26, 2024
18                                       Time:    10:00 a.m.
                        Plaintiffs,      Ctrm:    8D
19
20                v.                     Judge Consuelo B. Marshall
21  THE WALT DISNEY COMPANY, ROBERT
    IGER, ROBERT CHAPEK, CHRISTINE M.
22  MCCARTHY AND KAREEM DANIEL,
23
                        Defendants.
24
25
26
27
28

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................. ii

I.    ARGUMENT................................................................................2

    A.    Plaintiffs' § 10(b) Claim (Count I) Fails to Plead Fraud with
Particularity. .................................................................2

        1.    Plaintiffs Fail to Allege Scheme Liability. ...............................2

        2.    Plaintiffs Fail to Allege Misstatement Liability........................8

        3.    Plaintiffs Fail to Plead Scienter.............................................11

        4.    Plaintiffs Fail to Plead Loss Causation....................................16

    B.    Plaintiffs' § 20A Contemporaneous Trading Claim (Count II)
Fails. .................................................................................18

II.    Conclusion................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)...................................................................... 3

*Borteanu v. Nikola Corp.*,
   2023 WL 1472852 (D. Ariz. Feb. 1, 2023)............................................. 4

*Brody v. Transitional Hosps. Corp.*,
   280 F.3d 997 (9th Cir. 2002).................................................................. 1

*Browning v. Amyris, Inc.*,
   2014 WL 1285175 (N.D. Cal. Mar. 24, 2014)....................................... 12

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
   856 F.3d 605 (9th Cir. 2017)........................................................ 11, 12, 13

*Delegates to Republican Nat'l Convention v. Republican Nat'l Comm.*,
   2012 WL 1285175 (C.D. Cal. Aug. 7, 2012)......................................... 18

*Glazer Capital Mgmt., LP v. Magistri*,
   549 F.3d 736 (9th Cir. 2008).................................................................. 15

*Glazer Capital Mgmt. v. Forescout Techs.*,
   63 F.4th 747 (9th Cir. 2023)................................................................... 14

*Huang v. Avalanche Biotechnologies, Inc.*,
   2016 WL 6524401 (N.D. Cal. Nov. 3, 2016) .......................................... 6

*In re AGS, Inc., Sec. Litig.*,
   2024 WL 581124 (D. Nev. Feb. 12, 2024).............................................. 3

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010)................................................................. 8

*In re Fibrogen, Inc.*,
   2022 WL 2793032 (N.D. Cal. July 15, 2022)......................................... 13

*In re Gilead Sciences*,
   536 F.3d 1049 (9th Cir. 2008)................................................................ 17

*In re Nektar Therapeutics*,
 2020 WL 3962004 (N.D. Cal. July 12, 2020) ........................................................ 2, 4

*In re Netflix, Inc. Sec. Litig.*,
 2005 WL 3096209 (N.D. Cal. Nov. 18, 2005) ............................................................ 7

*In re Netflix, Inc. Sec. Litig.*,
 647 F. App'x 813 (9th Cir. 2016) .................................................................... 8, 11

*In re Netflix, Inc., Sec. Litig.*,
 964 F. Supp. 2d 1188 (N.D. Cal. 2013) ............................................................ 6, 8

*In re Quality Sys., Inc. Sec. Litig.*,
 865 F.3d 1130 (9th Cir. 2017) ................................................................ 9, 10, 14

*In re Rigel Pharms., Inc. Sec. Litig.*,
 697 F.3d 869 (9th Cir. 2012) ...................................................................... 8, 15

*In re Silicon Graphics Inc.*,
 183 F.3d 970 (9th Cir. 1999) .......................................................................... 16

*In re Silver Lake Grp. Sec. Litig.*,
 2022 WL 4485815 (N.D. Cal. Sep. 27, 2022) ...................................................... 18

*In re Sipex Corp. Sec. Litig.*,
 2005 WL 3096178 (N.D. Cal. Nov. 17, 2005) ...................................................... 13

*In re WageWorks, Inc., Sec. Litig.*,
 2020 WL 2896547 (N.D. Cal. June 1, 2020) ........................................................ 14

*In re Worlds of Wonder Sec. Litig.*,
 35 F.3d 1407 (9th Cir. 1994) ...................................................................... 9, 15

*Irving Firemen's Relief & Ret. Fund v. Uber Techs.*,
 998 F.3d 397 (9th Cir. 2021) ...................................................................... 1, 16

*Jasin v. Vivus, Inc.*,
 2016 WL 1570164 (N.D. Cal. Apr. 19, 2016) .................................................. 15, 16

*Kang v. PayPal Holdings, Inc.*,
 620 F. Supp. 3d 884 (N.D. Cal. Aug. 8, 2022) ...................................................... 3

*Kong v. Fluidigm Corp.*,
 2023 WL 2134394 (9th Cir. Feb. 21, 2023) ........................................................ 10

*Lipton v. Pathogenesis Corp.*,
    284 F.3d 1027 (9th Cir. 2002).............................................................................. 12

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
    416 F.3d 940 (9th Cir. 2005).............................................................................. 11

*Luna v. Marvell Technology Group*,
    2017 WL 2171273 (N.D. Cal. May 17, 2017)..................................................... 13

*Maverick Fund, L.D.C. v. First Solar, Inc.*,
    2018 WL 6181241 (D. Ariz. Nov. 27, 2018)...................................................... 14

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008)...................................................................... 15, 16

*Monachelli v. Hortonworks, Inc.*,
    225 F. Supp. 3d 1045 (N.D. Cal. 2016).................................................................. 9

*Mulderrig v. Amyris, Inc.*,
    492 F. Supp. 3d 999 (N.D. Cal. 2020)................................................................ 15

*Nursing Home Pension v. Oracle Corp.*,
    380 F.3d 1226 (9th Cir. 2004)............................................................................ 12

*Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*,
    780 F. App'x 480 (9th Cir. 2019)........................................................................ 12

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
    774 F.3d 598 (9th Cir. 2014)......................................................................... 7, 11

*Pirani v. Netflix, Inc.*,
    2024 WL 69069 (N.D. Cal. Jan. 5, 2024)............................................................. 6

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014)................................................................. 1, 12, 14

*Provenz v. Miller*,
    102 F.3d 1478 (9th Cir. 1996)............................................................................ 11

*Reese v. Malone*,
    747 F.3d 557 (9th Cir. 2014).............................................................................. 14

*Schneider v. Cal. Dep't of Corr.*,
    151 F.3d 1194 (9th Cir. 1998)............................................................................ 18

*SEC v. Hui Feng,*
  935 F.3d 721 (9th Cir. 2019) ....................................................................... 5

*SEC v. Richman,*
  2021 WL 5113168 (N.D. Cal. Nov. 3, 2021). ........................................... 7

*Shenwick v. Twitter, Inc.,*
  282 F. Supp. 3d 1115 (N.D. Cal. 2017) ............................................... 9, 14

*Shurkin v. Golden State Vintners Inc.,*
  471 F. Supp. 2d 998 (N.D. Cal. 2006) ..................................................... 18

*Simpson v. AOL Time Warner Inc.,*
  452 F.3d 1040 (9th Cir. 2006) .................................................................... 3

*Webb v. Solarcity Corp.,*
  884 F.3d 844 (9th Cir. 2018) .................................................................... 13

*Weston Fam. P'ship LLP v. Twitter,*
  29 F.4th 611 (9th Cir. 2022) ................................................................. 2, 8

*Wochos v. Tesla, Inc.,*
  985 F.3d 1180 (9th Cir. 2021) .................................................................. 18

*Yourish v. Cal. Amplifier,*
  191 F.3d 983 (9th Cir. 1999) .................................................................... 13

*Zaghian v. Farrell,*
  675 F. App'x 718 (9th Cir. 2017) ............................................................. 11

*Zucco Partners, LLC v. Digimarc Corp.,*
  552 F.3d 981 (9th Cir. 2009) ................................................... 12, 13, 14, 16

**Statutes & Rules**

17 C.F.R. § 240.10b-5(a) ................................................................................ 1

15 U.S.C.A. § 78u-5 ...................................................................................... 5

Fed. R. Civ. P. 9(b) ................................................................................... 2, 3

Rule 10b-5(a)-(c) .......................................................................................... 2

The Opposition underscores Plaintiffs' failure to plead fraud with particularity.

***Scheme Liability***.  Plaintiffs ignore the most critical element of scheme liability—it must be "to defraud" investors.  17 C.F.R. § 240.10b-5(a).  A fully disclosed business strategy, successful or not, cannot defraud investors.  Defendants extensively disclosed the so-called "artifices" Plaintiffs say comprised the alleged scheme.  Relatedly, Plaintiffs cannot credibly allege that Defendants engaged in a scheme for the "principal purpose and effect" of deceiving investors, given that they accurately disclosed the key Disney+ metrics, predicted large future losses, and warned that its plans might fail.  *See* § I.A.1.

***Alleged Misstatements***.  Forced to concede that Disney's robust disclosures and warnings about Disney+ render their alleged misstatements non-actionable, Plaintiffs all but ignore them in the Opposition, instead arguing that Disney should have disclosed *other* information.  But there is no "rule of completeness for securities disclosures because '[n]o matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not.'"  *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014).  Plaintiffs fail to plead that Disney "affirmatively create[d] an impression of a state of affairs that differs in a material way from the one that actually exists", as they must to state an omission claim.  *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).  *See* § I.A.2.

***Scienter***.  Plaintiffs plead ***no*** information known to any defendant that contradicts a public statement.  The general allegations about profit motive could apply to executives of any large public company.  And the CWs have no personal knowledge bearing on the individual defendants' state of mind—except that CW-1 confirms Disney accurately reported its December 2020 targets.  Thus, Plaintiffs do not plead scienter.  *See* § I.A.3.

***Loss Causation***.  "When plaintiffs plead a causation theory based on market revelation of the fraud, [a] court naturally evaluates whether plaintiffs have pleaded or proved the facts relevant to their theory."  *Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, 998 F.3d 397, 410 (9th Cir. 2021).  Disney's stock price fell, but Plaintiffs fail to plead that the reason was a disclosure of any fraud, which is dispositive.  *See* § I.A.4.

§ 20A *Trading Claim*.  Plaintiffs argue that their § 20A claim against Mr. Iger is predicated on a § 10(b) insider trading claim that appears nowhere in their Complaint and is unsupported by their allegations.  Plaintiffs do not attempt to argue scienter as to Mr. Iger and fail to plead with particularity any material non-public information ("MNPI") he possessed.  Likewise, for Ms. McCarthy, Plaintiffs' claim fails at every turn—lack of a predicate violation, scienter and MNPI.  *See* § I.B.

## I.    ARGUMENT

## A. Plaintiffs' § 10(b) Claim (Count I) Fails to Plead Fraud with Particularity.

Plaintiffs fail to offer a cognizable theory of fraud in light of Disney's exhaustive disclosures about the risks and performance of Disney+.  Plaintiffs concede that Disney repeatedly disclosed:

- The risks of Disney's transition to DTC, including that it would not be profitable for years and would incur large operating losses in the meantime;
- Disney's content costs and operating losses—hundreds of millions each quarter;
- Disney+ subscriber numbers and average revenue per user (as well as that wholesale and international subscribers generated less revenue);
- That Disney would forgo revenue from traditional sources to promote Disney+;
- That Disney would invest heavily in content and expand internationally; and
- Disney's plans for DTC were risky and might fail.

Plaintiffs also acknowledge that many of the statements included in their Complaint are **not** false or misleading.  (Opp. at 9, 12, 16, 25, 28 n.6.)  Plaintiffs resort to arguing that Defendants should have disclosed even more.  But securities laws do not require "complete disclosure of all material information whenever a company speaks on a particular topic", only that disclosures not be misleading, which these were not.  *Weston Fam. P'ship LLP v. Twitter*, 29 F.4th 611, 615 (9th Cir. 2022).

### 1.  Plaintiffs Fail to Allege Scheme Liability.

Plaintiffs do not "allege two distinct Rule 10b-5 claims".  (Opp. 1.)  The Complaint pleads one count under "Rule 10b-5(a)-(c)".  (CC ¶¶ 410-419.)  Whether styled as misstatements or a scheme, Plaintiffs must plead fraudulent conduct and satisfy Rule 9(b)'s heightened pleading standard.  *In re Nektar Therapeutics*, 2020 WL 3962004, at

*13 (N.D. Cal. July 12, 2020).[1]  Scheme liability is not an end-run around Rule 9(b)'s particularity requirements.  Courts routinely dismiss scheme claims that—as here—merely challenge statements that are not false or misleading.  *See In re AGS*, *Inc.*, *Sec. Litig.*, 2024 WL 581214, at *4 (D. Nev. Feb. 12, 2024) (dismissing scheme claim where not "independent of [plaintiffs' unsuccessful] misrepresentation claim"); *Kang v. PayPal Holdings, Inc.*, 620 F. Supp. 3d 884, 901 (N.D. Cal. Aug. 8, 2022) (dismissing where "alleged scheme consists entirely of (and fails for the same reasons as) the misstatements").  Plaintiffs' theory that Defendants schemed to "create the false 'illusion of robust, sustainable, and profitable subscriber growth' at Disney+," (Opp. 1), repackages their misstatement claim and fails for the same reasons.

Plaintiffs also must allege with particularity conduct that had the "principal purpose and effect of creating a false appearance of fact in furtherance of the scheme".[2] (Opp. at 4.)  Plaintiffs have not explained (much less alleged with particularity) how any of Disney's business plans—and extensive disclosures about those plans—had the *principal* purpose of deceiving the market about Disney+.  "Conduct that is consistent with the defendants' normal course of business would not typically be considered to have the purpose and effect of creating a misrepresentation."  *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1050 (9th Cir. 2006).  Plaintiffs cite no case to the contrary.  Nor have they explained how any supposed "artifice" could have had the *effect* of deceiving investors in light of Disney's extensive disclosures on the very same topics.

Indeed, Plaintiffs' supposed scheme makes no sense.  Plaintiffs assert that

---

[1] Plaintiffs identify no binding Ninth Circuit authority that the PSLRA's heightened pleading requirements do not also apply to a scheme theory.  Opp. 4 (citing primarily out of circuit cases); *compare In re AGS, Inc., Sec. Litig.*, 2024 WL 581124, at *4 ("*All* claims brought under Rule 10b-5 are subject to the heightened pleading requirements of [Rule] 9(b) and the [PSLRA]").

[2] Plaintiffs argue that they need not plead "the exact mechanism of the scheme".  (Opp. at 4.)  But the out-of-circuit case on which Plaintiffs rely, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, explains that a plaintiff must plead "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue" and may not rest on "[g]eneral allegations not tied to the defendants or resting upon speculation".  493 F.3d 87, 102 (2d Cir. 2007). Plaintiffs come nowhere close to meeting that standard.

Defendants wanted to make investors believe that Disney+ was "achieving sustainable subscriber growth that would lead to profitability" (Opp. at 4), but never reconcile that supposed purpose with extensive disclosures accurately describing the underlying facts every quarter—including Disney+ subscribers, massive operating losses, and revenue metrics—or with Disney's prediction to this day that Direct-to-Consumer will be profitable by 2024.  A scheme requires secrecy and misinformation; here, there was neither.

Merely labeling components of Disney's accurately-disclosed business plans "artifices" is insufficient.  *See Borteanu v. Nikola Corp.*, 2023 WL 1472852, at *23 (D. Ariz. Feb. 1, 2023) (dismissing scheme claim absent facts showing "purpose" "was to create a false appearance of fact"); *In re Nektar Therapeutics*, 2020 WL 3962004, at *14 (allegations that data was "deceptive, without actually explaining in detail what the data was, what industry standards require with regard to such data, how the data should have been prepared and presented to investors, and why Defendants' presentation did not meet those standards" was too "vague and conclusory" to meet PSLRA's requirements).  Each of Plaintiffs' "artifices" fails.

***Disney+ Subscriber Targets***.  Plaintiffs argue that Defendants "'launched the scheme by intentionally setting an unattainably high Disney+ subscriber target' at Disney's 2020 Investor Day" (Opp. at 5), but ignore that their own witness, CW-1, ***confirms*** that the targets reflected Disney's ***actual*** five-year plan.  (Mot. at 12; CC ¶ 35.) Having an optimistic plan that ultimately does not work out is not securities fraud.  The alleged scheme could be actionable only if Disney's targets were false or not believed when they were made.  Plaintiffs allege no such facts, which is dispositive.  Plaintiffs say that the predictions are not protected by the PSLRA safe harbor because it does not apply to scheme claims.  (Opp. at 9, 24-25.)  This is incorrect where plaintiffs' scheme

allegations reduce down to alleged misstatements.[3]  *See* 15 U.S.C.A. § 78u-5 (safe harbor applies to claim "based on an untrue statement of a material fact or omission of a material fact").

*DMED*.  Plaintiffs concede that Defendants disclosed the DMED reorganization, including that streaming "distribution and commercialization activities [would] be centralized".  (Mot. at 8-9, 13.)  Plaintiffs do not plead facts suggesting that the DMED reorganization or the appointment of Mr. Daniel had the purpose or effect of deceit.  Asserting that "Chapek appointed Daniel for the purpose of advancing Defendants' scheme" (Opp. at 9), without explaining how that was deceptive, is not enough.

*Feature Films*.  Plaintiffs' assertion that Defendants failed to disclose that it "steer[ed] feature films to Disney+" "to boost subscriber growth" "to the detriment of overall Company profits" (Opp. at 6, 10) is wrong.  Defendants disclosed that "content is the single biggest driver to not only acquiring sub[scriber]s, but retaining them", and that Disney "expect[ed] to forgo revenue from traditional sources" by steering content to Disney+.  (Ex. 28, FY21 Q1 Earnings Call at 1146; Ex. 10, 2019 Form 10-K at 147-50.)

*"Buying" Subscribers*.  Defendants repeatedly disclosed—and in no way "mask[ed] the impact" of—Disney's content spend.  (Opp. at 6.)  Disney announced at its 2020 Investor Day that content costs would *quadruple* due to the strategy of spending more on content to attract subscribers, and disclosed those content costs every quarter.  (Mot. at 6-8.)  Far from concealing "devastating near-term financial consequences" (Opp. at 10), Disney disclosed its large operating losses every quarter.  (Mot. at 8.)  Disney also warned that it invests in content "before knowing" whether it "will earn consumer acceptance", and, as a result, "subscription fees" "may decline" and "affect the profitability".  (Mot. at 4, 14.)

*Promotions*.  Plaintiffs assert that Defendants concealed the impact of promotions

---

[3] Plaintiffs' reliance on *SEC v. Hui Feng*, 935 F.3d 721, 737 (9th Cir. 2019) is misplaced.  There, Mr. Feng, who assisted individuals with immigration issues, created international shell companies to receive rebates that he concealed from his clients.  *Id.*  Such facts bear no relation to those here.

on Disney+'s profitability.  (Opp. at 11.)  Not so.  Disney disclosed accurate subscriber numbers and average revenues per subscriber ("ARPU") each quarter, which allowed investors to assess for themselves the aggregate impact of discounts and promotions on Disney+'s profitability.  Disney also disclosed that some subscribers received the service at no additional cost through a third party that paid Disney a fee and that "wholesale arrangements" yielded less revenue per subscriber.  (Mot. at 7.)  Plaintiffs complain that Disney did not "quantif[y] the number of 'paid subscribers' obtained via promotion".  (Opp. at 11.)  But Disney did not conceal the number of promotional subscribers—*e.g.*, Ex. 13 Q1 FY20 Earnings Call at 369 (explaining 50% of subscribers came from third-parties, with 20% from Verizon)—and no statement about promotions was misleading because, *inter alia*, any effects were baked in to other metrics Disney accurately disclosed, such as ARPU.  Even if some "investors may have preferred to have more information . . . Section 10(b)(5) and Rule 10b-5 do not require such disclosure".  *Huang v. Avalanche Biotechnologies, Inc.*, 2016 WL 6524401, at *8 (N.D. Cal. Nov. 3, 2016).  Plaintiffs' suggestion that Disney should have disclosed various unsupported hindsight judgments—that "promotions impeded Disney+'s profitability", "promotions would lead to elevated churn" and subscribers were of "low quality"—also fails.  (Opp. at 11.)  Plaintiffs have alleged nothing to demonstrate that anyone at Disney reached those conclusions during the Class Period.  *See, e.g.*, *Pirani v. Netflix, Inc.*, 2024 WL 69069, at *9 (N.D. Cal. Jan. 5, 2024) (allegations about facts that existed at the end of class period were insufficient to show Netflix was aware of those facts throughout the class period).

**International Markets**.  Unable to dispute that Defendants disclosed that international expansion was part of its plan to grow subscribers and that its international markets were less profitable (Mot. at 11-12), Plaintiffs suggest that Defendants should have disclosed "subscriber numbers or revenue on a country-by-country basis".  (Opp. at 11-12.)  But, again, because what Disney did disclose was accurate and not misleading, there was no duty to disclose more.  *See In re Netflix, Inc., Sec. Litig.*, 964 F. Supp. 2d 1188, 1193 (N.D. Cal. 2013) (rejecting argument that once "Netflix began to discuss its

1   focus on streaming, it had a duty to disclose all manner of information about streaming's

2   margins").

3   ***Disney+ "On Track"***.  Plaintiffs wrongly argue that Defendants somehow

4   conceded that statements that Disney was "on track" to meet its targets were part of a

5   scheme.  (Opp. at 12.)  Not so.  Plaintiffs, having failed to show that the statements were

6   false or unbelieved when made, have not alleged how such statements could have the

7   purpose or effect of deceit.  (Mot. at 16.)  For just that reason, Plaintiffs now concede that

8   they do "not allege these statements violated Rule 10b-5(b)".  (Opp. at 12.)[4]

9   ***"Accounting Manipulations"***.  Plaintiffs fail to plead facts showing concealed

10  accounting practices, much less "manipulations".  (Opp. at 7-8.)  Plaintiffs' allegation

11  that Disney's accounting change "shav[ed] off over 30%" of content costs (Opp. at 12),

12  which they derive from data that was available to investors, contradicts any concealment.

13  *See In re Netflix, Inc. Sec. Litig.*, 2005 WL 3096209, at *9  (N.D. Cal. Nov. 18, 2005) (no

14  fraud where "the raw data that would have allowed investors and analysts to calculate"

15  allegedly concealed metric "were disclosed").  Plaintiffs assert that Disney "artificially

16  shift[ed] marketing and content costs away from Disney+" (Opp. at 13), but no pleaded

17  facts show that happened, how any Defendant was involved, that any impact on costs was

18  material, or that there is anything improper—let alone fraudulent—about allocating

19  internal costs in this manner, all in open view of investors.  *Or. Pub. Emps. Ret. Fund v.*

20  *Apollo Grp. Inc.*, 774 F.3d 598, 604 (9th Cir. 2014) (accounting not misleading without

21  showing that "numbers were incorrect or misstated").  As Plaintiffs concede (Opp. at 12),

22  Disney recast its prior financials to allow for apples-to-apples comparison to future

23  reporting—further undercutting Plaintiffs' unsupported inference of a deceitful scheme.

24  ***Churn.***  Plaintiffs identify no basis to suggest that Defendants had an obligation to

25  report churn data, nor do they offer any allegations that support an inference that the

26

27        [4] *SEC v. Richman,* involving revenue projections that defendants knew would never be obtained, is
    not to the contrary.  (Opp. at 12.)  Plaintiffs have not alleged that Defendants "knew that the walls were
28  closing in around them", as was alleged there.  2021 WL 5113168, at *8 (N.D. Cal. Nov. 3, 2021).

statements regarding churn were false or deceptive.  (Mot. at 17-18.)

### 2.  Plaintiffs Fail to Allege Misstatement Liability.

Plaintiffs fault Defendants for efficiently briefing their arguments on the overlapping scheme and misstatement allegations—which are premised on the same allegedly concealed information—and still fail to point to any pleaded facts that render the alleged misstatements false or misleading.

Plaintiffs repeatedly argue that statements are misleading by virtue of other information that could have been disclosed.  That is not the law.  "Often, a statement will not mislead even if it is incomplete or does not include all relevant facts."  *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1109 (9th Cir. 2010) (citation omitted); *see In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 881 (9th Cir. 2012) (that "some investors might have wanted more extensive information" does not "make the alleged original statements false or misleading").  "Securities laws . . . do not require real-time business updates or complete disclosure of all material information."  *Twitter*, 29 F.4th at 615.  Plaintiffs' allegations resemble those rejected by the Ninth Circuit in *In re Netflix*.  There, the plaintiffs alleged that Netflix failed to disclose that streaming platforms' profitability was "minimal", that "soaring [streaming] costs" were not offset, and that streaming's margin was lower than disclosed.  964 F. Supp. 2d at 1193.  The court rejected those "vague" allegations that "depend[ed] on the tenuous theory that Defendants withheld discrete and accurate financial information about streaming while also touting streaming's profitability".  *Id.* at 1198.  The Ninth Circuit affirmed, citing Netflix's risk disclosures regarding "getting its online-streaming business off the ground".  *In re Netflix, Inc. Sec. Litig.*, 647 F. App'x 813, 816 (9th Cir. 2016).  Here, too, Defendants repeatedly disclosed the risks of Disney's DTC expansion, telling investors they projected Disney+ would be unprofitable until 2024 and would incur billions of dollars of losses in the interim. [5]

---

[5] Plaintiffs fault Defendants for not predicting the future, arguing that they should have disclosed that content costs were "snowballing *ultimately forcing Defendants to write off billions of dollars*".

Plaintiffs now recognize that those projections were not misleading.  (Opp. at 24-25.)

### a.  Defendants' Hard Data Was Not Misleading.

Plaintiffs concede that Disney's reported metrics were accurate.  Their sole argument as to why the hard data were somehow misleading is that Disney did not also disclose churn rates.  (Opp. at 22.)  But Defendants had no obligation to do so.

Plaintiffs' allegations are unlike those in the case they cite.  In *Shenwick v. Twitter, Inc.*, the plaintiffs alleged specific facts showing that Twitter reported positive monthly active users ("MAU") while concealing negative daily active users ("DAU"), and that those DAU trends "made MAU growth implausible".  282 F. Supp. 3d 1115, 1137 (N.D. Cal. 2017).  Here, Plaintiffs fail to plead any facts to show that Disney's churn statements contradicted Disney+ subscriber metrics, and acknowledge that Defendants' statements about subscriber targets were not misleading.  (Mot. at 17-18; Opp. at 9, 22.)  "Disclosure[s] of accurate historical data accompanied by general statements of optimism. . . are not actionable."  *Monachelli v. Hortonworks, Inc.*, 225 F. Supp. 3d 1045, 1055 (N.D. Cal. 2016) (citation omitted).

### b.  The Alleged Misstatements Are Inactionable Puffery.

Plaintiffs concede that 10 of the statements of corporate optimism are neither false nor misleading.[6]  (Opp. at 22-23.)  Plaintiffs fail to show that the other statements are anything but inactionable puffery.[7]  They are unlike those in *In re Quality Sys., Inc. Sec. Litig.*, where a defendant not only said "that he believed plenty of opportunities for new system sales existed" but also specified facts—the "*proportion of the large and mid-size*

---

(Opp. at 17 (emphasis added).)  Allegations of fraud by hindsight cannot support a securities claim.  *See In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1419 (9th Cir. 1994).

[6] The statements that remain at issue and are inactionable puffery are statements 2, 13,18, 24, 25, 27, 31, 36-39, 41-43, 46, 47, 50, 54-56, 65, 69, 70, 74-82.  (Opp. at 22-23.)  All statement numbers refer to Defendants' Index A - Alleged Misstatements Chart, which accompanies Defendants' Motion.

[7] Defendants **do** address the June 28, 2022 statement where a Disney Board member praised Mr. Chapek.  (Mot. at 21-22.)  Like other statements about Disney's leaders, this is non-actionable puffery.  (*Id.*)  Moreover, it is irrelevant to the scienter of any Individual Defendant, as none was its maker.  (Opp. Ex. A at 21.)

REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED COMPLAINT

*practice markets*" and "*the pipeline was full and growing*".  865 F.3d 1130, 1144 (9th Cir. 2017) (emphases added).  Here, on the other hand, the statements provided no facts that "created an impression of affairs that differed in a material way from the one that actually existed".  *Id.* (cleaned up).  Tellingly, Plaintiffs ignore Ninth Circuit precedent where statements like those here were held to be non-actionable.  (*See* Mot. at 22.)

c.  <u>The PSLRA's Forward-Looking Safe Harbor Applies.</u>[8]

Plaintiffs acknowledge that Defendants' statements about Disney+ content and future international expansion are forward-looking.  (Opp. at 24-25.)  Their arguments as to why those statements nonetheless fall outside the safe harbor are unavailing.

***Content***.  The lone forward-looking statement regarding content is non-actionable. The statement reads:  "Overall, we are pleased with Disney+ subscriber growth in the quarter and **are looking forward to new market launches and a strong content slate later this year**."  (Opp. at 25.)  Plaintiffs concede that the bolded portion of the statement is forward-looking, but ignore that the rest is non-actionable opinion and puffery.  (*Id.*)

***Future International Expansion***.  Plaintiffs argue that statements about Disney's planned international expansion are outside of the PSLRA safe harbor because they omitted "information about the unprofitability of those new regions".  (Opp. at 25.)  But Disney did disclose that international regions were less profitable, (Mot. at 11-12, 15-16), and predictions about future expansion are textbook forward-looking statements.  *Kong v. Fluidigm Corp.*, 2023 WL 2134394, at *4 (9th Cir. Feb. 21, 2023) (citation omitted) (safe harbor protects "statements [that] assess 'how various future events will play out' and "do not describe 'specific, concrete circumstances *that have already occurred*'").

***Meaningful Cautionary Language***.  Each forward-looking statement was accompanied by specific and meaningful cautionary language that was far from "boiler plate".  During each earnings call, Disney disclosed that "actual results may differ

---

[8] Plaintiffs concede that many statements are not false or misleading.  (Opp. at 25.)  Those that remain and are inactionable as forward-looking include:  Statements 10, 12, 14, 17, 43-45, 48-52, 54-56, 65-72.

materially from those expressed or implied" for any number of factors, including "consumer preferences", "the performance of the Company's theatrical and home entertainment" or "performance of some or all company businesses either directly or through their impact on those who distribute our products". (*See, e.g.*, Ex. 71 at 124.) Disney also directed investors to their SEC filings containing detailed cautionary language with important factors related to the particular statements. (Mot. at 3-4, 24.)[9] Those disclosures sufficiently warned investors. *See In re Netflix*, 647 F. App'x at 816.

d. <u>The Alleged Misstatements Are Non-Actionable Opinions.</u>[10]

For opinions to be actionable, Plaintiffs must allege specific facts showing that Defendants did not genuinely hold the opinions allegedly misstated, *see City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017), yet Plaintiffs point to no such facts. Plaintiffs cite Mr. Chapek's November 8, 2022 statement that "we still expect Disney+ to achieve profitability in fiscal 2024" (Opp. at 26), yet they admit that statements regarding profitability targets were not false (*id.* at 24-25), and have never been changed (Mot. at 21, 22).

**3. Plaintiffs Fail to Plead Scienter.**

The absence of particularized allegations showing a strong inference of scienter defeats Plaintiffs' § 10(b) claim, whether expressed on a misstatement or scheme theory. Plaintiffs entirely ignore their obligation to plead scienter "with respect to each of the individual defendants". *Or. Pub. Emps. Ret. Fund*, 774 F.3d at 607. This alone is fatal. Plaintiffs must allege intent to defraud or deliberate recklessness, which "is

---

[9] This cautionary language is unlike the language in the cases on which Plaintiffs rely. (Opp. at 25 (citing, *e.g.*, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 947 (9th Cir. 2005) (cautionary language advised only that prior offering memorandum had not been updated); *Provenz v. Miller*, 102 F.3d 1478, 1493-94 (9th Cir. 1996) (language directly contradicted actual state of affairs); *Zaghian v. Farrell*, 675 F. App'x 718, 720 (9th Cir. 2017) (cautionary language warned of potential failure to meet sales expectations, but defendants were aware that product "would likely fail").)

[10] Plaintiffs again concede that certain statements are not false or misleading. (Opp. at 26.) This leaves the following as non-actionable opinions: Statements 12, 15, 16, 31, 38, 42, 48-50, 54-56, 65, 66, 70, 74, 76, 77, 79-80.

---

an *extreme* departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so *obvious* that the actor must have been aware of it." *City of Dearborn*, 856 F.3d at 619 (citation omitted). Plaintiffs' allegations do not satisfy this stringent standard for scienter, which must be "*cogent and at least as compelling* as any opposing inference". *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) (citation omitted).

a.  Plaintiffs Fail to Plead Scienter as to Mr. Chapek.

Plaintiffs plead no facts that would support a strong inference of scienter as to Mr. Chapek.  Plaintiffs do not allege that Mr. Chapek did not genuinely believe in his strategy for Disney+.  Nor do they allege that he traded Disney stock during the Class Period.  While the ultimate result of his strategy may not have matched his goal—and resulted in his termination—that in no way indicates fraudulent intent.

**Internal Data**.  The Opposition merely repeats that Defendants "closely tracked" data about churn and other metrics but fails to identify specific data contrary to public statements.  (Opp. at 27-28.)  Plaintiffs' failure to "detail the actual contents of the reports the executives purportedly referenced or had access to" that contradicted what they said publicly is fatal.  *Police Ret. Sys. of St. Louis*, 759 F.3d at 1062-63; *see also Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002).[11]

**Temporal Proximity**.  Mere proximity between Mr. Chapek's termination and Mr. Iger's "[a]cknowledg[ment]" that the earlier strategy had not succeeded do "not show that the defendants always knew that the projections were unattainable or that they acted with scienter because it is clearly insufficient for plaintiffs to say that a later, sobering

---

[11] The two cases Plaintiffs cite are not to the contrary.  (Opp. at 27-28.)  In both, individuals admitted to extremely detailed knowledge that directly contradicted public statements.  *See Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 484–85 (9th Cir. 2019) (scienter pleaded where company had agreed by "consent decree" to cease "exaggerating" about its products, employees filed complaints, individual defendant got reports with "detailed statistics about stale alerts" and "admitted that she was working to fix the stale alert problem"); *Nursing Home Pension v. Oracle Corp.*, 380 F.3d 1226, 1231 (9th Cir. 2004) (defendant said he could look at forecasts "around the world up to the minute at any level of detail" and "[w]e know exactly how much we have sold in the last hour").

revelation makes an earlier, cheerier statement a falsehood'." *Browning v. Amyris, Inc.*, 2014 WL 1285175, at *35 (N.D. Cal. Mar. 24, 2014) (citing *Yourish v. Cal. Amplifier*, 191 F.3d 983, 997 (9th Cir. 1999)).  Indeed, the opposing inference—that Mr. Iger returned as CEO to provide a new strategy—is far more plausible.  *See City of Dearborn*, 856 F.3d at 622 (holding inference of scienter not "at least as compelling as the opposing inference that Defendants exhibited poor business judgment").[12]

*Tone at the Top*.  Plaintiffs' reliance on *Luna v. Marvell Technology Group* further demonstrates why scienter cannot be inferred here.  (Opp. at 30.)  There, the court held that pressure for sales personnel "who, presumably, could work harder to generate more revenue" to meet revenue targets was ***not*** indicative of scienter.  2017 WL 2171273, at *4 (N.D. Cal. May 17, 2017).[13]  That is all Plaintiffs allege here.  Plaintiffs also allege that Mr. Chapek "ignored repeated warnings" that he should "deliver a sober message" about the large loss Disney announced on its November 8, 2022 earnings call.  (Opp. at 30, CC ¶ 249.)  Plaintiffs do not show how Mr. Chapek's accurate disclosure of the loss paired with a statement that he still expected profitability by 2024—Disney's DTC profitability target to this day—indicates scienter.

*Termination*.  Plaintiffs do nothing to overcome the "reasonable assumption" that the "corporate reshuffling" was simply due to disappointing results.  *Webb v. Solarcity Corp.*, 884 F.3d 844, 857 (9th Cir. 2018).[14]  Here, "the inference that the defendant corporation forced certain employees to resign because of its knowledge of the

---

[12] *Sipex* is inapposite.  (Opp. at 29.)  There, after admitting to wrongdoing, the company instituted reforms that "customarily, even if not invariably, follow systemic and fraudulent abuse".  *In re Sipex Corp. Sec. Litig.*, 2005 WL 3096178, at *1 (N.D. Cal. Nov. 17, 2005).  No such allegations exist here.

[13] The only allegations indicative of fraud in *Luna* were those involving pressure exerted on finance personnel.  2017 WL 2171273, at *4.  No such allegations exist here.

[14] Plaintiffs' authorities are inapt.  *See In re Fibrogen, Inc.*, 2022 WL 2793032, at *25 (N.D. Cal. July 15, 2022) ("abrupt resignation" plus allegations of "post-hoc changes to [clinical trial] data [that] were made by Fibrogen's most senior officials" pleaded scienter); *In re WageWorks, Inc., Sec. Litig.*, 2020 WL 2896547, at *6 (N.D. Cal. June 1, 2020) (resignations announced at same time as disclosure of "improper accounting").

employee's role in the fraudulent representations will never be as cogent or as compelling as the inference that the employees resigned or were terminated for unrelated personal or business reasons." *Zucco*, 552 F.3d at 1002.

**Core Operations.** Plaintiffs entirely ignore the requirements of the stringent core operations test, which requires "specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations . . . or witness accounts demonstrating that executives had actual involvement in creating false reports". *Intuitive Surgical*, 759 F.3d at 1062. Plaintiffs' Opposition directs the Court to neither.[15]

**Confidential Witnesses.** Plaintiffs' CW allegations fail to support scienter because they are not "described with sufficient particularity to establish their reliability and personal knowledge" and the statements are not "themselves [] indicative of scienter". *Zucco*, 552 F.3d at 995. While CW-1 allegedly "attended monthly meetings with Daniel and drafted the earning's call script" CW-1 *confirms* that the disclosed Disney+ targets *matched* Disney's actual, internal five year plan. (Mot. at 30.) Similarly, while CW-2 allegedly had "weekly meetings with the 'entire executive team' at Disney Streaming" (CC ¶ 56), CW-2 makes no allegation that any internal information contradicted anything disclosed to investors. The remaining CWs had no contact with the Individual Defendants (*see* Index B – CW Chart) and do not allege that internal information contradicted public statements, instead merely offering hindsight criticism of business decisions that were fully disclosed.[16] That is insufficient.

---

[15] Plaintiffs' cited cases underscore the paucity of their allegations. In *Reese v. Malone*, defendant was alleged to be "the external and internal gatekeeper of information" with responsibility for providing reports to leadership and the press. 747 F.3d 557, 576 (9th Cir. 2014). In *Shenwick v. Twitter, Inc.*, detailed allegations indicated that defendants had known of the adverse trends and that the ultimate revelation was a decision to "come clean". 282 F. Supp. 3d at 1145-46.

[16] Plaintiffs' cases show their CW allegations are insufficient. *See Maverick Fund, L.D.C. v. First Solar, Inc.*, 2018 WL 6181241, at *11 (D. Ariz. Nov. 27, 2018) (multiple CWs presented specific contradictory evidence to defendants); *Glazer Capital Mgmt. v. Forescout Techs.*, 63 F.4th 747, 771 (9th Cir. 2023) ("CWs described conversations that they themselves heard . . . or practices to which they themselves were subjected"); *Quality Systems*, 865 F.3d at 1145-46 (CWs "[made] specific allegations regarding large portions of 'that sales data that contradict those same executives' public statements).

***Compensation***.  That Mr. Chapek's compensation (like that of many public-company executives) was tied to performance does not raise—and in fact rebuts—an inference of scienter.  *See Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008); *Rigel Pharms.*, 697 F.3d at 884 (courts "will not conclude that there is fraudulent intent merely because a defendant's compensation was based in part on such successes").  Plaintiffs ignore that:  (1) the vast majority of Mr. Chapek's compensation vested over several years, making a short-term scheme implausible (Mot. at 33), and (2) Mr. Chapek held substantial Disney stock, aligning his financial interests with investors.  *See Worlds of Wonder*, 35 F.3d 1424-25 (no scienter where defendants "held onto most of their stock and incurred the same large losses as did the Plaintiffs themselves").

### b. Plaintiffs Fail to Plead Scienter as to Ms. McCarthy.

Allegations about Ms. McCarthy do not meet the stringent standard for scienter.

***Internal Data***.  Plaintiffs' argument that Ms. McCarthy was presented with unspecified churn data fails for a total lack of specificity.  (*See supra* § I.A.3.a at 12.)  No allegations show that the data differed from anything Disney disclosed.

***Compensation***.  Ms. McCarthy's compensation is not indicative of scienter for the same reasons as Mr. Chapek's, explained *supra*, § I.A.3.

***Trading***.  Trading supports scienter only when suspicious and "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information".  *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1066-67 (9th Cir. 2008) (citation omitted).  Plaintiffs cannot allege that as to Ms. McCarthy because she had a years-long practice of exercising options near expiration and selling resulting shares pursuant to a 10b5-1 plan.  (Mot. at 34 n.7); *see Jasin v. Vivus, Inc.*, 2016 WL 1570164, at *20 (N.D. Cal. Apr. 19, 2016) (no scienter where trading was pursuant to 10b5-1 plan and was not "the bulk" of shares).[17]  There is

---

[17] This is unlike *Mulderrig v. Amyris, Inc.*, where defendant's class-period trading had a "significant uptick" relative to "only [one] other sale" the five years prior.  492 F. Supp. 3d 999, 1029-30 (N.D. Cal. 2020).

nothing "calculated to maximize the personal benefit" in exercising options so that they
do not expire.  *See id.* at \*20 (finding no scienter where stock sales were made at time of
"obvious and appropriate opportunity to sell stock").[18]

*Resignation*.  Plaintiffs allege no facts showing that Ms. McCarthy's resignation—
over six months after Mr. Iger's return—was suspicious.  The more reasonable inference
is that she left "for unrelated personal or business reasons." *Zucco*, 552 F.3d at 1002.

c. <u>Plaintiffs Fail to Plead Scienter as to Mr. Daniel.</u>

Plaintiffs point to no pleaded facts showing that Mr. Daniel did not believe the sole
statement attributed to him (CC ¶ 277, Stmt. 17), and do not even attempt to explain how
the complaint paragraphs they cite support a strong inference of scienter.

### 4.  Plaintiffs Fail to Plead Loss Causation.

Plaintiffs argue that Disney's alleged "misrepresentations and fraudulent conduct
became apparent to the market" on November 11, 2021, November 8, 2022, and May 11,
2023.  (CC ¶ 384.)  "When plaintiffs plead a causation theory based on market revelation
of the fraud, [a] court naturally evaluates whether plaintiffs have pleaded or proved the
facts relevant to their theory." *Irving Firemen's Relief & Ret. Fund*, 998 F.3d at 410.  No
fraud-related information came to light on those dates.

*November 10, 2021*.  Plaintiffs allege that Disney's shares fell because of slowed
subscriber growth—but that is not a truth revealed to the market.  (Opp. at 36.)  Disney
actually disclosed that its subscribers were "***in line*** with the subscriber guidance we gave
in September" and did not revise its 2024 subscriber target.  (Mot. at 38 (emphasis
added).)  The November 10 news was confirmatory, not corrective.  The only new
information was an update about the exact size of Disney's loss (Opp. At 37)—but that is

---

[18] Ms. McCarthy's trading pattern is not a "factual question".  (Opp. at 34.)  At the pleading stage,
courts are required to weigh all competing inferences to determine if Plaintiffs have pleaded a strong
inference of scienter.  *Metzler*, 540 F.3d at 1066.  Each Form 4, of which courts routinely take judicial
notice, *see In re Silicon Graphics Inc.*, 183 F.3d 970, 986 (9th Cir. 1999), shows when Ms. McCarthy
exercised her options, when they expired, the number of shares redeemed and sold and that each sale
was made pursuant to a 10b5-1 plan.  (Mot. at 34-35.)

not what Plaintiffs allege moved the market (CC ¶ 385) and Disney had already disclosed that its losses would peak between 2020 and 2022 (Mot. at 5-6).

*November 8, 2022*.  Plaintiffs allege that investors were stunned by an announcement of a $1.47 billion operating loss.  (CC ¶ 391.)  But they offer no explanation as to how fraud was revealed.  Nor could they, given that Disney already had disclosed the prior quarter a $1.1 billion operating loss—an $800 million dollar year-over-year increase—and explicitly said that "in the next quarter", investors "will see a similar increase year-over-year that you saw this quarter".  (Opp. At 37.)  The November 8 news confirmed what Disney already disclosed, and Plaintiffs identify no prior statement it revealed to be false or misleading.  (Mot. at 38.)[19]

*March 10, 2023*.  Nor do Plaintiffs explain how anything on March 10 showed earlier statements to have been false or misleading when made.  As an initial matter, Disney—to this very day—has *maintained* its prediction that its DTC business will achieve profitability in 2024; nothing about that core issue has been corrected or changed.  Disney always disclosed the risk of its DTC strategy, and Plaintiffs do not explain how a change of direction reveals the prior statements were false or misleading.  Even if it did, Mr. Iger already had disclosed his "transformation" to "rationalize" Disney's streaming business in February 2023.  (Mot. at 39; Opp. At 38.)  Plaintiffs contend that the February disclosure "said nothing" about "profitability being unattainable", "cutting international expansion" or "the upcoming impairment charge."  (Opp. At 38.)  But Plaintiffs' nitpicking is rebutted by Mr. Iger's expansive statements *in February* that "the streaming business . . . is not delivering . . . the kind of profitability or bottom-line results", "we're going to rebalance" the streaming business, Disney would "aggressively curate [its] general entertainment content", "reassess all markets . . . and also determine the right

---

[19] Plaintiffs say it is a question of fact whether investors "should have been prepared" for the loss.  (Opp. at 38.)  That is wrong.  Public documents show that Disney disclosed a negative forecast that was confirmed by actual results and the Court "need not" "accept as true allegations that contradict matters properly subject to judicial notice".  *In re Gilead Sciences*, 536 F.3d 1049, 1055 (9th Cir. 2008).

balance between global and local content" and "adjust [its] pricing strategy, including . . . promotional strategies". (Ex. 53, Q1 FY2023 Earnings Conference Call at 6.) The lack of any stock drop in February refutes loss causation. *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1185 (9th Cir. 2021).

## B. Plaintiffs' § 20A Contemporaneous Trading Claim (Count II) Fails.

**Iger**. Plaintiffs do not allege that Mr. Iger participated in any scheme or made any false or misleading statements. Plaintiffs also acknowledge that a claim under § 20A requires a predicate violation. (Opp. At 38 & n.17.) Plaintiffs now attempt to fabricate the predicate violation by arguing that Mr. Iger committed improper insider trading. (Opp. at 38.) But Plaintiffs never pleaded a Section 10(b) insider trading claim and "cannot defend against a motion to dismiss by relying on new allegations in their Opposition that are absent from the operative pleading." [20] *Delegates to Republican Nat'l Convention v. Republican Nat'l Comm.*, 2012 WL 1285175, at *1 (C.D. Cal. Aug. 7, 2012); *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Nor have Plaintiffs pleaded that Mr. Iger traded while in possession of MNPI or acted with scienter—as is required. *See In re Silver Lake Grp. Sec. Litig.*, 2022 WL 4485815, at *7 (N.D. Cal. Sep. 27, 2022); *Shurkin v. Golden State Vintners Inc.*, 471 F. Supp. 2d 998, 1025-26 (N.D. Cal. 2006) ("blanket assertions" of MNPI fail, as plaintiffs must allege "when" and "what" MNPI was received). Plaintiffs fail to show that Mr. Iger's trading was "dramatically out of line" with his prior trading. *In re Silverlake Grp.*, 2022 WL 4485815, at *10.

**McCarthy**. Plaintiffs plead no predicate violation (*see supra* §§ I.A.1, I.A.2), nor scienter (*see supra* § I.A.3), nor any specific MNPI that Ms. McCarthy possessed or when she possessed it. That dooms their claims.

## II. CONCLUSION

The Consolidated Complaint should be dismissed in its entirety with prejudice.

---

[20] Because the Consolidated Complaint does not allege a § 10(b) insider trading claim against Mr. Iger, Defendants could not have addressed that claim in their opening brief. (Opp. at 39 n.19.)

Dated:  March 5, 2024

*/s/ John W. Spiegel*
**CRAVATH, SWAINE & MOORE LLP**
J. Wesley Earnhardt (*pro hac vice*)
Helam Gebremariam (*pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
wearnhardt@cravath.com
hgebremariam@cravath.com


**MUNGER, TOLLES & OLSON LLP**
John W. Spiegel (Bar No. 78935)
John M. Gildersleeve (Bar No. 284618)
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702
john.spiegel@mto.com
john.gildersleeve@mto.com

*Counsel for Defendants The Walt Disney Company, Robert Iger, Robert Chapek, Christine M. McCarthy and Kareem Daniel*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Defendants, certifies that this brief contains 18 pages, which complies with the page limit set by court order dated November 22, 2023.

Dated:  March 5, 2024                                      */s/ John W. Spiegel*

REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED COMPLAINT