# EXHIBIT A

2024 WL 5182634
Only the Westlaw citation is currently available.
**NOT FOR PUBLICATION**
United States Court of Appeals, Ninth Circuit.

OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, Plaintiff - Appellant,
v.
SNAP INC.; EVAN SPIEGEL; JEREMI GORMAN, Defendants - Appellees.

No. 23-3932
|
Filed December 20, 2024
|
Argued and Submitted December 5, 2024 San Francisco, California

D.C. No. 2:21-cv-08892-GW-RAO

Appeal from the United States District Court for the Central District of California George H. Wu, Senior District Judge, Presiding

Before: BRESS and FORREST, Circuit Judges, and OHTA, District Judge.[**]

[**] The Honorable Jinsook Ohta, United States District Judge for the Southern District of California, sitting by designation.

MEMORANDUM[*]

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

**\*1** Oklahoma Firefighters Pension and Retirement System ("OFPRS") appeals the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) of its third amended class action complaint ("TAC") alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5. OFPRS alleges that Jeremi Gorman, Snap Inc.'s then-Chief Business Officer, misled investors during an April 22, 2021, earnings call by stating that "[a]dvertisers that represent a majority of our direct response advertising revenue have successfully implemented

SKAdNetwork [("SKAN")] for their Snap campaigns." We review de novo a dismissal under Rule 12(b)(6). *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1105 (9th Cir. 2021). We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

1. Although the district court thoughtfully and carefully reviewed the allegations in the TAC, we respectfully reach a different conclusion. In our view, the TAC adequately alleges scienter.

In a securities fraud claim, to allege the required scienter the complaint must "allege that the defendant[ ] made false or misleading statements either intentionally or with deliberate recklessness." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020) (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009)). Deliberate recklessness is "an *extreme* departure from the standards of ordinary care ... which presents a danger of misleading buyers or sellers that is either known to the defendant or is so *obvious* that the actor must have been aware of it." *Prodanova*, 993 F.3d at 1106 (quoting *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016)). "In the securities context, 'an actor is reckless if he had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although he could have done so without extraordinary effort.' " *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 390 (9th Cir. 2010) (quoting *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1064 (9th Cir. 2000)). Under the Private Securities Litigation Reform Act ("PSLRA"), a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 604 (9th Cir. 2014) (quoting 15 U.S.C. § 78u-4(b)(2)(A)).

OFPRS argues that it has adequately pleaded scienter under both the holistic inquiry and the core-operations theory. Under the holistic inquiry, "the reviewing court must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 326 (2007). "[A] court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id.* at 324. Assessed holistically, we conclude the TAC's allegations give rise to the strong inference of scienter required under the PSLRA. They indicate that Snap as a

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works.

company knew that Gorman's statement was false when made and that this knowledge can be imputed to Gorman herself.

**\*2** The TAC contains extensive allegations that Snap's revenue was concentrated in "direct response" ("DR") advertising, and that these advertisers viewed Apple's App Tracking Transparency initiative ("ATT")—and its switch from "Identifiers for Advertisers" ("IDFA") to SKAN—with great skepticism and concern. The TAC pleads particularized facts indicating that at the time of Gorman's key statement, Snap "was under intense pressure to strongly reassure the market that its advertising business was well-equipped to withstand ATT." In February 2021, Gorman claimed that Snap had "been working really closely with Apple to implement" SKAN and had been "communicating very well with advertisers" to mitigate the transition.

The TAC further alleges that Confidential Witness ("CW") 1, an account strategist in Snap's gaming advertising group, confirmed that "there were very few adoptees [of SKAN] in Q1 and Q2 of 2021," and that the adoptees "immediately experienced numerous issues" including the loss of legacy IDFA data, significant delays in receiving new data, and the inability to obtain data such as the size of a user's purchase after clicking on an ad. CW 2, a data scientist tasked with revenue forecasting for Snap, stated that Snap "had barely begun working with its advertisers on SKAN" in April 2021 and that, in August 2021, another data scientist showed her a spreadsheet indicating that most of the company's DR advertisers had not yet begun to opt into SKAN.

These allegations sufficiently support the strong inference that advertisers representing a majority of DR revenue had not begun to "implement" SKAN, let alone done so "successfully," at the time of Gorman's statement. Fairly read, factual allegations that "there were very few adoptees," that Snap "had barely begun working with its advertisers on SKAN" in April 2021, and that most DR advertisers had not adopted SKAN by August 2021, create a strong inference that advertisers representing a majority of DR advertising revenue —and not just a majority of advertisers by headcount—had not implemented SKAN in April 2021.

The TAC's allegations also support the strong inference that Gorman herself knew this contrary information. Gorman oversaw Snap's sales and advertising teams and spoke to investors about Snap's DR business every quarter. In February 2021, Gorman stated on an earnings call that SNAP had been "communicating very well with advertisers" about ATT and

SKAN to "mitigate" the transition. CW 2 directly participated in small six-to-seven person pre-earnings release meetings during which Gorman expressed her concerns about ATT's impact, and CW 2 further alleges that Gorman regularly met with key advertisers and was known for connecting with Snap's advertising sales representatives on a first-name basis. Given CW 2's allegations regarding Gorman's concerns about ATT's impact during pre-earnings release meetings, the nature of Gorman's regular communications with key advertisers and sales representatives and her role and involvement as head of global advertising, the TAC pleads facts creating a strong inference that Gorman had "reasonable grounds to believe" her statement was false when made, and that she could have obtained contrary information "without extraordinary effort." *See Oracle Corp.*, 627 F.3d at 390 (quoting *Howard*, 228 F.3d at 1064).

The inference of scienter is "as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324. Snap advances the competing inference that Gorman made an optimistic prediction that did not pan out. But Gorman's statement that certain advertisers "*have* successfully implemented" SKAN is not a forward-looking prediction.

2. We would also find scienter under the core-operations theory's "actual access" and "absurdity" tests. The "actual access" test requires particularized allegations that "suggest that defendants had actual access to the disputed information." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 786 (9th Cir. 2008). The TAC's allegations that Gorman, as head of global advertising, regularly met with key advertisers, was focused on DR advertising, and spoke to investors about the DR business every quarter sufficiently meets this pleading standard.

**\*3** The TAC also meets the "absurdity" test, which satisfies the PSLRA "without accompanying particularized allegations, in rare circumstances where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *S. Ferry*, 542 F.3d at 786 (quoting *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 988 (9th Cir. 2008)). Given the TAC's allegations that the ATT transition threatened more than half of Snap's revenue, Gorman's responsibility for DR advertising, and in view of all the other allegations in the TAC, the TAC sufficiently pleads facts indicating that it would be absurd to suggest Gorman did not to know that advertisers

representing a majority of DR revenue had not implemented SKAN, let alone done so successfully.

3. OFPRS has adequately alleged the falsity of Gorman's statement, as the district court found. The TAC's allegations provide ample grounds for the inference that advertisers representing a majority of DR revenue had not adopted SKAN in April 2021. Snap's alternative reading of Gorman's statement—that advertisers had only adopted SKAN, but had not yet encountered issues with SKAN's performance—cannot appropriately be resolved at the motion to dismiss stage.

4. Because the district court dismissed the § 20(a) claims based on the failure to state an underlying § 10(b) violation, we also reverse the dismissal of this claim.

**REVERSED.**

**All Citations**

Not Reported in Fed. Rptr., 2024 WL 5182634

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---