ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN (200643)
RYAN A. LLORENS (225196)
JESSICA T. SHINNEFIELD (234432)
JEFFREY J. STEIN (265268)
NICOLE Q. GILLILAND (335132)
JESSICA E. ROBERTSON (352207)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
ryanl@rgrdlaw.com
jshinnefield@rgrdlaw.com
jstein@rgrdlaw.com
ngilliland@rgrdlaw.com
jrobertson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LOCAL 272 LABOR-MANAGEMENT PENSION FUND, on Behalf of Itself and All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>      vs.<br><br>THE WALT DISNEY COMPANY, et al.,<br><br>                              Defendants. | Case No. 2:23-cv-03661-CBM (ASx)<br><br>CLASS ACTION<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS<br><br>DATE:         April 29, 2025<br>TIME:         10:00 a.m.<br>CTRM:        8D<br>JUDGE:       Hon. Consuelo B. Marshall |

4901-1283-5635.v1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   LEGAL STANDARD ................................................................................ 2

III.  ARGUMENT .............................................................................................. 2

    A.    Defendants' Motion Is Nothing More than an Untimely and Improper Motion for Reconsideration ...................................................... 2

          1.    Defendants' Motion Abuses Rule 12(c) ..................................... 2

          2.    Defendants' Motion Fails the Stringent Standards for Reconsideration .......................................................................... 4

          3.    The Law of the Case Doctrine Precludes Defendants' Motion ........................................................................................ 8

    B.    The Court Correctly Rejected Defendants' Recycled Arguments ........ 8

          1.    Defendants' Falsity Arguments Fail Again ................................ 8

                a.    The Court Correctly Found the Safe Harbor Does Not Apply ................................................................... 9

                b.    The Court Correctly Rejected Defendants' "Accurate Data" Argument ............................................. 14

                c.    The Court Correctly Found the Misstatements Are Not Non-Actionable Opinions ....................................... 16

          2.    Defendants' Scheme Arguments Fail Again ........................... 18

                a.    The Court Correctly Upheld Plaintiffs' Scheme Claims ............................................................................. 18

                b.    The Court Correctly Found "Deceptive Conduct Beyond Simply Making Misstatements" ...................... 19

                c.    The Court Correctly Rejected Defendants' Argument that Their Deceptive Conduct Was "Simply Ordinary Business Strategy Decisions" ........... 20

                d.    The Court Correctly Rejected Defendants' "Fully Disclosed" Argument ...................................................... 22

          3.    The Court Correctly Upheld the §10(b) Claim Against Iger .......................................................................................... 23

IV.  CONCLUSION ....................................................................................... 25

4901-1283-5635.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Allergan, Inc. v. Athena Cosms., Inc.*,
2012 WL 12903072 (C.D. Cal. 2012) ......................................................... 6, 25

*Aviles v. S&P Glob., Inc.*,
2020 WL 1689405 (S.D.N.Y. 2020) ................................................................. 3

*Barabino v. Citizens Auto. Fin., Inc.*,
2010 WL 3911395 (E.D. Cal. 2010) ................................................................. 3

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
2020 WL 4569846 (N.D. Cal. 2020) ............................................................... 17

*Capaci v. Sports Rsch. Corp.*,
2023 WL 11916241 (C.D. Cal. 2023) ............................................................... 6

*City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*,
47 F. Supp. 3d 1205 (E.D. Wash. 2014),
*aff'd*, 691 F. App'x 393 (9th Cir. 2017) ......................................................... 16

*Clemons v. Miss.*,
494 U.S. 738 (1990) ......................................................................................... 7

*Cox v. Ayers*,
2007 WL 9747399 (C.D. Cal. 2007),
*aff'd*, 588 F.3d 1038 (9th Cir. 2009) ............................................................... 4

*Crossfirst Bank v. Vieste SPE LLC*,
2021 WL 2517855 (D. Ariz. 2021) ................................................................... 7

*Eichman v. Fotomat Corp.*,
880 F.2d 149 (9th Cir. 1989) ........................................................................... 8

*Espy v. J2 Glob., Inc.*,
99 F.4th 527 (9th Cir. 2024) ........................................................................... 16

*Evanston Ins. Co. v. Venture Point, LLC*,
2021 WL 5500486 (D. Nev. 2021) ................................................................... 7

4901-1283-5635.v1

**Page**

*Freudenberg v. E\*Trade Fin. Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010) ............................................................... 21

*Friends of Yosemite Valley v. Kempthorne*,
520 F.3d 1024 (9th Cir. 2008) .......................................................................... 25

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) ............................................................................. 10

*Homyk v. ChemoCentryx, Inc.*,
2023 WL 3579440 (N.D. Cal. 2023) ................................................................ 17

*In re AGS, Inc., Sec. Litig.*,
2024 WL 581124 (D. Nev. 2024) .......................................................... 5, 6, 19

*In re Allergan PLC Sec. Litig.*,
2021 WL 4077942 (S.D.N.Y. 2021) ................................................................... 9

*In re Apollo Grp., Inc. Sec. Litig.*,
395 F. Supp. 2d 906 (D. Ariz. 2005) ................................................................ 14

*In re BioMarin Pharm. Inc. Sec. Litig.*,
2022 WL 164299 (N.D. Cal. 2022) ................................................................... 10

*In re BioVie Inc. Sec. Litig.*,
2025 WL 947667 (D. Nev. 2025) ...................................................................... 13

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010) .......................................................................... 12

*In re CV Therapeutics, Inc.*,
2004 WL 1753251 (N.D. Cal. 2004) ................................................................ 12

*In re Dropbox Sec. Litig.*,
2020 WL 6161502 (N.D. Cal. 2020) ................................................................ 14

*In re Eastman Kodak Co. Sec. Litig.*,
632 F. Supp. 3d 169 (W.D.N.Y. 2022) ............................................................. 19

4901-1283-5635.v1

**Page**

*In re Energy Recovery Inc. Sec. Litig.*,
    2016 WL 324150 (N.D. Cal. 2016)................................................................11, 13

*In re Galena Biopharma, Inc. Sec. Litig.*,
    117 F. Supp. 3d 1145 (D. Or. 2015).....................................................................21

*In re Golden Heaven Grp. Holdings Ltd. Sec. Litig.*,
    2025 WL 714171 (C.D. Cal. 2025)......................................................................12

*In re Netflix, Inc., Sec. Litig.*,
    964 F. Supp. 2d 1188 (N.D. Cal. 2013),
    *aff'd*, 647 F. App'x 813 (9th Cir. 2016).............................................................15

*In re Quality Sys., Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017)........................................................................10, 12

*In re Toyota Motor Corp. Sec. Litig.*,
    2012 WL 3764903 (C.D. Cal. 2012).....................................................................3, 4

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016).................................................................................13

*In re Wet Seal, Inc. Sec. Litig.*,
    518 F. Supp. 2d 1148 (C.D. Cal. 2007)................................................................14

*Johnson v. Aljian*,
    394 F. Supp. 2d 1184 (C.D. Cal. 2004)
    *aff'd*, 490 F.3d 778 (9th Cir. 2007)....................................................................23

*Kazerouni v. LVNV Funding LLC*,
    2014 WL 12968081 (C.D. Cal. 2014).....................................................................2

*Kennard v. Lamb Weston Holdings, Inc.*,
    2019 WL 4278940 (N.D. Cal. 2019)......................................................................3

*Kmiec v. Powerwave Techs., Inc.*,
    2014 WL 12567781 (C.D. Cal. 2014)...................................................................2, 3

*Kona Enters., Inc. v. Est. of Bishop*,
    229 F.3d 877 (9th Cir. 2000)................................................................................6

4901-1283-5635.v1

**Page**

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
 416 F.3d 940 (9th Cir. 2005).................................................................................10

*Lorenzo v. SEC*,
 587 U.S. 71 (2019) ................................................................................................20

*Lorenzo Vargas v. City of L.A.*,
 2018 WL 10231166 (C.D. Cal. 2018) .....................................................................6

*Macquarie Infrastructure Corp. v. Moab Partners, L. P.*,
 601 U.S. 257 (2024) ................................................................................................8

*Marble Voip Partners LLC v. Zoom Video Commc'ns, Inc.*,
 2024 WL 86859 (N.D. Cal. 2024)............................................................................8

*Matrixx Initiatives, Inc. v. Siracusano*,
 563 U.S. 27 (2011) ..................................................................................................5

*MTR Gaming Grp., Inc. v. Arneault*,
 2015 WL 136563 (W.D. Pa. 2015) ..........................................................................3

*Mulligan v. Impax Lab'ys, Inc.*,
 36 F. Supp. 3d 942 (N.D. Cal. 2014)......................................................................17

*Nintendo of Am., Inc. v. Storman*,
 2021 WL 4772529 (C.D. Cal. 2021) ........................................................................7

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v.
 Am. W. Holding Corp.*,
 320 F.3d 920 (9th Cir. 2003)..................................................................................24

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
 575 U.S. 175 (2015) .........................................................................................14, 17

*Operating Loc. 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*,
 595 F.3d 86 (2d Cir. 2010) .....................................................................................14

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
 774 F.3d 598 (9th Cir. 2014)..................................................................................16

- v -

**Page**

*Pommer v. Medtest Corp.*,
961 F.2d 620 (7th Cir. 1992) ................................................................................ 13

*Provenz v. Miller*,
102 F.3d 1478 (9th Cir. 1996) ........................................................................ 10, 11

*Rabkin v. Lion Biotechnologies, Inc.*,
2018 WL 905862 (N.D. Cal. 2018) ................................................................. 20, 21

*Ramirez v. Arlequin*,
491 F. Supp. 2d 202 (D.P.R. 2006) ......................................................................... 4

*Roy v. Cnty. of L.A.*,
2018 WL 3439168 (C.D. Cal. 2018) ........................................................................ 7

*Schueneman v. Arena Pharms., Inc.*,
840 F.3d 698 (9th Cir. 2016) ............................................................................ 9, 15

*SEC v. Feng*,
935 F.3d 721 (9th Cir. 2019) ................................................................................ 21

*SEC v. Todd*,
642 F.3d 1207 (9th Cir. 2011) .............................................................................. 16

*Shankar v. Zymergen Inc.*,
2022 WL 17259057 (N.D. Cal. 2022) .................................................................... 18

*Shenwick v. Twitter, Inc.*,
282 F. Supp. 3d 1115 (N.D. Cal. 2017) ................................................................. 15

*Siderpali, S.P.A. v. Judal Indus., Inc.*,
833 F. Supp. 1023 (S.D.N.Y. 1993) ......................................................................... 4

*Simpson v. AOL Time Warner Inc.*,
452 F.3d 1040 (9th Cir. 2006), *vacated on other grounds
sub nom. Simpson v. Homestore.com, Inc.*,
519 F.3d 1041 (9th Cir. 2008) ............................................................................... 18

*Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*,
243 F. Supp. 3d 1109 (E.D. Cal. 2017) .................................................................. 17

- vi -

**Page**

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ............................................................................... 21

*Turner v. Cook*,
362 F.3d 1219 (9th Cir. 2004) ............................................................................... 21

*Union Pac. R.R. Co. v. Coast Packing Co.*,
236 F. Supp. 2d 1130 (C.D. Cal. 2002) ................................................................... 6

*United States v. Alexander*,
106 F.3d 874 (9th Cir. 1997) ................................................................................... 8

*United States v. Cote*,
51 F.3d 178 (9th Cir. 1995) ..................................................................................... 8

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
29 F.4th 611 (9th Cir. 2022) .................................................................................... 5

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) ..................................................................... 5, 13, 18

*Woodall v. Walt Disney Co.*,
2022 WL 19078092 (C.D. Cal. 2022) ...................................................................... 7

*Woulfe v. Universal City Studios LLC*,
2023 WL 3321752 (C.D. Cal. 2023) ........................................................................ 6

*Zaghian v. Farrell*,
675 F. App'x 718 (9th Cir. 2017) .......................................................................... 11

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§78j(b) ............................................................................................................. *passim*
§78t(a) ................................................................................................................ 8, 25
§78t-1 ................................................................................................................. 8, 25

Federal Rules of Civil Procedure
Rule 12(b)(6) .............................................................................................. 2, 3, 4, 8
Rule 12(c) ......................................................................................................... *passim*

- vii -

**Page**

Local Rules
   L.R. 7-18 .................................................................................................................... 7

17 C.F.R.
   §240.10b-5 ............................................................................................................ 5, 6
   §240.10b-5(a) ......................................................................................... 8, 13, 18, 19
   §240.10b-5(b) ............................................................................................... 8, 9, 13
   §240.10b-5(c) ......................................................................................... 8, 13, 18, 19

4901-1283-5635.v1

## I.     INTRODUCTION

Defendants[1] come before the Court with a brazen attempt at a do-over.  They already threw everything they had at Plaintiffs' Corrected Consolidated Complaint for Violations of the Federal Securities Laws (ECF 68) ("Complaint"), including a veritable kitchen sink of arguments, nearly 70 pages of briefing, almost 3,000 pages of exhibits, and oral argument.  Unhappy with the Court's February 19, 2025 Order (ECF 111) (the "Order"), Defendants filed a Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings (ECF 124) (the "Motion" or "MJOP"), which improperly seeks to relitigate the same arguments this Court recently rejected.

Let's be clear: this is not a proper Rule 12(c) motion.  It is a thinly veiled, untimely motion for reconsideration and a blatant abuse of procedure.  This Court has already invested significant time and resources evaluating Defendants' arguments.  It received extensive briefing, held a hearing, probed Defendants' now-recycled arguments, and then issued its Order – dissecting the alleged misrepresentations, statement-by-statement, line-by-line.  Defendants now shamelessly re-urge the same, futile arguments, hoping for a different result.  Their strategy is simple: if at first you don't succeed, try again, even if it means ignoring deadlines, black-letter law, and this Court's prior rulings.

The local rules are explicit: Defendants may not repeat arguments in a motion for reconsideration.  Federal law is equally clear: Rule 12(c) is not a backdoor for relitigating a motion to dismiss.  Motions for reconsideration have strict deadlines and even stricter standards – new evidence, clear error, or changed law.  Defendants satisfy none.

---

[1]     "Defendants" are The Walt Disney Company ("Disney" or the "Company"), Robert Iger, Robert Chapek, Christine M. McCarthy, and Kareem Daniel.  "Plaintiffs" are Lead Plaintiffs Central Pennsylvania Teamsters Pension Fund, Central Pennsylvania Teamsters Pension Fund – Retirement Income Plan 1987, and Central Pennsylvania Teamsters Health and Welfare Fund, and plaintiffs Local 272 Labor-Management Pension Fund and John Patrick Talbot.

- 1 -

4901-1283-5635.v1

Adding insult to injury, Defendants suggest the Court somehow overlooked their arguments. This is false and flies in the face of established law, which does not require courts to address every single argument. Defendants' Motion is an affront to procedural rules, an abuse of judicial resources, and a meritless attempt to relitigate already rejected arguments.

Even if the Court entertains Defendants' improper arguments, they are as weak now as they were before. Plaintiffs have sufficiently alleged actionable misstatements, scheme liability, Iger's and McCarthy's insider trading, and control person liability. Defendants' repeated arguments that, *inter alia*, their fraudulent acts were "simply ordinary business strategy decisions" and their half-truths were "accurate data" fall flat once again.

## II.   LEGAL STANDARD

Judgment on the pleadings is inappropriate unless "accepting as true all material allegations contained in the nonmoving party's pleadings, the moving party is entitled to judgment as a matter of law." *Kazerouni v. LVNV Funding LLC*, 2014 WL 12968081, at \*1 (C.D. Cal. 2014). "A motion for judgment on the pleadings is substantially identical to a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) . . . ." *Kmiec v. Powerwave Techs., Inc.*, 2014 WL 12567781, at \*2 & n.2 (C.D. Cal. 2014). A motion for judgment on the pleadings is not an opportunity to re-litigate issues raised and decided in a motion to dismiss. *See id.* (denying defendants' Rule 12(c) motion where the defendants repeated the same arguments in their Rule 12(b)(6) motion).

## III.   ARGUMENT

### A.   Defendants' Motion Is Nothing More than an Untimely and Improper Motion for Reconsideration

#### 1.   Defendants' Motion Abuses Rule 12(c)

After considering Plaintiffs' 185-page Complaint, over 100 pages of briefing, nearly 3,000 pages of exhibits, and oral argument, the Court issued the Order granting

- 2 -

4901-1283-5635.v1

in part and denying in part Defendants' Rule 12(b)(6) motion to dismiss (ECF 69) ("MTD").  Displeased with the Order, Defendants now file this Rule 12(c) motion that regurgitates the same arguments the Court rejected.  Despite admitting that the legal standard for Rule 12(c) motions and Rule 12(b)(6) motions are "functionally identical," Defendants assert no new facts or change in controlling law.

But Rule 12 "do[es] not provide an unfettered grant to seek reconsideration of arguments already raised and lost in a previous Rule 12(b)(6) motion." *In re Toyota Motor Corp. Sec. Litig.*, 2012 WL 3764903, at *1 (C.D. Cal. 2012).  Indeed, courts routinely deny Rule 12(c) motions that simply rehash arguments already rejected, often treating them as improper motions for reconsideration.  *See, e.g.*, *Powerwave*, 2014 WL 12567781, at *2 & n.2 (denying Rule 12(c) motion and treating it as motion for reconsideration where the defendants repeated the same arguments in their Rule 12(b)(6) motion); *Barabino v. Citizens Auto. Fin., Inc.*, 2010 WL 3911395, at *4 (E.D. Cal. 2010) (denying motion for judgment on the pleadings where it recycled "many of the same arguments" from motion to dismiss); *MTR Gaming Grp., Inc. v. Arneault*, 2015 WL 136563, at *7, *9 (W.D. Pa. 2015) (denying Rule 12(c) motion because it was based on "virtually all of the same arguments" and "essentially the same record" as previous Rule 12(b)(6) motion, making it "functionally akin to a motion for reconsideration"); *Aviles v. S&P Glob., Inc.*, 2020 WL 1689405, at *3 (S.D.N.Y. 2020) (denying defendants' Rule 12(c) motion where "Defendants now seek, in essence, reconsideration" of their "already-denied Rule 12(b)(6) motion to dismiss" and declining their "request for a second bite at the apple"); *Kennard v. Lamb Weston Holdings, Inc.*, 2019 WL 4278940, at *2 (N.D. Cal. 2019) (denying Rule 12(c) motion as "essentially a motion for reconsideration of the Court's order granting in part and denying in part defendant's motion to dismiss the SAC").

Under analogous circumstances in a securities fraud class action, Judge Fischer denied defendants' Rule 12(c) motion without oral argument, holding:

- 3 -

4901-1283-5635.v1

Defendants' motion for judgment on the pleadings addresses matters previously raised in their motion to dismiss, and decided – either explicitly or by necessary implication – in the Court's resolution of that motion. The Court views this motion as an untimely request for reconsideration rather than an independent motion for judgment on the pleadings that raises new issues. . . . Judicial economy would be undermined by allowing parties an unlimited right to revisit issues raised in Rule 12(b)(6) motions via Rule 12(c) motions.

*Toyota*, 2012 WL 3764903, at \*1 & n.1.

Courts have even sanctioned litigants who abuse Rule 12(c) by simply repeating arguments that have already been rejected. *See Ramirez v. Arlequin*, 491 F. Supp. 2d 202, 204 (D.P.R. 2006) ("Filing a motion for judgment on the pleadings, based [o]n arguments already rejected by a court of higher level is clearly vexatious conduct that disregards the orderly process of justice and must be sanctioned."); *Siderpali, S.P.A. v. Judal Indus., Inc.*, 833 F. Supp. 1023, 1027-29 (S.D.N.Y. 1993) (imposing sanctions where the defendants filed a Rule 12(c) motion repeating arguments previously rejected by the court).

**2.   Defendants' Motion Fails the Stringent Standards for Reconsideration**

Defendants clearly filed a 12(c) motion rather than a motion for reconsideration because their Motion would fail this District's stringent requirements for reconsideration: "'Motions for reconsideration are disfavored, and 'should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.'" *Cox v. Ayers*, 2007 WL 9747399, at \*3 (C.D. Cal.

- 4 -

4901-1283-5635.v1

2007) (Marshall, J.) (original emphasis omitted), *aff'd*, 588 F.3d 1038 (9th Cir. 2009).[2]

Defendants do not – and cannot – meet the standard.  Instead, they retread the same arguments from their MTD.[3]  In many instances, Defendants barely change their language and supporting authority:

| Argument in 12(c) Motion | Argument in 12(b)(6) Motion |
|---|---|
| "But at bottom, the Complaint faults Defendants for failing to predict the future."  MJOP at 1. | "Plaintiffs fault Defendants for not predicting the future . . . ."  ECF 85 ("MTD Reply") at 8 n.5. |
| "'[E]ven if a statement would otherwise be actionable under [Section 10(b)], the PSLRA carves out a "safe harbor for forward-looking statements" by adding § 21E to the Securities Exchange Act . . . .  This safe harbor "is designed to protect companies and their officials" when they merely fall short of their "optimistic projections.'"  *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1189 (9th Cir. 2021) . . . ."  MJOP at 5. | "Even if a statement would otherwise be actionable, the PSLRA provides a safe harbor for forward-looking statements.  15 U.S. Code § 78u-5.  It 'is designed to protect companies and their officials when they merely fall short of their optimistic projections'.  *Gregory Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1189 (9th Cir. 2021)."  MTD at 22. |
| "Disney directed investors to SEC filings that 'identif[ied] important factors that could cause actual results to differ materially from those in the forward-looking statement[s].'"  MJOP at 10. | "Disney also directed investors to its SEC filings containing detailed cautionary language that 'identif[ied] important factors that could cause actual results to differ materially from those in the forward-looking statement[s]'."  MTD at 24. |
| "But 'Section 10(b) and Rule 10b-5 "do not create an affirmative duty to disclose any and all material information.'"  *Twitter*, 29 F.4th at 620 (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011))."  MJOP at 13. | "'Section 10(b) and Rule 10b-5 "do not create an affirmative duty to disclose any and all material information'"".  *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 620 (9th Cir. 2022) (quoting *Matrixx*, 563 U.S. at 44)."  MTD at 18-19. |
| "Courts routinely reject scheme claims that rely on non-actionable misstatements.  *See, e.g., In re AGS, Inc., Sec. Litig.*, 2024 WL 581124, | "Courts routinely dismiss scheme claims that – as here – merely challenge statements that are not false or misleading.  *See In re AGS, Inc., Sec. Litig.*, 2024 WL 581124, at |

---

[2] Unless otherwise noted, citations are omitted, emphasis is added, and all "¶" or "¶¶" references are to the Complaint.

[3] Defendants also repeat arguments they made at the MTD hearing – including, *inter alia*, their arguments pertaining to accurate statements (ECF 106 ("Hrg. Tr.") at 19-22), scheme liability (*id.* at 22-25), and Iger (*id.* at 18).  And they even re-challenge a statement this Court already partially dismissed.  *See* MJOP at 16 (challenging ¶272).

4901-1283-5635.v1

| at *5 (D. Nev. Feb. 12, 2024) (finding scheme theory 'irrelevant' and granting Rule 12(c) motion dismissing claim where, as here, plaintiff 'pleaded only a single cause of action under rule 10b-5' and the alleged scheme was 'based on the same alleged set of facts as its misrepresentation claim') . . . ." MJOP at 18. | *4 (D. Nev. Feb. 12, 2024) (dismissing scheme claim where not 'independent of [plaintiffs' unsuccessful] misrepresentation claim') . . . ." MTD Reply at 3. |

*See also* Appendix A, attached hereto (listing additional repeated arguments).[4]

This is precisely the gamesmanship and waste of judicial resources the local rules prohibit. Local Civil Rule 7-18 clearly states: "***No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion***." Indeed, courts in this District uniformly deny motions for reconsideration that merely rehash previously rejected arguments. *See, e.g.*, *Union Pac. R.R. Co. v. Coast Packing Co.*, 236 F. Supp. 2d 1130, 1137-38 (C.D. Cal. 2002) ("'[A] mere attempt by [the moving party] to reargue its position by directing this Court to additional case law and . . . argument[s] which [it] clearly could have made earlier, but did not . . . is not the purpose of motions for reconsideration . . . .'"); *Woulfe v. Universal City Studios LLC*, 2023 WL 3321752, at *1 (C.D. Cal. 2023) ("A court should not experience déjà vu when reviewing a motion for reconsideration."); *Capaci v. Sports Rsch. Corp.*, 2023 WL 11916241, at *2 (C.D. Cal. 2023) ("defendant violated 'Local Rule 7-18's clear admonishment that no motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion'"); *Lorenzo Vargas v. City of L.A.*, 2018 WL 10231166, at *3 (C.D. Cal. 2018) ("motion[s] for reconsideration may not, in any manner, repeat any oral or written argument made in support of or in opposition to the original motion").

---

[4] In addition, Defendants are prohibited from offering new arguments that "could have been made" earlier. *Allergan, Inc. v. Athena Cosms., Inc.*, 2012 WL 12903072, at *2 (C.D. Cal. 2012) (denying Rule 12(c) motion); *see Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (denying motion for reconsideration).

4901-1283-5635.v1

Rather than offer new arguments, Defendants baselessly accuse the Court of ignoring issues clearly addressed at the MTD stage. MJOP at 1, 4. But the law is clear that "the Court need not explicitly discuss each and every argument in any order." *Roy v. Cnty. of L.A.*, 2018 WL 3439168, at *4 (C.D. Cal. 2018) (citing, *inter alia*, *Clemons v. Miss.*, 494 U.S. 738, 747 n.3 (1990)). To the contrary, "the fact that the Court did not explicitly mention [the issue] in its analysis does not mean that the Court did not consider all the arguments." *Evanston Ins. Co. v. Venture Point, LLC*, 2021 WL 5500486, at *1 (D. Nev. 2021); *see Roy*, 2018 WL 3439168, at *4 ("The Court's refusal to discuss an argument constitutes an implicit rejection of [that] argument[].").

Finally, Defendants failed to meet the 14-day deadline. L.R. 7-18 ("Absent good cause shown, any motion for reconsideration must be filed no later than 14 days after entry of the Order . . . ."). The Court issued its Order on February 19, 2025, but Defendants waited ***37 days*** (until March 28, 2025) to file the instant Motion. ECF 111; ECF 124. On this basis alone, their Motion should be denied. *See Woodall v. Walt Disney Co.*, 2022 WL 19078092, at *2 (C.D. Cal. 2022) (Marshall, J.) (denying Disney's "'de facto motion for reconsideration'" as "'untimely and without merit under Local Rule 7-18'"); *Nintendo of Am., Inc. v. Storman*, 2021 WL 4772529, at *4 (C.D. Cal. 2021) (Marshall, J.) (motion for reconsideration denied as untimely when filed 28 days after order).

While Defendants may be displeased with the Court's Order, "[m]ere disagreement with a previous order is an insufficient basis for reconsideration." *Crossfirst Bank v. Vieste SPE LLC*, 2021 WL 2517855, at *1 (D. Ariz. 2021). Defendants offer no valid grounds for their extraordinary request that the Court reverse itself weeks after issuing its Order. Their Motion is not only meritless, it is an affront to the Court's time and resources and it should be denied.

- 7 -

4901-1283-5635.v1

### 3. The Law of the Case Doctrine Precludes Defendants' Motion

The Court should not revisit its previous decision under the law of the case doctrine. "A Rule 12(c) motion for judgment on the pleadings that raises issues already decided on a prior Rule 12(b)(6) motion to dismiss is subject to the 'law of the case' doctrine." *See Marble Voip Partners LLC v. Zoom Video Commc'ns, Inc.*, 2024 WL 86859, at *2 (N.D. Cal. 2024) (denying Rule 12(c) motion where the defendant raised the same issue previously denied on a motion to dismiss). Pursuant to the law of the case doctrine, "'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'" *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). This rule promotes the finality and efficiency of the judicial process by protecting against the relitigation of settled issues. *See United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995). The doctrine "'encompasses a court's explicit decisions as well as those issues decided by necessary implications.'" *Eichman v. Fotomat Corp.*, 880 F.2d 149, 157 (9th Cir. 1989). Under the law of case doctrine, Defendants' Rule 12(c) motion is unavailing because the Court already ruled in favor of Plaintiffs on the very issues Defendants attempt to re-open.

### B. The Court Correctly Rejected Defendants' Recycled Arguments

Even if the Court considers Defendants' repeated arguments, it will come to the same conclusion – Plaintiffs adequately alleged actionable misstatements under Rule 10b-5(b), scheme liability under Rule 10b-5(a) and (c), insider trading by Iger under §10(b), §20A liability against McCarthy, and control person liability under §20(a).

### 1. Defendants' Falsity Arguments Fail Again

The Supreme Court has made clear that half-truths – "'representations that state the truth only so far as it goes, while omitting critical qualifying information'" – can be actionable misrepresentations. *Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257, 263-64 (2024) ("Put differently, [§10b] requires disclosure of

- 8 -

information necessary to ensure that statements already made are clear and complete . . . ."); *see also Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705-06 (9th Cir. 2016) ("'[O]nce defendants chose to tout' positive information to the market, 'they were bound to do so in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information.") (alterations in original omitted).

After full briefing and a hearing, this Court upheld the majority of the alleged misstatements, finding Defendants misleadingly touted, *inter alia*, Disney+ subscriber growth, profitability, and improved direct-to-consumer ("DTC") operating losses, while concealing adverse information that cut against their statements. *See* Order at 1-2. The Court considered every alleged statement, dismissing down to **the page and line numbers** those it considered puffery or immaterial. *See id.* The Court also carefully specified the **parts** of each statement it upheld. *See id.* It otherwise found "Plaintiffs have sufficiently pled other facts showing that Defendants Chapek, McCarthy, and Disney made material misstatements or omissions under Rule 10b-5(b)." *Id.* at 2. Nothing has changed, and Defendants' arguments fail again.

**a.     The Court Correctly Found the Safe Harbor Does Not Apply**

Defendants re-argue that certain misstatements fall within the Private Securities Litigation Reform Act of 1995's ("PSLRA") safe harbor for forward-looking statements. *See* MJOP at 5-11 (citing ¶¶273-274, 277, 279, 282-286, 297-300, 306, 316).[5] But these are the same, futile arguments Defendants made in their MTD. *Compare* MJOP at 5-11 (arguing statements about Disney+ content, international growth, and profitability "are forward-looking" and "accompanied by meaningful

---

[5] As they did in their MTD, Defendants challenge many statements that were not alleged as false or misleading under Rule 10b-5(b). *See* MJOP at 8 (citing ¶¶150, 158-159, 165, 172, 194-195, 201, 205, 207-210); *id.* at 12 (citing ¶150); *id.* at 16 (citing ¶¶150, 158-159, 194, 201, 206-210, 227). As discussed in the MTD opposition (ECF 80) ("MTD Opp."), Defendants are "'essentially straw-manning an argument that [Plaintiff] does not make. This alone, is sufficient to defeat [Defendants'] argument . . . .'" MTD Opp. at 23 (quoting *In re Allergan PLC Sec. Litig.*, 2021 WL 4077942, at *13 (S.D.N.Y. 2021)).

- 9 -

cautionary statements"), *with* MTD at 22-24 (arguing statements about Disney+ content, international growth, and profitability "Are Forward-Looking Statements Accompanied by Meaningful Cautionary Language"). This Court correctly rejected these arguments. *See* Order at 1-2.

The safe harbor applies only to statements "identified as . . . forward-looking" and "accompanied by meaningful cautionary statements." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1141 (9th Cir. 2017). It does not apply if the statement "was made 'with actual knowledge . . . that the statement was false or misleading.'" *Id.* Nor does it apply when defendants "make a materially false or misleading statement about current or past facts, and combine that statement with a forward-looking statement." *Id.* at 1142. In the Ninth Circuit, the standard for cautionary language is "stringent." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 947 (9th Cir. 2005). It must be "'precise'" and "'directly address'" the misrepresentation such that "'the risk of real deception drops to nil.'" *Provenz v. Miller*, 102 F.3d 1478, 1493 (9th Cir. 1996); *In re BioMarin Pharm. Inc. Sec. Litig.*, 2022 WL 164299, at *7 (N.D. Cal. 2022). Cautionary "language is not 'meaningful' [when] it amounts to only a boilerplate listing of generic risks and does not mention the specific risk" at issue. *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 780 (9th Cir. 2023).

Here – as before – none of the challenged statements falls within the safe harbor because none was accompanied by meaningful, cautionary language. First, Defendants emphasize risks listed in Disney's U.S. Securities and Exchange Commission ("SEC") filings, but each challenged statement was made during Disney's **earnings calls**. And for the earnings calls, Defendants cite boilerplate language and references to Disney's SEC filings, which is insufficient. *Compare* MJOP at 10, *and* Defs' Ex. 18 (ECF 124-20) at 1937 ("statements are subject to a number of risks and uncertainties, and actual results may differ materially from the results expressed or implied in light with a variety of factors, including factors

- 10 -

4901-1283-5635.v1

contained in our [SEC filings]"), *with In re Energy Recovery Inc. Sec. Litig.*, 2016 WL 324150, at *17-*18 & n.5 (N.D. Cal. 2016) (rejecting warning that statements were "subject to certain risks, uncertainties, and other factors that could cause actual results to differ materially from those discussed . . . [a] detailed discussion of these factors and uncertainties is contained in [our SEC filings]").

The "warnings" in Disney's SEC filings are also deficient. Defendants misleadingly lump into a single sentence half a dozen disclosures they claim were made in "*every* annual and quarterly SEC filing in the class period" and then cite 15 separate SEC filings in one footnote. MJOP at 8-9 & 9 n.1. But the disclosures were *not* made in "every" annual and quarterly SEC filing. For example, Defendants never warned that Disney+ "would require billions of dollars in operating losses." *Id.* at 9. Further, the "disclosure" that Disney "anticipate[d] an increase in programming and production investments to create exclusive content for Disney+" is included in only *three* of the *fifteen* exhibits Defendants cite. Most of the other exhibits include no actual warnings and only direct investors to disclosures in *other* SEC filings. Defendants have failed to show that the warnings "were tailored to the forward-looking statements." *See Zaghian v. Farrell*, 675 F. App'x 718, 719-20 (9th Cir. 2017).

Nor do any of the purportedly cautionary statements "'directly address'" the specific risks. *Provenz*, 102 F.3d at 1493; *see, e.g.*, MJOP at 9:12-22 (discussing vague risks related to "'consumer acceptance'"); *id.* at 9:6-7 (stating *DTC* might not be *as* profitable as "'*existing . . . models*'"; not discussing the many known risks to the *Disney*+ profitability target). Defendants' warnings that risks "may" result were also misleading because those risks had already come to fruition. *Compare id.* at 9:7-9 ("'[c]hanges in [Disney's] business strategy or restructuring of [its] businesses *may* increase [its] costs or otherwise affect the profitability of its businesses'"), *with* ¶307 (Chapek and Daniel used the Disney Media and Entertainment Distribution ("DMED") reorganization to "inflate subscriptions at the expense of profitability").

- 11 -

4901-1283-5635.v1

Finally, as discussed below, most of the challenged statements were also mixed with non-forward-looking statements, and in the Ninth Circuit, "virtually no cautionary language" is sufficient to insulate these mixed statements. *See Quality Sys.*, 865 F.3d at 1148.[6]

The challenged statements also fall outside the safe harbor because they are either not forward-looking at all or are mixed with non-forward-looking statements. *See, e.g.*, ¶274 ("At Disney+, we ***crossed*** the 150 million subscriber milestone and ended the quarter with more than 152 million global paid subscribers . . . ."); ¶300 ("We ***currently*** have over 500 local original titles in various stages of development and production. . . . We believe these premium local originals . . . will attract new subscribers . . . ."); ¶284 ("[W]e ***have*** a lot of information, a lot of data. And we ***have*** a pretty good idea of what the marginal impact of a particular title might be to our service. . . . And ***that is actually the reason*** why we're pretty confident that the increase in content flow . . . will actually lead to the types of results we're anticipating.").[7]

Courts have repeatedly refused to apply the safe harbor to similar statements. *See, e.g.*, *In re CV Therapeutics, Inc.*, 2004 WL 1753251, at *10 (N.D. Cal. 2004) ("The fact that defendants used those inadequately disclosed historical facts to support unsound projections does not shield their alleged misrepresentations as forward-looking statements."); *In re Golden Heaven Grp. Holdings Ltd. Sec. Litig.*, 2025 WL 714171, at *6 (C.D. Cal. 2025) (upholding mixed statements such as "'[w]e believe that innovative amusement facilities will enable us to ***maintain*** the existing guest

---

[6] Defendants' citation to *Quality Sys.* is specious given that the Ninth Circuit found purportedly cautionary language was ***not*** sufficiently meaningful for ***mixed*** statements, like those here. 865 F.3d at 1146 ("The district court found that all of Defendants' forward-looking statements were accompanied by 'sufficiently meaningful' cautionary language . . . . We disagree."). Further, the tailored disclosures in *In re Cutera Sec. Litig.*, 610 F.3d 1103 (9th Cir. 2010), are distinct from the generalized disclosures here. *See id.* at 1107, 1112 (plaintiffs alleged defendant "did not adequately disclose the poor performance of the junior sales force" but risk disclosure discussed the "'ability to continue increasing sales performance worldwide'").

[7] In their Motion, Defendants misleadingly remove the portions of the statements that are non-forward-looking.

- 12 -

4901-1283-5635.v1

patronage'" and "'we *are* well positioned for even stronger business growth'") (emphasis in original); *In re BioVie Inc. Sec. Litig.*, 2025 WL 947667, at *14 (D. Nev. 2025) ("because the statements were largely integrated into discussions of *current* conditions . . . they were not purely forward-looking") (emphasis in original); *Energy Recovery*, 2016 WL 324150, at *17 ("Because [defendant's] statements . . . are in the past or present tense, the PSLRA's safe-harbor does not apply.").[8]

Remarkably, Defendants falsely assert that "Disney met its target for Disney+ streaming profitability." MJOP at 11. **Disney+** did ***not*** reach profitability by 2024. Instead, Disney's "***combined streaming businesses***" – which includes Hulu and ESPN+ – became profitable over a year after the class period ended. The exhibit on which Defendants rely fails to support their assertion. *See* Defs' Ex. 27 (ECF 124-29) at 2180 ("Direct-to-Consumer's better-than-expected Q3 performance, combined with our profitable results at ESPN+, resulted in positive profitability at our ***combined streaming businesses***"). To this day, there is no evidence that ***Disney+*** is profitable – much less profitable with 230-260 million subscribers, as Defendants promised. Defendants also ignore that Disney's ***combined streaming businesses*** reached profitability only ***after*** Disney completely upended Defendants' growth-at-any-cost scheme and drastically scaled back the version of Disney+ they pitched to investors. *See* ¶336.

Defendants' gross misrepresentation and after-the-fact justification for their fraud is irrelevant and should be rejected. *See In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 262 (2d Cir. 2016) ("'Fraud depends on the state of events when a statement is made, not on what happens later.'"); *Pommer v. Medtest Corp.*, 961 F.2d 620, 623

---

[8] Defendants again rely on *Wochos v. Tesla, Inc.*, 985 F.3d 1180 (9th Cir. 2021). But, as in the MTD, *Tesla* is irrelevant. Unlike in *Tesla*, Plaintiffs did not allege that either the subscriber and profitability targets here or the "on track" statements were false or misleading under Rule 10b-5(b); rather, Plaintiffs allege that Defendants made these statements to perpetuate their scheme in violation of Rule 10b-5(a) and (c), which *Tesla* does not address. Further, unlike *Tesla*'s "unadorned statement that a company is 'on track'" – the statements here include present or past facts supporting Disney's ability to reach the targets. *Id.* at 1192. The cautionary language in *Tesla* also included multiple risks tied to the production targets specifically. *Id.* at 1193 & n.3.

- 13 -

4901-1283-5635.v1

(7th Cir. 1992) ("The securities laws approach matters from an *ex ante* perspective . . . a statement materially false when made does not become acceptable because it happens to come true. Good fortune . . . does not make the falsehood any the less material."); *In re Apollo Grp., Inc. Sec. Litig.*, 395 F. Supp. 2d 906, 922 (D. Ariz. 2005) (rejecting defendants' argument "that their optimistic statements turned out to be true" where the "'Complaint assert[ed] that the defendants knew that the facts contravened their "optimistic" statements'").

### b. The Court Correctly Rejected Defendants' "Accurate Data" Argument

Defendants again attempt to trivialize certain misstatements as "accurate data," and fail to address the concealed, adverse information that made their statements misleading. MJOP at 11-12 (citing ¶¶268-275); *compare id.* at 11-14 ("the remaining alleged misstatements concern Disney's concededly accurate reporting of historical subscriber growth and data, and DTC operating losses"), *with* MTD at 18-19 ("Each and every quarter since its launch, Disney accurately disclosed Disney+'s paid subscriber numbers and ARPU, as well as the DTC segment's . . . operating losses."). The Court correctly rejected this argument. *See* Order at 1-2.[9]

The Supreme Court has made clear that "literal accuracy is not enough: An issuer must as well desist from misleading investors by saying one [true] thing and holding back another." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 192 (2015); *see also Operating Loc. 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 92 (2d Cir. 2010) ("The

---

[9] Defendants' cases do not stand for the broad proposition that "literally true" statements disclosing data can never be misleading. The statements in *In re Dropbox Sec. Litig.*, 2020 WL 6161502 (N.D. Cal. 2020), concerning the number of paid users were dismissed – not because they were literally true – but because the plaintiffs "fail[ed] to allege *any* facts" establishing the numbers were *misleading*. *Id.* at *7. Further, unlike here, the plaintiffs in *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148 (C.D. Cal. 2007), attempted to "plead a falsity in the form of a GAAP violation." *Id.* at 1162. Plaintiffs here also do not allege the statements were misleading because "'less favorable results might be predictable by the company in the future.'" *Id.* Instead, Plaintiffs allege that the omission of then-existing facts rendered misleading Defendants' statements lauding Disney+ subscriber numbers and growth.

- 14 -

veracity of a statement or omission is measured not by its literal truth, but by its ability to accurately inform rather than mislead prospective buyers.").

Defendants repeatedly touted paid Disney+ subscriber numbers while concealing adverse information that undermined their positive statements. ¶¶267-276. Defendants also misleadingly hyped improved DTC operating losses while concealing that the improvements were driven by accounting manipulations. ¶¶288-295. As discussed at the MTD stage, Defendants' statements were misleading because – even if "literally true" – they failed to disclose adverse information regarding the unsustainable machinations used to drive subscriber growth and mask DTC losses. *See* MTD Opp. at 16, 22; Hrg. Tr. at 5-6; *Schueneman*, 840 F.3d at 705-06 ("'[O]nce defendants chose to tout' positive information to the market, 'they were bound to do so in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive information.") (alterations in original omitted).[10]

Defendants try to fabricate a new development by claiming "Plaintiffs ***now concede*** that these numbers are accurate." MJOP at 12; *see also id.* at 14 ("As it bears repeating, Plaintiffs do not challenge – and ***now concede*** – the truthfulness of that reporting."). But Plaintiffs ***never*** argued that certain statements were not "literally true." *See, e.g.*, Hrg. Tr. at 5:10-25. Indeed, Defendants highlighted this fact several times at the MTD stage. *See* MTD at 19 ("Plaintiffs do not contest the accuracy of Defendants' disclosures concerning DTC's financial performance."); MTD Reply at 9 ("Plaintiffs concede that Disney's reported metrics were accurate."). Thus, there is

---

[10] *In re Netflix, Inc., Sec. Litig.*, 964 F. Supp. 2d 1188 (N.D. Cal. 2013), *aff'd*, 647 F. App'x 813 (9th Cir. 2016), is inapposite because Plaintiffs do not allege Disney was required to disclose "all manner of information"; instead, they argue that Disney misleadingly failed to disclose negative information that rendered their positive statements misleading. *Id.* at 1193. Further, contrary to Defendants' description, *Netflix* does not once mention "churn." *See* MJOP at 13; *see also Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1135, 1139 (N.D. Cal. 2017) (even when there is "no duty to disclose in the abstract," the "omission of . . . data is actionable if it was misleading").

- 15 -

4901-1283-5635.v1

nothing new.  As before, literal accuracy does not insulate Defendants' misleading statements.

Finally, Defendants assert that Plaintiffs must allege more than "'[d]issatisfaction'" with accounting decisions.  MJOP at 14 (quoting *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 533 (9th Cir. 2024)).  But Plaintiffs do allege more: Defendants' undisclosed accounting manipulations masked mounting Disney+ content costs and rendered their positive statements about DTC operating losses misleading. *See* ¶¶218-223; MTD Opp. at 7-8, 18.  Defendants' suggestion that Generally Accepted Accounting Principles ("GAAP") violations are required also misstates the law, as "technical compliance with GAAP does not preclude a finding that an accounting treatment was a material misrepresentation." *See SEC v. Todd*, 642 F.3d 1207, 1217 (9th Cir. 2011).[11]

### c. The Court Correctly Found the Misstatements Are Not Non-Actionable Opinions

Finally, Defendants re-argue that various statements are non-actionable opinion. MJOP at 14-17 (citing ¶¶268, 271-272, 275, 282-286, 296-297, 299-300, 306, 308-311, 316); *compare id.* ("These opinion statements are non-actionable as a matter of law."), *with* MTD at 2, 24-26 ("Many of Plaintiffs' challenged statements express opinions . . . .").  This Court correctly rejected these arguments. *See* Order at 1-2. Opinion statements are actionable when:

> (1) the speaker did not honestly hold the stated opinion when he or she said it, (2) the opinion contains "embedded statements of fact" that are untrue, *or* (3) there are "particular (and material) facts going to the basis

[11] Defendants' GAAP cases are inapposite, as Plaintiffs' allegations are not based on GAAP violations; instead, they are based on Defendants' statements touting improved DTC operating losses and attributing the improvement to factors such as lower marketing expenses, when in reality the improvement was driven by the accounting manipulations, which masked Disney+'s mounting content costs. *See* ¶¶288-295; *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 609 (9th Cir. 2014) (unlike here, the plaintiffs alleged overstated revenues in violation of GAAP); *City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 47 F. Supp. 3d 1205, 1221 (E.D. Wash. 2014) (unlike here, the plaintiffs alleged company overstated earnings and capital in violation of GAAP), *aff'd*, 691 F. App'x 393 (9th Cir. 2017).

- 16 -

4901-1283-5635.v1

> for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context."

*Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*, 243 F. Supp. 3d 1109, 1115 (E.D. Cal. 2017) (quoting *Omnicare*, 575 U.S. at 184-86, 194).

As before, Defendants fail to provide the required individualized analysis for any of the purported opinions. *See* MJOP at 15-16; *Mulligan v. Impax Lab'ys, Inc.*, 36 F. Supp. 3d 942, 966 (N.D. Cal. 2014) (concerning opinion statements, "the Court may not assess the statements listed in the FAC in a vacuum"). They also ignore that the purported "opinions" contain embedded statements of fact that are untrue and omit material facts relevant to the opinions' bases. For example, Defendants challenge statements about churn, including: "'We're really pleased with churn. . . . So the fact that ***our churn is low***, our engagement is so high . . . .'" MJOP at 16 (quoting ¶310); *see also* ¶¶309, 311. But they ignore that internal data actually showed churn was a "***constant problem***" and Chapek "got presentations of versions of this data on an ongoing basis." ¶¶333-334.

Defendants also challenge Chapek's November 8, 2022 statement that "'we still expect Disney+ to achieve profitability in fiscal 2024.'" *See* MJOP at 15-16 (citing ¶316). Again, Defendants ignore the "real facts were otherwise, but not provided." *Omnicare*, 575 U.S. at 176. For example, before the November 8, 2022 statement, Chapek was "repeatedly advised" about Disney's deteriorating financial condition and was told he needed to "deliver a sober message" during the call. ¶317(b).

Courts have repeatedly upheld similar "opinion" statements. *See, e.g.*, *Homyk v. ChemoCentryx, Inc.*, 2023 WL 3579440, at *15 (N.D. Cal. 2023) (upholding opinion statements where "omitted facts 'call[ed] into question [defendant's] basis for offering the opinion'"); *Bos. Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at *8 (N.D. Cal. 2020) (upholding statements "defendants believed Uber was . . . performing well financially – even though defendants had no factual basis for offering

- 17 -

4901-1283-5635.v1

these opinions"); *Shankar v. Zymergen Inc.*, 2022 WL 17259057, at \*2 (N.D. Cal. 2022) (upholding statement that "'we expect to begin generating revenue in the second half of 2021'").[12]

### 2.    Defendants' Scheme Arguments Fail Again

The Court correctly upheld Plaintiffs' scheme allegations and rejected the meritless arguments Defendants improperly repeat here.

### a.    The Court Correctly Upheld Plaintiffs' Scheme Claims

Plaintiffs' scheme allegations span over 60 pages and describe in detail how defendants Chapek, McCarthy, and Daniel engaged in deceptive acts in furtherance of their scheme, which created the false "illusion of robust, sustainable, and profitable subscriber growth" at Disney+.  ¶¶147-253.  The scheme achieved its end, inflating Disney's stock price, ensuring renewal of Chapek's lucrative CEO contract, and enabling McCarthy to sell over $17 million of her Disney stock.  ¶¶229-244.

The MTD briefing focused extensively on whether the Complaint sufficiently pled scheme liability under Rule 10b-5(a) and (c).  The standard is undisputed: under Ninth Circuit law, Plaintiffs need only allege facts showing that the scheme defendants "engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme." *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2006), *vacated on other grounds sub nom. Simpson v. Homestore.com, Inc.*, 519 F.3d 1041 (9th Cir. 2008).  At the MTD hearing, the Court expressly considered the same argument Defendants repeat here, asking Plaintiffs' counsel to identify "[w]hich allegations under the 'scheme liability' sections of the Complaint show that the principal purpose and effect of defendants'

---

[12] *Tesla* is distinguishable because it discusses a "'pure statement of opinion'" while, as discussed above, the statements here either contain embedded statements of fact or misleadingly omit facts related to the opinions' bases.  985 F.3d at 1196.  *Tesla* also involved a statement that a company was making "'great progress'" on battery production, without any further support. *Id.* at 1194, 1196. Here, on the other hand, Defendants offered concrete reasons reinforcing their "opinions." *See, e.g.*, ¶282 (assuring content would fuel growth); ¶284 (same); ¶299 (claiming international growth would drive subscribers).

- 18 -

actions was to create a false appearance of fact in furtherance of the scheme?" Hrg. Tr. at 12:8-11. Plaintiffs' counsel directed the Court to the Complaint's allegations describing "the defendant who was involved in the deceptive conduct, what that conduct was, and why [Plaintiffs] alleged it was deceptive." *Id.* at 12:18-20; *see also* ¶¶147-228. In the Order, the Court upheld Plaintiffs' scheme claims, holding: "Plaintiffs have sufficiently pled Defendants Chapek, Daniel, and McCarthy engaged in deceptive conduct beyond simply making misstatements, as required for scheme liability under Rule 10b-5(a) and (c)." Order at 1. The Court's ruling is correct and should not be revisited.

> **b.**    **The Court Correctly Found "Deceptive Conduct Beyond Simply Making Misstatements"**

Just as in the MTD, Defendants wrongly assert that Plaintiffs' scheme claims fail because they "rely on non-actionable misstatements." *Compare* MJOP at 18, *with* MTD Reply at 3 (arguing that "[c]ourts routinely dismiss scheme claims that – as here – merely challenge statements that are not false or misleading"). Defendants' argument fails again.

***First***, Defendants criticize the Court for failing to "address whether Plaintiffs' scheme theory would state a claim absent any actionable false or misleading statements." MJOP at 17. It is unsurprising that the Court did not engage in this unnecessary, hypothetical exercise given that the Court upheld the majority of Plaintiffs' alleged misstatements. Order at 1-2.

***Second***, Defendants rely on entirely inapposite cases, where scheme claims were dismissed because they hinged ***exclusively*** upon dismissed misstatements, and the court found ***no deceptive conduct*** in furtherance of the scheme. MJOP at 18 (citing *In re AGS, Inc. Sec. Litig.*, 2024 WL 581124, at *5 (D. Nev. 2024) (dismissing scheme claim that relied solely on a dismissed misstatement, and the court found no other deceptive conduct); *In re Eastman Kodak Co. Sec. Litig.*, 632 F. Supp. 3d 169,

- 19 -

4901-1283-5635.v1

190 (W.D.N.Y. 2022) (dismissing scheme claim where every misstatement alleged was dismissed and defendants engaged in no other deceptive conduct)).

*Third*, unlike in the cases Defendants cite, this Court never found that Defendants' announcement of unattainable Disney+ subscriber and profitability targets at Investor Day 2020 was a non-actionable misstatement. And rightly so, given the Complaint's allegations that the subscriber and profitability targets announced on Investor Day 2020 – which quadrupled the subscriber targets set just 12 months earlier – were viewed contemporaneously by Iger as going "too far" (¶154), and by an executive in Disney streaming as "batshit crazy." ¶153.

*Fourth*, unlike in the cases Defendants cite, where the scheme claims relied entirely upon misstatements that the court dismissed, and where the court found no other deceptive conduct, the Court here expressly found that Defendants *did* "engage[] in deceptive conduct *beyond* simply making misstatements." Order at 1.

*Fifth*, Defendants' recycled accusation that "Plaintiffs are attempting to recast non-actionable statements into actionable ones . . . by dubbing them a 'scheme'" is demonstrably false. *Compare* MJOP at 20, *with* MTD at 11 (accusing Plaintiffs of "try[ing] to repackage their run-of-the-mill misstatement theory as a 'scheme'"). The Complaint pleads distinct scheme and misstatement claims. *Compare* ¶¶119-253, *with* ¶¶266-317. That some of the "alleged acts are closely connected to the alleged misrepresentations and omissions . . . does not mean that Plaintiffs' scheme liability claim is a mere recast of their misrepresentation claim." *Rabkin v. Lion Biotechnologies, Inc.*, 2018 WL 905862, at *17 (N.D. Cal. 2018); *see Lorenzo v. SEC*, 587 U.S. 71, 76-78 (2019).

#### c. The Court Correctly Rejected Defendants' Argument that Their Deceptive Conduct Was "Simply Ordinary Business Strategy Decisions"

Defendants again argue that their deceptive acts were "simply ordinary business strategy decisions." *Compare* MJOP at 20, *with* MTD Reply at 1 (arguing that

- 20 -

4901-1283-5635.v1

"business strategy . . . cannot defraud investors"). The Court should again reject Defendants' factually unsupported, alternate narrative.

The Complaint plausibly alleges, based on first-hand accounts from Disney insiders, that Defendants engaged in deceptive conduct in furtherance of their fraudulent scheme. ¶¶119-253. Defendants' deceptive acts and fraudulent scheme cannot be glossed over as "simply ordinary business strategy decisions." MJOP at 20; MTD Opp. at 13-14 (citing *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 193 (S.D.N.Y. 2010) (refusing to dismiss §10b claims because the "conduct" and "practices" alleged were "not merely 'bad business decisions' but [were] alleged to establish the falsity of Defendants' assurances to the market")). Defendants' alternate narrative that their conduct was not deceptive is not credible, much less, "so convincing" that it renders Plaintiffs' competing explanation "*im*plausible," as is required for dismissal. *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) (emphasis in original). The Court correctly ruled that Defendants "engaged in deceptive conduct beyond simply making misstatements." Order at 1.[13]

Likewise, Defendants' unsupported assertion that their so-called "ordinary business strategy decisions" each had "'a principal legitimate business purpose'" is meritless. MJOP at 20. Their contention is belied by the Complaint's factual allegations, which must be accepted as true and construed in the light most favorable to Plaintiffs on this Motion. *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004). For example, there was no "legitimate business purpose" for Chapek's and Daniel's decision to debut shows that had been made for Disney+ on other platforms (*e.g.*, Disney's cable TV networks) for a ***single day*** in order to artificially shift marketing and content costs away from Disney+ to Disney's cable TV division. MJOP at 20;

---

[13] Defendants' vague and unexplained claim that their conduct is somehow distinguishable from the defendants' "inherently deceptive conduct" (MJOP at 20) in *SEC v. Feng*, 935 F.3d 721, 737 (9th Cir. 2019), *Rabkin*, 2018 WL 905862, at \*17, and *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1185-86 (D. Or. 2015), cannot be squared with the Court's ruling – on the facts of ***this*** case – that Defendants did, in fact, "engage[] in deceptive conduct beyond simply making misstatements." Order at 1.

- 21 -

¶223. Rather, as the Complaint alleges, Chapek and Daniel engaged in such a blatant manipulation of Disney's internal cost accounting policies that even McCarthy, Disney's CFO, expressed "concern" about their conduct. ¶223. Nor was there a "legitimate business purpose" for diverting massive amounts of new and exclusive content to Disney+ solely to boost subscriber growth, even when those distribution changes were detrimental to the Company's overall profits. MJOP at 19; ¶164. Indeed, the Complaint alleges that even Pixar's Chief Creative Officer saw this deception for what it was: a "short-term growth tactic" that had negative and "long lasting effects on Disney's once lucrative movie business." ¶166.

In short, the Court correctly accepted as true Plaintiffs' detailed allegations of Defendants' deceptive conduct, and correctly rejected Defendants' implausible, factually unsupported counter-narrative that their actions were "simply ordinary business strategy decisions" that served "legitimate business purpose[s]." Defendants provide no legitimate reason to disturb that conclusion.

### d.    The Court Correctly Rejected Defendants' "Fully Disclosed" Argument

The Court should again reject Defendants' repeated and untrue mantra that their conduct was "fully disclosed to investors." *Compare* MJOP at 1, *with* MTD Reply at 1 ("A fully disclosed business strategy, successful or not, cannot defraud investors."). This argument was the cornerstone of Defendants' attacks on Plaintiffs' scheme claims in their MTD. *See* MTD at 11-18; MTD Reply at 3-8. Plaintiffs rebutted Defendants' false claims of "full disclosure" in their opposition, explaining how "each and every" artifice or deceptive act alleged in the Complaint deceived investors. MTD Opp. at 8-13; *see also* ¶¶147-228.

Moreover, at the MTD hearing, the Court specifically considered the fact that "[t]he SEC filings and earnings call transcripts indicate that defendants disclosed on multiple occasions that it was using promotional subscriptions, international market expansion, and content expansion to drive subscriber growth." Hrg. Tr. at 4:24-5:3. It

- 22 -

4901-1283-5635.v1

then asked Plaintiffs' counsel to provide "example[s]" of what Defendants "failed to disclose." *Id.* at 7:10-11 ("What, if you have an example, is it that they failed to disclose . . .?"). Plaintiffs' counsel did so, providing several examples of deceptive conduct that Defendants failed to disclose, including that: (i) Defendants employed accounting manipulations to mask Disney+'s content costs; and (ii) Defendants sent new Disney and Pixar movies directly to Disney+ – bypassing the lucrative theater and pay-per-view windows – in order to chase subscribers. *Id.* at 7:13-25; *see also id.* at 6:1-9 (Defendants failed to disclose that they expanded Disney+ into unprofitable foreign markets in order to boost Disney+'s subscriber numbers). The Court clearly considered and correctly rejected Defendants' claims of full disclosure and should do so again here.

### 3. The Court Correctly Upheld the §10(b) Claim Against Iger

Finally, Defendants urge the Court to reconsider its decision upholding Plaintiffs' §10(b) insider trading claim against Iger. Defendants' arguments fail again. *See* ¶¶252-265, 410-419. Company insiders violate §10(b) when they: (1) sell stock; (2) while in possession of material, nonpublic information. *See Johnson v. Aljian*, 394 F. Supp. 2d 1184, 1196 (C.D. Cal. 2004), *aff'd*, 490 F.3d 778 (9th Cir. 2007). The Complaint dedicates an entire section to these two elements. *See* Complaint, §VII. First, it details Iger's stock sales:

> From January 2021 to June 2021 – while the scheme inflated Disney's stock price to record highs – Iger sold roughly half of his Disney holdings for an incredible ***$375,829,120*** in insider trading proceeds . . . .
>
> . . . [I]n the entire ***two years*** leading up to the Class Period, Iger sold none of his Disney stock.

¶¶263-264.

- 23 -

4901-1283-5635.v1

Second, Plaintiffs specify the material, nonpublic information Iger possessed when he sold. ¶¶254-262. For example, while Chapek and McCarthy lauded the new 230-260 million Disney+ subscriber target, "[p]rivately, Mr. Iger questioned the eye-popping prediction" and "thought Mr. Chapek's projections went too far." ¶259. Iger also belatedly admitted he possessed material, nonpublic information while he sold. *See* ¶¶261-262. And when an interviewer asked if Iger was aware of Disney's deteriorating financial condition before he returned as CEO, Iger responded: "***There were no surprises***." ¶261.[14] After all, Iger had day-to-day responsibility for operations as Disney's Executive Chairman, Chapek's boss, and a shadow CEO at the time he sold almost $400 million of Disney stock. ¶¶254-258.

Because Plaintiffs state a §10(b) insider trading claim against Iger, Defendants' argument that Iger is not a §10(b) scheme or misstatement defendant misses the point. The Ninth Circuit has made clear that "[i]ndividuals or corporations that engage in insider trading can be held liable under Section 10b . . . . Thus, the fact that neither [defendant] made any of the allegedly misleading statements does not shield them from liability." *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 937 (9th Cir. 2003). Defendants' assertion that "Plaintiffs conceded during oral argument on the motion to dismiss that they do not allege Mr. Iger was a scheme defendant or that he made any false or misleading statement[s]" is irrelevant and misleading. MJOP at 21. As Defendants ignore, Plaintiffs specifically stated: "Mr. Iger is not a misstatement defendant under Section 10(b) or a scheme defendant, ***but he is a Section 10b insider trading defendant***." Hrg. Tr. at 16:10-13.

---

[14] Plaintiffs "repeat and allege each and every allegation" regarding Iger's insider trading in "COUNT I" of the Complaint, which is asserted against "All Defendants" – including Iger. Complaint at 179:4-10. Count I also specifically states Defendants "knowingly or recklessly engaged in acts, *transactions*, practices, and a course of business which operated as a fraud and deceit upon Plaintiffs and the other members of the Class." *Id.* at 179:11-14.

- 24 -

4901-1283-5635.v1

In their MTD, Defendants failed to challenge the §10(b) insider trading claim and then tried to challenge it for the first time in their reply. *See generally* MTD; *see id.* at 26 ("Plaintiffs plead ***nothing*** as to Mr. Iger . . . ."); MTD Reply at 18. As discussed at the MTD stage, Defendants' failure to challenge the §10(b) insider trading claim in their MTD waived any challenges raised in their reply. *See Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024, 1033 (9th Cir. 2008); Hrg. Tr. at 18:16-20.[15] The Court correctly upheld the §10(b) insider trading claim against Iger. *See generally* Order (dismissing only Iger §20A insider trading claim); *id.* at 3 ("Defendants' Motion is GRANTED as to Count ***Two*** against Iger . . . otherwise, the Motion is DENIED.").

Defendants' failure to challenge the §10(b) insider trading claim against Iger in their MTD, and their belated challenge in their MTD Reply, preclude their challenge now. *See Allergan*, 2012 WL 12903072, at *2 (denying 12(c) motion because "[e]very argument made is either one that was previously made or ***could have been made***").[16]

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied.

---

[15] Defendants argue that the §10(b) insider trading claim should be dismissed because the Court dismissed the §20A insider trading claim. MJOP at 21. Defendants cite no support for this position. Plaintiffs allege two distinct insider trading claims against Iger: (1) insider trading in violation of §10(b); and (2) insider trading in violation of §20A. Defendants challenged only §20A insider trading in their MTD, and the Court dismissed only the §20A claim.

[16] Defendants repeat their MTD argument that "[b]oth the Section 20A claim against Ms. McCarthy, and the Section 20(a) control-person claims, fail for lack of a predicate violation." MJOP at 21. As before, this argument fails because the Complaint does allege – as this Court found – a predicate violation for McCarthy's §20A claim and sufficient control for the §20(a) claims. *See* Order; *see also* MTD Opp. at 38 n.17 ("Because Plaintiffs sufficiently allege a primary violation of §10(b), and Defendants do not dispute each Defendant's control, the Complaint properly pleads §20(a) control person liability.").

- 25 -

4901-1283-5635.v1

DATED: April 8, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN
RYAN A. LLORENS
JESSICA T. SHINNEFIELD
JEFFREY J. STEIN
NICOLE Q. GILLILAND
JESSICA E. ROBERTSON

s/ Daniel S. Drosman
DANIEL S. DROSMAN

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
ryanl@rgrdlaw.com
jshinnefield@rgrdlaw.com
jstein@rgrdlaw.com
ngilliland@rgrdlaw.com
jrobertson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 26 -

4901-1283-5635.v1

**L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 25 pages, which complies with the page limit set by the Court's Standing Order (ECF 13), dated May 19, 2023.

DATED:  April 8, 2025                          s/ Daniel S. Drosman
                                              DANIEL S. DROSMAN