JONATHAN D. POLKES (admitted *pro hac vice*)
jonathan.polkes@whitecase.com
STACY NETTLETON (admitted *pro hac vice*)
stacy.nettleton@whitecase.com
ADAM B. BANKS (admitted *pro hac vice*)
adam.banks@whitecase.com
SUSAN L. GRACE (admitted *pro hac vice*)
susan.grace@whitecase.com
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200

JOHN W. SPIEGEL (SB 78935)
john.spiegel@mto.com
JOHN M. GILDERSLEEVE (SB 284618)
john.gildersleeve@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Attorneys for Defendants
The Walt Disney Company, Robert Iger,
Robert Chapek, Christine M. McCarthy
and Kareem Daniel

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOCAL 272 LABOR-MANAGEMENT PENSION FUND, CENTRAL PENNSYLVANIA TEAMSTERS PENSION FUND, CENTRAL PENNSYLVANIA TEAMSTERS PENSION FUND – RETIREMENT INCOME PLAN 1987, CENTRAL PENNSYLVANIA TEAMSTERS HEALTH AND WELFARE FUND AND JOHN P. TALBOT, on Behalf of Themselves and All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>          v.<br><br>THE WALT DISNEY COMPANY, ROBERT IGER, ROBERT CHAPEK, CHRISTINE M. MCCARTHY AND KAREEM DANIEL,<br><br>          Defendants. | Case No. 2:23-cv-03661-CBM(ASx)<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:   April 29, 2025<br>Time:  10:00 A.M.<br>Ctrm:  8D<br>Judge:  Hon. Consuelo B. Marshall |

# **TABLE OF CONTENTS**

**Page(s)**

I.     INTRODUCTION ...................................................................................... 1

II.    ARGUMENT ............................................................................................ 2

    A.    Defendants' Motion for Judgment on the Pleadings is Proper .............. 2

    B.    Plaintiffs Have Not Alleged Actionable Misstatements ........................ 4

    C.    Plaintiffs Still Do Not Allege a Scheme to Defraud ............................. 7

    D.    Plaintiffs' Section 10(b) Claim against Iger Fails ................................. 9

III.   CONCLUSION ...................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Askins v. U.S. Dep't of Homeland Security,*
   899 F.3d 1035 (9th Cir. 2018) ........................................................................ 4

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech.,*
   856 F.3d 605 (9th Cir. 2017) .......................................................................... 7

*Emps. Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.,*
   353 F.3d 1125 (9th Cir. 2004) ................................................................. 2, 3, 4

*Fortinet, Inc. v. Forescout Tech. Inc.,*
   730 F. Supp. 3d 958 (N.D. Cal. 2024) ........................................................... 2

*Glazer Cap. Mgmt., L.P. v. Forescout Tech., Inc.,*
   63 F.4th 747 (9th Cir. 2023) ........................................................................... 3

*Heliotrope Gen., Inc. v. Ford Motor Co.,*
   189 F.3d 971 (9th Cir. 1999) .......................................................................... 2

*In re AGS, Inc. Sec. Litig.,*
   2024 WL 581124 (D. Nev. Feb. 12, 2024),
   *aff'd* 2025 WL 927296 (9th Cir. Mar. 27, 2025) .................................... 2, 3, 8

*In re eHealth, Inc. Sec. Litig.,*
   2023 WL 6390593 (N.D. Cal. Sept. 28, 2023) .............................................. 2

*In re Netflix, Inc.,*
   964 F. Supp. 2d 1188 (N.D. Cal. 2013) ......................................................... 6

*In re Quality Sys. Inc. Sec. Litig.,*
   865 F.3d 1130 (9th Cir. 2017) ........................................................................ 4

*Johnson v. Aljian,*
   490 F.3d 778 (9th Cir. 2007) ........................................................................ 10

*Kong v. Fluidigm Corp.,*
   2023 WL 2134394 (9th Cir. Feb. 21, 2023) .................................................. 4

## TABLE OF AUTHORITIES

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002) ............................................................................... 10

*Omnicare Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015) ............................................................................................ 7

*Pirani v. Netflix*,
  2024 WL 4894291 (N.D. Cal. Nov. 26, 2024) ..................................................... 7

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) ....................................................................... 4, 5, 6

*Preimesberger v. United States*,
  541 F. Supp. 3d 1046 (E.D. Cal. 2021) ............................................................... 3

*Provenz v. Miller*,
  102 F.3d 1478 (9th Cir. 1996) .............................................................................. 5

*Simpson v. AOL Time Warner, Inc.*,
  452 F.3d 1040 (9th Cir. 2006), *vacated on other grounds sub nom Simpson v. Homestore.com, Inc.*, 519 F.3d 1041 (9th Cir. 2008) ............................................. 8

*Sprint Telephony PCS, L.P. v. Cnty. of San Diego*,
  311 F. Supp. 2d 898 (S.D. Cal. 2004) ................................................................ 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ............................................................................................. 3

*Weston Family P'ship LLP v. Twitter Inc.*,
  29 F.4th 611 (9th Cir. 2022) ................................................................................ 6

*Wochos v. Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021) .............................................................................. 3

**STATUTES**

15 U.S.C. § 78u-5(c) .............................................................................................. 4

15 U.S.C. § 78u-5(c)(2)(B) ..................................................................................... 4

**RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................... 2, 3, 10

# **TABLE OF AUTHORITIES**

Fed. R. Civ. P. 12(c) .......................................................................................... passim

Fed. R. Civ. P. 12(h)(1) ................................................................................................ 10

Fed. R. Civ. P. 12(h)(2) ................................................................................................ 10

Fed. R. Civ. P. 12(h)(2)(B) ........................................................................................... 10

## I.   **<u>INTRODUCTION</u>**

Defendants properly moved for judgment on the pleadings because the Complaint fails to allege securities law claims. Contrary to Plaintiffs' mantra, Defendants do not seek a do-over. Rather, Defendants' Rule 12(c) motion seeks pleading-stage resolution of key dispositive issues that the Court's Order on Defendants' Motion to Dismiss did not address—including that many of the alleged misstatements are not actionable under the PSLRA safe harbor for forward-looking statements. Defendants are entitled to a pleading-stage ruling on these issues—and the Court should dismiss the Complaint as a fundamentally misguided attempt to hold Defendants liable for future predictions.

Plaintiffs have no persuasive response to Defendants' showing that the bulk of the remaining alleged misstatements fit comfortably within the safe harbor. They quibble with the manner in which Defendants supplied meaningful cautionary language to accompany the forward-looking statements and the level of generality of those disclosures. But, in the end, they cannot dispute that the nub of their Complaint is that Defendants made misleading forecasts about subscriber growth and profitability and that those forecasts were accompanied by detailed discussions of the attendant risks and cautions.

Plaintiffs also have no answer for how their "scheme" liability claim could survive in the absence of any actionable misstatements. As Defendants showed, the alleged misstatements are core to their theory of scheme liability: they are what supposedly transforms ordinary business strategy decisions into a fraudulent scheme. Once the alleged misstatements are stripped away, however, all that remains are strategic choices Defendants made—that Plaintiffs apparently disagree with, in hindsight. That is not enough to state a scheme liability claim.

Finally, the Section 10(b) claim against Mr. Iger should be dismissed. Plaintiffs confirm that they do not allege that Mr. Iger made any misstatements or participated in any scheme. That is the end of it. Still, they claim Mr. Iger should

remain a Section 10(b) "insider-trading" defendant. But the Complaint does not allege a Section 10(b) insider trading claim against Mr. Iger. And even if it did, this Court's Order dismissing Plaintiffs' Section 20A insider trading claim puts the nail in the coffin. The Court dismissed the Section 20A claim against Mr. Iger for failure to allege a predicate Section 10(b) claim. That being so, Plaintiffs never explain how an independent Section 10(b) claim against Mr. Iger could still be viable, when the Court has already concluded that it is not. Defendants' Motion should be granted.

## II.    ARGUMENT

### A.    Defendants' Motion for Judgment on the Pleadings is Proper

Defendants properly invoked Rule 12(c) to seek judgment on the pleadings dismissing the Complaint. Rule 12(c) allows parties to move for judgment on the pleadings "[a]fter the pleadings are closed," and Defendants promptly exercised their right to do so after they filed their answer. The Motion is routine, and courts have granted motions for judgment on the pleadings in cases just like this one—*i.e.*, securities fraud cases where the court had previously granted in part (and denied in part) a Rule 12(b)(6) motion. *E.g.*, *In re eHealth, Inc. Sec. Litig.*, 2023 WL 6390593, at *1-2 (N.D. Cal. Sept. 28, 2023) (granting judgment on the pleadings after granting in part defendant's motion to dismiss); *In re AGS, Inc. Sec. Litig.*, 2024 WL 581124, at *2 (D. Nev. Feb. 12, 2024) (same), *aff'd* 2025 WL 927296 (9th Cir. Mar. 27, 2025); *Emps. Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*, 353 F.3d 1125, 1134 (9th Cir. 2004) (same); *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 979-980 (9th Cir. 1999) (affirming judgment on the pleadings dismissing complaint because it "fail[ed] to satisfy the rigorous pleading standards of" the PSLRA). Rule 12(c) exists for a reason, and a "motion under Rule 12(c) may be brought after denial of a motion to dismiss under Rule 12(b)." *Fortinet, Inc. v. Forescout Tech. Inc.*, 730 F. Supp. 3d 958, 963 (N.D. Cal. 2024).

A Rule 12(c) motion is particularly appropriate because the Order did not address several grounds for dismissal, including the application of the PSLRA's safe

harbor. *In re AGS, Inc. Sec. Litig.*, 2024 WL 581124, at \*2 (holding judgment on the pleadings is appropriate when "the court never addressed" certain claims). To be sure, here the Court wrote that the Complaint alleged certain unidentified "other facts" that showed Defendants made material misstatements or omissions. Order at 2. But not even Plaintiffs point to where the Order applies the PSLRA safe harbor to those statements. That is significant because even if the Complaint did properly allege misstatements, the PSLRA safe harbor would shield such forward-looking statements from liability. *See Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1189 (9th Cir. 2021) ("[E]ven if a statement would otherwise be actionable under [Section 10(b)], the PSLRA carves out a safe harbor for forward-looking statements.") (cleaned up).

Defendants' Motion is therefore an appropriate pleading-stage vehicle for the Court to resolve that PSLRA safe harbor issue. There is no question that the PSLRA applies with equal strength on a Rule 12(c) motion as it does under Rule 12(b)(6). *See Clorox Co.*, 353 F.3d at 1134 (finding the PSLRA's heightened pleading standard applies "in any motion to dismiss or for judgment on the pleadings"). Indeed, the Rule 12(c) vehicle here—when a court has not addressed the PSLRA safe harbor—is a particularly important tool to further the PSLRA's gatekeeping function. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 (2007) (the PSLRA was "designed to curb perceived abuses of the § 10(b) private action"); *Glazer Cap. Mgmt., L.P. v. Forescout Tech., Inc.*, 63 F.4th 747, 769 (9th Cir. 2023) ("[T]he PSLRA was designed to eliminate frivolous or sham" claims).

Plaintiffs' recharacterization of the Motion as a motion for reconsideration thus fails. *See Preimesberger v. United States*, 541 F. Supp. 3d 1046, 1051 (E.D. Cal. 2021) (a Rule 12(c) motion after a motion to dismiss was not a motion for reconsideration). Plaintiffs' argument that the law of the case doctrine precludes the Motion also fails. Opp. at 8. The Motion seeks resolution of issues the Rule 12(b)(6) order did not decide—where a "law of the case" has not been established. In any event, the law of the case doctrine is discretionary and would not bar this Court from

-3-

revisiting those issues. *See Askins v. U.S. Dep't of Homeland Security,* 899 F.3d 1035, 1042 (9th Cir. 2018) ("The law of the case doctrine does not, however, bar a court from reconsidering its own orders before judgment is entered.").

### B.   Plaintiffs Have Not Alleged Actionable Misstatements

***The Alleged Statements Are Forward-Looking and Protected by the PSLRA Safe Harbor.*** The Order did not address whether Defendants' statements fell within the PSLRA's safe harbor for forward-looking statements. *See* 15 U.S.C. § 78u-5(c). The Motion identifies over a dozen forward-looking statements and the detailed "meaningful cautionary language" accompanying them. *See* Mot. at 6-7. Plaintiffs contend that the safe harbor does not apply for three reasons. Each fails.[1]

*First*, Plaintiffs argue that the statements were not "accompanied by meaningful, cautionary language" because the statements were made during earnings calls, while the cautionary language appears in Disney's contemporaneous SEC filings *referred to on the earnings calls*. Opp. at 10. This is not a serious argument. The PSLRA applies to an "oral forward looking statement" so long as it "identifies the document, or portion thereof, that contains the" cautionary language. 15 U.S.C. § 78u-5(c)(2)(B); *see also Emplrs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1133 (9th Cir. 2004). And, in any event, it is well established that earnings calls incorporate referenced SEC filings. *See Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1059 (9th Cir. 2014); *Kong v. Fluidigm Corp.*, 2023 WL 2134394, at *1 (9th Cir. Feb. 21, 2023).

*Second*, Plaintiffs appear to argue that the disclosures made in the SEC filings were not "meaningful" because they were boilerplate and not consistently made in every filing. Opp. at 10-11 ("Further, the 'disclosure' that Disney 'anticipate[d] an increase in programming and production investments to create exclusive content for

---

[1] Plaintiffs misstate the law of the safe harbor. Contrary to Plaintiffs' assertion (Opp. at 10), the safe harbor applies to a forward-looking statement if the statement "*either* is accompanied by cautionary language *or* is made without actual knowledge that it is false or misleading." *In re Quality Sys. Inc. Sec. Litig.*, 865 F.3d 1130, 1141 (9th Cir. 2017) (emphasis in original).

Disney+' is included in only **three** of the **fifteen** exhibits Defendants cite." (emphasis in original)). The fact that certain disclosures were made in certain filings in fact demonstrates the opposite point: Disney's disclosures were not "boilerplate"; they were targeted to the particular forward-looking statements at issue.

Indeed, Plaintiffs' only support for their argument that the disclosures were too general is *Provenz v. Miller*, 102 F.3d 1478, 1493 (9th Cir. 1996). But the statements in *Provenz* were far more general than those Disney made here. *Compare* 102 F.3d at 1494 (statement that company "lacked visibility and . . . [was] living in an uncertain economic environment so . . . [it was] approaching the next six months with a very conservative outlook and conservative management posture") *with* Mot. at 9 (specific discussions of Disney+'s profitability risks including that Disney "expect[ed] to forgo revenue from traditional sources" in the interim; that the DTC model may not "ultimately be profitable as . . . existing business models; and that "[c]hanges in [Disney's] business strategy or restructuring of [its] businesses may increase [its] costs or otherwise affect the profitability of [its] businesses.").

Finally, Plaintiffs contend the safe harbor is inapplicable because the statements were "mixed with non-forward-looking statements." Opp. at 12. Plaintiffs parse the statements too finely; as a whole, the thrust of the challenged statements are forward-looking projections. *See Intuitive Surgical*, 759 F.3d at 1059 ("We need not resolve whether the safe harbor covers non-forward-looking portions of forward-looking statements because, examined as a whole, the challenged statements related to future expectations and performance."). Plaintiffs concede that the historical aspects of these statements are "literally true"; so, their allegations of *fraud* focus on the predictive aspects regarding Disney+'s subscriber base and profitability. For instance, Plaintiffs point to the statement "[w]e currently have over 500 local original titles in various stages of development and production," which the company believes "will attract new subscribers." Opp. at 12 (quoting CC ¶¶ 284, 300). Plaintiffs do not challenge the number of local original titles; they challenge

that the titles "will attract new subscribers," a clearly forward-looking statement.

***Defendants' Statements of Historical Data Are Not Actionable.*** Defendants also showed in their Motion that Disney's reporting of accurate data is not actionable. Mot. at 11-14. Plaintiffs again concede that the statements were "literally true," Opp. at 15, and instead hang their hat on the theory that Defendants concealed "adverse information that made their statements misleading." *Id.* at 14. But this theory only works if Plaintiffs can identify some duty for Defendants to have disclosed more than they did. They fail to do so. Plaintiffs' opposition instead makes clear that they are relying on a boundless and unworkable rule of completeness in which issuers have a duty to deliver all manner of color surrounding the "literally true" metrics they report, or else face a securities fraud lawsuit. Courts have rejected such expansive notions of such a duty. *See In re Netflix, Inc.*, 964 F. Supp. 2d 1188, 1193 (N.D. Cal. 2013) ("Plaintiffs have to show that Defendants both knew of [the facts rendering the statements false] and had a duty to disclose that in tandem with the public statements that Plaintiffs cite."); *Weston Family P'ship LLP v. Twitter Inc.*, 29 F.4th 611, 620 (9th Cir. 2022) ("Section 10(b) and Rule 10b-5 do not create an affirmative duty to disclose any and all material information") (cleaned up).

For example, Plaintiffs take issue with Mr. Chapek's statement that Disney+ had "crossed the 150 million subscriber milestone," CC ¶ 274, but the Complaint does not allege that Disney+ did not have that many subscribers when the statement was made. *See, e.g. id.* ¶ 276 (alleging several bases for why this statement was false, but *not* alleging there were fewer than 150 million subscribers). More detail can always provide more context; but there must be a limiting principle, because complete disclosure is not a workable standard. *See Intuitive Surgical*, 759 F.3d at 1061 (There is no "rule of completeness for securities disclosures because no matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not.") (internal quotations omitted).

***Opinion Statements.*** Lastly, Defendants showed that certain other statements,

also not ruled on in the Order, concerned non-actionable statements of opinion. Mot. at 14-17. Plaintiffs agree that statements of opinion are not actionable unless they can show, *inter alia*, that Defendants did not honestly hold the opinion or that it contained "embedded" untrue facts. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech.*, 856 F.3d 605, 615-16 (9th Cir. 2017); *see also Omnicare Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015); Opp. at 16-17.

Plaintiffs' allegations do not meet this standard. Plaintiffs focus on only two of the over two dozen opinion statements identified in the Motion. Opp. at 17. The first concerns churn: Plaintiffs argue that while Mr. Chapek publicly stated that "churn is low," in fact a *confidential witness* described churn as a "constant problem." *Id.* (citing CC ¶ 333). That vague reference is hardly the sort of detailed allegation sufficient to show that *Mr. Chapek* did not actually believe the opinion he offered, or that it contained embedded falsehoods. Indeed, courts have rejected nearly identical allegations, holding, for example, that a statement that churn is "low" was not "not rendered misleading" by internal data showing that churn was worse than expected. *See Pirani v. Netflix*, 2024 WL 4894291, at *9 (N.D. Cal. Nov. 26, 2024). Nor does the allegation that Defendants received regular updates on churn (Opp. at 17) contradict Mr. Chapek's statement that churn was low. Plaintiffs also point to Mr. Chapek's November 8, 2022 statement that "we still expect Disney+ to achieve profitability in fiscal 2024," while he was allegedly advised to "deliver a sober message" on Disney's finances. Opp. at 17. The allegation that Mr. Chapek was told to deliver a "sober message" about the *current* state of Disney's finances does not show that he "knew" the expectation of *future* profitability was false. This allegation fails to meet *Omnicare*.

C.     **Plaintiffs Still Do Not Allege a Scheme to Defraud**

Defendants' Motion showed that absent any actionable misstatements, Plaintiffs' scheme claim fails, too. Plaintiffs challenge Defendants' business strategy

-7-

decisions, but their theory for why those decisions were deceptive—and thus a "scheme"—hinges on the alleged misstatements. The business decisions were supposedly constructed to support misleading subscriber and profitability forecasts. But if those forecasts are not actionable, then neither are the corporate actions that Defendants engaged in to support them. *See In re AGS, Inc., Sec. Litig.*, 2024 WL 581124, at *5 (granting Rule 12(c) motion dismissing claim where the alleged scheme was "based on the same alleged set of facts as its misrepresentation claim").

Plaintiffs never contest this fundamental point. Nor do they cite *any* case that has ever sustained scheme liability claims premised on non-actionable alleged misstatements. Instead, Plaintiffs respond with a series of meritless deflections.

*First*, Plaintiffs argue it was "unsurprising" that the Court did not address whether the scheme claim could survive without misstatements because the Court found alleged misstatements. Opp. at 19. But that explains why the Court should entertain Defendants' Rule 12(c) arguments now. If the Court finds that the remaining misstatements are not actionable, then the scheme claims fail, too.

*Second*, Plaintiffs never confront Defendants' showing that the scheme claims courts *have* sustained involved far more deceptive conduct than what Plaintiffs allege here. *See* Mot. at 20. Rather than address the case law, Plaintiffs invoke the Court's Order. *See* Opp. at 19-20. This is unavailing because, as they admit, the Court did not consider the question Defendants raise here: whether the challenged business decisions are viable bases for a scheme claim without any misstatements.

*Third*, Plaintiffs argue that their scheme claim should be sustained because there was supposedly no "legitimate business purpose" for the strategy decisions they challenge. But the purpose of the securities fraud laws is not to superintend companies' business decisions, whether they be good or bad. The law bans deception. And as Defendants showed in their Motion, there is nothing inherently deceptive in any of the decisions they challenge. The deception arises only, if at all, in connection with the alleged misstatements. Plaintiffs' conclusory allegations

-8-

REPLY BRIEF ISO MOTION FOR JUDGMENT ON THE PLEADINGS

stating otherwise are insufficient to sustain a scheme claim. *See Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040, 1050 (9th Cir. 2006), *vacated on other grounds sub nom Simpson v. Homestore.com, Inc.*, 519 F.3d 1041 (9th Cir. 2008) ("Conduct that is consistent with the defendants' normal course of business would not typically be considered to have the purpose and effect of creating a misrepresentation.").

*Finally*, Plaintiffs take issue with Defendants' showing that the scheme conduct they challenge was disclosed to investors. First, Plaintiffs point to certain alleged "accounting manipulations." Opp. at 23; *see also* CC ¶¶ 214-223.  But as is reflected in the footnotes of the Complaint, the relevant information was disclosed. CC ¶ 216 nn.14-17. Plaintiffs take issue with how the data was *presented* (*e.g.*, combined with other revenue streams in the DMED division), but they concede that the data and reporting structures were disclosed. *Id.* at ¶ 217. Second, Plaintiffs state that Defendants failed to disclose that certain Disney and Pixar movies were being released directly to Disney+. Opp. at 23; CC ¶¶ 164-168. But, as Plaintiffs allege, this information was also disclosed. CC ¶ 165 (Mr. Chapek and Mr. Daniel disclosing in 2021 and 2022 that movies were released directly on Disney+).

### D.    Plaintiffs' Section 10(b) Claim against Iger Fails

At a minimum, judgment on the pleadings should be granted to dismiss the Section 10(b) claim against Mr. Iger. Plaintiffs concede that Mr. Iger neither made any of the alleged misstatements nor participated in the alleged scheme. Mot. at 21; Opp. at 23-24. Plaintiffs contend nonetheless that the Section 10(b) claim may be maintained against Mr. Iger because they have alleged a Section 10(b) insider trading claim against him. *See* Opp. at 23. Plaintiffs are wrong.

*First*, the Complaint does not allege a Section 10(b) insider trading claim against Mr. Iger. Indeed, Count I of the Complaint, the Section 10(b) count, does not allege insider trading against *any* Defendant. That is why, in an attempt to show that they alleged an insider trading claim against Mr. Iger, Plaintiffs cite the *hearing transcript*—not the Complaint. Opp. at 24 (citing Hr'g Tr. at 16:10-13). Even more

telling, in a footnote, Plaintiffs say that their insider trading claim can be traced to the use of a single word: "transactions." Opp. at 24 n.14. That vague reference flunks basic Rule 8 notice requirements, not to mention the heightened pleading standards that apply here. Plaintiffs' suggestion that Defendants waived this argument because they "failed to challenge the § 10(b) insider trading claim" in their motion to dismiss also fails—the Complaint does not plead a claim on its face.[2]

*Second*, the Court dismissed Plaintiffs' Section 20A claim against Mr. Iger—which *did* allege insider-trading against him—because Plaintiffs failed to allege an independent, predicate Section 10(b) violation against Mr. Iger. Order at 2 (citing *Johnson v. Aljian* for the proposition that "[c]laims under Section 20A are derivative and therefore require an independent violation of the Exchange Act." 490 F.3d 778, 781 (9th Cir. 2007)). *See also Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 n.15 (9th Cir. 2002) ("To prevail on [] claims for violations of § 20(a) and § 20A, plaintiffs must first allege a violation of § 10(b) or Rule 10b[-]5."). That holding dooms Plaintiffs' attempt to manufacture a Section 10(b) claim against Mr. Iger.

Plaintiffs' opposition never explains how a supposed independent Section 10(b) insider trading claim against Mr. Iger could be viable when the Court dismissed their Section 20A insider trading claim precisely because they had not alleged an independent Section 10(b) violation. Rather, in a footnote, Plaintiffs declare that their two claims are "distinct." Opp. at 25 n.15. That statement does not respond to Defendants' argument, much less show how their independent Section 10(b) claim is viable given this Court's ruling.

## III.   CONCLUSION

The Court should grant judgment on the pleadings for Defendants.

---

[2] Any suggestion that this argument is waived for purposes of this Rule 12(c) motion fails, too. F.R.C.P. 12(h)(2) states that "[f]ailure to state a claim upon which relief can be granted" can be raised "by a motion under 12(c)." Fed. R. Civ. P. 12(h)(2)(B). This is true even if the argument was not made in a Rule 12(b)(6) motion. *See Sprint Telephony PCS, L.P. v. Cnty. of San Diego*, 311 F. Supp. 2d 898, 904-05 (S.D. Cal. 2004); F.R.C.P. 12(h)(1) (omitting Rule 12(b)(6) grounds from those that are waived if not raised in a Rule 12 motion).

Dated:  April 15, 2025

Respectfully submitted,

WHITE & CASE LLP
MUNGER, TOLLES & OLSON LLP

By:      */s/ John W. Spiegel*
                    JOHN W. SPIEGEL

Attorneys for Defendants
The Walt Disney Company, Robert Iger,
Robert Chapek, Christine M. McCarthy
and Kareem Daniel

REPLY BRIEF ISO MOTION FOR JUDGMENT ON THE PLEADINGS

**L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Defendants, certifies that this brief contains 10 pages, which complies with the page limit set by the Court's Individual Practice Rule 7(c).

Dated: April 15, 2025                    */s/ John W. Spiegel*

                                          JOHN W. SPIEGEL

-12-