ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN (200643)
RYAN A. LLORENS (225196)
JESSICA T. SHINNEFIELD (234432)
JEFFREY J. STEIN (265268)
NICOLE Q. GILLILAND (335132)
JESSICA E. ROBERTSON (352207)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
ryanl@rgrdlaw.com
jshinnefield@rgrdlaw.com
jstein@rgrdlaw.com
ngilliland@rgrdlaw.com
jrobertson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LOCAL 272 LABOR-MANAGEMENT PENSION FUND, on Behalf of Itself and All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>        vs.<br><br>THE WALT DISNEY COMPANY, et al.,<br><br>                              Defendants. | Case No. 2:23-cv-03661-CBM (ASx)<br><br>CLASS ACTION<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER DATED MAY 20, 2025 DISMISSING COUNT III (§20(a) CONTROL PERSON LIABILITY) AGAINST DEFENDANT ROBERT IGER<br><br>DATE:        July 8, 2025<br>TIME:        10:00 a.m.<br>CTRM:        8D<br>JUDGE:       Hon. Consuelo B. Marshall |

4920-0676-8457.v1

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................ 1

II.  BACKGROUND ................................................................................ 3

   A.   The Court's Prior MTD Order Unequivocally Sustained the §20(a) Claim Against Iger .................................................................. 3

   B.   The Rule 12(c) Order Subsequently Dismissed Count III Against Iger ................................................................................... 3

   C.   Factual Allegations in the Complaint Demonstrating Iger's Control ............................................................................................ 4

III. STANDARD FOR RECONSIDERATION ....................................... 5

IV.  ARGUMENT ..................................................................................... 6

   A.   The Law of the Case Doctrine Mandates Reinstatement of Count III Against Iger .................................................................... 6

      1.   Governing Legal Principles for Law of the Case ....................... 6

      2.   The Court Previously Sustained Count III Against Iger ............ 7

      3.   No Exception Applies Here ........................................................ 7

      4.   The Rule 12(c) Dismissal Contradicts the Court's Prior Ruling .......................................................................................... 8

   B.   The Court Committed Manifest Error of Law and Fact in Dismissing the §20(a) Claim Against Iger ................................... 8

      1.   The Dismissal Rests on a Manifest Error of Law: Misapplication of the §20(a) Standard .................................... 9

         a.   The Ninth Circuit Standard for Control Person Liability .................................................................. 9

         b.   Primary Violations by Controlled Persons Are Established ................................................................ 11

         c.   The Court Misapplied the Law by Requiring More than What §20(a) Demands ........................................ 11

      2.   The Dismissal Rests on a Manifest Error of Fact: Overlooking Abundant Allegations of Iger's Control ............ 13

         a.   The Complaint Pleads Extensive and Specific Facts Demonstrating Iger's Control ............................ 13

4920-0676-8457.v1

**Page**

          b.     Defendants Never Disputed Iger's Control – They Argued Only that No Predicate Violation Existed ........ 16

C.    Counsel's Statements at the Motion to Dismiss Hearing Do Not Amend the Complaint or Negate the Well-Pleaded §20(a) Claim ....................................................................................... 17

V.    CONCLUSION ............................................................................................ 19

4920-0676-8457.v1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Arthur Child.'s Tr. v. Keim*,
   994 F.2d 1390 (9th Cir. 1993) ....................................................................... 11

*AvSport LLC v. Associated Press*,
   2020 WL 13064711 (C.D. Cal. 2020)............................................................. 8

*Brendon v. Allegiant Travel Co.*,
   412 F. Supp. 3d 1244 (D. Nev. 2019) ........................................................... 10

*Eichman v. Fotomat Corp.*,
   880 F.2d 149 (9th Cir. 1989)...................................................................... 6, 7

*Flood v. Miller*,
   35 F. App'x 701 (9th Cir. 2002)................................................................. 9, 10

*Gonzalez v. Ariz.*,
   677 F.3d 383 (9th Cir. 2012),
   *aff'd sub nom. Ariz. v. Inter Tribal Council of Ariz., Inc.*,
   570 U.S. 1 (2013) .......................................................................................... 7

*Hefler v. Wells Fargo & Co.*,
   2018 WL 1070116 (N.D. Cal. 2018)............................................................. 10

*Howard v. Everex Sys., Inc.*,
   228 F.3d 1057 (9th Cir. 2000)................................................................. 9, 11

*In re Alphabet, Inc. Sec. Litig.*,
   1 F.4th 687 (9th Cir. 2021)............................................................................ 9

*In re Apple Inc. Sec. Litig.*,
   678 F. Supp. 3d 1147 (N.D. Cal. 2023) ........................................................ 11

*In re Countrywide Fin. Corp. Sec. Litig.*,
   588 F. Supp. 2d 1132 (C.D. Cal. 2008)......................................................... 10

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
   78 F. Supp. 3d 1215 (N.D. Cal. 2015)...................................................... 10, 12

4920-0676-8457.v1

**Page**

*League of Residential Neighborhood Advocs. v. City of L.A.*,
633 F. Supp. 2d 1119 (C.D. Cal. 2009) ................................................................. 6

*Leslie Salt Co. v. United States*,
55 F.3d 1388 (9th Cir. 1995) ................................................................................. 6

*Liqui-Box Corp. v. Advanced Plastic Sys., Inc.*,
2023 WL 3025259 (E.D. Cal. 2023) ..................................................................... 18

*Luft v. Cates*,
2023 WL 1974157 (C.D. Cal. 2023)
*report and recommendation adopted*,
2023 WL 1971146 (C.D. Cal. 2023). ..................................................................... 18

*Mendez v. Cnty. of L.A.*,
2012 WL 13418852 (C.D. Cal. 2012) ..................................................................... 18

*Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*,
568 F. Supp. 2d 1152 (C.D. Cal. 2008),
*aff'd sub nom. Milton H. Greene Archives, Inc. v.*
*Marilyn Monroe LLC*, 692 F.3d 983 (9th Cir. 2012) ............................................ 5

*Mueller v. San Diego Ent. Partners, LLC*,
2017 WL 3387732 (S.D. Cal. 2017) ................................................................. 10, 12

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v.*
*Am. W. Holding Corp.*,
320 F.3d 920 (9th Cir. 2003) ................................................................................. 11

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v.*
*OpenBand at Broadlands, LLC*,
713 F.3d 175 (4th Cir. 2013) ................................................................................. 18

*SEB Inv. Mgmt. AB v. Wells Fargo & Co.*,
742 F. Supp. 3d 1003 (N.D. Cal. 2024) ................................................................. 10

*SEC v. Todd*,
642 F.3d 1207 (9th Cir. 2011) ......................................................... 9, 10, 11, 12

- iv -

4920-0676-8457.v1

**Page**

*Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*,
690 F. Supp. 2d 959 (D. Ariz. 2010) ................................................................. 10

*Topadzhikyan v. Glendale Police Dep't*,
2011 WL 13124502 (C.D. Cal. 2011) ................................................................. 6

*United States v. Alexander*,
106 F.3d 874 (9th Cir. 1997) ................................................................. 6, 18

*United States v. Gartenlaub*,
2024 WL 4987258 (9th Cir. 2024) ................................................................. 6

*United States v. Jingles*,
702 F.3d 494 (9th Cir. 2012) ................................................................. 6, 7

*United States v. Park Place Assocs., Ltd.*,
563 F.3d 907 (9th Cir. 2009) ................................................................. 6

*Vanguard Specialized Funds v. VEREIT Inc.*,
2016 WL 5858735 (D. Ariz. 2016) ................................................................. 10

*Zhang v. Voice of Guo Media Inc.*,
2023 WL 7050155 (D. Ariz. 2023) ................................................................. 5

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
  §78j(b) ................................................................................................*passim*
  §78t(a) ................................................................................................*passim*
  §78t-1 ................................................................................................ 3, 4, 17

Federal Rules of Civil Procedure
  Rule 8 ................................................................................................ 10
  Rule 9(b) ................................................................................................ 10
  Rule 12(b)(6) ................................................................................................ 2, 8, 17
  Rule 12(c) ................................................................................................*passim*

Local Rules
  Rule 7-18 ................................................................................................ 1, 5

4920-0676-8457.v1

**Page**

17 C.F.R.
   §230.405 ........................................................................................................ 9, 16

4920-0676-8457.v1

## I.    INTRODUCTION

Pursuant to Local Rule 7-18(c), Lead Plaintiffs Central Pennsylvania Teamsters Pension Fund, Central Pennsylvania Teamsters Pension Fund – Retirement Income Plan 1987, and Central Pennsylvania Teamsters Health and Welfare Fund, and plaintiffs Local 272 Labor-Management Pension Fund and John Patrick Talbot (collectively, "Plaintiffs") respectfully move for reconsideration of the Court's May 20, 2025 Order (ECF 150) (the "Rule 12(c) Order"), which dismissed Count III of the Corrected Consolidated Complaint for Violations of the Federal Securities Laws (ECF 68) (the "Complaint") – Plaintiffs' claim for control person liability under §20(a) of the Securities Exchange Act of 1934 ("Exchange Act") – against defendant Robert Iger ("Iger").  Multiple grounds warrant reconsideration; each ground reflects a clear legal or factual error and the risk of manifest injustice.

***First***, the dismissal directly contravenes this Court's prior ruling on Defendants'[1] motion to dismiss (ECF 111) (the "MTD Order"), which explicitly upheld the sufficiency of the §20(a) claim against Iger based on the same operative complaint and legal standard.  That ruling constitutes law of the case, and the Court should not have revisited it absent a change in law, new facts, or clear error – none of which occurred here.

***Second***, the Court committed a manifest error of law by misapplying the Ninth Circuit's well-settled standard for pleading control person liability.  Section 20(a) does not require allegations of culpable participation or primary liability on the part of the control person.  Instead, it requires a primary violation by ***any*** defendant and

---

[1]    The defendants named in the Complaint are: The Walt Disney Company ("Disney" or the "Company"), Robert Chapek ("Chapek"), Christine M. McCarthy ("McCarthy"), Kareem Daniel ("Daniel"), and Iger (collectively, the "Defendants"). ¶¶1, 21-26, 426-431.  Unless otherwise noted, all "¶_" or "¶¶_" references are to the Complaint, emphasis is added, and citations are omitted.  The "Individual Defendants" as used herein refers to Chapek, McCarthy, and Daniel.  The "Controlled Persons" as used herein refers to the Individual Defendants and Disney.

- 1 -

4920-0676-8457.v1

allegations that the defendant had control over a primary violator. The Complaint easily satisfies the applicable pleading threshold.

***Third***, the Court's conclusion that "there are no facts to support Count[] . . . Three against Iger" (Rule 12(c) Order at 2) constitutes a manifest error of fact. The Complaint contains extensive, specific, and well-supported allegations demonstrating Iger's control over the primary violators, including detailed allegations of his formal authority, operational oversight, and continued access to material non-public information throughout the Class Period.

***Fourth***, reconsideration is necessary to prevent manifest injustice. Plaintiffs properly pleaded their §20(a) claim against Iger, and the Court upheld it; Defendants never disputed Iger's control. The Rule 12(c) Order introduced a new and dispositive rationale – lack of control – that the parties did not brief and that Defendants did not raise in their motion to dismiss or their motion for judgment on the pleadings. Dismissing Count III on that ground deprived Plaintiffs of the opportunity to respond and represents a clear procedural and substantive error.

***Finally***, to the extent the Rule 12(c) Order relied in any way on Plaintiffs' counsel's commentary during a hearing colloquy addressing Iger's primary liability under §10(b), that reliance would be improper. The Complaint expressly asserts a §20(a) claim against Iger, and oral statements at argument cannot amend the Complaint. Moreover, because the Court had already upheld the §20(a) claim against Iger at the Rule 12(b)(6) stage, using that colloquy as a basis for his dismissal violates the law of the case doctrine.

In sum, the dismissal of Count III against Iger reflects a reversal of the Court's own findings, a misapplication of binding precedent, a disregard of detailed allegations, and a procedural irregularity – all of which ***independently*** justify reconsideration and reinstatement of the §20(a) claim. Plaintiffs respectfully request that the Court vacate the dismissal and reinstate Count III as to Iger.

- 2 -

4920-0676-8457.v1

## II.   BACKGROUND

### A.   The Court's Prior MTD Order Unequivocally Sustained the §20(a) Claim Against Iger

On February 19, 2025, this Court issued its MTD Order following full briefing and oral argument on Defendants' motion to dismiss the Complaint.  In that considered ruling, the Court clearly and unambiguously upheld the §20(a) claims, explicitly finding that "Plaintiffs have sufficiently stated a section 20(a) claim for control person liability against Defendants."  MTD Order at 2.  Crucially, the MTD Order also found that Plaintiffs sufficiently pleaded primary violations of §10(b) of the Exchange Act against the Controlled Persons.  These findings established the necessary predicate primary violations for Iger's §20(a) control person liability, satisfying the first element required under the statute.  The Court's MTD Order upholding the §20(a) claim against Iger acknowledged the sufficiency of the control allegations against Iger as detailed in the Complaint.

### B.   The Rule 12(c) Order Subsequently Dismissed Count III Against Iger

Despite its prior ruling, the Court, in its Rule 12(c) Order, dated May 20, 2025, dismissed Count III as to Iger.  The Court's reasoning, in pertinent part, stated:

> Plaintiffs confirmed that "the only claim against Mr. Iger is for insider trading under Rule 20A." . . .  Thus, the Court understood that the operative complaint alleges only Count Two against Defendant Iger, not Counts One or Three. . . .  ***Regardless, the Court has reviewed the operative complaint and finds that there are no facts to support Count[] . . . Three against Iger***.

Rule 12(c) Order at 2.  This sweeping and unwarranted finding of "no facts" to support Count III forms a central error this motion seeks to correct.

The Court's rationale also discusses counsel's statements made during the motion to dismiss hearing, which were intended to address Iger's liability as a primary violator under §10(b) for alleged scheme participation or misstatements, rather than

- 3 -

4920-0676-8457.v1

his secondary liability as a control person under §20(a).  During that hearing on September 27, 2024, the Court inquired of Plaintiffs' counsel, Jessica T. Shinnefield: "So for plaintiff, are you alleging a 10b claim against Iger, I-g-e-r, based on your ***scheme liability*** theory?" ECF 106 ("Hrg. Tr.") at 4:13-14.  And subsequently: "And so the Complaint doesn't allege that he made any false or ***misleading statements***?" *Id.* at 4:18-19.  The Court did not inquire about the ***§20(a)*** claim against Iger.  *Id.*  Ms. Shinnefield responded in the negative to both questions, stating, "[t]he only claim against Mr. Iger is for insider trading under Rule 20A."  *Id.* at 421-23.  Later in the same hearing, Plaintiffs' counsel, Nicole Q. Gilliland, clarified Iger's §10(b) liability, stating: "Your Honor asked whether Mr. Iger is a Section 10b defendant.  And my colleague made clear Mr. Iger is not a misstatement defendant under Section 10b or a scheme defendant, but he is a Section 10b insider trading defendant." *Id.* at 16:10-13.  Ms. Gilliland further explained that "a defendant can be liable under Section 10b for insider trading regardless of whether they make any misstatements, or engage in a scheme to defraud" and that "Section 10b insider trading can be the predicate violation for Section 20A insider trading." *Id.* at 16:15-17, 17:12-13.  This colloquy addressed Iger's ***primary*** liability under §10(b) for alleged scheme participation and misstatements, and for insider trading as a predicate to a §20A insider trading claim. It did not concern Iger's distinct liability as a ***control*** person under §20(a), which requires primary violations by only the Controlled Persons.

**C.    Factual Allegations in the Complaint Demonstrating Iger's Control**

The Complaint alleges that Iger, during the Class Period, held the highest executive and policymaking authority at Disney – he was Disney's Chief Executive Officer ("CEO"), Executive Chairman, and Chairman of the Board of Directors (the "Board").  Even after formally stepping down as CEO, he retained substantial influence over Disney's strategic direction and operations, and defendant Chapek – Disney's new CEO – reported directly to him.

- 4 -

Plaintiffs allege that Iger maintained supervisory authority over the individuals who committed primary violations of the federal securities laws – specifically Disney, Chapek, McCarthy, and Daniel – and that he remained actively engaged in Company affairs, including public disclosures and leading the business units central to the fraud. The Complaint further alleges that Iger had sustained access to confidential information about Disney+ and internal operations, reinforcing his role as a de facto overseer of the conduct giving rise to the primary violations.

These control allegations – detailed more fully below in §IV.B.2.a. – form the foundation for Iger's liability under §20(a) as a controlling person of Disney and the Individual Defendants.

## III.    STANDARD FOR RECONSIDERATION

Under Local Rule 7-18, a motion for reconsideration is appropriate where, *inter alia*, there is "(c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered."  *See* L.R. 7-18; *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 568 F. Supp. 2d 1152, 1162 (C.D. Cal. 2008), *aff'd sub nom. Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983 (9th Cir. 2012).  Reconsideration is also warranted "'to correct manifest errors of law or fact.'"  *Zhang v. Voice of Guo Media Inc.*, 2023 WL 7050155, at *1 (D. Ariz. 2023).  Reconsideration is not a vehicle for rearguing prior points, but rather for identifying specific and outcome-determinative errors.

Here, Local Rule 7-18(c) warrants reconsideration because the Court's Rule 12(c) Order dismissing Count III reflects a failure to consider material facts presented in the operative Complaint – most notably, the extensive allegations of Iger's control – as well as the Court's own prior MTD Order sustaining that claim.  The Rule 12(c) Order also rests on manifest errors of both law and fact.  This motion does not recycle prior arguments or express mere disagreement with the outcome.  Instead, it identifies discrete legal and factual errors that, once corrected, compel reinstatement of Plaintiffs' §20(a) claim against Iger.

- 5 -

## IV.    ARGUMENT

### A.    The Law of the Case Doctrine Mandates Reinstatement of Count III Against Iger

#### 1.    Governing Legal Principles for Law of the Case

Under the law of the case doctrine, "'a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case.'"  *United States v. Gartenlaub*, 2024 WL 4987258, at \*1 (9th Cir. 2024) (quoting *United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012)); *see also United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 925 (9th Cir. 2009) ("'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case'").

The doctrine applies not only to issues that were expressly decided, but also to those decided "'by necessary implications.'"  *Eichman v. Fotomat Corp.*, 880 F.2d 149, 157 (9th Cir. 1989).  Even issues "'summarily treated'" may become law of the case.  *League of Residential Neighborhood Advocs. v. City of L.A.*, 633 F. Supp. 2d 1119, 1126 (C.D. Cal. 2009) (quoting *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1392 (9th Cir. 1995)).  "'Failure to apply the doctrine'" – absent a recognized exception – "'constitutes an abuse of discretion.'"  *Topadzhikyan v. Glendale Police Dep't*, 2011 WL 13124502, at \*1 (C.D. Cal. 2011) (quoting *United States v. Alexander*, 106 F.3d 874, 876, 878 (9th Cir. 1997) ("The district court's departure from the law of the case requires reversal . . . .")).

Courts may depart from the law of the case only where: (1) the earlier decision was clearly erroneous and would result in manifest injustice; (2) there is intervening controlling authority; or (3) new and substantially different evidence has been presented.  *Gartenlaub*, 2024 WL 4987258, at \*1.  None of these exceptions applies here.

- 6 -

4920-0676-8457.v1

## 2.    The Court Previously Sustained Count III Against Iger

In its February 2025 ruling on Defendants' motion to dismiss, the Court explicitly held: "Plaintiffs have sufficiently stated a section 20(a) claim for control person liability against Defendants."  MTD Order at 2.  The Court made that ruling after full briefing and oral argument, and it resolved the sufficiency of Plaintiffs' control person liability claims under §20(a), including as to Iger.  The ruling is clear, unequivocal, and binding for purposes of the law of the case.  Moreover, in finding that Plaintiffs adequately pleaded §10(b) claims against Disney, Chapek, McCarthy, and Daniel, the Court necessarily determined that the primary violation required under §20(a) was satisfied.  Because the same Complaint remained operative at the time of the Rule 12(c) ruling, and no new facts or legal developments intervened, the sufficiency of Count III as to Iger was already established.

The Ninth Circuit has cautioned that even "'issues decided by necessary implications'" fall within the doctrine's ambit.  *Eichman*, 880 F.2d at 157.  Here, the Court's express ruling that Plaintiffs adequately pleaded Count III as to Iger leaves no ambiguity.

## 3.    No Exception Applies Here

The Ninth Circuit recognizes limited exceptions to the law of the case doctrine: "'"(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial."'" *Jingles*, 702 F.3d at 502-03 (quoting *Gonzalez v. Ariz.*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc), *aff'd sub nom. Ariz. v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013)).  None of these exceptions applies.

First, the MTD Order's finding that Plaintiffs pleaded a §20(a) claim against Iger was not clearly erroneous.  To the contrary, as detailed below, it was consistent with Ninth Circuit law and the Complaint's factual allegations.  Enforcing the MTD

- 7 -

Order would prevent, not cause, manifest injustice by allowing a well-pleaded claim to proceed.  Second, there has been no intervening controlling authority that has altered the legal standard for §20(a) liability or the requirements for pleading control since the MTD Order was issued.  Third, no substantially different evidence has been adduced; the operative pleading, the Complaint, remains the same.  The Court reversed without any new facts or legal developments that would justify departing from its prior, considered ruling.

### 4. The Rule 12(c) Dismissal Contradicts the Court's Prior Ruling

The Rule 12(c) Order leaves unexplained the Court's decision to reverse its prior holding on Count III, and it introduces a new theory – lack of factual support for Iger's control – that Defendants never contested and the Court already rejected.  On identical pleadings and without any intervening change in law or facts, such a reversal is precisely the kind of inconsistency the law of the case doctrine is designed to prevent.  Because "[a] motion for judgment on the pleadings is governed by the same standards as a Rule 12(b)(6) motion to dismiss" (*AvSport LLC v. Associated Press*, 2020 WL 13064711, at *1 (C.D. Cal. 2020)), the Court was bound to apply the same pleading-stage framework when evaluating the sufficiency of the §20(a) claim at judgment on the pleadings.  Accordingly, under settled law and in the interest of preserving judicial integrity and predictability, the Court should adhere to its prior finding that Plaintiffs adequately pleaded Count III and reinstate the §20(a) claim against Iger.

### B. The Court Committed Manifest Error of Law and Fact in Dismissing the §20(a) Claim Against Iger

Even if the law of the case doctrine were not dispositive, the dismissal of Count III against Iger warrants reconsideration due to manifest errors of law and fact.

- 8 -

4920-0676-8457.v1

**1.        The Dismissal Rests on a Manifest Error of Law: Misapplication of the §20(a) Standard**

**a.        The Ninth Circuit Standard for Control Person Liability**

Under well-settled Ninth Circuit precedent, establishing control person liability under §20(a) has only two elements: (1) a primary violation of the securities laws; and (2) that the defendant exercised actual power or control over the primary violator. *See In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 702 (9th Cir. 2021). As the Ninth Circuit has stated, "Section 20(a) imposes liability on a person who is in control of the person who is directly responsible for a securities fraud violation." *Id.* at 701. The Ninth Circuit has confirmed that "to make out a prima facie case, it is not necessary to show actual participation or the exercise of actual power." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000); *see also SEC v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011). It is enough that the defendant had the power to influence or direct the actions of the primary violator. *Howard*, 228 F.3d at 1065; *Flood v. Miller*, 35 F. App'x 701, 703 (9th Cir. 2002).

Importantly, it is blackletter law that a control person need not be a primary violator themselves to be held liable under §20(a). The Ninth Circuit has repeatedly held that plaintiffs "need not show that the defendant was a culpable participant in the [§10(b)] violation." *Howard*, 228 F.3d at 1065; *Todd*, 642 F.3d at 1223 (stating that "plaintiff 'need not show . . . culpable particip[ation]'"). Courts applying this standard uniformly hold that the existence of *a* primary violation (by *any* defendant, including the corporation itself) and control suffices at the pleading stage.

The definition of "control" under the statute is broad: it includes "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. §230.405; *see also Alphabet*, 1 F.4th at 702. This aligns with the Ninth Circuit Model Civil Jury Instructions, which define a controlling person as one who "possesses the power to direct the management or

- 9 -

4920-0676-8457.v1

policies of a business enterprise or of another person involved in the management or policymaking of the enterprise."  9th Cir. Model Civ. Jury Instruction 18.1 (2025).

The question of control is "'an intensely factual question'" rarely suitable for resolution on the pleadings.  *See Todd*, 642 F.3d at 1223; *Flood*, 35 F. App'x at 704; *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1183 (C.D. Cal. 2008) ("Whether a defendant is a control person is a fact question rarely appropriate for motion practice.").  At the pleading stage, plaintiffs may satisfy the control element by alleging a defendant's title, responsibilities, and involvement in corporate policy.  *See SEB Inv. Mgmt. AB v. Wells Fargo & Co.*, 742 F. Supp. 3d 1003, 1024 (N.D. Cal. 2024) ("[individual defendant's] role as CEO and President and involvement in Wells Fargo's diversity efforts sufficiently allege this 'actual power or control'"); *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 78 F. Supp. 3d 1215, 1228 (N.D. Cal. 2015) (control person liability sufficiently pled where individual defendants were officers of the company and signed company's filings with the U.S. Securities and Exchange Commission ("SEC")); *Mueller v. San Diego Ent. Partners, LLC*, 2017 WL 3387732, at *6 (S.D. Cal. 2017) ("[A]t the motion to dismiss stage, allegations about an individual's title and duties have been found to be sufficient to establish control."); *Brendon v. Allegiant Travel Co.*, 412 F. Supp. 3d 1244, 1265 (D. Nev. 2019) (same).[2] Although being a corporate officer or director does not create a legal presumption of control, the Ninth Circuit has acknowledged that such roles are "'a sort of red light'" signaling potential control, since "[i]t is not uncommon for control 'to rest with . . .

---

[2]   Control person claims are subject to Federal Rule of Civil Procedure 8.  *Vanguard Specialized Funds v. VEREIT Inc.*, 2016 WL 5858735, at *17 n.19 (D. Ariz. 2016) ("[d]efendants argue the Rule 9(b) pleading standards should apply to . . . controlling person allegations, but they do not"); *see also Hefler v. Wells Fargo & Co.*, 2018 WL 1070116, at *14 (N.D. Cal. 2018) (citing recent cases); *Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 690 F. Supp. 2d 959, 969-70 (D. Ariz. 2010) ("20(a) control person claims are subject to . . . [Rule] 8(a)(2)" as the "case law . . . support[s] this" and "adopting a heightened pleading standard . . . would run afoul of the PSLRA").

- 10 -

members of the corporation's management.'" *Arthur Child.'s Tr. v. Keim*, 994 F.2d 1390, 1397 (9th Cir. 1993).

Finally, any assertion that a defendant acted in "good faith" is an affirmative defense, not part of the plaintiff's prima facie case. To invoke the defense, a defendant must affirmatively show both the absence of scienter and an effective lack of participation. *See Howard*, 228 F.3d at 1065; *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003); *Todd*, 642 F.3d at 1223. But this too involves a factual inquiry that courts should not resolve on a motion to dismiss. *See In re Apple Inc. Sec. Litig.*, 678 F. Supp. 3d 1147, 1157 (N.D. Cal. 2023) ("Facts going to [defendant's] good faith . . . are for the fact finder to weigh.").

In sum, Plaintiffs need only plead a primary violation and facts supporting the inference that Iger had the power to direct or influence the primary violators. Plaintiffs are not required to allege Iger himself was the primary violator, a culpable participant, engaged in the actual exercise of power, or rebut affirmative defenses at this stage.

### b.    Primary Violations by Controlled Persons Are Established

The first element of a §20(a) claim – a primary violation by a controlled person – is satisfied here. The MTD Order explicitly found that Plaintiffs sufficiently pleaded primary violations of §10(b) against the Controlled Persons. MTD Order at 1-2. The Rule 12(c) Order confirmed the sufficiency of the primary violation allegations against the Controlled Persons. This provides a solid foundation for Iger's secondary liability as a controlling person.

### c.    The Court Misapplied the Law by Requiring More than What §20(a) Demands

The Rule 12(c) Order reflects a manifest error of law because it dismisses Count III based on an incorrect application of the governing §20(a) standard. The Ninth Circuit has made clear that a §20(a) claim requires only two elements: (1) a

- 11 -

4920-0676-8457.v1

primary violation; and (2) control. The Complaint sufficiently alleges both. The Court already found primary violations by Disney, Chapek, McCarthy, and Daniel. That alone satisfies the first prong.

As to the second prong – control – the Complaint sets forth extensive, detailed allegations that Iger, by virtue of his formal roles, direct supervisory authority, continued operational involvement, and access to non-public information, had the power to direct or influence the conduct of Disney and the Individual Defendants. Courts within the Ninth Circuit have consistently held that such allegations – particularly concerning executive roles, policymaking authority, and oversight responsibilities – are sufficient to plead control under §20(a). *See, e.g.*, *Montage*, 78 F. Supp. 3d at 1228; *Mueller*, 2017 WL 3387732, at *6. No more is required at the pleading stage.

By dismissing the §20(a) claim for lack of sufficient allegations of control – despite this well-established standard – the Court improperly elevated Plaintiffs' burden. The Complaint's allegations go well beyond what courts have found sufficient to allow a §20(a) claim to proceed. Dismissing Count III despite those allegations constitutes a misapplication of controlling law. That legal error independently warrants reconsideration.

The Court's reasoning in the Rule 12(c) Order may have stemmed from a misunderstanding that Iger must himself be a primary violator of §10(b) for §20(a) liability to attach. This is a manifest error of law. As established by Ninth Circuit precedent and the statutory language of §20(a), a controlling person can be held liable without also being the primary violator of §10(b). *See, e.g.*, *Todd*, 642 F.3d at 1223. Control person liability under §20(a) is a distinct, derivative form of liability predicated on the primary violation of a ***controlled person***, not a primary violation by the controller. The Ninth Circuit's rejection of a "'culpable particip[ation]'" requirement for the controller in the plaintiff's prima facie case underscores this distinction. *Id.* Therefore, any dismissal of Count III against Iger predicated on a

- 12 -

belief that he must be a primary §10(b) violator would constitute a manifest error of law.

### 2. The Dismissal Rests on a Manifest Error of Fact: Overlooking Abundant Allegations of Iger's Control

The Court's conclusion in the Rule 12(c) Order that "there are no facts to support Count[] . . . Three against Iger" (Rule 12(c) Order at 2) constitutes a manifest error of fact, as it ignores the detailed factual allegations set forth in the Complaint. These allegations, previously before the Court and deemed sufficient for the control prong when the MTD Order sustained the claim, were seemingly overlooked or not given due weight in the Rule 12(c) Order.

### a. The Complaint Pleads Extensive and Specific Facts Demonstrating Iger's Control

The Complaint contains detailed and compelling allegations establishing Iger's power and authority over the Controlled Persons who committed primary violations of §10(b), easily satisfying the Ninth Circuit's control-person standard.

- **Formal Authority and Control over Chapek**: Iger served as Disney's CEO until February 2020, then as its Executive Chairman until December 2021, and concurrently as Chairman of the Board until December 2021. ¶¶22, 114. As Executive Chairman, a role he created for himself, and Chairman, Iger retained control over movie and TV content, while keeping a "heavy hand on operations" and acting "almost as a shadow CEO." ¶¶114, 254. Despite naming Chapek as CEO, Iger was his supervisor, and Chapek was required to report directly to Iger. ¶¶112, 114, 254. Internally, observers viewed this reporting structure as a means for Iger to maintain operational control and to implement an "unusual succession plan" in which Chapek would effectively remain subordinate. ¶114. Iger also chaired a Board whose members he had personally selected, and who treated him as the ultimate authority. ¶101. For instance, at a June 2020 Board meeting, directors asked Iger – but

- 13 -

not Chapek – to stay on for the executive session. ¶258. In November 2022, Iger resumed the role of CEO when Disney fired his successor, Chapek. ¶22.

- **Day-to-Day Influence and Dominance**: Throughout 2020 and 2021, Iger remained deeply embedded in the Company's day-to-day operations. He retained the same CEO office space at Disney headquarters and convened strategy meetings with Chapek's subordinates without inviting Chapek. ¶¶255-258. *The Wall Street Journal* and *Los Angeles Times* reported that Iger "loomed large" over Chapek and operated in an unusual "power-sharing arrangement" that observers likened to a "three-legged race." *Id.* In internal meetings, Iger openly signaled his continuing primacy by referring to himself as "Big Bob" and Chapek as "Little Bob," reinforcing for employees who was "still the boss." ¶257. During the COVID-19 crisis, Iger reassumed direct control, telling the press that he had "effectively returned to running the company." *Id.*

- **Influence over Strategic Direction and Misleading Disclosures**: Iger exercised control not only over operations but over the very conduct at issue in the alleged fraud. He attended and spoke at the December 2020 Investor Day event where Chapek and McCarthy announced the Disney+ subscriber targets that anchor the §10(b) claims. ¶258. At the time, Iger privately "questioned the eye-popping prediction" of 230-260 million subscribers, telling colleagues that Disney had gone "too far," and called the Disney Media and Entertainment Distribution ("DMED") reorganization – a central component of the fraudulent scheme – a "mistake." ¶¶10, 259. Iger expressed these concerns privately but never disclosed them publicly, despite remaining actively involved in content distribution strategy and creative operations. ¶¶254, 259. He also signed

- 14 -

4920-0676-8457.v1

financial statements in this case alleged to contain material misstatements and omissions. ¶26.

- **Board and Insider Accounts Confirm Iger's Ongoing Control**: According to multiple media sources and internal accounts cited in the Complaint, Iger repeatedly undermined Chapek's decisions and was a conduit for complaints from executives who lost power under the DMED structure. ¶259. Indeed, Chapek complained that Iger was "interfering in day-to-day matters that were supposed to be the CEO's domain." ¶257. Even as late as August 2021, Chapek publicly confirmed that Iger shaped the Company's content distribution model. ¶258.

- **Access to Non-Public Information**: As Executive Chairman and Chairman of the Board, Iger had access to material non-public information through internal documents, direct reports, Board meetings, and senior leadership channels. ¶¶26, 28. Iger also left no doubt that he was aware of Disney's deteriorating condition even after his formal leadership role ended. During a February 2023 interview with CNBC, when asked whether Disney's condition was worse than expected when he returned as CEO, Iger responded: "***There were no surprises***." ¶261.

- **Explicit Allegations of Control**: Count III of the Complaint (§20(a) liability) explicitly alleges that "Defendants participated in and oversaw the operation and management of Disney" (¶427) and that "[e]ach of the Defendants, therefore, acted as a controlling person of Disney. By reason of their senior management positions and/or being directors, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Disney to engage in the unlawful acts and conduct complained of herein." ¶429.

- 15 -

4920-0676-8457.v1

These detailed allegations easily satisfy the Ninth Circuit's well-established standard for pleading control person liability. Plaintiffs pled a viable primary violation – which the Court already sustained – and extensively alleged that Iger possessed, and exercised, direct and indirect control over the Controlled Persons during the Class Period. His formal roles as CEO, Executive Chairman, and Chairman of the Board, his retained authority over Disney's operations, his direct supervisory authority over Chapek, his continued involvement in key strategic decisions, and his access to non-public adverse information collectively establish far more than the pleading stage requires to show control. These allegations track precisely the type of evidence courts routinely find sufficient under §20(a), particularly at the motion to dismiss stage, where courts must accept well-pleaded facts as true and draw all inferences in plaintiffs' favor.

These facts compel the conclusion that Iger "possess[ed] . . . the power to direct or cause the direction of the management and policies" of the Controlled Persons. *See* 17 C.F.R. §230.405. The record thus clearly contradicts the Court's conclusion that the Complaint alleges "no facts" supporting Iger's control. Under settled law, this constitutes manifest factual error, and the Court should reinstate Count III as to Iger.

### b. Defendants Never Disputed Iger's Control – They Argued Only that No Predicate Violation Existed

The Court's dismissal of the §20(a) claim against Iger under Federal Rule of Civil Procedure 12(c) is predicated on a ground – lack of control – that Defendants never raised. From the outset, Defendants never disputed Iger's control under §20(a). Instead, their argument focused solely on the threshold requirement of a primary violation under §10(b).

In their motion to dismiss, Defendants expressly argued that Counts II and III must be dismissed "[b]ecause Plaintiffs fail to plead a predicate violation of § 10(b)," not because Iger lacked control. ECF 69-1 at 3. Again, in the section of the brief specifically addressing §20(a), Defendants stated: "Because Plaintiffs fail to allege a §

- 16 -

10(b) violation, Plaintiffs' § 20(a) control person claim fails." *Id.* at 40. At no point did Defendants argue that – even if primary violations by the Controlling Persons were established – Iger did not exercise control over them. The record is clear: Defendants ***never disputed Iger's control***.

This is further confirmed by Defendants' Rule 12(c) motion, which did not challenge Iger's control. The only argument Defendants advanced regarding Count III was, once again, that it failed due to the supposed absence of a primary violation. They made no attempt to contest Plaintiffs' well-pleaded allegations of Iger's executive authority and oversight over the primary violators – allegations which, under controlling Ninth Circuit law, are sufficient to establish control at the pleading stage.

The Rule 12(c) Order's shift in focus to a purported failure to plead control introduces a new and unfounded basis for dismissal – one that Defendants never raised and Plaintiffs did not have an opportunity to challenge at the Rule 12(b)(6) or Rule 12(c) stage. By sustaining the §10(b) claims against the Controlled Persons, the Court rejected the only argument Defendants did raise. The dismissal of Count III on a ground Defendants never raised – particularly where Plaintiffs had no opportunity to address it – constitutes clear error and warrants reconsideration.

**C.    Counsel's Statements at the Motion to Dismiss Hearing Do Not Amend the Complaint or Negate the Well-Pleaded §20(a) Claim**

The Rule 12(c) Order references a statement Plaintiffs' counsel made at the motion to dismiss hearing – "'the only claim against Mr. Iger is for insider trading under Rule 20A'" (Rule 12(c) Order at 2 (quoting Hrg. Tr. at 4)) – but ultimately notes that "regardless" of that statement, dismissal is warranted. While the Court did not expressly rely on the statement, its inclusion may have influenced the outcome. To the extent it played any role, reliance on an isolated, imprecise statement – which counsel made in response to a question from the Court regarding primary liability – to dismiss a distinct claim for control person liability under §20(a) would be improper.

- 17 -

Courts may not disregard well-pleaded claims based on informal or mistaken remarks during oral argument, particularly where those remarks neither purport to amend nor withdraw the operative allegations. *Mendez v. Cnty. of L.A.*, 2012 WL 13418852, at *1 (C.D. Cal. 2012) (granting plaintiffs' request to correct the court's summary judgment order where plaintiffs' counsel "misspoke at the hearing"); *Luft v. Cates*, 2023 WL 1974157, at *3 (C.D. Cal. 2023) (that counsel misspoke at post-trial hearing was "immaterial" because it was a "mistake"), *report and recommendation adopted*, 2023 WL 1971146 (C.D. Cal. 2023). Critically, because this colloquy occurred ***before*** the Court issued its MTD Order upholding the §20(a) claims against all Defendants, treating it as a basis for later dismissal contradicts the law of the case doctrine, which prohibits reconsideration of prior rulings absent changed circumstances or clear error. *See Alexander*, 106 F.3d at 876.

It is a fundamental principle of federal practice that oral argument or colloquy cannot unilaterally amend a formal pleading. *See, e.g.*, *Liqui-Box Corp. v. Advanced Plastic Sys., Inc.*, 2023 WL 3025259, at *2 (E.D. Cal. 2023) ("Argument alone cannot amend the complaint . . ."); *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."). Pleadings, not isolated or potentially mistaken hearing statements, define the scope of the case and the claims asserted. The Complaint unequivocally asserts Count III (§20(a) liability) against "All Defendants," which includes Iger. ¶¶426-431.

Moreover, counsel's statement must be understood in its proper context. Counsel's statement was made in direct response to the Court's specific inquiry as to whether Plaintiffs were "alleging a 10b claim against Iger . . . based on your scheme liability theory" or if he "made any false or misleading statements." Hrg. Tr. at 4:14-15, 4:18-19. Counsel correctly answered in the negative to ***those specific theories of primary §10(b) liability*** against Iger. *Id.* at 4:16-17, 4:20-23. The statement did not

- 18 -

4920-0676-8457.v1

address, nor did it purport to withdraw, the distinct §20(a) control person claim (Count III), which is predicated on Iger's alleged control over *other* primary violators (Disney, Chapek, McCarthy, and Daniel), not on his own primary violation of §10(b) for engaging in the scheme or making misstatements. To dismiss a well-pleaded claim – one the Court had previously found sufficient – based on a potential misinterpretation of a hearing colloquy would constitute manifest error.

## V.    CONCLUSION

The Court's dismissal of Count III (§20(a) control person liability) against Iger in its Rule 12(c) Order was manifestly erroneous. The dismissal inexplicably contradicted the Court's own prior MTD Order, which, under the law of the case doctrine, should have governed. Furthermore, the dismissal was based on manifest errors of law regarding the standards for §20(a) liability in the Ninth Circuit and manifest errors of fact in ignoring, without explanation, the Complaint's extensive allegations of Iger's control. The Court also erred by potentially conflating §20(a) liability with primary §10(b) liability and by improperly relying on counsel's hearing statements to negate a formally pleaded claim, particularly when those statements predated the MTD Order.

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion for reconsideration, vacate its Rule 12(c) Order to the extent it dismissed Count III (§20(a)) of the Complaint against Iger, and reinstate that claim.

DATED:  June 3, 2025                Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP


                                                      s/ Daniel S. Drosman
                                           DANIEL S. DROSMAN

- 19 -

4920-0676-8457.v1

DANIEL S. DROSMAN
RYAN A. LLORENS
JESSICA T. SHINNEFIELD
JEFFREY J. STEIN
NICOLE Q. GILLILAND
JESSICA E. ROBERTSON
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
ryanl@rgrdlaw.com
jshinnefield@rgrdlaw.com
jstein@rgrdlaw.com
ngilliland@rgrdlaw.com
jrobertson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 20 -

4920-0676-8457.v1

**L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 19 pages, which complies with the page limit set by the Court's Standing Order (ECF 18), dated May 19, 2023.

DATED:  June 3, 2025

s/ Daniel S. Drosman
DANIEL S. DROSMAN

- 21 -

4920-0676-8457.v1