ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN (200643)
RYAN A. LLORENS (225196)
JESSICA T. SHINNEFIELD (234432)
JEFFREY J. STEIN (265268)
NICOLE Q. GILLILAND (335132)
JESSICA E. ROBERTSON (352207)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
ryanl@rgrdlaw.com
jshinnefield@rgrdlaw.com
jstein@rgrdlaw.com
ngilliland@rgrdlaw.com
jrobertson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LOCAL 272 LABOR-MANAGEMENT PENSION FUND, on Behalf of Itself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> THE WALT DISNEY COMPANY, et al., <br><br> Defendants. | Case No. 2:23-cv-03661-CBM (ASx) <br><br> <u>CLASS ACTION</u> <br><br> PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER DATED MAY 20, 2025 DISMISSING COUNT III (§20(a) CONTROL PERSON LIABILITY) AGAINST DEFENDANT ROBERT IGER <br><br> DATE: July 8, 2025 <br> TIME: 10:00 a.m. <br> CTRM: 8D <br> JUDGE: Hon. Consuelo B. Marshall |

4927-1180-4239.v3

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................... 1

II.   ARGUMENT ......................................................................................... 2

A.    The Law of the Case Doctrine Mandates Reconsideration .................. 2

B.    Dismissal of the §20(a) Claim Was Manifestly Erroneous Even Setting Aside the Law of the Case ........................................................ 5

1.    Defendants Waived Their Challenge to Iger's Control.............. 5

2.    The Complaint Contains Extensive Factual Allegations Establishing Iger's Control ........................................................ 6

C.    Defendants' Focus on an Out-of-Context Colloquy Is Meritless ......... 9

1.    An Informal Colloquy Cannot Amend a Pleading or Negate a Validly Stated Claim ................................................... 9

2.    Defendants Misinterpret the Oral Argument Colloquy.............. 9

3.    The Court's Dismissal Was Not Based on Counsel's Statement at Oral Argument ......................................................... 10

III.  CONCLUSION ..................................................................................... 10

- i -

4927-1180-4239.v3

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Am. Auto. Ass'n, Inc. v. Darba Enters. Inc.*,
2009 WL 1542704 (N.D. Cal. 2009) ....................................................................5

*Briggs v. OS Rest. Servs., LLC*,
2021 WL 7448752 (C.D. Cal. 2021) ....................................................................4

*Calabrese v. State of Cal.*,
2022 WL 2189433 (C.D. Cal. 2022) ....................................................................4

*Fallon v. Dudek*,
135 F.4th 831 (9th Cir. 2025) ..............................................................................2

*Hakim v. Murano, Inc.*,
2017 WL 11632278 (C.D. Cal. 2017) ..................................................................4

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) .............................................................................6

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) ..................................................................................6

*In re BofI Holding, Inc. Sec. Litig.*,
2017 WL 2257980 (S.D. Cal. 2017) .....................................................................8

*Ketab Corp. v. Mesriani L. Grp.*,
2015 WL 2084469 (C.D. Cal. 2015) ................................................................4, 5

*Kraft v. Old Castle Precast Inc.*,
2016 WL 4120049 (C.D. Cal. 2016),
*aff'd*, 700 F. App'x 704 (9th Cir. 2017) ...............................................................5

*Laub v. Horbaczewski*,
2024 WL 5338661 (C.D. Cal. 2024) ....................................................................4

*Liqui-Box Corp. v. Advanced Plastic Sys., Inc.*,
2023 WL 3025259 (E.D. Cal. 2023) ....................................................................9

*Parziale v. Nelson*,
2021 WL 4272340 (C.D. Cal. 2021) ....................................................................4

- ii -

4927-1180-4239.v3

**Page**

*Pusey v. Dallas Corp.*,
938 F.2d 498 (4th Cir. 1991) ................................................................. 5

*Retamco Operating, Inc. v. Carone*,
2005 WL 8165769 (C.D. Cal. 2005) ...................................................... 4

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v.
OpenBand at Broadlands, LLC*,
713 F.3d 175 (4th Cir. 2013) ................................................................. 9

*Seaman v. Pyramid Techs., Inc.*,
2011 WL 5508971 (C.D. Cal. 2011) ...................................................... 7

*SEC v. Todd*,
642 F.3d 1207 (9th Cir. 2011) ........................................................... 7, 8

*Sw. Airlines Co. v. Saxon*,
596 U.S. 450 (2022) .............................................................................. 3

*United States v. Gartenlaub*,
2024 WL 4987258 (9th Cir. 2024) ........................................................ 2

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedure
Rule 12(b) ............................................................................................. 6
Rule 12(c) ...................................................................................... *passim*

Local Rules
Rule 7-18 .......................................................................................... 4, 5
Rule 7-18(c) .......................................................................................... 4

4927-1180-4239.v3

## I.    INTRODUCTION

The law of the case is not a suggestion; it is a foundational doctrine that ensures judicial decisions are final, consistent, and binding.  Defendants' Opposition to Plaintiffs' Motion for Reconsideration (ECF 159) ("Opposition" or "Opp.") asks this Court to disregard that doctrine and ignore its own, unequivocal order on Defendants' motion to dismiss.[1]  In its MTD Order, this Court held that "Plaintiffs have sufficiently stated a section 20(a) claim for control person liability against Defendants."  MTD Order at 2.  At the time, Iger was a "Defendant."  That ruling became the law of this case, and it should have been the end of the matter.

The subsequent dismissal of the §20(a) claim against Iger in the Rule 12(c) Order was a manifest error of both law and fact, for multiple reasons.

***First***, the dismissal directly contradicts the MTD Order's binding precedent.  The MTD Order speaks with deliberate precision.  The Court was defendant-specific when it dismissed a §20A claim "against Iger" by name.  MTD Order at 2.  In the very next sentence, the Court sustained the §20(a) claim against the collective "Defendants," which included Iger.  *Id.*  Defendants' argument that the Court somehow implicitly dismissed a claim it explicitly sustained creates a logical paradox: a court cannot dismiss a claim in a later order unless that claim was still alive, and the claim could have been alive only if the MTD Order sustained it.

***Second***, Defendants' Opposition relies on a red herring: a mischaracterized courtroom colloquy.  They attempt to transform a discussion about primary liability under §10(b) into a wholesale disclaimer of the distinct secondary control person claim under §20(a).  This argument fails not only because it conflates two separate legal theories, but also because the Court's Rule 12(c) Order expressly stated it was ruling "regardless" of counsel's statement.  Rule 12(c) Order at 2.  The dismissal

---

[1]    Unless otherwise noted, all defined terms are consistent with Plaintiffs' motion for reconsideration (ECF 155), "¶_" or "¶¶_" references are to the Complaint, emphasis is added, and citations are omitted.

was instead based on a finding of "no facts" supporting Iger's control (*id.*) – a conclusion that is itself a manifest error.

***Third***, the Complaint is replete with specific, non-conclusory facts establishing Iger's control, making the Court's finding of "no facts" impossible to square with the record. The Complaint alleges Iger's direct supervision over the primary violators, his retention of operational control over key business areas, his physical command of the CEO's office, his powerful role as Executive Chairman, and his admission that he had "effectively returned to running the company." ¶257.

***Fourth***, the adequacy of the Complaint's allegations of Iger's control is so manifest that Defendants never challenged it in their motion to dismiss (or even in their Rule 12(c) motion). Defendants forfeited any pleading-stage challenge to Iger's control by failing to raise it when moving to dismiss. Indeed, Defendants admitted in their Answer that Iger "participated in the management of Disney" – an admission that is binding on Defendants. ECF 113, ¶427. Their attempt to litigate in installments, now raising an argument they previously withheld, is improper.

Respectfully, the Court's decision to set aside the law of the case and decide an issue Defendants never raised and the parties never briefed is clear error and manifestly fails to consider material facts. This Court should grant reconsideration and reinstate the §20(a) claim against defendant Iger.

## II.    ARGUMENT

### A.    The Law of the Case Doctrine Mandates Reconsideration

The law of the case doctrine ensures that once a court decides a legal issue, that decision remains binding. *See United States v. Gartenlaub*, 2024 WL 4987258, at *1 (9th Cir. 2024). Its core purpose is to promote finality, prevent inconsistent rulings, and preserve judicial economy. *See Fallon v. Dudek*, 135 F.4th 831, 835-36 (9th Cir. 2025). A court may depart from this doctrine only for an intervening change in controlling law, substantially different evidence, or a clearly erroneous prior decision that would cause manifest injustice – none of which apply here.

Defendants now ask this Court to ignore its MTD Order, and they seize on the Court's subsequent ruling by challenging – for the first time – Iger's control. This is textbook gamesmanship: Defendants failed to challenge Iger's control at the motion to dismiss stage, the Court ruled, and its ruling must stand.

Defendants' argument that the MTD Order never addressed the §20(a) claim against Iger is untenable. The Order states: "Plaintiffs have sufficiently stated a section 20(a) claim for control person liability against **Defendants**." MTD Order at 2. At that moment, Iger was a named "Defendant" (¶22), the Complaint defined "Defendants" to include Iger (¶1), and the §20(a) claim was specifically alleged against "All Defendants." Complaint at Count III. Defendants' attempt to inject ambiguity where none exists is a transparent effort to evade the Court's Order.

Defendants also argue that because the Court dismissed the §20A insider trading claim against Iger, it somehow excluded him from its ruling on the §20(a) claim. This argument is nonsensical. The Court addressed each claim separately and made distinct rulings. Indeed, the conclusion that the Court upheld the §20(a) claim as to Iger is powerfully reinforced by the canon of meaningful variation, which presumes that a drafter's use of different language in different parts of the same document is intentional and conveys a different meaning. *See Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457-58 (2022). This Court was defendant-specific when it explicitly dismissed the §20A insider trading claim "against Iger." MTD Order at 2. This precise carve-out for Iger on the §20A claim stands in stark contrast to its broad, unqualified ruling sustaining the §20(a) claim "against Defendants." *Id.* The §20(a) ruling in the MTD Order clearly applied to all Defendants, Iger included.

Further, to sustain a claim against a group of defendants, it is logically necessary for a court to find, at least implicitly, that the allegations are sufficient as to each individual member of that group. Thus, a necessary implication of the MTD Order was that the §20(a) claim against Iger was well-pleaded, which became

- 3 -

binding law of the case.  The irreconcilable contradiction between the MTD Order and the subsequent Rule 12(c) Order is a manifest error that should be reconsidered.

The Court's dismissal also creates a logical paradox.  If the MTD Order had already dismissed the §20(a) claim against Iger, there would have been no live claim for the Court to dismiss in its Rule 12(c) Order.  The very act of dismissing the claim against Iger in the Rule 12(c) Order confirms that the claim was live and pending. The only way the claim could have been live is if it was sustained by the MTD Order. Defendants evidently agreed at the time, which is why, after the Court issued the MTD Order, Iger filed an Answer to the Complaint (ECF 113) – there would have been no reason for him to file an Answer if there were no live claims against him.

Additionally, in a footnote, Defendants argue that clear error is not a proper ground for reconsideration.  Opp. at 5-6 n.1.  Defendants ignore that, as this Court has specifically held, a "'district court may properly reconsider its decision if it . . . committed clear error or the initial decision was manifestly unjust.'"  *Parziale v. Nelson*, 2021 WL 4272340, at *1 (C.D. Cal. 2021) (Marshall, J.); *Calabrese v. State of Cal.*, 2022 WL 2189433, at *1 (C.D. Cal. 2022) (Marshall, J.) (same); *see also Briggs v. OS Rest. Servs., LLC*, 2021 WL 7448752, at *4 (C.D. Cal. 2021); *Laub v. Horbaczewski*, 2024 WL 5338661, at *2-*3 (C.D. Cal. 2024); *Hakim v. Murano, Inc.*, 2017 WL 11632278, at *2 (C.D. Cal. 2017) (granting reconsideration under Local Rule 7-18 based upon a showing of "manifest error").

Regardless, for the reasons set out herein, the Court's Rule 12(c) Order failed to consider material facts, which Defendants acknowledge is a valid ground for reconsideration.  *See* L.R. 7-18(c); *Retamco Operating, Inc. v. Carone*, 2005 WL 8165769, at *2 (C.D. Cal. 2005) (Marshall, J.) (granting reconsideration based upon "'a manifest showing of a failure to consider material facts presented to the Court'" when the Court had not considered certain allegations pleaded in a complaint).[2]

---

[2]  The very cases cited by Defendants support the validity of reconsideration on this ground.  *See Ketab Corp. v. Mesriani L. Grp.*, 2015 WL 2084469, at *4 (C.D. Cal.

### B.    Dismissal of the §20(a) Claim Was Manifestly Erroneous Even Setting Aside the Law of the Case

Even if this Court were to set aside the binding law of the case, the dismissal of Count III against Iger still warrants reconsideration for two independent reasons: (1) Defendants waived any challenge to Iger's control by not contesting it; and (2) the Complaint more than adequately alleges Iger's control.

### 1.    Defendants Waived Their Challenge to Iger's Control

In their motion to dismiss, Defendants had a full opportunity to challenge the sufficiency of the §20(a) claim. They chose to mount their entire attack on a single premise: that Plaintiffs had failed to plead a primary violation under §10(b). *See* ECF 69-1, §III.C.; ECF 124-1, §III.C.1. They never argued that the Complaint did not properly allege Iger's "control." Having lost their only argument against the §20(a) claims when the Court sustained the underlying §10(b) claims, Defendants now pivot to a new theory they could have – and indeed must have – raised at the outset. This is improper piecemeal litigation. By failing to challenge the element of control at the motion to dismiss stage, Defendants waived that argument. *See Am. Auto. Ass'n, Inc. v. Darba Enters. Inc.*, 2009 WL 1542704, at *1 (N.D. Cal. 2009) ("defendants have waived this argument by failing to raise it in their original motion to dismiss"). The Court's failure to consider waiver justifies reconsideration. *Pusey v. Dallas Corp.*, 938 F.2d 498, 500-01 (4th Cir. 1991) (district court wrongly denied reconsideration when it had failed to consider waiver).

Defendants' silence with respect to Iger's control in their motion to dismiss speaks volumes. Defendants declined to challenge control initially because they recognized that argument was futile in light of the Complaint's detailed allegations

2015) ("Plaintiff's assertion that the Court 'failed to consider material facts' is a permissible ground for reconsideration under Local Rule 7-18."); *Kraft v. Old Castle Precast Inc.*, 2016 WL 4120049, at *4 (C.D. Cal. 2016), *aff'd*, 700 F. App'x 704 (9th Cir. 2017). Each of Defendants' cases also analyzed whether the court had committed a manifest error. *See Ketab*, 2015 WL 2084469, at *2-*3; *Kraft*, 2016 WL 4120049, at *5-*10.

establishing Iger's control. As evidenced by their recent mandamus petition against this Court (*see The Walt Disney Company, et al. v. United States District Court for the Central District of California*, No. 25-3794, ECF 1 (9th Cir. June 17, 2025)), these Defendants are not shy about pursuing any and all means – even extraordinary ones – to try to get claims dismissed, so the fact that they chose not to contest Iger's control in either their Rule 12(b) or Rule 12(c) motions is telling.

Because Defendants failed to challenge Iger's control, the Court lacked relevant briefing when it decided that the Complaint omitted facts supporting Iger's control. Only *after* Defendants' initial strategy failed did they latch onto the Rule 12(c) Order and challenge those control allegations. Respectfully, the Court's dismissal of the §20(a) claim against Iger on a basis that Defendants waived was manifest error that should be reconsidered.

### 2. The Complaint Contains Extensive Factual Allegations Establishing Iger's Control

The Court's finding in its Rule 12(c) Order that "there are no facts to support Count[] . . . Three against Iger" (Rule 12(c) Order at 2) constitutes a manifest failure to consider material facts. To state a claim under §20(a), a plaintiff must plead: (1) a primary violation of the Exchange Act by a controlled person; and (2) that the defendant controls the primary violator. *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 702 (9th Cir. 2021). The Court sustained the primary violation claims against Disney, Chapek, Daniel, and McCarthy. The only other element is Iger's control.

Defendants argue that Plaintiffs must plead Iger was "'involved in the day-to-day business of the primary violator or connected to the fraudulent act in some way.'" Opp. at 8. The Ninth Circuit, however, has repeatedly held that "to make out a prima facie case, it is not necessary to show actual participation or the exercise of actual power." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). The actual standard requires only allegations that the defendant "'possess[ed], direct[ly] or indirect[ly], the power to direct or cause the direction of the

management and policies of a person.'" *SEC v. Todd*, 642 F.3d 1207, 1223 n.4 (9th Cir. 2011). Defendants' cases stand for nothing more than the uncontroversial proposition that boilerplate, conclusory allegations of control may be insufficient.

In any event, no matter the test that is applied, Defendants cannot credibly argue that the Complaint lacks sufficient allegations of Iger's control. That is why Defendants did not challenge Iger's control in either their motion to dismiss or their Rule 12(c) motion. Indeed, in the portion of their Answer responding to the §20(a) claim, Defendants "**admit[ted]** that Defendants," including Iger, "participated in the management of Disney." ECF 113, ¶427; *see also id.* at 2 (defining "Defendants" to include Iger). Defendants' admission that Iger participated in Disney's management is **binding** on Defendants. *See Seaman v. Pyramid Techs., Inc.*, 2011 WL 5508971, at *4 (C.D. Cal. 2011) ("The law is clear that Defendants are bound to the admissions set forth in their answer.").

Defendants' current attempt to characterize these control allegations as "conclusory" (Opp. at 9) is belied by their specificity and support from multiple news articles and corporate insiders:

- **Direct Supervision**: When Chapek became CEO, Iger remained Chairman of the Board and was appointed to a new role as "Executive Chairman." ¶¶112, 114. Iger became Chapek's boss, and Chapek was **required to report directly to Iger**. *Id.* This is not a "boilerplate allegation," but rather a specific reporting relationship establishing Iger's direct control over a primary violator. The *Los Angeles Times* also reported that Disney was "run by 'the two Bobs' [Iger and Chapek] . . . Disney established an unusual power-sharing arrangement to allow Iger to stay on as **the company's creative leader**" even after Chapek became CEO. ¶255.

- **Operational Control**: Iger "**retain[ed] control** of movie and TV content," and multiple Disney executives stated Iger kept a "**heavy hand on operations**" and acted "almost as a shadow CEO." ¶114. *The Wall Street Journal* also

reported that Iger "was *interfering in day-to-day matters* that were supposed to be the CEO's domain." ¶257. Chapek also affirmed Iger's involvement in forming the Company's "current approach to distributing our feature-length films." ¶258. During COVID, Iger also *admitted* he had "*effectively returned to running the company*." ¶257. These specific allegations of day-to-day control and involvement far surpass general allegations based on corporate position alone.

- **Physical Presence**: Disney employees reported to CNBC that Iger retained and worked full-time in the same *CEO office space* he previously occupied, and "called strategy meetings with Mr. Chapek's underlings without inviting the new CEO" (¶¶255-258) – concrete actions demonstrating Iger's control.

- **Investor Communications**: Iger spoke at Disney's 2020 Investor Day, yet failed to correct the false and misleading projections announced there. ¶258. These allegations far exceed position-based inferences. They describe specific mechanisms through which Iger maintained control over the primary violators.

Defendants' argument that Iger's disapproval of Chapek's changes indicates lack of control is specious. Iger's failure to *exercise* his control to put a stop to the fraud does not show he did not *have* control. Section 20(a), unlike §10(b), imposes liability on those who control a primary violator, regardless of their direct participation in the underlying fraud. *Todd*, 642 F.3d at 1223. The purpose of §20(a) is to ensure that the buck stops with those who possess the power to direct corporate policy, and it prevents those at the apex of corporate power from escaping liability by interposing intermediaries to take the fall for corporate misconduct. *See In re BofI Holding, Inc. Sec. Litig.*, 2017 WL 2257980, at *20 (S.D. Cal. 2017). Here, Iger *privately* criticized Chapek's projections and activities, but despite "effectively . . . running the company" and speaking directly with investors on Disney's behalf, he did not exercise his control to end the fraud until after Chapek was fired. To dismiss a §20(a) claim against the person who ran the Company, based on a patently

erroneous factual finding, would subvert fundamental investor protections. This constitutes a manifest injustice that this Court has the duty to correct.

### C. Defendants' Focus on an Out-of-Context Colloquy Is Meritless

#### 1. An Informal Colloquy Cannot Amend a Pleading or Negate a Validly Stated Claim

Defendants' attempt to elevate an informal courtroom colloquy into a binding legal event that negates a well-pleaded claim is meritless. An out-of-context colloquy is no basis to ignore well-pleaded allegations. *See Liqui-Box Corp. v. Advanced Plastic Sys., Inc.*, 2023 WL 3025259, at *2 (E.D. Cal. 2023); *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy.").

#### 2. Defendants Misinterpret the Oral Argument Colloquy

Counsel's response to the Court's questions at oral argument must be understood in context. As detailed above, the Complaint includes specific allegations of Iger's control. Indeed, the Complaint has sections titled "Iger Remained Actively Involved in Running the Company" and "As Executive Chairman, Iger Kept a Heavy Hand on Operations Through December 2021." ¶¶114, 254-261. Plaintiffs' extensive allegations clearly established Iger's control, and Defendants chose not to challenge it in their motion to dismiss.

It was in that context that counsel responded to the Court's questions: (1) "So for plaintiff, are you alleging a 10b claim against Iger, I-g-e-r, based on your scheme liability theory?"; and (2) "And so the Complaint doesn't allege that [Iger] made any false or misleading statements?" Hrg. Tr. at 4:13-23. Counsel rightly responded that no such violations were alleged against Iger. Up to that point, there was no suggestion of any challenge to the allegations of Iger's **control**, so the Court's questions and counsel's responses understandably focused only on Iger's alleged **primary** liability. That discussion did not address the separate claim that Iger is

liable due to his control over the primary violators.  No implicit waiver of Plaintiffs' control person claim against Iger was intended or effectuated by counsel's response, and it would be manifest injustice to dismiss a clearly valid claim based on such a misunderstanding.  Defendants' attempt to take advantage of that colloquy to launch a new attack on the allegations of Iger's control is as baseless as it is opportunistic.

### 3. The Court's Dismissal Was Not Based on Counsel's Statement at Oral Argument

In any event, the Court did not base its dismissal on counsel's statement at oral argument.  After noting the colloquy, the Court wrote: "***Regardless***, the Court has reviewed the operative complaint and finds that there are no facts to support" Count Three against Iger.  Rule 12(c) Order at 2.  The Court's use of the word "regardless" confirms that it was the Court's review of the Complaint, not the colloquy, that led to the dismissal of the §20(a) claim.  That review, however, was not informed by relevant briefing due to Defendants' waiver, and the Court overlooked the Complaint's detailed allegations of Iger's control.

## III.  CONCLUSION

For these reasons, the Court's dismissal of the §20(a) claim against defendant Iger was a manifest error of law and fact.  It directly contradicted the law of the case established by the MTD Order and was premised on a clear failure to consider the Complaint's extensive allegations of Iger's control – an issue Defendants waived by failing to raise it.  Plaintiffs respectfully request that this Court grant their motion for reconsideration, vacate the portion of its Rule 12(c) Order dismissing Count III as to defendant Iger, and reinstate the §20(a) claim against him.

DATED:  June 24, 2025                    Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP


s/ Daniel S. Drosman
DANIEL S. DROSMAN

DANIEL S. DROSMAN
RYAN A. LLORENS
JESSICA T. SHINNEFIELD
JEFFREY J. STEIN
NICOLE Q. GILLILAND
JESSICA E. ROBERTSON
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
ryanl@rgrdlaw.com
jshinnefield@rgrdlaw.com
jstein@rgrdlaw.com
ngilliland@rgrdlaw.com
jrobertson@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
JONATHAN ZWEIG (*pro hac vice*)
420 Lexington Avenue, Suite 1832
New York, NY 10170
Telephone: 212/432-5100
jzweig@rgrdlaw.com

Lead Counsel for Lead Plaintiff

**L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 10 pages, which complies with the page limit set by the Court's Standing Order (ECF 18), dated May 19, 2023.

DATED:  June 24, 2025

                                      s/ Daniel S. Drosman
                                      DANIEL S. DROSMAN

- 12 -