UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION - LOS ANGELES)

| | | |
|---|---|---|
| LOCAL 272 LABOR-MANAGEMENT PENSION FUND, | ) ) | CASE NO: 2:23-cv-03661-CBM-ASx |
| | ) | CIVIL |
| Plaintiff, | ) | |
| | ) | Los Angeles, California |
| vs. | ) | |
| | ) | Wednesday, November 12, 2025 |
| THE WALT DISNEY COMPANY, ET AL, | ) ) | (11:28 a.m. to 12:05 p.m.) |
| | ) | |
| Defendants. | ) | |

INFORMAL DISCOVERY DISPUTE [ECF.NO.180]

BEFORE THE HONORABLE ALKA SAGAR,
UNITED STATES MAGISTRATE JUDGE

**APPEARANCES:**             SEE PAGE 2

Court Reporter:          Recorded; CourtSmart

Courtroom Deputy:        Alma Felix

Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 8365
                         Corpus Christi, TX 78468
                         361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**<u>APPEARANCES</u>:**

For Plaintiff:    JONATHAN ZWEIG, ESQ.
           Robbins Geller Rudman & Dowd
           420 Lexington Ave.
           Suite 1832
           New York, NY 10170
           212-432-5100

           DANIEL S. DROSMAN, ESQ.
           Robbins Geller Rudman & Dowd
           655 West Broadway
           Suite 1900
           San Diego, CA 92101
           619-231-1058

For Defendants:    ADAM B. BANKS, ESQ.
           STACY NETTLETON, ESQ.
           ZACH WILLIAMS, ESQ.
           White & Case
           1221 Avenue of the Americas
           New York, NY 10020
           212-819-8301

3

**Los Angeles, CA; Wednesday, November 12, 2025; 11:28 a.m.**

--oOo--

THE CLERK:  Good morning.  Calling Case No. cv-23-3661-CBM-ASx, Local 272 Labor-Management Pension Fund versus The Walt Disney Company, et al.  Beginning with plaintiff's counsel, please state your appearance for the record.

MR. ZWEIG:  Hello, my name is Jonathan Zweig.  I'm with the firm of Robbins Geller Rudman and Dowd on behalf of the plaintiffs and I'm here with my colleague Daniel Drosman and others via Zoom.

MR. DROSMAN:  Hello, Your Honor.

THE CLERK:  And for defendants?

MR. BANKS:  Good morning, Your Honor, Adams Banks from White & Case for defendants.  I have my colleagues Stacy Nettleton and Zach Williams on Zoom as well.

THE COURT:  All right.  Good morning.  Apologies for the delay.  We had a criminal matter which took longer than we anticipated.  This is the hearing on the informal discovery conference that the parties requested.  The Court has received and reviewed the parties' requests as well as their respective submissions in support of their position on this issue.

As I understand it, what's in dispute here is the defendant's -- it's a plaintiff's motion to compel the -- sorry, the defendant's request that they have -- that they answer the Interrogatory No. 1 and the -- and not be subject to

EXCEPTIONAL REPORTING SERVICES, INC

4

the limitations that plaintiff has asked them to in responding to that interrogatory.

First, defendants -- I think plaintiffs are saying that the information that defendants are seeking is work product. And I don't see how identifying a witness and providing that witness' identifying information is in any way or shape work product. So let me hear from plaintiff's counsel on that issue.

MR. ZWEIG: Thank you, Your Honor. As we --

THE COURT: Can you speak up please?

MR. ZWEIG: I apologize, Your Honor. I hope you can hear me better now. Thank you. And as we indicated in our submission our position is that the identifying information for the witnesses described in our complaint and labeled as confidential is work product because providing that information would enable defense counsel to understand the strategies, prioritization, the course and development of the investigation that led to our filing the amended complaint.

And this as the courts have found, for example, in the Gray matter and the MTI matter. And I would also note, this is a situation in which the defendants can't demonstrate any substantial need for the information because the -- now that we're past the motion to dismiss stage, what's primarily at issue is not the allegations themselves, but rather the underlying evidence, the underlying facts that's something that

should be the scope -- addressed in discovery as opposed to focusing on the allegations themselves, which of course, are not evidence.

I would lastly note that Disney itself, of course, has access to all of the files and e-mails of any custodian at the company that it would like.  And so it's perfectly able to gain an understanding of what is -- for example, its executives understood at different periods of time and otherwise what was going on at the company.

**THE COURT:**  I don't understand though how just giving the identity of a witness, a confidential witness and giving their contact information how that information in and of itself can be attorney work product.  You've -- they're asking for the identity of the seven witnesses that are referenced in the complaint, right?  They're not asking --

**MR. ZWEIG:**  That's correct, Your Honor.

**THE COURT:**  -- for more than that.  They -- and so how are they supposed to sort of focus their discovery requests and defend against the allegations if they don't know who the complainants are?

**MR. ZWEIG:**  Yes, Your Honor.  We recognize that courts have come to different outcomes and decisions on that matter.  I would say that, you know, there are also additional work product implications.  For example, if defense counsel is speaking with one of these witnesses asking about the

6

investigation and so forth, that's why I think our primary position here today and the compromise that we offered to the defendants, would be to implement the Biavie (phonetic) and the Carvana limitations.

So the defendants can still undertake an investigation of the underlying facts while protecting work product privilege and taking into account those considerations, as well as protecting the confidential witnesses themselves from the potential for intimidation or retaliation.

THE COURT:  Well, is there any evidence or any information that you have that leads you to believe that these witnesses believe that giving their information or being identified by name would be intimidating or threatening to them?

MR. ZWEIG:  We have, of course, spoken with the confidential witnesses.  They have -- you know, without delving perhaps in this hearing too much into the details, have expressed concerns.  Many of them are still in the entertainment industry.  Certainly Disney is an important force in that industry, I don't think anyone could deny that, you know, doing deals with different companies in order to, for example, distribute shows or make movies and the like.

Also, it's reality that the Court recognized in Biavie that people frequently rely on, for example, recommendations or referrals from their former employers, just

7

in their careers in general.  And that also, just as -- I think it's intuitive at least to me that there would be the potential for intimidation even if that's not defense counsel's intention by any means, to receive a phone call from counsel from one's former employer, and not just any former employer, but a large company like Disney saying, what did you tell plaintiff's counsel, you know, did you tell them this, what did they ask you, how did this develop, why didn't you just tell them to take a hike, for example, you know.

So as the Court found in Biavie and was reaffirmed in Carvana it's sort of an inherent potential for intimidation or coercion in that situation, even if that isn't defense counsel's intention.  And, of course, we haven't yet disclosed these folks' identities, so it's not a surprise that the potential intimidation has not yet occurred.

**THE COURT:**  Isn't the Biavie case one in which the Court imposed those limitations because there had been evidence of, you know, there'd been improper contact with the witnesses and there was a basis to find that these limitations were necessary?  And I don't know that the situation is exactly, you know, falls within that case and the holdings in that case.

**MR. ZWEIG:**  Yes, Your Honor.  So in the Biavie case, there was a question about defense counsel's prior contact where they had indicated to the witnesses that they had been named in the complaint.  And there was a question about whether

EXCEPTIONAL REPORTING SERVICES, INC

that wording was exactly accurate because these witnesses had been described in the complaint but not by name.

But then the Court went on to hold that, you know, defense counsel responded that, you know, be that as it may, we certainly have never intimidated or harassed these folks.  And the Court went on to hold that evidence of such harassment or intimidation was not necessary in order to impose these, what I think are fairly described as modest limitations.

And in the Carvana case, which followed the Biavie there was no hint of intimidation or of misconduct by defense counsel at all.  So what I would emphasize, I suppose, these protections while important are modest, they are things that we think defense counsel should -- that should be relatively uncontroversial.  And which defense counsel have even hinted that well maybe they'll follow some of them pursuant to general ethics rules and the like, but they haven't specifically committed to following them and we think they should.

THE COURT:  All right.  So you haven't -- these witnesses, these -- who are identified in the complaint by initials; is that right, or they're just identified as --

MR. ZWEIG:  They're identified as, excuse me, Your Honor, as C.W. 1, C.W. 2, et cetera --

THE COURT:  Okay.

MR. ZWEIG:  -- and also by a title, role and approximate date of employment.

THE COURT: All right. And they certainly have not been under any illusion that their identity is never going to be disclosed or they're never going to be called as witnesses or they're never going to be deposed, right?

MR. ZWEIG: That's correct, Your Honor. We told these witnesses that we would endeavor to keep their identities confidential but disclosed to them that it was possible that the Court would order us to disclose their identities, in which case we would of course do so.

THE COURT: All right. And if there is a concern that those identities should, you know, not be publicly disclosed, why couldn't their identities be disclosed to the defense along with the other information that's in that interrogatory there? Their full name, their present or last known address, telephone number, e-mail address, the position they held at Disney and the dates of employment, why couldn't all that information be subject to a protective order so, you know, it's not in the public arena, but it is information that is used for this litigation?

MR. ZWEIG: Yes, Your Honor. In fact, that's one of the protections that we are seeking and that was ordered in Biavie and Carvana was that the witnesses' names would not be publicly disclosed. So, Your Honor, we certainly agree and that's one of the protections we're seeking.

THE COURT: And then what about this also you are

10

seeking -- you don't want them to be questioned about -- I don't understand this.  You don't want the defendants to question any confidential witness about plaintiff's prefiling investigation.  What do you mean by that?

MR. ZWEIG:  Yes, Your Honor.  So under what the Court ordered in Biavie and Carvana and what we propose here, the defendants would be free to ask the witnesses about the underlying facts of what was going on at Disney during the relevant period and so forth.  What would be -- what they would not be permitted to do is say, did you tell plaintiff's counsel or plaintiff's counsel's investigator X, and what did they tell you and what was the back and forth there.  On the theory that's what relevant at this point is not an investigation of the investigation, but rather what are the underlying facts that were going on at Disney.  That's the evidence that will decide this case and that's currently relevant in discovery.

THE COURT:  Right.  But in your complaint you have made statements that were attributed to these witnesses, right?

MR. ZWEIG:  That's correct, Your Honor.

THE COURT:  So why wouldn't the defense be able to verify that these statements that have been attributed to these witnesses in the complaint are in fact what these witnesses have told counsel?  I mean, how can they verify the accuracy of those representations without asking the witnesses?

MR. ZWEIG:  Your Honor, maybe it's a semantic.  But

11

our view is that the defense counsel can certainly -- you know, if we have an allegation that C.W. 1 says that event X occurred.  The defendants can certainly ask the witnesses if they speak with them, did event X occur, did it occur in this way or that way and they can ask as many questions about that as they may like, but that would be different from saying, did you tell plaintiff's counsel such and such.

Now, the question could be quite similar on the surface, but it could go in different directions of, you know, what did they ask you, how did you respond, so on and so forth. We think that the focus, the proper focus at this stage is on the underlying facts because the allegations per se no longer have any particular relevance in terms of evidence that would be admissible at trial or anything like that.

What's relevant and ultimately may be admissible at trial are witness statements about the underlying facts of what was going on at Disney during the relevant time.  And that also if there was a discussion about the conversations with plaintiff's counsel and the investigator, that's when there could be a -- there could well be an intrusion on privileged work product.  And, of course, we wouldn't necessarily be on those calls to say, huh-uh, don't ask.  That's one question too many, it's not like any deposition where we can object in real time and so forth.

THE COURT:  I think that's really hard to -- it's

12

sort of like a fine line between asking a witness, you know, did XYZ as stated in the complaint and did you tell plaintiff's counsel that XYZ happened.  Or maybe the witness says, you know, this thing happened and it went on for, you know, five months but the complaint says that this went on for, you know, 12 months.

And I think defense counsel should be able to ask the witness you say it happened for five months, but did you tell plaintiff's counsel that it happened for 12 months.  I mean, I think that's certainly something that they're, you know, entitled to question.  But then if you characterized that question as well now you're getting into what they said to the attorneys and that's work product, I don't see how that's work product, that's just, you know, they're entitled to probe the accuracy of what has been represented in the complaint that has been attributed to them.  And I don't see how that gets into work product or sort of reveals, you know, plaintiff's counsel's sort of strategy in this case.  I'm really struggling to understand your -- you know, that part of your argument.

You know, I think and I'll have defense counsel address this, but I don't see a problem with asking these witnesses at the outset if they're represented by counsel and if they want to be -- you know, if they want to speak through their attorneys or if they're willing to be interviewed without counsel.  I don't see a problem with that.  I don't think

13

that's intimidating.

And, you know, this other guideline that you wanted, they cannot question any witness about plaintiff's prefiling investigation.  I don't know where you draw the line between, you know, asking them about the underlying facts and getting into the prefiling investigation.

And then the other guideline you want, is you don't want defendants to request documents relating to the prefiling investigation, is that -- like if they're trying to confirm what the -- what has been attributed to these witnesses in the complaint, as well as question witnesses about the allegations in the complaint, the factual -- you know, the information that you say they can question, why should they not be able to request documents?

MR. ZWEIG:  Your Honor, I would highlight the Hitamian (phonetic) case which we cited in our letter, in which the Court held that the back and forth between witnesses and plaintiff's counsel or their investigator, it's part of the process of witness development, developing the case and so forth and that those communications could very well reveal work product, because it's part of the investigatory process and the case development case.  And so that was what the Court held in Hitamian and we think that was a correct ruling.

THE COURT:  But on the other hand, they're entitled to do their due diligence and investigating the propriety of

EXCEPTIONAL REPORTING SERVICES, INC

14

the allegations, so I don't understand why there should be a request like a prohibition against them requesting the documents.  I mean, I guess the problem I have is this term prefiling investigation.  I don't know where that line is between asking a witness, you know, tell me what happened, what are the facts from -- did you convey these to, you know, plaintiff's attorneys.  And if there are discrepancies, you know, probing into those.  Do you have documents, did you provide those documents to plaintiff's counsel.  I don't see how that really gets into what you are calling a prefiling investigation.

**MR. ZWEIG:**  Your Honor, so perhaps one way to cut through it is separately, the separate request for production the defendants asked for any documents provided to us by these witnesses about what was going on at Disney and so forth.  And we accurately responded that we had no such documents.

In other words, any of -- documents that would be subject to this proposed limitation, we're not talking about documents of, you know, a 2022 e-mail of something going on at Disney or anything like that.  What we would be talking about are simply the communications back and forth between the witnesses and, for example, our investigator.

So those are the kinds of documents that would be subject to this protection and those are the documents that in our view are privileged work product for the reasons I

indicated.

THE COURT: Okay. So you would replace communications with -- sorry, replace the term documents with communications, written communications with the plaintiff's counsel or their investigator?

MR. ZWEIG: Yes, Your Honor, that would be more accurate.

THE COURT: All right. Then you also want these witnesses to be advised that they might be subpoenaed and they can object or be represented by counsel at a deposition and being subpoenaed for a deposition.

I mean, presumably they know that that's a possibility, right. You said at the outset they were never promised that, you know, their identity would never be disclosed or that they would never be called as witnesses. So I don't know why this is necessary.

MR. ZWEIG: Your Honor, certainly we indicated that to them. The way I think about is it means more coming from defense counsel in the moment, in that conversation, reminding the witnesses that they have these options. It's certainly accurate information that I don't really see why the defense counsel would be reluctant to provide it, and that it could, you know, it could be helpful to them to know in that moment that they have these options, which is accurate information.

THE COURT: All right. Then what is this other

16

guideline, that they -- if they're changing, clarifying or recanting information in the complaint, they need to submit a declaration and an accompanying declaration from counsel?  What is that?

         **MR. ZWEIG:**  Yes, Your Honor, and this is part of the package of protections in Biavie and Carvana.  I think the purpose is just that if there were, and there haven't been in this case, but if there were for any reason to be a recanting declaration by one of these confidential witnesses that there would be a certification by counsel that they complied with these -- with these protections.

         You know, I think that's -- in the circumstance where there is recanting or potential recanting, you know, that's where these -- you know, the concerns that these protections are designed to alleviate or somewhat alleviate really come into play.  Has somebody been pressured or intimidated into changing their story.

         And so it seems like if these protections are ordered, then defense counsel should have no problem with certifying they've complied with them.

         **THE COURT:**  All right.  Let me hear from counsel for the defendants.  Let me just say at the outset that I don't have a problem with the first guideline asking the witnesses if they're represented by counsel, and if they say yes, then you know, going through counsel.

And if they say no, then advising them that, you know, you can be interviewed without an attorney or you can have an attorney and proceed with interviewing with your attorney or you can decline to be interviewed. Presumably they have the right to say that they don't want to be interviewed and then you can compel that through a subpoena or notice their deposition.

So I don't have a problem with that first one. But I don't think that defendants should be precluded from questioning these witnesses about -- I just don't like this term prefiling investigation, so I would not, you know, consider imposing that guideline.

And if the documents are limited to e-mail communications, then defendants, you know, should be -- I mean, they can certainly seek those communications, but they can seek them from the plaintiff's counsel, not from the witnesses.

I don't know about this advising them if they might be subpoenaed and they have a right to object or be represented by counsel, I'd like to hear from defendants about that.

I would not impose a condition that the parties don't identify these in publicly filed documents, because I think a protective order can take care of that. And as far as this declaration from counsel if a witness changes, clarifies or recants their information, I think that's something that can be addressed down the line if it becomes an issue. I don't know

18

that it needs to be part of the guidelines that are set initially.

So those are just my thoughts, but let me hear from defense counsel.

**MR. BANKS:**  Thank you, Your Honor.  So starting with -- I'll just have the background principle, I think just to set the stage a little bit.  I fully agree with the cases and we cited dozens of them in our -- at least a dozen of them in our brief, that this is not work product and identities are not work product.

And the restrictions that plaintiff's counsel are asking for here is kind of akin to a protective order insofar as they need to show good cause in order for those protections to be implemented and that's recognized in a number of the cases that we cite in our papers.

And as counsel pointed out in the cases that impose the restrictions, the Biavie case in particular, you know, the Court had noticed the history of potential interference and that's so one reason those restrictions were imposed.

The Carvana case which counsel had referred to, we looked back at the transcript in this case and there's no opposition to the restrictions it appeared from the transcript. So that explains why they were ordered there.

But then as you get to the individual, you know, restrictions that Your Honor has started to go through, in the

19

first three relating to, you know, asking if they're represented by counsel and only going through counsel if so, you know, these are sort of common ethical requirements that we all have as lawyers and I think it's unnecessary for an additional layer of court order to impose them, but you know, we would not, you know, obviously question a witness without counsel if they are represented.  And, you know, if they tell us they don't want to talk to us, we wouldn't insist on pressuring them to do so.

So again, I think if Your Honor orders that, I think it's consistent with, you know, background principle.  So not on its own necessary, but we don't have, you know, a big issue with that one.

Number four I think Your Honor identified, this is the one with respect to questioning the witnesses about the investigation.  I think Your Honor identified in particular the problem that we had with it, which it prevents us from getting -- to test the allegations.  And these are not just bystanders. They're substantive allegations in the complaint about what the witnesses said including at the time of the events that happened that we need to be able to test and defend against.

You know, what's the context in which these statements were made, what other things were said, what documents either corroborate or contradict what they said, we need to know who they are to be able to make that analysis.  So

20

that one I think we strenuously oppose.

The next one with respect to the subpoenaing documents and so forth, here's where I think the line can be drawn.  Certain e-mails from or e-mail communications from a witness to the plaintiff's counsel relaying facts about what happened, that doesn't reveal any mental impressions of the attorneys, doesn't reveal any strategy or litigation, tactics of the attorneys, that doesn't fall within a work product protection.

There are facts about what happened that the witness is conveying.  And so to the extent there are any communications like that, we should be able to get those and we can request those from plaintiff's counsel.

As it relates to documents that a witness may have that are relevant that were passed on to plaintiff's counsel or otherwise, plaintiff's counsel told us there aren't any, but I do think we would be entitled to ask the witnesses if they have them themselves.  So I think that restriction in that respect goes too far.

The restriction six with respect to advising a witness that they may have to be deposed, I mean, presumably again counsel's already said that.  I also think any subpoena says that in it, that you have the right to counsel to appear for your deposition, so I don't think that's necessary.  It also strikes me as superfluous considering the context in

21

which, you know, that will be conveyed.

And number seven with respect to public identification, I think the protective order we have in place covers that one.  And then the last one with respect to sort of an -- an affidavit with respect to recanting information I think, you know, that can be addressed if we need to down the road, but certainly we would comply with any order that Your Honor issues with respect to arrangements and dealings with confidential witnesses.

THE COURT:  All right.  So I think that -- well, let me ask you, Mr. Drosman, did you want to respond any of that?

MR. ZWEIG:  Oh, sorry, Mr. Drosman may be on mute.  I think he's indicated he doesn't wish to.

THE COURT:  Oh, no, I'm sorry.

MR. ZWEIG:  I don't know if you're referring to --

THE COURT:  Yeah, sorry.  I can't read the small lettering on the Zoom, but yeah, did you want to respond?

MR. ZWEIG:  That's quite all right, Your Honor.

I guess just a few points and I'll be brief.  Which is that with respect to the questioning about the prefiling investigation I understand Your Honor doesn't like that term. What I would only say is what we're interested -- what we think should be avoided from a work product point of view, and frankly just a relevance point of view, is an interview or essentially a deposition that's about the investigation itself.

22

And that what's relevant here are the underlying facts and, you know, that's what the Court found in Biavie.  And that, you know, an investigation of the investigation is essentially a sidetrack and not what's relevant at the stage of the proceedings where the allegations themselves, of course, are not evidence.  What will be evidence in this case is what witnesses say and so forth and what the documents say.

I would also -- and the same analysis I think really applies to the communications, you know, whether e-mail or through whatever format with the witnesses in terms of, you know, if there's a communication setting up a time to talk, and you know, discussing further, you know, what will be the subjects of the conversation, so on and so forth.

You know, if an investigator says, I'd like to discuss topics A, B and C, you know, that's information about what we were investigating at that time, what we were prioritizing, what we felt this witness may be able to add to the case, that's all privileged.

You know, it's of course not to suggest that it's going to be a gold mine for defendants and that it will help them in any way at the end of the day, nonetheless, it presents an important principle that that's privileged material and that that shouldn't be the focus at present.

I would also say in terms of the identification of the confidential witnesses publicly, you know, certainly we

will designate that information as confidential and is information that cannot be shared publicly. From the defense counsel's comments today I understand they then would not oppose that designation or say no, we should have the right to reveal these names publicly.

But the last point I would make, Your Honor, is that, you know, of course the confidential witnesses themselves are not here in this Zoom to defend their confidentiality or anonymity, so I would ask that we be given perhaps a week to -- or a few days at any rate to provide this information to defense counsel. We can let the confidential witnesses know this is happening and that if any of them have any particularized concerns that they would like to present on ex parte basis to Your Honor, at least without the names being visible or something of that sort, then they would have an opportunity to do so.

I don't know whether anyone would avail themselves of that opportunity, but it seems like, you know, since they're not here in the room to make these points themselves, it might make sense to provide them that opportunity. And, in fact, that was something that was done in a couple of the cases cited by defense counsel. If I remember correctly perhaps the Arbitran (phonetic) and Bank Atlantic case.

But in any event, in at least of the couple of cases cited by defendants where this disclosure was required, the

24

Court provided a week or so for that to happen.

THE COURT: All right. I don't have any problem with giving you a week to respond to the interrogatory. But you don't represent these witnesses, so I'm not going to, you know, rule on any procedure that could be, you know, that would involve them seeking some sort of relief from the Court. That would be -- that would have to come from them and their counsel, okay, if they're represented.

So I think where we are is I am okay with the first guideline asking at the outset if the witnesses -- I might not know the manner in which these are numbered, but the guideline that they be -- that they be given an opportunity to state whether they're represented by counsel and if they are, that communications with those witnesses be -- go through their counsel and if no, that they just be advised that they can decline to be interviewed, they can have counsel present during any interview, or they can, you know, agree to be interviewed without counsel.

I am not going to impose any limitations with respect to questioning them about any prefiling investigation. You -- plaintiffs have indicated that the witnesses, these witnesses did not provide any documents to plaintiff's counsel and so with respect to questioning them about this guideline about not requesting documents, they -- defendants cannot request that these witnesses provide their e-mail communications to the

plaintiff's counsel or their investigators, but defendants can request those e-mail communications from plaintiff's counsel and plaintiff's counsel can redact any information that falls within the purview of work product.  But certainly communications that set forth the facts underlying the allegations in this case would not be work product.

And I don't -- it's not necessary to advise these witnesses that they might be subpoenaed or their depositions might be noted and they have a right to object, because that's on the face of any notice or a subpoena.

The plaintiff's disclosure of the identity of the confidential witnesses and identifying information will be pursuant to a protective order.  Has there already been a protective order issued in this case?

**MR. ZWEIG:**  Yes, Your Honor.

**THE COURT:**  All right.  So then you can just designate that information as confidential under the protective order.  And I don't see any need to impose at this time any request that any, you know, information that a witness provides that is different from what they -- what is represented in the complaint, you know, needs to be accompanied by a declaration from the witness or from counsel.  You know, that situation may present itself down the road, but I don't see any need to impose that guideline now.

So that would be the order and I will give you a week

26

to respond to that interrogatory.  And I will issue an order.  So the week would be November 19th.  Okay?

Is there anything else we need to take up at this time?

MR. ZWEIG:  Not from plaintiffs, thank you, Your Honor.

MR. BANKS:  No, Your Honor, thank you.

THE COURT:  All right.  Thank you, everybody, have a good rest of the day.

**(Proceedings concluded at 12:05 p.m.)**

**\* \* \* \* \***

27

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    **November 14, 2025**

         **Signed**                                              **Dated**


*TONI HUDSON, TRANSCRIBER*