# EXHIBIT C

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN (200643)
RYAN A. LLORENS (225196)
JESSICA T. SHINNEFIELD (234432)
JEFFREY J. STEIN (265268)
NICOLE Q. GILLILAND (335132)
JESSICA E. ROBERTSON (352207)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
ryanl@rgrdlaw.com
jshinnefield@rgrdlaw.com
jstein@rgrdlaw.com
ngilliland@rgrdlaw.com
jrobertson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LOCAL 272 LABOR-MANAGEMENT PENSION FUND, on Behalf of Itself and All Others Similarly Situated, | Case No. 2:23-cv-03661-CBM (ASx) |
| Plaintiff, | CLASS ACTION |
| vs. | [~~PROPOSED~~] STIPULATED ELECTRONIC DISCOVERY AGREEMENT |
| THE WALT DISNEY COMPANY, et al., | |
| Defendants. | |

4920-0507-5237.v6

This Stipulated Electronic Discovery Agreement will govern how the parties manage electronic discovery in the above-captioned case.

## I.    PRESERVATION

The parties will meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this litigation.

## II.    IDENTIFICATION OF RESPONSIVE DOCUMENTS

The parties shall meet and confer in an effort to conduct discovery in the most efficient and effective manner.  Specifically, the parties will attempt in good faith to come to an agreement on search and culling methods used to identify responsive information.  The parties will meet and confer regarding any proposed limitations on the scope of discovery, including custodians, custodial and non-custodial sources, date ranges, file types, or any additional proposed method to cull documents for review (*e.g.*, search terms, technology-assisted review, predictive coding).  The parties will meet and confer regarding the appropriate methodology for identifying short message format communications for production.  The parties will not seek Court intervention regarding the methodology to be used to identify responsive information without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

### A.    Sources

The parties will disclose and discuss sources likely to contain responsive information, including custodial and non-custodial data sources.  The parties will identify and describe any relevant electronic systems and storage locations.  As part of the conferral process, the parties will promptly notify each other of any known document retention policies or practices (or deviations from those policies and practices) that are impacting or have impacted the production of relevant electronically stored information, including, for example, the use of auto-delete functions, the deletion of information by custodians upon their departure from the

- 1 -

company, and whether any routine functions concerning this data has caused the deletion or destruction of relevant ESI.

**B.     Identification of Custodians and Files**

Each party shall take reasonable steps to identify persons with documents and electronically stored information ("ESI") relating to the subject matter of this litigation. This will include a description of the proposed custodians' job title and dates of employment in the relevant role(s). To the extent they exist, the parties will expedite the production of organizational charts to facilitate the identification of appropriate custodians. After this exchange of information, the parties shall meet and confer regarding which custodian's files will be searched. The parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional custodians be searched and meet and confer regarding such request.

**C.     Targeted Responsive Documents**

The parties recognize that there may be documents and categories of documents that are relevant to this action and responsive to a party's document requests, and that are regularly maintained in a known location, or in a location that is knowable upon reasonable inquiry of those with knowledge about a party's document management. Such documents shall be identified without the use of search terms or other agreed-upon advanced search methodology (*e.g.*, analytics, predictive coding, technology-assisted review). Examples of such documents may include, but are not limited to, organizational charts, meeting minutes, and materials prepared for executives in advance of earnings calls. The producing party will indicate which categories of documents and data sources will be collected and/or produced with and without the use of search terms or other advanced search methodology. Each party will identify non-custodial files that are most likely to contain documents and ESI relating to the subject matter of this litigation. Where potentially responsive ESI shall be searched through the use of search terms, the

- 2 -

4920-0507-5237.v6

parties agree to follow the process identified below, and the parties shall meet and confer regarding any proposed deviation.

### D.    Search Terms

Where the parties agree that potentially responsive ESI shall be searched through the use of search terms, the parties shall use the process identified below and shall meet and confer regarding any proposed deviation.  The producing party shall provide a list of proposed search terms, which shall contain all search terms that it believes would lead to the identification of relevant documents.  To the extent reasonably practicable, search terms will be crafted with input from Disney personnel knowledgeable about appropriate nomenclature, acronyms, codewords, etc.  After receiving the proposed search terms, the receiving party shall provide any additional search terms that it believes are necessary to identify responsive documents.

After receiving additional search terms, the producing party will provide a search term hit list or hit report after global de-duplication (including the number of documents that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list, with and without families).  The parties shall meet and confer regarding the proposed search terms.  The parties will use best efforts to agree to a set of search terms within 21 days of receipt of the originally proposed search terms.

If disputed terms still exist at the end of the meet-and-confer process, the parties will submit those terms to the Court in accordance with Local Rule 37.

### E.    Technology-Assisted Review

To the extent a producing party plans to use Technology Assisted Review ("TAR") to identify responsive documents, prior to implementation of TAR, the producing party agrees to disclose:

> (a)    the name of the software and provider the party intends to use;

- 3 -

4920-0507-5237.v6

(b)     the general process and workflows by which the party intends to use the software, including who will conduct the different phases of the review;

(c)     a general description of the data included in the TAR corpus and those excluded from the corpus;

(d)     the quality assurance and validation procedures the party intends to use; and

(e)     the stopping point criteria the producing party intends to apply.

The producing party shall also disclose whether any of the above tools or procedures are changed over the course of its review.  Prior to the implementation of TAR, the parties will promptly meet and confer to resolve any disputes regarding the proposed TAR process.  The parties do not intend to use GenAI tools to identify or cull documents for review or production.

## III.    PRIVILEGE LOGS

The parties shall prepare and provide privilege logs in accordance with Federal Rule of Civil Procedure 26(b)(5).  Privilege logs shall be produced or updated within 45 days after a document is withheld from production by either party; provided, however, that the parties will meet and confer about the appropriate timing of privilege logs for any productions that occur within the final 60 days of fact discovery.  The parties will not search for or review communications or documents to or from counsel created after the filing of the first complaint in this action on August 31, 2021 (ECF 1), and need not produce individual privilege log entries for such communications or documents because the cost and burden of doing so would overwhelmingly outweigh any potential benefit.

The production of privileged or work-product protected documents, electronically stored information ("ESI") or information, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding.  This shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

- 4 -

4920-0507-5237.v6

## IV.    PRODUCTION OF HARD-COPY DOCUMENTS – FORMAT

Hard-copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat).  The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME," and "CUSTODIAN."  The documents should be unitized based on physical boundaries (*i.e.*, a document per staple, folder, clip, binder, tab, etc.) and be produced in the order in which they are kept in the usual course of business.  If an original document contains color, and the color is necessary to understand the meaning or content of the document, the document shall be produced as single-page, ***300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image***. Multi-page OCR text for each document should also be provided.  The OCR software shall maximize text quality.  Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## V.    PRODUCTION OF ESI

### A.    Format

Except where otherwise noted in this section, the parties will produce ESI in single-page, black and white, TIFF Group IV, 300 DPI TIFF images.  Spreadsheet and presentation type files, audio and video files, and photo and graphic image files, shall be produced in native format with associated slipsheet and a single Bates number.  Presentation type files, and photo and graphic image files that are redacted for privilege will be produced as redacted images in the default format.  Redacted documents with tracked changes will be configured to include the original formatting and markup.  Spreadsheets requiring redaction will be redacted using native redaction software and produced in native format.  The parties will meet and confer about the proper method for redaction of audio and video files.

To the extent RSMF is not available, short message communications (*e.g.*, text messages, WhatsApp, Slack, iMessage, Teams, G-Chat, Bloomberg, etc.) will

- 5 -

be produced as images in the default format with all available metadata and attachments. The complete responsive communication will be produced, separated into 24-hour increments to provide necessary context to the responsive communications. The producing party may redact messages that contain privileged information or information that is both (i) not responsive, *and* (ii) highly sensitive and personal (*e.g.*, personal health or family matters). But the reason for the redaction must be clearly stated on the face of the document. To the extent RSMF cannot be provided, the parties shall meet and confer on the appropriate metadata fields. The receiving party reserves the right to request specific documents be produced in color to the extent reasonably necessary to understand the meaning and content of the document. Reasonable requests for such documents in color shall not be denied. The parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. TIFFs/JPGs will show any and all text, hidden content, and images that would be visible to the reader using the native software that created the document. For example, TIFFs/JPGs of email messages will include the BCC line, and documents will display comments and hidden content. If the image does not accurately reflect the document as it was kept in the usual course of business, including all comments, edits, tracking, etc., the parties agree to meet and confer in good faith on production format options.

If a document is produced in RSMF or in native format, a single-page Bates stamped image slip sheet stating the document has been produced in native format should be provided. Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the parties agree to meet and confer in good faith.

- 6 -

4920-0507-5237.v6

**B.      De-Duplication**

Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates.  The parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.  Documents will not be removed from production using near duplication or email thread suppression.  Email thread suppression may only be used to remove lesser inclusive emails from production if the email thread is redacted for privilege; provided, however, that the parties agree to meet and confer promptly about reasonable requests for specific lesser-inclusive emails that are necessary for use at a deposition, hearing or trial.  De-duplication will be done across the entire collection (global de-duplication) and the CUSTODIAN-ALL field will list each custodian, separated by a semicolon, who was a source of that document and the FILEPATH-DUP field will list each file path, separated by a semicolon, that was a source of that document.  Should the CUSTODIAN-ALL or FILEPATH-DUP metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents will be produced prior to substantial completion of the document production.

**C.      Metadata**

All ESI will be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto.  The metadata produced should have the correct encoding to enable preservation of the documents' original language.

For ESI other than email and e-docs that do not conform to the metadata listed in Table 1, such as text messages, Instant Bloomberg, iMessage, Google Chat, MS

- 7 -

4920-0507-5237.v6

Teams, Slack, Google Docs, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.

### D.     Embedded Objects

Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved.  The embedded files will be marked with a "YES" in the load file under the "Is Embedded" metadata field.  The parties agree logos and other inline images need not be extracted as separate documents as long as they are displayed in the parent document.

### E.     Hyperlinked Content and Attachments

The parties agree that if any part of a communication, associated hyperlink, or embedded attachment is responsive, the communication, embedded attachments, and hyperlinked content will be produced, except where production of hyperlinked content is technically infeasible, or except any records or content that must be withheld or redacted on the basis of privilege.  The parties may meet and confer about whether there is an appropriate basis for withholding a record for any reason other than attorney-client or work product privilege.  The records will be produced in the form they are maintained in the normal course of business including the necessary metadata to relate hyperlinks to the associated document or email.

The parties shall meet and confer, after Plaintiff has reviewed Defendants' production of email communications containing hyperlinks, regarding whether the original version of certain specified hyperlinks are relevant to the issues in this case, the degree to which the documents referenced in the hyperlinks have been modified, and the feasibility of conducting a manual reconstruction process to identify the version of the hyperlink in existence at or near the time of the email communication referencing it.

- 8 -

4920-0507-5237.v6

**F.    Compressed Files Types**

Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

**G.    Structured Data**

To the extent a response to discovery requires production of electronic information stored in a database, the parties will meet and confer regarding methods of production.  The parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

**H.    Encryption**

To maximize the security of information in transit, any media on which documents are produced shall be encrypted.  In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

**I.    Redactions**

If documents that the parties have agreed to produce in native format need to be redacted, the parties will implement redactions while ensuring that proper formatting and usability are maintained.  Redacted presentation files will be produced with speaker notes.  The receiving party reserves the right to request redacted presentation files in native and reasonable requests for such native documents shall not be denied, provided they can be redacted.

- 9 -

4920-0507-5237.v6

DATED: August 5, 2025

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN
RYAN A. LLORENS
JESSICA T. SHINNEFIELD
JEFFREY J. STEIN
NICOLE Q. GILLILAND
JESSICA E. ROBERTSON


      s/ Daniel S. Drosman
      DANIEL S. DROSMAN

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
ryanl@rgrdlaw.com
jshinnefield@rgrdlaw.com
jstein@rgrdlaw.com
ngilliland@rgrdlaw.com
jrobertson@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
JONATHAN ZWEIG (*pro hac vice*)
CRISTELLE R. RABBAN (*pro hac vice*)
420 Lexington Avenue, Suite 1832
New York, NY  10170
Telephone:  212/432-5100
jzweig@rgrdlaw.com
crabban@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 10 -

4920-0507-5237.v6

WHITE & CASE LLP

s/ Stacy Nettleton

JONATHAN D. POLKES
STACY NETTLETON
ADAM B. BANKS
SUSAN L. GRACE
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
jonathan.polkes@whitecase.com
stacy.nettleton@whitecase.com
adam.banks@whitecase.com
susan.grace@whitecase.com

MUNGER, TOLLES & OLSON LLP
JOHN W. SPIEGEL
JOHN M. GILDERSLEEVE
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Telephone: 213/683-9100
john.spiegel@mto.com
john.gildersleeve@mto.com

Attorneys for Defendants
The Walt Disney Company,
Robert Chapek, Christine M. McCarthy
and Kareem Daniel

**FILER'S ATTESTATION**

I, DANIEL S. DROSMAN, am the ECF user whose ID and password are being used to file this [Proposed] Stipulated Electronic Discovery Agreement. In compliance with Local Rule 5-4.3.4(a)(2)(1), I hereby attest that counsel has concurred with this filing.

DATED: August 5, 2025

s/ Daniel S. Drosman

DANIEL S. DROSMAN

- 11 -

4920-0507-5237.v6

FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.


DATED: August 6, 2025      / s / Sagar
HONORABLE ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

4920-0507-5237.v6