# EXHIBIT H

**WHITE & CASE**

September 12, 2025

White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095
**T** +1 212 819 8200

**whitecase.com**

**VIA EMAIL**

Daniel Drosman, Esq.
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, California 92101
ddrosman@rgrdlaw.com

**Re**:    *Local 272 Labor-Management Pension Fund v. The Walt Disney Company, et al., No. 2:23-cv-03661-CBM (ASx) (C.D. Cal.)*

Dear Daniel:

I write on behalf of Defendants in the above-referenced action in response to Plaintiffs' September 3, 2025 letter regarding Plaintiffs' proposed additional search terms, non-custodial sources, and custodians ("Plaintiffs' search protocol").

On August 15, 2025, Defendants provided Plaintiffs with an extensive search protocol. The protocol covered: (i) targeted responsive documents to be identified and collected from known locations without the use of search terms, including 10b-5 trading plans, organizational information, employee policies; and (ii) responsive documents to be identified through 51 broad searches over (a) custodial data from 36 custodians spanning 6 different functions of The Walt Disney Company, and (b) centralized sources of information, including materials related to Disney's board of directors, controllership, Disney streaming/DTC, and investor relations. To date, Defendants' proposed searches hit on over 750,000 documents—and that review universe will continue to grow. Defendants continue to process data, and the current search results also do not account for responsive short-form communications. We have also identified relevant Disney+ subscriber projection files and intend to produce them without search terms.

Plaintiffs' search protocol does not reflect a good-faith attempt to build on Defendants' proposed search protocol to reach agreement on identifying responsive documents. *See Stipulated Electronic Discovery Agreement*, Docket No. 174 at 1. Plaintiffs ignored Defendants' search protocol and constructed a competing protocol on an RFP-by-RFP basis, making it exceedingly difficult to identify Plaintiffs' proposed changes. Plaintiffs do not explain why they believe these additional search terms are "necessary to identify responsive documents." *Id.* at 4. Scrutiny reveals the opposite: Plaintiffs' search protocol is a blunt instrument that exponentially increases Defendants' burden rather than identify relevant and responsive documents.

Plaintiffs add 91 new searches divorced from the needs of this case. Plaintiffs ignore that Disney has multiple lines of business, such as Disney Parks and Disney Cruises, that are not relevant to any issue in this case. Plaintiffs offer no rationale for this costly and time-consuming expansion. These searches result in 2.7 million document hits—before accounting for Plaintiffs' 22 newly-added custodians. Plaintiffs similarly offer no justification for demanding any of these custodians, let alone a 61% increase in the total

Stacy Nettleton
September 12, 2025

custodian pool. Plaintiffs' search protocol represents a classic fishing expedition, one that would guarantee that the Parties do not come anywhere near meeting the Court's condensed discovery schedule.

Due to the brief window that the Court has given the Parties to complete discovery, Defendants have commenced a review of the extensive set of responsive documents identified by Defendants' search protocol. Defendants remain willing to negotiate modest revisions to its own search protocol, but Plaintiffs' competing search protocol is a non-starter.

### A.      Defendants' Search Protocol

Defendants' proposal easily satisfies Rule 26's reasonableness standard. Rule 26 limits discovery to documents that are relevant to the Parties' claims and defenses and "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the Parties' relative access to relevant information, the Parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

### 1.   Defendants' Named Custodians

Defendants identified 36 custodians likely to possess documents relevant to Plaintiffs' allegations. These custodians include:

- Disney C-Suite leadership (Alisa Bowen, Justin Connolly, Michael Paull, Zenia Mucha, Kristina Schake, Jolene Negre, and Brent Woodford, in addition to the Defendants Bob Iger, Bob Chapek, Christine McCarthy, and Kareem Daniel);

- Disney strategy and finance personnel responsible for developing Disney+ subscriber projections (Bryan Castellani, Patrick Garrison, Justin Warbrooke, Rojeh Avanesian, David Haskett, Vanda Mehta Krants, Denise Morgan, Justin Petronisi, and Stefan Rasch);

- High-level accounting personnel responsible for implementing accounting changes based on the DMED reorganization (Jim Gray, Brent Woodford, and Richard Brookbanks);

- Disney Investor Relations and personnel responsible for quarterly earnings calls and managing investor communications (Nathan Harris, Jennifer Kettnich, Veda Kong, Alexia Quadrani, Lowell Singer, and Jolene Negre);

- DMED operations (Jim Gray, Namrata Patel, Daniel Wiegand, James Zasowski, Cindy Wang, and Lukas Wickart); and

- Individuals in charge of the distribution of Disney content (Justin Connolly and James Zasowski).

Defendants' identification of custodians is entitled to deference. As the responding party, Defendants are "best situated to preserve, search, and produce [their] own ESI." The Sedona Principles, Third Edition, 19 Sedona Conf. J. 1, 118 (2018). Just so, Defendants have "identif[ied] those individuals within its organization likely to have information relevant to the case." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018).

### 2.   Defendants' Search Terms

2

WHITE & CASE

Stacy Nettleton
September 12, 2025

Defendants' 51 proposed search terms are equally broad and thorough, hitting on over 750,000 documents inclusive of families. During the Parties' August 21 meet and confer, counsel acknowledged the good faith basis of Defendants' proposed search terms. The results in Defendants' search term hit report (Appendix A) bear out counsel's acknowledgment. Defendants' proposal includes wide-ranging searches for Disney+ in combination with search terms targeted at relevant subjects, such as the following[1]:

- Subscriber growth (Search Nos. 1 (75,365 hits), 3 (319,754 hits), and 4 (233,341 hits));

- Profitability (Search Nos. 2 (71,621 hits), 5 (185,904 hits); 20 (69,467 hits));

- Churn (Search No. 8 (190,562 hits));

- DTC (Search Nos. 9 (362,327 hits), 14 (26,275 hits), 15 (425 hits), 16 (769 hits), 20 (69,467 hits), 21 (21,060 hits), and 24 (3,918 hits));

- Distribution of Disney+ content (Search No. 9 (362,327 hits), 10 (149,018 hits), and 11 (14,797 hits));

- Content performance (Search 22 (272,600 hits));

- Cost allocation (Search No. 11 (14,797 hits), 12 (52,523 hits), 13 (53,205 hits));

- Third-party partnerships (Search No. 16 (769 hits), 17 (70,595 hits), 18 (79,839 hits));

- Hotstar (Search No. 21 (21,060 hits));

- International markets (Search Nos. 20 (69,467 hits) and 21 (21,060 hits));

- Board meetings (Search No. 27 (12,888 hits)); and

- Compensation (Search No. 29 (5,259 hits)).

Defendants' proposal also includes searches related to the Complaint's broader securities-fraud allegations. These searches include:

- Quarterly earnings calls (Search Nos. 25 (41,227 hits), 26 (21,094 hits), 35 (1,184 hits), 38 (1,726 hits)),

- Chapek's contract renewal (Search No. 28 (1,008 hits)); and

- Cost-cutting initiatives (Search No. 37 (185 hits)).

In total, Defendants' search terms hit on over 750,000 documents, inclusive of families. *See* App'x A. Even for a three-year period, this is a massive volume of documents where only one segment of a company's business is at issue.

---

[1] Search term hit numbers are inclusive of family members.

WHITE & CASE

Stacy Nettleton
September 12, 2025

### 3. Defendants' Non-Custodial Collections

Defendants' will produce non-custodial materials without the use of search terms consistent with Defendants' proposal. Defendants have agreed to produce a responsive set of board materials and Boardvantage communications. Defendants will produce Rule 10b-5 plans and employment agreements for Chapek, Daniel, and McCarthy. Defendants also intend to produce organizational charts related to DMED and employee directories, employee policy manuals, and domestic and international third-party partnership agreements. Defendants' non-custodial productions will also include relevant Disney+ subscriber projection files.

### B. Plaintiffs' Proposed Additional Custodians, Searches, and Non-Custodial Collections

### 1. Plaintiffs' Proposed Additional Custodians

Plaintiffs do not explain why any additional custodians are needed. Plaintiffs have not argued that Defendants' custodian selection does not align with the factual allegations in the Complaint, or any expected deficiency in Defendants' production due to its selections. Plaintiffs only offered their say-so on custodians to add, which is not good enough under the discovery rules. *Hastings v. Ford Motor Co.*, 2021 WL 1238870, at *2 (S.D. Cal. Apr. 2, 2021) (denying plaintiff's motion to compel because, "[n]othing in Rule 34 requires . . . a producing party to accede to demands that particular custodians' files be searched or that particular search terms be used.").

For example, Plaintiffs' failure to explain why Disney should designate all 11 of Disney's Board of Directors over a three-year period is particularly glaring. Plaintiffs make no allegations of fraud against the Board or any individual Board member, and no member of the Board was ever named as a Defendant in this action. Defendants have already agreed to produce complete Board materials on subjects relevant to Plaintiffs' allegations, including responsive meeting minutes and committee materials, as well as responsive Boardvantage communications. Plaintiffs have no basis to argue that these collective efforts are insufficient under Federal Rule 26. Nevertheless, Defendants are open to meeting and conferring on this issue to identify a reasonable approach.

The addition of many custodians Plaintiffs' propose would be cumulative. Many of Plaintiffs' proposed additional custodians are within the same reporting chain as Defendants' named custodians, including:

- Eduardo Bezerra (Director, Subscriber & Engagement) & Matthew Kambic (Vice President, Marketing Finance – Disney Streaming), who both reported to Justin Warbrooke and Lukas Wickart;

- Nick Lewerke (Senior Vice President, DMED Content, Planning & Analysis), who reported to Justin Warbrooke;

- Jon Pang (Vice President, DTC Strategy – Disney Entertainment), who reported to custodians Cindy Wang and Justin Warbrooke;

- Rashmi Singhal (Executive Director, Commerce, Growth and Identity Product), who reported to Michael Paull;

- Michael Paull, who reported to Rebecca Campbell (Chairman, International Content & Operations); and

4

Stacy Nettleton
September 12, 2025

- Rohit Shah (Senior Vice President, Finance & Strategy), who reported to Bryan Castellani.

Emails from the custody of Defendants' named custodians will capture relevant communications from these proposed custodians. Plaintiffs fail to show why they "expect to discover information from these custodians that differs from discovery they have already obtained from the others." *Handloser v. HCL America, Inc.*, 2020 WL 7405686, at \*2 (N.D. Cal. December 17, 2020).

Plaintiffs' other proposed custodians had responsibilities that make them unlikely to return communications probative of the Complaint's allegations. Dana Walden and Alan Bergman (Co-Chairs, Disney Entertainment) oversaw the creation of Disney content, and were not involved in financial, strategic, or accounting decisions related to Disney+ subscriptions and subscriber projections. Those decisions are more than adequately covered by named custodians such as Justin Warbrooke, Patrick Garrison, Robert Chapek, Kareem Daniel, Justin Connolly, Michael Paull, and James Zasowski. In addition, the vast majority of documents in the custody of Horacio Gutierrez (General Counsel) are likely privileged. There is also no conceivable justification for naming Paul Richardson (Chief Human Resources Officer) as a custodian.

Defendants' custodian selection was reasoned and comprehensive. Plaintiffs' proposed additions would yield duplicative and irrelevant documents. Defendants are within their rights to reject Plaintiffs' proposed custodians. *See Wadeea v. Mercedes-Nez USA, LLC*, 2025 WL 2309025, at \*\*1-2 (S.D. Cal. July 21, 2025) ("The record indicates that Defendant considered the additional custodians proposed by Plaintiff and ultimately elected to utilize the custodians Defendant deemed most likely to possess information responsive to Plaintiff's requests for production.").

## 2. Plaintiffs' Proposed Additional Search Terms

The search term hit report with the results of Plaintiffs' searches is attached as Appendix A. Plaintiffs' proposed search protocol would currently result in over 2.7 million hits, inclusive of families. That is a 300% increase from the already-robust number of hits from Defendants' proposed search protocol, and hits on over 63% of Defendants' entire collection to date. Many of Plaintiffs' searches are also so broad that they exceeded the search platform's 450-character limit and had to be split into multiple parts. Columns B and C of Appendix A, under tab "Plaintiff Proposed Terms" are titled "Original Term" and "Term Split Under 450 Characters," respectively. Where a term needed to be split into more than one term, the resulting cluster of terms are highlighted in light green in the "Term Split Under 450 Characters." For example, the search for RFP No. 14 had to be broken into nine unique searches; RFP No. 15 into five searches; and 12 other search terms that had to be subdivided. Search 35 yielded over 2.6 million hits, including 4.1 million inclusive of families, which is over 87% of Defendants' current collection.

Additionally, Appendix A does not include Plaintiffs' proposed Boardvantage searches, forensic file searches, searches in investor relations shared drives or IR Insights, and any searches involving custodians from whom we have agreed to collect and are in the process of collecting. And these are the results *before* accounting for the additional hits that would return with the additional custodians Plaintiffs request.

Plaintiffs' proposed search terms are also drastically overbroad. For the proposed terms that incorporate Disney+ and related terms, an overarching defect emerges. Defendants' custodians are senior executives at a large, diverse conglomerate with responsibility for multiple business lines. As we have explained in meet and confer calls—and as Plaintiffs continue to ignore—running broad terms will pull in numerous communications containing passing and non-substantive references to these terms. For example, running generic variations of terms related to SEC filings (Plaintiffs' Search 31) is certain to yield a large share of documents and communications with no substantive discussion of Disney+.

Stacy Nettleton
September 12, 2025

Many of Plaintiffs' proposed terms are also irrelevant to any claim or defense, plainly overboard, or both. For example:

- Search 19 is composed of a variety of undifferentiated terms related to distribution and accounting (such as "capitaliz*" and "expens*" and "perf*" and "launch*" and "division*" and "budget*" and "impair*" and "produc*" and "channel*"), returns over two million hits.

- Search 21, a similar search with narrower modifiers, returns 950,806 hits.

- Search 26 captures any reference to the profitability of any Disney business segment in 50 different countries or regions, plus any "new market," "new territory," or "new country," regardless of whether Disney+ ultimately launched there. This search returns over one million hits.

- Search 30a captures any reference to over 50 films and productions, with no conditions, and returns 569,043 hits.

- Search 32 (cert OR certs OR certif*), concerning draft and preparation of SEC filings, will, among other things, capture every document within the relevant time period which uses the words "certify," "certificate," and "certification." This search returns 182,276 hits.

### 3. Plaintiffs' Proposed Non-Custodial Collections

Plaintiffs' proposed search protocol requests that Defendants produce four categories of documents without the use of search terms. As explained above, Defendants will produce Board materials on subjects relevant to Plaintiffs' allegations, including responsive meeting minutes and committee materials, as well as responsive Boardvantage communications. Consistent with Defendants' search protocol, Defendants will produce employee manuals and standards of business conduct. Plaintiffs will produce 10b5-1 trading plans, materials documenting any actual conduct violations, and employment agreements for Chapek, Daniel, and McCarthy. Defendants will not produce these categories of documents for Iger.

\* \* \* \* \*

From the outset of discovery, Defendants have engaged constructively to respond to Plaintiffs' voluminous and broad requests. Defendants' search protocol is consistent with this approach. Plaintiffs' overbroad and burdensome proposal gives Defendants no reason to believe that its protocol is deficient. We remain willing to meet and confer regarding narrow and discrete issues Plaintiffs would like to raise.

Sincerely,


*/s/ Stacy Nettleton*

**Stacy Nettleton**

**T** +1 212 819 8334
**E** stacy.nettleton@whitecase.com

6