# EXHIBIT M

**Robbins Geller Rudman & Dowd LLP**

| Chicago | Melville | Nashville | San Diego | Wilmington |
|---------|----------|-----------|-----------|------------|
| Boca Raton | Manhattan | Philadelphia | San Francisco | Washington, D.C. |

Daniel S. Drosman
dand@rgrdlaw.com

October 17, 2025

Stacy Nettleton                                                                                 VIA EMAIL
White & Case LLP                                                        stacy.nettleton@whitecase.com
1221 Avenue of the Americas
New York, NY 10020-1095

Re:     *Local 272 Labor-Management Pension Fund v. The Walt Disney Company, et al.*,
        No. 2:23-cv-03661-CBM (ASx) (C.D. Cal.)

Dear Stacy:

I write on behalf of Plaintiffs in the above referenced matter to provide Plaintiffs' response to Defendants' October 16, 2025 letter.

## I.      Search Terms

We are puzzled by your unwillingness to meet and confer in good faith in order to narrow, if not eliminate, the dispute between the parties concerning search terms. As you know, Plaintiffs have shown considerable flexibility in pursuit of a practical solution to this issue. We are willing to continue that process in an effort to avoid unnecessarily burdening the Court with a highly technical dispute. In response, you have made clear that Defendants will not do so, choosing instead to hide behind misleading raw hit-count numbers rather than engage on the substantive deficiencies in your proposal.

Notably, you have completely ignored Appendix B to our October 10 letter, in which we detailed serious deficiencies in Defendants' proposed terms. These deficiencies should not be controversial. For example, even though the common industry lingo is to refer to subscribers as "subs," your proposed searches omit that ubiquitous expression. Further, many of Defendants' proposed search strings inexplicably exclude the individual defendants as custodians, which will likely shield critical documents from discovery. Defendants' refusal to include defendant Iger as a custodian for their "Search Term No. 6"[1] regarding the DMED reorganization, for example, makes no sense as Plaintiffs allege he openly criticized DMED, and even called it a "mistake." Other strings Defendants propose omit common synonyms and other word forms, such as "5 year plan" for "five year plan," or "streaming" for "direct-to-consumer," reasonable proximity modifiers, and basic connectors that would capture relevant materials. At the same time, Defendants insist on limiters that do not track common patterns of communication, like requiring the term "2024" in

---

[1]     "Search Term No. 6" refers to line 7 in Appendix A to Stacy Nettleton's October 16, 2025 letter to Jessica Shinnefield.

4907-3724-4788.v1

**Robbins Geller
Rudman & Dowd LLP**

Stacy Nettleton
October 17, 2025
Page 2

connection with any discussion of subscriber or profitability targets.  In short, your proposal is transparently calculated to avoid finding responsive documents, and your reliance on raw hit counts is an attempt to justify this evasion.  It is disingenuous to complain about the number of documents that might be returned by Plaintiffs' far more reasonable terms, while at the same time proposing terms that are guaranteed to miss the most relevant documents.

These are the kinds of important details that courts expect parties to work out among themselves.  Your approach of simply ignoring our concerns is profoundly unproductive, and your suggestion that we "have no basis to suggest that Defendants' production will be deficient" because "Plaintiffs have received only a fraction of the documents Defendants will ultimately produce" is absurd.  It does not take substantial document review to realize that, for example, the term "5 year plan" may be used instead of "five year plan."  And while some issues may become apparent in the course of discovery, we will never be in a position to know which documents Defendants did not produce due to their overly restrictive search protocol.  That is why it is important, whenever possible, for the parties to work together to try to resolve search protocol disputes at the outset. Defendants are refusing to meet that basic discovery obligation.

Further, in your October 16 letter, you raise concerns about specific terms in six of Plaintiffs' proposed search strings.  We are willing to address those concerns by making appropriate revisions.  Unfortunately, you have not provided a revised hit report excluding the terms that you consider problematic, so it is difficult to assess whether those particular terms are in fact driving the volume of hits.  Rather, without even waiting for our reaction to your stated concerns, you have declared that the parties are at an impasse.  Under these circumstances, we can only conclude that the purported concerns you have raised are mere talking points, and are not part of a genuine effort to meet and confer in good faith.[2]

Notwithstanding your stated burden concerns, there are search strings that Plaintiffs have proposed that would impose almost no burden.  For example, Plaintiffs' proposed search for the term "leaky bucket," a phrase Disney employees used to describe churn at Disney+, returns only 15 unique hits, and would require the review of only 128 additional documents in total, including families.  There are other searches Plaintiffs have proposed that likewise generate a minimal number of hits and which would take up more time to discuss with the Court than they would for Defendants to simply review.  Yet Defendants have refused to even run those minimally burdensome searches, and instead, have unproductively rejected Plaintiffs' proposed search protocol wholesale.

In addition, Defendants have refused to provide hits on a custodian-by-custodian basis, or even indicate how many of the hits correspond to custodians proposed by Defendants that Plaintiffs previously suggested removing in favor of other custodians.  Without this information, we are

---

[2]    We also do not understand your assertion that Plaintiffs' proposed search for RFP No. 5 "would increase Defendants' review population by 131,798 documents" given that it does not generate any unique hits.

4907-3724-4788.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Stacy Nettleton
October 17, 2025
Page 3

concerned that, in effect, Defendants are artificially inflating the hit counts by insisting on custodians that Plaintiffs never requested. We are willing to discuss this issue further, but we understand that Defendants' position is to ignore Plaintiffs' concerns and proceed immediately to burden the Court with this dispute.

Finally, your letter mischaracterizes Plaintiffs' revised proposal as a mere repackaging of our prior terms. This is false. As our October 10 letter explained, Plaintiffs' revised proposal incorporated many of Defendants' suggestions and significantly narrowed the scope of the prior proposal. We reject your characterization of our efforts and your continued refusal to engage in a meaningful, substantive discussion about the terms themselves.

Courts in this District have emphasized that parties must engage in genuine, good-faith efforts to resolve discovery disputes. For example, in *Rahmatullah v. Charter Communications, LLC*, 2021 WL 1593242 (C.D. Cal. Mar. 25, 2021), the court observed that the parties must "make a good faith effort . . . to eliminate as many disputes as possible," even when doing so may be "tedious," because "it is the parties who are in the best position to resolve their differences promptly and with less expense." *Id.* at \*3. Accordingly, the court determined that a party's decision to "abandon meet-and-confer negotiations prematurely and burden the court's time and resources" was "not well taken." *Id.* Here, Plaintiffs have repeatedly attempted to meet and confer in good faith, but Defendants have prematurely abandoned that process, leaving Plaintiffs no choice but to seek the Court's assistance.

## II.        Document Custodians

After further review, we stand by our proposed list of additional custodians, all of whom are appropriate additions for the reasons discussed. These individuals are likely to possess unique, non-cumulative knowledge and documents critical to the claims and defenses in this action. We will not agree to arbitrarily limit discovery to the insufficient list you have proposed. We agree that the parties are at an impasse on this issue.

With respect to both custodians and search terms, we do not believe that Judge Sagar's Informal Discovery Dispute Resolution procedure is the appropriate vehicle for presenting the issues to the Court, particularly in light of the page limitations associated with that process and your wholesale refusal to accept any of Plaintiffs' proposed searches. Rather, we intend to file a discovery motion, as permitted under Local Rule 37-1 and Judge Sagar's procedures.

## III.        Short-Form Communications

Plaintiffs will provide any additional proposed edits to Defendants' proposed short-form communications early next week.

4907-3724-4788.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Stacy Nettleton
October 17, 2025
Page 4

**IV.      Investments in Other Disney Securities**

Plaintiffs withdraw their objection to the production of documents concerning Disney bonds.

**V.       Confidential Witnesses**

Plaintiffs agree that the parties are at an impasse on this issue and can agree to the simultaneous exchange of position papers pursuant to Judge Sagar's Informal Discovery Dispute Resolution procedure on October 22 at noon Pacific Time.  Please confirm.

Very truly yours,

DANIEL S. DROSMAN

DSD:tdv

4907-3724-4788.v1