JONATHAN D. POLKES (admitted *pro hac vice*)
jonathan.polkes@whitecase.com
STACY NETTLETON (admitted *pro hac vice*)
stacy.nettleton@whitecase.com
ADAM B. BANKS (admitted *pro hac vice*)
adam.banks@whitecase.com
SUSAN L. GRACE (admitted *pro hac vice*)
susan.grace@whitecase.com
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200

JOHN W. SPIEGEL (SB 78935)
john.spiegel@mto.com
JOHN M. GILDERSLEEVE (SB 284618)
john.gildersleeve@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Attorneys for Defendants
The Walt Disney Company, Robert Iger,
Robert Chapek, Christine M. McCarthy
and Kareem Daniel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOCAL 272 LABOR-MANAGEMENT PENSION FUND, CENTRAL PENNSYLVANIA TEAMSTERS PENSION FUND, CENTRAL PENNSYLVANIA TEAMSTERS PENSION FUND – RETIREMENT INCOME PLAN 1987, CENTRAL PENNSYLVANIA TEAMSTERS HEALTH AND WELFARE FUND AND JOHN P. TALBOT, on Behalf of Themselves and All Others Similarly Situated, | Case No. 2:23-cv-03661-CBM(ASx) **DECLARATION OF ANDREW JOHNSTON** |
| Plaintiffs, | |
| v. | |
| THE WALT DISNEY COMPANY, ROBERT IGER, ROBERT CHAPEK, CHRISTINE M. MCCARTHY AND KAREEM DANIEL, | |
| Defendants. | |

I, Andrew Johnston, hereby declare as follows:

1.      I am a Senior Managing Director at FTI Consulting ("**FTI**"). In accordance with my job duties, I regularly provide consulting services to individuals and corporations relating to the discovery and disclosure of computer and cloud data (typically in response to government and/or internal investigations and litigation). I have more than twenty (20) years of experience providing consulting services relating to electronic discovery. I respectfully submit this declaration in support of Defendants' positions opposing Plaintiffs' motion to compel additional search terms and custodians. Unless otherwise specified herein, the facts contained in this Declaration are based upon my personal knowledge.

2.      Over the past several months, FTI has assisted with many discovery-related tasks in its capacity as Defendants' e-discovery vendor, including but not limited to: (i) data collection and processing, (ii) querying Defendants' universe of collected documents with proposed searches to provide search term hit reports, (iii) first-level review of documents, and (iv) analyses in connection with Plaintiffs' discovery proposals.

3.      FTI provided search term hit reports in connection with Plaintiffs' proposed search protocols.

4.      Plaintiffs provided their first proposed search protocol on September 3, 2025 ("**Plaintiffs' September 3 Search Protocol**"). Plaintiffs' September 3 Search Protocol made extensive use of proximity searches[1] containing dozens of search terms with "OR" connectors between them. Plaintiffs' September 3 Search Protocol also used what Plaintiffs termed "defined term groups" or "roots," each of which expanded into numerous individual search terms separated with "OR" connectors.

---

[1] A "proximity search" is one where two words are searched within a certain number of words of one another. For example: "Disney+ w/5 (Chapek OR Daniel)" would search for all documents where the word Disney+ appears within five words of the names Chapek or Daniel.

5.      E-discovery in this case is hosted on Relativity. Relativity's search function has a 450-character limit; in other words, Relativity cannot run any single search term with more than 450 characters. Some of the searches proposed in Plaintiffs' September 3 Search Protocol, when the "roots" were fully spelled out, significantly exceeded the 450-character limit. Accordingly, Plaintiffs' searches which exceeded 450 characters had to be broken down into separate 450-character or less searches. To complete any such break down, FTI had to ensure that the original search's logic was preserved in each deconstructed search. Because of this, Plaintiffs' 91 "searches" required 119 searches to accurately query the system. This was a manual process that required the FTI team to individually enter each search. FTI provided a search term hit report for Plaintiffs' September 3 Search Protocol.

6.      I understand that Defendants made Plaintiffs aware of Relativity's character limitation on September 12, 2025. Plaintiffs subsequently provided their second proposed search protocol on September 19, 2025 ("**Plaintiffs' September 19 Search Protocol**"). Plaintiffs' September 19 Search Protocol likewise made extensive use of proximity searches and modified roots which required FTI to break down Plaintiffs' searches to fit into Relativity's 450-character limit. To provide one example: Plaintiffs' second search was "SUBS w/5 PLANNING." Plaintiffs defined PLANNING as (trajector* OR "on track" OR "off track" OR behind OR ahead OR slip* OR delay* OR gap* OR reforecast* OR variance* OR bridg* OR driver* OR driving OR sensitivit* OR scenario* OR plan* OR milestone* OR target* OR goal* OR guidance OR objective* OR forecast* OR projecting OR projection* OR projected OR expect* OR grow* OR "long term" OR "long-term" OR longterm). Plaintiffs defined SUBS using a different defined term, "SERVICE": (sub OR subs OR subscriber* OR (SERVICE AND (member* OR account* OR user*)) OR MAU OR DAU). Plaintiffs defined SERVICE as ("Disney+" OR D+ OR "Disney Plus" OR Disneyplus OR DTC OR "direct to consumer" OR "direct-to-consumer" OR stream*).

-2-
DECLARATION OF ANDREW JOHNSTON

7. As a consequence, Plaintiffs' full search for SUBS w/5 PLANNING translated into the following 563-character search: (sub OR subs OR subscriber* OR (("Disney+" OR D+ OR "Disney Plus" OR Disneyplus OR DTC OR "direct to consumer" OR "direct-to-consumer" OR stream*) AND (member* OR account* OR user*)) OR MAU OR DAU) w/5 (trajector* OR "on track" OR "off track" OR behind OR ahead OR slip* OR delay* OR gap* OR reforecast* OR variance* OR bridg* OR driver* OR driving OR sensitivit* OR scenario* OR plan* OR milestone* OR target* OR goal* OR guidance OR objective* OR forecast* OR projecting OR projection* OR projected OR expect* OR grow* OR "long term" OR "long-term" OR longterm).

8. To run Plaintiffs' search for SUBS w/5 PLANNING required three separate searches, each of which had to be manually entered. SUBS w/5 PLANNING was one of Plaintiffs' shorter searches; in order to accurately query Relativity for the 100 searches in Plaintiffs' September 19 Search Protocol, FTI had to manually query Relativity with 2,977 separate searches.

9. FTI spent significant time generating search term hit reports for Plaintiffs' September 3 and September 19 Search Protocols, including time spent (i) translating the roots used in Plaintiffs' searches into fully expressed search strings; (ii) deconstructing the resultant search strings in a manner consistent with Relativity's technical capabilities; (iii) manually entering thousands of searches; (iv) undertaking extensive quality control measures; and (v) compiling the resulting data.

10. I understand that Plaintiffs requested the unique hit counts for each search. This is not an uncommon request. However, because of the thousands of searches required to query Plaintiffs' September 19 Search Protocol, and because each of Plaintiffs' searches were designed to be queried over different date ranges and custodians, and therefore had different review populations, FTI could not use Relativity's automatic functions to determine the unique hit counts. FTI therefore had to determine unique hit counts manually. Even assuming no technical issues arose, to create unique hit counts manually for 2,977 separate searches would have required

DECLARATION OF ANDREW JOHNSTON

significant labor. Executing this task manually for this many searches would also have increased the likelihood of human error. FTI therefore created bespoke software from scratch to partially mechanize the process, which itself took significant hours to develop, test, implement, and run. In my experience, I have never had to perform a unique-hits analysis across this complex of a search framework.

11. Plaintiffs provided their third proposed search protocol on October 10, 2025 ("**Plaintiffs' October 10 Search Protocol**"). Plaintiffs' October 10 Search Protocol differed substantially from Plaintiffs' prior proposals. Plaintiffs no longer used search term roots and instead provided 68 entirely new searches that fit within Relativity's character limit. FTI provided a search term hit report for this search protocol on October 16, 2025, which also provided the search term hit report for Defendants' search protocol made on October 7, 2025 ("**Defendants' October 7 Search Protocol**"). An updated version of that search term hit report was provided to Plaintiffs on November 3, 2025 (the "**November 3 Search Term Hit Report**"). Plaintiffs' October 10 Search Protocol resulted in a total review population of 2,449,836 documents, which was 1,637,921 documents more than Defendants' proposed review population under Defendants' October 7 Search Protocol.

12. Since the November 3 Search Term Hit Report, FTI has continued to collect and load documents into Relativity. As a consequence, the number of documents in the review universe continues to grow. Defendants' counsel has asked FTI to refresh the November 3 Search Term Hit Report to account for this increase in documents. This refreshed search term hit report queries the current populations of collected documents with the Parties' last-in-time proposals as of November 3, 2025 (*i.e.* Defendants' October 7 Search Protocol and Plaintiffs' October 10 Search Protocol) in order to provide an up-to-date understanding of the search term hit results from Defendants' searches and Plaintiffs' proposed searches. *See* Search Term Hit Report – November 3, 2025 (Update), attached hereto as Ex. 1. As of the filing of this Declaration, the searches in Defendants' October 7 Search Protocol "hit" on 508,148

-4-

DECLARATION OF ANDREW JOHNSTON

documents, meaning the number of documents which reflect any of Defendants' searches after de-duplication. These 508,148 "hits" translate to a review population of 835,084 documents when families (*e.g.*, attachments) are included.  As of the filing of this Declaration, the searches in Plaintiffs' October 10 Search Protocol "hit" on 2,015,314 documents after dedeuplication, which translates to a review population of 2,433,285 documents when families are included. As document collection is still in process, these numbers are expected to continue to grow.

13. As not all of the documents in this case have been imaged and the review is still in progress, it is not possible to provide the exact page count for this review population. But for those documents that FTI has already imaged, the average document is 10.68 image (*i.e.,* pages) long. Based on the current review universe of 2,433,285 documents generated by Plaintiffs' October 10 Search Protocol, and using an average of 10.68 images per document for unimaged documents, Defendants are likely to review approximately 25,987,484 pages under Plaintiffs' October 10 Search Protocol.

14. I understand that Defendants have made further modifications to their searches since Plaintiffs served their Joint Stipulation on November 18, 2025 ("**Defendants' Current Search Protocol**"). FTI carried out an analysis that incorporated these modifications and generated an updated search term hit report. *See* Search Term Hit Report – Defendants' Current Search Protocol, attached hereto as Ex. 2. As of the filing of this Declaration, Defendants' Current Search Proposal "hit" on 563,898 documents after dedeuplication, which translates to a review population of 898,894 documents when families are included. Using the average document to image conversion rate of 10.68, Defendants are currently likely to review approximately 9,600,188 pages under Defendants Current Search Protocol. *Supra* ¶ 13.

15. The review populations generated by FTI's search term hit reports exclude documents that are not subject to any searches but instead will be subject to

DECLARATION OF ANDREW JOHNSTON

a linear review. Documents in this category are still being collected and loaded so the total volume is not yet known. None of FTI's search term hit reports account for any non-duplicative documentation from the additional 16 custodians that Plaintiffs seek.

16. FTI has carried out an analysis of the impact of Defendants' modifications over the course of the search term and custodian negotiations. Prior to the Joint Stipulation, Defendants had already made several modifications to their proposal. As of the filing of this Declaration, comparing Defendants' initial search protocol to Defendants' October 7 Search Protocol shows that Defendants' modifications, reflected in Defendants' October 7 Search Protocol, added 70,354 documents to Defendants' review population, a 9.2% increase. Defendants' Current Search Protocol makes several more modifications. Comparing Defendants' initial search protocol to Defendants' Current Search Protocol shows that all of Defendants' modifications added 134,164 to Defendants' review population, for a total increase of 17.54%.

17. I understand from Defendants' counsel that on November 18, 2025, Plaintiffs provided Defendants with their portion of the *Joint Stipulation Regarding Plaintiffs' Motion to Compel Custodians and Search Terms* (the "**Joint Stipulation**"). I was provided with a copy of the Joint Stipulation on November 19, 2025. In the Joint Stipulation, Plaintiffs ask that "all searches (from both sides)" be applied "across all designated custodians with reasonable, topic-appropriate timeframes." Joint Stipulation at 35; *see also* Joint Stipulation at 3 (asking that the Court order Defendants' to "apply the searches (proposed by both parties) across all designated custodians, including the Individual Defendants") ("**Plaintiffs' Joint Stipulation Protocol**"). FTI has generated a search term hit report in response to this request that (i) runs all of Plaintiffs' proposed searches across the documents collected for all of Defendants' 38 designated custodians within Relativity, in addition to whatever non-custodial sources Plaintiffs' previously proposed; and (ii) runs all of Defendants' proposed searches across the documents collected for all of Defendants' 38 designated

DECLARATION OF ANDREW JOHNSTON

custodians within Relativity, in addition to whatever non-custodial sources Defendants' previously proposed. For purposes of (i), FTI kept Plaintiffs' proposed timeframes. For purposes of (ii), FTI changed the proposed time frames in Search Nos. 6 and 7 (to January 1, 2020-August 31, 2023), 33 (to end date to September 1, 2022), and 37 (to end date of July 31, 2023) as instructed by Defendants' counsel to address Plaintiffs' proposed timeframes for those searches in the Joint Stipulation. *See* Search Term Hit Report – Plaintiffs' Joint Stipulation Protocol, attached hereto as Ex. 3.

18.     Plaintiffs' Joint Stipulation Protocol, when executed in the manner described above across the 38-currently designated custodians, would result in a review population of 3,572,960 documents including family members, which is 2,674,086 documents more than Defendants' review population under Defendants' Current Search Protocol. Using the average document to image conversion rate of 10.68, Defendants are likely to review approximately 28,559,239 additional pages under Plaintiffs' Joint Stipulation Protocol.

19.     At the request of Defendants' counsel, FTI has carried out an analysis to estimate the additional amount of documents that may be added to the review population if Plaintiffs' proposed 16 custodians are added.

20.     FTI used the data from Defendants' 38 custodians Defendants from whom documents have already been collected, to estimate the volume for Plaintiffs' proposed custodians. These estimates took into account the appropriate date range for each of Plaintiffs' proposed custodians, such as dates of employment. FTI estimated the number of documents associated with Plaintiffs' proposed custodians by applying Defendants' searches and Plaintiffs' searches to the 38 custodians whose documents have been collected, and extrapolating from that data, including accounting for de-duplication, the likely number of documents to be collected and added to the review population from Plaintiffs' additional 16 custodians.

DECLARATION OF ANDREW JOHNSTON

21.     FTI estimated the number of additional documents Defendants would need to review if the Court granted Plaintiffs' Motion in its entirety, including the addition of Plaintiffs' 16 proposed custodians and implemention of Plaintiffs' Joint Stipulation Protocol. Compared to Defendants' Current Search Protocol, FTI estimates that granting Plaintiffs' Motion in its entirety would add 3,243,782 documents to Defendants' review, for a total of 4,142,676 documents. Using the average document to image conversion rate of 10.68, FTI estimates that translates to 34,643,592 additional pages for review, or 44,243,780 pages total. *Supra* ¶ 13.

22.     FTI has provided first-level reviewers for the Defendants' document review.  Based on the review FTI has completed to date, FTI estimates that Plaintiffs' October 10 Search Protocol would require 31,211 additional hours of first-level review. That figure does not account for the 16 additional custodians that Plaintiffs seeek.  Accounting for the 16 additional custodians that Plaintiffs seek, FTI estimates that Plaintiffs' Joint Stipulation Protocol would require 64,876 additional hours of first-level review.

23.     There will also be time and costs associated with collecting and processing additional data for review.

-8-
DECLARATION OF ANDREW JOHNSTON

Executed on November 25, 2025.

_____
Andrew Johnston

-9-
DECLARATION OF ANDREW JOHNSTON