JONATHAN D. POLKES (admitted *pro hac vice*)
jonathan.polkes@whitecase.com
STACY NETTLETON (admitted *pro hac vice*)
stacy.nettleton@whitecase.com
ADAM B. BANKS (admitted *pro hac vice*)
adam.banks@whitecase.com
SUSAN L. GRACE (admitted *pro hac vice*)
susan.grace@whitecase.com
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200

JOHN W. SPIEGEL (SB 78935)
john.spiegel@mto.com
JOHN M. GILDERSLEEVE (SB 284618)
john.gildersleeve@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Attorneys for Defendants
The Walt Disney Company, Robert Iger,
Robert Chapek, Christine M. McCarthy
and Kareem Daniel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOCAL 272 LABOR-MANAGEMENT PENSION FUND, CENTRAL PENNSYLVANIA TEAMSTERS PENSION FUND, CENTRAL PENNSYLVANIA TEAMSTERS PENSION FUND – RETIREMENT INCOME PLAN 1987, CENTRAL PENNSYLVANIA TEAMSTERS HEALTH AND WELFARE FUND AND JOHN P. TALBOT, on Behalf of Themselves and All Others Similarly Situated,<br><br>      Plaintiffs,<br><br>    v.<br><br>THE WALT DISNEY COMPANY, ROBERT IGER, ROBERT CHAPEK, CHRISTINE M. MCCARTHY AND KAREEM DANIEL,<br><br>      Defendants. | Case No. 2:23-cv-03661-CBM(ASx)<br><br>**SUPPLEMENTAL MEMORANDUM TO JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL CUSTODIANS AND SEARCH TERMS**<br><br>Date: January 6, 2026<br>Time: 10:00 a.m.<br>Ctrm: 540, 5th Floor<br>Judge: Hon. Alka Sagar |

## I.  INTRODUCTION AND BACKGROUND

On December 1, 2025, the parties submitted a fully ripe dispute to the Court. Defendants proposed a robust search protocol, resulting in a review population that now stands at over 1.092 million documents, yet Plaintiffs demanded far more: a search proposal that results in a review population more than *three times* as large—so large that Plaintiffs do not cite any comparable court-ordered review in a securities class action. The parties expended the time and expense of 71 pages of briefing on Plaintiffs' Motion.

Yet seven days after Plaintiffs filed their Motion, Plaintiffs sent Defendants an entirely new proposal—their fifth (the "December 8 Protocol")—which purports to abandon certain of their overbroad searches and recast others. But Plaintiffs' post-Motion proposal is not a meaningful counteroffer. That is, their revised December 8 Protocol still nearly doubles Defendants' review burden, adding nearly a million documents to Defendants' review pile—before adding any of the 16 additional custodians that Plaintiffs demand. Defs.' Ex. A. This updated protocol consists of modifications to each of Defendants' 51 proposed searches and 37 additional searches of Plaintiffs' own. Defendants' response pointed out that Plaintiffs failed to justify, or even explain, the need for their searches or their modifications to Defendants' searches, and that the proposal still imposed a disproportionate burden with little relevance. Defendants nevertheless agreed to modify 47 of their 51 searches, an accommodation that would increase their review population by more than 60,000 documents.

Plaintiffs then waited six days, until December 22, on the eve of the parties' supplemental submissions, to provide appendices purporting to show the "reason[s]" why Defendants' proposed searches are deficient and Plaintiffs' proposed searches are required. Ex. B. Plaintiffs intentionally waited until the very last minute to lob in these purported justifications—over three and a half months since Plaintiffs first proposed their searches, 21 days after they filed their Motion, 14 days after their

December 8 proposal, six days after receiving Defendants' response, and less than one day before supplemental memoranda were due.

This last-minute dump of post-hoc rationalizations for their flood of new searches comes too late for Defendants to offer a detailed and comprehensive response here. The Court should reject it as highly prejudicial.  Still, as shown below, even a cursory examination shows that Plaintiffs' wish list of grossly overbroad requests has nothing to do with the need for legitimate discovery to make their case. Defendants will be prepared to respond further at the Court's January 6 hearing. At bottom, the Court should reject Plaintiffs' request for additional searches and custodians above and beyond Defendants' compromise proposal.

## II.    ARGUMENT

### A.    Plaintiffs' Search Terms Are Unjustified and Overbroad.

In their Motion, Plaintiffs never explain the need, relevance, and proportionality of their proposed searches. That is, Plaintiffs' Motion does not explain why Plaintiffs' additional set of searches fill "critical gaps" in Defendants' production. ECF 189 at 6. The protocol they served on December 8 does not do so, either. Instead, Plaintiffs bury their purported justifications for the first time in appendices to attorney letters sent only 24 hours before this submission is due. But the Court need not "ferret out [Plaintiff's] shifting negotiations" by reviewing appendices to Plaintiffs' many letters, *Belcastro v. United Airlines, Inc.*, 2019 WL 1651709, at *3 n.2 (N.D. Ill. Apr. 17, 2019). As a threshold matter, the Court may deny Plaintiffs' argument for "failure to provide meaningfully developed argument[.]" *Iovino v. Am Trust Fin. Servs., Inc.*, 2024 WL 4696161, at *4 (D. Nev. Nov. 6, 2024). But even the eleventh-hour arguments Plaintiffs hide in their post-motion appendices do not justify their proposed searches as discussed below.

**Defendants' Searches**: Defendants modified their searches to incorporate synonyms or address other reasonable concerns Plaintiffs have articulated. In response to Plaintiffs' December 8 Protocol, Defendants offered to modify 47 of

-2-

their 51 searches, incorporating *all* of Plaintiffs' desired edits to 43 of them. Plaintiffs proposed these edits *after* filing their motion, and together would add over 60,000 additional documents to Defendants' review. Still, Plaintiffs insist on more: their remaining modifications to Defendants' proposed searches dramatically increase the scope of Defendants' searches and would result in irrelevant hits.

For example, Defendants designed a search to capture documents pertaining to Disney+ subscriber projections for the year 2024, which was tailored to capture documents related to the Complaint's allegations about those projections. *E.g.*, ECF 68 at ¶¶ 106, 124. Plaintiffs removed the term "2024." This broadened search would capture any document containing the term "sub" or "subscriber" if the document elsewhere includes a term like "projection" or "number." This captures documents entirely untethered to Disney+ and those that relate to any other subscription-based platforms. Given the breadth of the search, it unsurprisingly adds over 323,000 documents to Defendants' review, even *after* accounting for Defendants' proposed searches targeting the 2024 projections and numerous other searches relating to Disney+ subscribers—searches that already hit on hundreds of thousands of documents including family members. Ex. C at rows 2-3. Plaintiffs' eleventh-hour appendices fail to address this clear overbreadth. *See* Ex. B, App'x B.

By way of further example, Defendants designed a search to capture Plaintiffs' allegations relating to the creation of "DMED"—Disney Media and Entertainment Distribution, an expansive division within the company. Given that DMED is an entire division of a multimedia conglomerate, Defendants appropriately limited the search to custodians involved in creating DMED across a four-month period surrounding DMED's creation. Plaintiffs instead want to run the term "DMED" across **all custodians** over an unnecessarily long six-month period. But without limiting "DMED" to appropriate custodians and a reasonable period, every irrelevant document in the files of 54 people that merely mentions this

-3-

business division will require review. Accordingly, Plaintiffs' modifications are outweighed by the disproportionate increase in Defendants' review burden.

**Plaintiffs' Searches**: On top of Defendants' 51 searches, and Plaintiffs' proposed modifications to them, Plaintiffs *also* request that Defendants conduct 37 extra searches. Plaintiffs made no attempt to justify these searches until their December 22 correspondence on the eve of this filing. The Court should disregard Plaintiffs' post-hoc justifications. Still, Plaintiffs' searches suffer from the same flaws: their searches rely on generic, sweeping terms run indiscriminately on the files of executives of a diversified, multinational conglomerate. *See* J.S. at 48-53.

One such search, RFP 20 (Row 29), targets a swath of materials relating to earnings, investors, or analysts within Disney's centralized Investor Relations files and the files of all investor relations custodians again untethered to the specific Disney business at issue in this case. Another example is RFP 38 (Row 64), which hits on any document mentioning "sub," "subs," or "subscriber" within ten words of "hit*," "grow*," or "expect*"—even if the document nowhere mentions Disney+. Another is RFP 6 (Row 11), which would hit on any reference to "Daniel" within 25 words of generic terms such as "experience" or "role." This would capture, for example, any email to or from any Daniel within Disney's hundreds of thousands of employees, that includes those generic words within the first 25 words of the email. Plaintiffs also balloon their proposed searches by adding custodians, including adding 20 custodians to their overbroad search for documents concerning *any* employee's departure from Disney. *See* Ex. C at row 54. Notably, Plaintiffs omit from their belated appendices any justification for these added custodians.

Plaintiffs' appendices are also replete with falsehoods. For example, Plaintiffs claim that "Defendants' search protocol ***omits any permutation of the term 'peak losses,'*** and is therefore likely to miss relevant documents." *See* Ex. B, App'x A, at 3 (emphasis in original). But Defendants' Search 46—as modified by Plaintiffs and accepted by Defendants—searches for Disney+ documents that mention "peak"

-4-

within ten words of "loss*." Ex. C at row 46. Plaintiffs assert that Defendants propose "no search that will capture documents" regarding "*'low quality' subscribers and high attrition rates*." *Id.* at 4 (emphasis in original). But Defendants' Search No. 4—as modified—searches for Disney+ documents that mention sub, subs, or subscribers and "quality," "leak*," or "ARPU" (average revenue per user). This search alone hits on more than 258,500 documents including family members. Ex. C at row 4.

### B. Plaintiffs' 16 Custodians Are Duplicative and Burdensome.

Plaintiffs' new proposal maintains their request for 16 irrelevant and duplicative custodians. The Court should deny this request for the reasons Defendants articulated in their opposition to Defendants' Motion. *See* ECF 189 at 57-69. Defendants designated 38 custodians—each Individual Defendant, Disney's Board Chair, senior executives responsible for operations and projections related to Disney+ and DMED, and relevant investor communications. Plaintiffs request seven lower-level employees and two chiefs of staff, but each of these individuals was in the reporting chain of existing custodians. Plaintiffs also request burdensome collections from three independent directors on Disney's Board Compensation Committee even though Disney is searching documents from Disney's Board Chair and Board communications, presentations, and meeting minutes (including Compensation Committee minutes).

## III. CONCLUSION

This is the paradigmatic case where the Rule 26 proportionality requirement should be rigorously applied to Plaintiffs' requests, "to avoid . . . sweeping discovery that is untethered to the claims and defenses in litigation." *Radio Music License Comm., Inc. v. Global Music Rights, LLC*, 2020 WL 7636280, at *5 (C.D. Cal. Jan. 2, 2020) (cleaned up). The Court should deny Plaintiffs' Motion.

SUPPLEMENTAL MEMORANDUM TO JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL CUSTODIANS AND SERACH TERMS

Dated:  December 23, 2025

Respectfully submitted,

 _/s/ John M. Gildersleeve_____
WHITE & CASE LLP
Jonathan D. Polkes
Stacy Nettleton
Adam B. Banks
Susan L. Grace
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
jonathan.polkes@whitecase.com
stacy.nettleton@whitecase.com
adam.banks@whitecase.com
susan.grace@whitecase.com

MUNGER TOLLES & OLSON LLP
John W. Spiegel
John M. Gildersleeve
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Telephone: (212) 683-9100
john.spiegel@mto.com
john.gildersleeve@mto.com
*Attorneys for Defendants*
*The Walt Disney Company, Robert Iger,*
*Robert Chapek, Christine M. McCarthy*
*and Kareem Daniel*

-6-

SUPPLEMENTAL MEMORANDUM TO JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL CUSTODIANS AND SERACH TERMS

## L.R. 11-6.2 Certificate of Compliance

The undersigned, counsel of record for Defendants, certifies that this brief is no longer than 5 pages which complies with the page limit set by L.R. 37-2.3.

Dated: December 23, 2025                    */s/ John M. Gildersleeve*

SUPPLEMENTAL MEMORANDUM TO JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL CUSTODIANS AND SERACH TERMS