ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN (200643)
RYAN A. LLORENS (225196)
JESSICA T. SHINNEFIELD (234432)
JEFFREY J. STEIN (265268)
NICOLE Q. GILLILAND (335132)
JESSICA E. ROBERTSON (352207)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
ryanl@rgrdlaw.com
jshinnefield@rgrdlaw.com
jstein@rgrdlaw.com
ngilliland@rgrdlaw.com
jrobertson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LOCAL 272 LABOR-MANAGEMENT PENSION FUND, on Behalf of Itself and All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>     vs.<br><br>THE WALT DISNEY COMPANY, et al.,<br><br>                              Defendants. | Case No. 2:23-cv-03661-CBM (ASx)<br><br>CLASS ACTION<br><br>PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN RESPONSE TO JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL CUSTODIANS AND SEARCH TERMS<br><br>Date: January 6, 2026<br>Time: 10:00 a.m.<br>Ctrm: 540, 5th Floor<br>Judge: Honorable Alka Sagar<br><br>Discovery Cutoff: August 21, 2026<br>Pretrial Conference: July 14, 2027<br>Trial: August 17, 2027 |

4910-8440-4612.v1

Defendants'[1] opposition rests on inflated math and strategic obstruction.  Their own expert relies on a "black box" methodology that ignores the basic mechanics of modern e-discovery – specifically, global deduplication – and converts ordinary search hits into an exaggerated "millions-of-documents" scare figure.  *See* Ex. 1 ("Bui Decl.").  This supposed burden is a phantom, designed to shield from discovery the very individuals who stood at the epicenter of the Disney+ subscriber and profitability crisis.  Federal Rule of Civil Procedure 26 does not permit Defendants to veto targeted custodians and terms, and then hide behind illusory arithmetic to avoid searching the files most likely to contain relevant evidence.  Despite Plaintiffs' substantial and repeated compromises, which ***reduced the potential review population by nearly one million documents***, Defendants' position remains a blanket "no" to every single one of Plaintiffs' proposed search terms and custodians.  That is not proportionality; it is stonewalling.  This Court should reject an objection built on inflated metrics and a refusal to negotiate in good faith.  The motion should be granted.

**Custodians**.  Plaintiffs have specifically explained why each of the 16 proposed custodians possess distinct, highly-relevant documents.  These individuals are not secondary witnesses; they led the activities central to this case: conducting Disney+ subscriber and revenue forecasts, analyzing Disney+ subscriber growth and churn, and strategizing about content volume.  Remarkably, many of these individuals represent relevant departments that are currently wholly excluded from discovery.  Others fill obvious gaps: one replaces an agreed custodian early in the relevant period; others were key participants in the events surrounding Chapek's dismissal, internal critics of the strategy at issue, or members of the inner circle implementing that strategy.  Their

---

[1] Unless otherwise indicated, all defined terms have the same meaning as set forth in the Joint Stipulation Regarding Plaintiffs' Motion to Compel Custodians and Search Terms.  Additionally, Exhibits 1-4 referenced herein are attached to the Declaration of Jessica T. Shinnefield in Support of Plaintiffs' Supplemental Memorandum of Law in Response to Joint Stipulation Regarding Plaintiffs' Motion to Compel Custodians and Search Terms.

- 1 -

4910-8440-4612.v1

documents are likely to contain contemporaneous communications and analyses that show what executives were told, how those executives reacted to adverse information, and whether internal analyses supported (or contradicted) Disney's public narrative.

Defendants completely ignore Plaintiffs' detailed account of these proposed custodians' key roles. Instead, they argue that some proposed custodians "reported up" to existing custodians. But as detailed in Plaintiffs' opening position, numerous courts have made clear that employees who played important roles in the events at issue are proper custodians regardless of their rank in the corporate hierarchy because they typically possess relevant documents distinct from those of their superiors. Nor can Defendants defeat discovery by labeling it "chatter." And Defendants' speculative burden claim is particularly unreliable here. As Plaintiffs' e-discovery expert explains, Defendants' approach to estimating the impact of adding custodians is "fundamentally flawed," "methodologically unreliable," and "grossly inflate[s] the likely volume of documents requiring review," including because deduplication cannot be reliably quantified for uncollected custodians and hit counts are not a proxy for review burden. Bui Decl., ¶¶6-9, 20-22, 30-31.

Defendants' fallback argument – that Plaintiffs' citations to produced documents prove the existing custodian set is "enough" – turns discovery on its head. By that logic, Plaintiffs would have to do the impossible and provide missing documents to obtain additional custodians. The fact that some responsive documents copied existing custodians underscores (not undermines) that the proposed custodians played key roles and are likely to have additional, non-duplicative documents. The Court should therefore compel collection from the 16 additional custodians.

**Search Terms**. Defendants simply refuse to run *any* of Plaintiffs' proposed searches, despite Plaintiffs' repeated efforts to compromise. In a final effort to avoid burdening the Court with this dispute, Plaintiffs provided a revised proposal on December 8 to address the concerns raised in Defendants' opening position. Ex. 2. Plaintiffs' December 8 proposal: (1) withdrew about half of Plaintiffs' proposed

- 2 -

4910-8440-4612.v1

searches, including the "DMED search," "[s]ubscriber [g]rowth [s]earch," and "[c]ontent [p]erformance [s]earch" that Defendants highlighted in their opening position; (2) significantly narrowed the remaining searches, drastically reducing hit counts (*e.g.*, Search Term No. 33, which dropped from about 235,000 hits to about 2,600 hits); and (3) proposed only limited, commonsense edits to Defendants' proposed searches to capture synonyms and remove overly restrictive limiters. *Id.* As a result, Plaintiffs slashed the potential review population ***by nearly one million documents***, from over 1.6 million to approximately 650,000.  Even including Plaintiffs' modest edits to Defendants' terms, the entire proposal adds approximately 942,000 documents to the review population, a proportionate increment given the scope and stakes of this case.  Plaintiffs also made clear that they were willing to continue meeting and conferring to narrow any remaining issues.  *Id.*

Defendants responded on December 16, 2025 by categorically refusing to run ***any*** of Plaintiffs' proposed searches and agreeing to make some (but not all) of the proposed minor changes to Defendants' terms ***if and only if*** Plaintiffs dropped ***all*** of their proposed searches ***and*** custodians.  That ultimatum is not a meet-and-confer; it is a veto.  Still, Defendants have recognized the appropriateness of the minor changes to which they conditionally agreed, which largely add synonyms to agreed-upon terms.  In total, those modifications add only about 63,500 documents (including families) to the review, and Defendants should be required to make them.

Plaintiffs' proposed searches, which Defendants have categorically rejected, capture important topics that Defendants' search protocol omits.  *See* Ex. 3, Appendix A. For example, Defendants refuse to run a search (Search Term No. 37) concerning executive leadership across custodial files, which would add only about 30,000 documents to the review.  *Id.* at Search Term No. 37.  Evidence that Defendants squashed or ignored internal dissent when making the statements at issue is highly relevant. Defendants would limit searches on that topic to formal complaints and audit documentation, but less formal communications are likely to be more candid, and

- 3 -

Defendants' assertion that informal complaints are "generalized" and "not relevant" is baseless. Plaintiffs' proposed terms on this subject, such as "Eeyore" and "mean girl," were specifically used by Chapek to characterize employees who questioned his fantastical projections, as alleged. Likewise, because witnesses described Chapek's disregard of information he did not want to hear as resulting in a "dictatorship," search terms like "dictator" are fully appropriate because they are tied to the terminology witnesses themselves used.

Plaintiffs have also proposed searches that address critical concepts using terms that are distinct from those in Defendants' proposed searches. For example, Plaintiffs proposed a search (*id.* at Search Term No. 4) using terms concerning the subscriber target Defendants set for Disney+, such as "230-260." *Id.* at Search Term No. 4. This would add about 9,700 documents to the review and capture documents that refer to that numerical target without necessarily using a highly-specified string of related terms, as required by Defendants' searches. *Id.* Likewise, Plaintiffs have proposed a search (*id.* at Search Term No. 5) that would pair "Disney+" within five words of terms like "on track" or "off track," and would add only about 5,600 documents. This would capture Defendants' repeated assurances that Disney+ was "on track" to meet its subscriber targets.

In addition, Defendants' searches concerning preparations for Disney's earnings calls, in which many of the misstatements at issue were made, require the term "quarter*." Ex. 4 at Search Term Nos. 25-26. While Disney's earnings calls did take place every quarter, that specific term likely would not have been used in many communications discussing talking points or other preparations for earnings calls. Accordingly, Plaintiffs have proposed a search (Ex. 3, Appendix A at Search Term No. 29) to fill that gap.

Defendants should also be required to make the targeted edits to eight of their searches (Nos. 1, 6, 9, 20-21, 30-31, and 40) that they have outright refused. *See* Ex. 3, Appendix B. Most of these modifications add obvious synonyms to agreed-upon terms,

- 4 -

4910-8440-4612.v1

such as "expense" for "cost" (*id.* at Search Term No. 20), "stock" for "security" (*id.* at Search Term No. 30), and "fire" for "terminate" (*id.* at Search Term No. 31). Others remove overly restrictive limiters. For example, Defendants insist their search concerning Disney+ projections should include the term "2024" (*id.* at Search Term No. 1), but Disney's only subscriber and profitability projections in the relevant period were for 2024, so employees would not have typically used the term "2024" when referring to those targets. *See, e.g.*, ECF 68, ¶286 (Chapek: "[W]e're very confident that going forward, we're going to hit both of those sub guidance and profitability guidance by bringing in the cost at a reasonable level relative to their ability to attract and retain our subs."). These are modest, common-sense corrections that ensure Defendants' agreed-upon concepts are actually captured.

To assist the Court, Plaintiffs submit a December 22, 2025 meet-and-confer letter and two detailed appendices. *See* Ex. 3. Appendix A to the letter sets forth the specific relevance of each of Plaintiffs' proposed searches and explains precisely how Defendants' current protocol is designed to miss critical evidence. Appendix B to the letter details why Plaintiffs' targeted modifications to Defendants' own searches are necessary to correct obvious deficiencies and capture internal Disney nomenclature. Together, these documents provide a row-by-row roadmap of the gaps in Defendants' discovery efforts and the proportionality of Plaintiffs' narrowed requests.

Finally, Defendants emphasize that discovery is ongoing, apparently to suggest this motion is premature, yet highlight the fact discovery cut-off, apparently to suggest this motion is tardy. Neither is true. The deficiencies in Defendants' proposed search protocol are evident now and should be addressed without delay.

DATED: December 23, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP

s/ Jessica T. Shinnefield
JESSICA T. SHINNEFIELD

- 5 -

4910-8440-4612.v1

DANIEL S. DROSMAN
RYAN A. LLORENS
JESSICA T. SHINNEFIELD
JEFFREY J. STEIN
NICOLE Q. GILLILAND
JESSICA E. ROBERTSON
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
ryanl@rgrdlaw.com
jshinnefield@rgrdlaw.com
jstein@rgrdlaw.com
ngilliland@rgrdlaw.com
jrobertson@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
CRISTELLE R. RABBAN (*pro hac vice*)
420 Lexington Avenue, Suite 1832
New York, NY 10170
Telephone: 212/432-5100
crabban@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 6 -

4910-8440-4612.v1