# EXHIBIT 3

Exhibit 3
Page 46

# Robbins Geller Rudman & Dowd LLP

| | | | | |
|---|---|---|---|---|
| Chicago | Melville | Nashville | San Diego | Wilmington |
| Boca Raton | Manhattan | Philadelphia | San Francisco | Washington, D.C. |

Jessica T. Shinnefield
jshinnefield@rgrdlaw.com

December 22, 2025

Stacy Nettleton                                                      VIA EMAIL
White & Case LLP                              stacy.nettleton@whitecase.com
1221 Avenue of the Americas
New York, NY  10020-1095

Re:   *Local 272 Labor-Management Pension Fund v. The Walt Disney Company, et al.*,
        Plaintiffs' December 8, 2025 Search Proposal

Dear Stacy:

I write regarding your December 16, 2025 letter, in which Defendants responded to Plaintiffs' December 8, 2025 search proposal (the "December 8 Proposal").  We are disappointed that, on the eve of the filing of our Reply brief, ***Defendants have chosen to replace meaningful cooperation with a coercive "all-or-nothing" ultimatum***.  This letter serves to set the record straight regarding our good-faith efforts to resolve these disputes and your continued obstruction of relevant discovery.

As you know, Plaintiffs provided the December 8 Proposal after the parties' December 5 meet-and-confer and in a concerted effort to narrow the issues presented to the Court in the Joint Stipulation.  Among other things, Plaintiffs eliminated 31 of their proposed searches, significantly narrowed 27 additional searches, and agreed to limit certain searches to designated custodians and topic-appropriate date ranges.  As a result of Plaintiffs' modifications, the number of documents that Plaintiffs' proposed searches would add to the review population ***dropped by nearly one million (from over 1.6 million to approximately 650,000)***, thereby drastically reducing Defendants' review burden while preserving core coverage.  Plaintiffs also proposed targeted revisions to Defendants' searches (largely by adding straightforward synonyms consistent with Disney's internal nomenclature and by removing unduly restrictive limiters) so Plaintiffs could drop duplicative standalone searches and further streamline the dispute.

First, your assertion that Plaintiffs acted in "bad faith" by offering a compromise proposal to significantly narrow the scope of the dispute before the Court is both disingenuous and legally meritless.  Negotiation, especially in the context of a pending Motion to Compel, requires the refinement and narrowing of positions.  Plaintiffs' December 8 Proposal was a disciplined effort to streamline the issues for the Court, not a "wholesale departure."  It is Defendants who have demonstrated a lack of good faith by intransigently refusing to run ***a single one*** of Plaintiffs' proposed

**Robbins Geller
Rudman & Dowd** LLP

Stacy Nettleton
December 22, 2025
Page 2

search terms and improperly attempting to leverage minor technical corrections to force Plaintiffs' total abandonment of critical, relevant discovery.

Second, your assertion that Plaintiffs have proposed "over 35 additional searches with little explanation as to how these searches remedy perceived deficiencies in Defendants' searches" is demonstrably false and ignores the extensive record in this case. As we have explained repeatedly, including in our October 10, 2025 letter, Plaintiffs specifically detailed the relevance of Plaintiffs' proposed searches and explained how each was designed to address deficiencies in Defendants' search proposal. *See* October 10 Letter to Nettleton, Appendix B (attached to Joint Stipulation as Exhibit K). To claim "prejudice" or "surprise" regarding terms that have been the subject of meet-and-confers for months is a ***transparent attempt to create a "record" that does not exist***.

Nonetheless, for the avoidance of any doubt, please see the attached Appendix A setting forth the relevance of each of Plaintiffs' proposed searches and why they are necessary to fill in critical gaps in Defendants' search protocol. These searches are essential tools to uncover evidence directly related to the fraudulent scheme alleged in the Complaint. If Defendants remain unwilling to run Plaintiffs' proposed search terms (and custodians), we intend to file our reply to the Joint Stipulation on December 23, 2025 at 2:00 p.m. Pacific/5:00 p.m. Eastern pursuant to the parties' agreement.

Finally, we appreciate Defendants' willingness to implement Plaintiffs' proposed modifications to 43 of Defendants' proposed searches. However, we categorically reject your attempt to use these necessary corrections as bargaining chips. ***Correcting your own deficient searches is not a "concession" that entitles you to a waiver*** of our Motion to Compel or the wholesale abandonment of our custodial requests. The 16 additional custodians are not "redundant"; they are central to the allegations in the Complaint. As set forth in Appendix B, attached hereto, Plaintiffs' proposed modifications to Search Nos. 1, 6, 9, 20-21, 30-31, and 40, which Defendants refuse to implement, are necessary and proportional. Please let Plaintiffs know whether Defendants will run the searches as modified in Appendix B.

Sincerely,

JESSICA T. SHINNEFIELD

JTS:cac
Attachments

4919-8073-1268.v1

Exhibit 3
Page 48

**Plaintiffs' Appendix A: Relevance of Plaintiffs' Proposed Searches**

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 2 | (sub OR subs OR subscriber*)w/5 (trajector* OR "on track" OR "off track" OR behind OR gap* OR variance* OR trend*) | 14,825 | The Complaint[3] alleges that Defendants falsely assured investors that Disney+ was "**on track**" to achieve its 2024 subscriber targets.  ¶¶139-140, 204-213.[4] | Defendants' search protocol *omits the terms "on track," "off track," or any synonyms*. It is therefore designed to miss the very documents that would prove whether Disney+ was meeting the assurances Defendants gave to the market. |

---

[1]    The "Row Nos." refer to the row numbers in Appendix A to Plaintiffs' December 8, 2025 Letter to Stacy Nettleton.

[2]    This data is from the hit report Defendants provided on December 16, 2025.

[3]    The "Complaint" refers to the Corrected Consolidated Complaint for Violations of the Federal Securities Laws (ECF 68).

[4]    All "¶¶" and "¶" are citations to the Complaint.

- 1 -

4911-3525-1588.v1

Exhibit 3
Page 49

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 4 | 230M OR "260M" OR "230MM" OR "260MM" OR "230- 260" OR "230 to 260" OR ((230 OR 260) w/3 mil*) OR "215M" OR 245M OR "215 MM" OR "245MM" OR "215-245" OR "215-245" OR "215 to 245" | 9,703 | The Complaint alleges that "Chapek, Daniel, and McCarthy launched their fraudulent scheme by intentionally setting unattainably high *Disney+ subscriber targets"* *of 230-260 million* subscribers by the end of 2024. ¶¶122, 147-154. The Complaint further pleads that in August 2022, Defendants adjusted the 2024 Disney+ subscriber target to *215-245 million*. ¶233 n.22. | Defendants' search protocol *omits the actual numeric terms* touted to investors.  By refusing to search for the specific numbers cited in the Complaint, Defendants are shielding a core component of the fraudulent scheme. |
| 5 | ("Disney+" OR D+ OR "Disney Plus") w/5 (trajector* OR "on track" OR "off track" OR behind OR gap* OR variance* OR trend*) | 5,631 | The Complaint alleges that Defendants falsely assured investors that Disney+ was "*on track*" to achieve its profitability and subscriber targets for 2024. ¶¶139-140, 204-213. | Defendants' search protocol omits the terms *"on track," "off track," or any synonyms* and will therefore likely miss relevant documents concerning whether Disney+ actually was on track to meet its 2024 profitability targets, as Defendants repeatedly assured investors. |

- 2 -

Exhibit 3
Page 50

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 7 | peak* w/5 loss* | 478 | In connection with Plaintiffs' loss causation allegations, the Complaint pleads that Disney's stock price dropped 7.1% on November 11, 2021 in response to Disney's announcement that it now expected that "Disney+ will reach its *peak year of losses in fiscal 2022* instead of fiscal 2021." ¶¶385-386. | Defendants' search protocol *omits any permutation of the term "peak losses,"* and is therefore likely to miss relevant documents concerning McCarthy's statement that Disney would reach its peak year of losses in fiscal 2022. |
| 11 | (Daniel* OR Kareem* OR KD) w/25 (appoint* OR hire* OR hiring OR lead* OR head* OR chair* OR role* OR restructur* OR qualif* OR unqualif* OR experience* OR poor* OR insufficient* OR inadequate* OR popular OR unpopular) | 78,088 | The Complaint alleges that Chapek appointed/hired Daniel to head DMED, *even though Daniel was inexperienced and unqualified* "to run one of the biggest entertainment companies in the world," because of Daniel's "loyalty and willingness to carry out Chapek's scheme." ¶¶125, 155-163. The Complaint further alleges that the DMED restructuring that Daniel oversaw *was "widely unpopular amongst Disney employees*." ¶161. | Defendants' search protocol omits several critical search terms, including *"restructur*," "popular" or "unpopular,"* and therefore will likely miss relevant documents concerning Plaintiffs' allegations that Daniel's appointment as the head of DMED was unpopular among Disney employees. |

- 3 -

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 12 | Churn* | 2,027 | *This search is limited to the custodial files of the Individual Defendants only.*<br><br>The Complaint alleges that *Defendants "concealed Disney+'s problem with churn."* ¶¶143, 224-228.  The Complaint further alleges that Defendants *made false and misleading statements regarding Disney+ churn rates*, including that they were "'really pleased with churn.'" ¶¶308-313.  And CWs reported that "Disney regarded churn as 'the most important thing' and therefore *'tracked churn very closely.'"* ¶225. | Defendants' churn search  (*see* Defendants' Dec. 16 Appendix A, Search Term No. 8) is overly narrow, as it requires that a document *contain both the term "churn" and some permutation of Disney+*.  However, custodians who work at Disney+ are unlikely to reference Disney+ every time they discuss churn.  Relevant documents containing the word churn that do not also contain Disney+ would be missed by Defendants' search protocol. |

- 4 -

Exhibit 3
Page 52

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 13 | ("Disney+" OR D+ OR "Disney Plus") w/30 (sub OR subs OR subscriber*) w/30 (attrit* OR cancel* OR retention OR retain* OR cohort* OR acqui* OR engag* OR "active user*" OR "low quality" OR inorganic OR organic OR funnel) | 2,976 | The Complaint alleges that Disney+ employed a host of short-term tactics to attract subscribers, but that these **subscribers were "low quality" and unengaged**, and were therefore likely to cancel their subscriptions and churn off the platform.  ¶¶135, 181-190.  This resulted **in high attrition and low retention rates** at Disney+.  ¶¶181-190.  When Iger returned to Disney in 2023, he admitted "that the growth-at-any-cost approach resulted in low-quality subscribers that would eventually cancel their Disney+ subscriptions rather than pay full price."  ¶228 | Defendants' search protocol contains no search that will capture documents relating to Plaintiffs' allegations that Defendants' tactics to gain subscribers resulted in **"low quality" subscribers and high attrition rates**. |
| 14 | (leak* or hole*) w/5 bucket | 0 | The Complaint alleges that Disney employees internally referred to Disney+ churn "**as 'the leaky bucket'** because '[n]o matter how much water you put in, some leaks out.'"  ¶¶144, 226, 312(a), 333. | Defendants' search protocol omits **permutations of the term "leaky bucket,"** and is therefore likely to miss documents relating to Plaintiffs' allegations that Disney employees referred to Disney+ churn as a "leaky bucket." |

- 5 -

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 15 | (intersegment OR markup*) w/25 ("Disney+" OR D+ OR "Disney Plus" OR DTC OR "direct to consumer" OR "direct-to-consumer") | 966 | The Complaint alleges that the Defendants *eliminated "intersegment studio sales,"* which "allowed Disney+ to record its content costs at the much lower actual production cost rather than the higher fair market value it had used under the pre-DMED business structure." ¶¶216, 295(b), 295(b) n.26. | Defendants' searches relating to Plaintiffs' intersegment studio sales allegations (*see* Defendants' Dec. 16 Appendix A, Search Term Nos. 6 and 15) are overly restrictive, as *they require the document to contain the specific phrase "intersegment pricing."* It is unlikely, however, that custodians would use only this specific phrase to refer to intersegment studio sales. |

- 6 -

Exhibit 3
Page 54

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 16 | ((cost* OR expens* OR budget*) w/10 (allocat* OR shift* OR reclass* OR move* OR moving)) AND ("Disney+" OR D+ OR "Disney Plus" OR DTC OR "direct to consumer" OR "direct-to-consumer") | 17,301 | The Complaint alleges that to conceal Disney+'s rampant content costs, ***Defendants artificially allocated/shifted/moved/reclassified content and marketing costs*** from Disney+ to other divisions. ¶¶222-223. | Defendants' searches relating to Plaintiffs' allegations that Defendants masked overspending at Disney+ by intentionally allocating Disney+ content and marketing costs to other divisions (Defendants' Dec. 16 Appendix A, Search Term Nos. 11-13) are unduly narrow, as ***they exclude relevant terms that would likely be used in this context (e.g. "reclass," "shift," "move," and "moving")***. |

Exhibit 3
Page 55

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 17 | ("Disney+" OR D+ OR "Disney Plus") w/15 content w/15 (cost* OR amortiz* OR capitaliz* OR expens* OR spend* OR spent OR overspend* OR overspent* OR budget* OR impair* OR "writ* off*" OR "write-off*" OR "p&l") | 4,389 | The Complaint alleges that to "mask the impact of [Disney+'s] runaway content spend, . . . *Defendants employed Disney's cost accounting model to delay the recognition of content expenses*, which were amortized or spread out over several years." ¶¶132, 175-179.  The Complaint further alleges that when Iger returned as Disney's CEO, he admitted Disney+ had overspent on content, and *Disney took a "2+ billion impairment charge to write off the shows*," which was "necessary to halt the amortization of content costs from reaching Disney's bottom line." ¶180. | Defendants' searches relating to Plaintiffs' cost accounting and impairment allegations (Defendants' Dec. 16 Appendix A, Search Term Nos. 11-13 and 50) are unduly narrow because *they do not include terms that will capture documents relating to spending and overspending on content (e.g., "spend," "spent," "overspend," or "overspent") or the term "writ* off*,"* which would capture more variations of the term "write off." |

- 8 -

Exhibit 3
Page 56

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 18 | ("Disney+" OR D+ OR "Disney Plus" OR DTC OR "direct to consumer" OR "direct-to-consumer") w/25 (profit* OR loss* OR unprofitab* OR "operating income" OR "break-even" OR "break* even") | 27,265 | The Complaint alleges that Defendants announced at Investor Day 2020 that *Disney+ would reach profitability and "break-even" by 2024*. ¶¶122-124, 147-154, 236, 392.  Throughout the Class Period, Defendants continued to falsely reassure investors that Disney+ remained on track to reach this target by 2024.  ¶¶139-140, 204-213. | Defendants' search protocol *omits the terms "break-even" or "break* even,"* which would likely be used in discussions about when Disney+ would break even and become profitable. |

Exhibit 3
Page 57

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 19 | (sub OR subs OR subscriber* OR "Disney+" OR D+ OR "Disney Plus") w/20 (entitl* OR activat* OR promo* OR trial* OR conversion* OR convert* OR downgrad* OR upgrad* OR free OR discount*) | 78,694 | The Complaint alleges that Defendants *used steep discounts or free promotions with third parties* to chase Disney+ subscriber growth. ¶¶135, 181-190.  The Complaint further alleges that "Disney made the decision that everyone *entitled* to a subscription through a partnership would be counted as a 'paid subscriber' even if they never actually subscribed" to Disney+.  ¶182. | Defendants' searches covering Plaintiffs' scheme allegations regarding third party partnerships and promotions (Defendants' Dec. 16 Appendix A, Search Term Nos. 16-19) are unduly restrictive *because they are limited to five specific partnerships*, among potentially dozens of similar deals signed during the relevant period, and omit key terms regarding how Disney accounted for free and/or trial subscriptions in which users were *less likely to convert into paid Disney+ subscribers*. |

- 10 -

Exhibit 3
Page 58

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 28 | (cert OR certs OR certif*) w/10 (sub OR 302 OR revenue) | 169 | Chapek, McCarthy, and Iger certified that the financial statements they submitted to the SEC were accurate and not false and misleading pursuant to the Sarbanes-Oxley Act of 2022 ("SOX").  Whether they assured themselves that such documents were, in fact, accurate and not misleading before signing is probative of their scienter.  *See In re Silver Wheaton Corp. Sec. Litig.*, 2016 WL 3226004, at *12 (C.D. Cal. June 6, 2016) (finding SOX certifications probative of scienter). | Defendants' search protocol contains no terms designed to capture documents relating to Defendants' SOX certifications. |

- 11 -

Exhibit 3
Page 59

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 29 | (earning* OR investor* OR analyst* ) w/15 ("talking point*" OR script* OR "Q&A" OR bullets OR "bullet points" OR prep* OR deck* OR rehears* OR mock OR call* OR question* OR slide* OR present* OR meet* OR discuss* OR "hot topic*" OR concern* OR narrative* OR OR comment* OR draft* OR answer*) | 130,953 | *This search is limited to the custodial files of 12 custodians who were involved in preparing for Disney's earnings calls with investors, as well as certain Investor Relations drives*.<br><br>Documents relating to Defendants' public statements on earnings calls, including their preparation therefore, are highly relevant to Plaintiffs' allegations regarding falsity and scienter for Defendants' misstatements.  ¶¶266-382. | Defendants' search protocol omits several relevant terms that would likely be used in discussing preparations for Disney earnings calls, *including: "prep*," "deck," "rehears*" "bullet points," and "answer."*  Additionally, Defendants' proposed searches relating to earnings calls (Defendants' Dec. 16 Appendix A, Search Term Nos. 25-26) are unduly restrictive because they require the document to include the term "quarter," which likely would not be used in many emails discussing earnings calls. |

4911-3525-1588.v1

Exhibit 3
Page 60

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 30 | ("Disney+" OR D+ OR "Disney Plus") | 46,150 | ***This search is limited to "IR Personnel, Investor Relations – Shared Drives, Boardvantage and IR Insights."*** <br><br> Any documents relating to Disney+ in these specific repositories are likely relevant to Plaintiffs' allegations. | Defendants have ***no similar search*** designed to capture documents relating to Disney+ in relevant investor relations and Board drives. |

- 13 -

Exhibit 3
Page 61

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 31 | ("Disney+" OR D+ OR "Disney Plus") w/25 (board* OR BOD) | 4,495 | The Complaint contains numerous allegations *related to the Board of Directors' involvement in matters concerning Disney+*. ¶¶9, 239-243 (alleging that the Board renewed Chapek's CEO contract because of his work "growing the Company's streaming business"); ¶¶22-23, 28 (alleging that two control person Defendants, Iger and Chapek, were members of the Board of Directors); ¶¶245-246 (alleging that at a September 2022 Board meeting, McCarthy "attempted to save her own skin by raising the alarm to Disney's Board of Directors and blaming Chapek and Daniel" for the disastrous 4Q 22 results); ¶247 (alleging that at the September 2022 Board meeting, Chapek told the Board that McCarthy had "concealed the bad numbers from him" and that "'if anything was amiss,' it was due to 'McCarthy's poor financial management'"); ¶251 (alleging that in November 2022, the Board fired | Defendants' insistence on running this thread only if it includes some form of the word "meet*" is contrary to common parlance. *See* Defendants' Dec. 16 Appendix A, Search Term No. 27. For example, Defendants' proposed search *would exclude documents or communications concerning a Board of Directors' call or Zoom regarding Disney+*. |

- 14 -

4911-3525-1588.v1

Exhibit 3
Page 62

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| | | | Chapek, and reached out to Iger about returning as CEO). | |
| 33 | (Chapek OR Bob OR BC) w/20 (contract OR renew* OR support* OR confiden* OR terminat* OR underperform* OR perform* OR fail* OR disappoint* OR agreement* OR employ* OR exten* OR unanim* OR consensus OR compens* OR replac* OR oppos* OR dissen* OR (step* w/3 down) OR vot*) | 10,093 | The Complaint alleges *that Chapek orchestrated the fraudulent scheme to ensure the renewal of his CEO contract*, which depended upon the growth of Disney+. ¶¶149, 239-243.  The Complaint further alleges that the Board's decision to renew Chapek's CEO contract *was not unanimous*, as Disney told the public.  ¶314.  In reality, the Board's decision to extend his contract was fraught with dissention.  ¶315. | Defendants' only search term including the word "contract" requires "contract" and "renew*" to appear in the same search, and will therefore likely exclude a significant number of highly relevant documents and communications discussing Chapek's contract simply because *the term "renew" was not used*.  For example, Defendants' Dec. 16 proposal *omits the following highly relevant terms: "support*," "confiden*," "fail*," "disappoint*," "agreement*," "exten*," "unanim*," "oppos*," "dissent*," and "vot**."* Exclusion of these terms would severely impair Plaintiffs' investigation into the reason(s) for Chapek's contract renewal. |

4911-3525-1588.v1

Exhibit 3
Page 63

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 34 | contract AND (renew* OR renegotiat* OR negotiat* OR exten* OR modif* OR chang* OR worr* OR stress* OR (check* w/3 in) OR updat* OR status OR nervous OR concern* OR Arnold OR Susan OR Board* OR BOD OR comp OR comps OR compensat*) | 3,366 | *This search is limited to Chapek's custodial files only.*<br><br>The Complaint alleges that Chapek orchestrated the fraudulent scheme to ensure the renewal of his CEO contract, which the Board ultimately renewed in June 2022. ¶¶149, 239-243.  It further alleges that by November 2022, *Board members were telling Susan Arnold (Chairman of the Board) that "they no longer supported Chapek as CEO."*  ¶251. | Defendants' search protocol omits *synonyms for the term "renew,"* and will therefore likely miss documents relating to Chapek's contract renewal negotiations, including any dissenting opinions or concerns from the Board regarding Chapek's contract renewal and Chapek's discussions regarding the process. |

4911-3525-1588.v1

Exhibit 3
Page 64

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 35 | Contract* AND term* | 2,322 | ***This search is limited to Chapek's custodial file only.*** The Complaint alleges that Chapek orchestrated the fraudulent scheme to ensure the renewal of his CEO contract, which the Board ultimately renewed in June 2022. ¶¶149, 239-243. | Defendants' search protocol does not include a search targeted at **Chapek's** contract terms. Instead, Defendants' sole search using the word "contract" is limited to any documents that also include the term "renew*," which will therefore likely miss documents relating to the negotiating process of Chapek's contract renewal, including any dissenting opinions regarding Chapek's contract renewal and the specific terms therein. |

- 17 -

Exhibit 3
Page 65

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 36 | (Chapek OR Bob OR BC) w/20 (fire* OR firing) | 2,227 | *This search is limited to Board members and other Disney executives who are alleged to have knowledge regarding Chapek's firing.* <br><br> The Complaint alleges that the Board fired Chapek in November 2022, after his fraudulent scheme began to unravel and he refused to be honest about the poor 4Q 22 financial results.  ¶¶245-252. | Defendants' search protocol is unduly narrow because it includes only "depart*," "resign,*" and "terminat*" and *omits common synonyms such as "fire*" and "firing."*  See Defendants' Dec. 16 Appendix A, Search Term No. 31. Defendants also *fail to add first names and commonly-used abbreviations for Chapek (e.g., "Bob" and "BC")*. Finally, Defendants' search *does not include Susan Arnold* or any member of the Disney Board of Directors, who were directly responsible for the decision to terminate Chapek. |

- 18 -

Exhibit 3
Page 66

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 37 | Kareem OR KD OR Daniel* OR Chapek OR Bob OR BC) w/20 ("mean girl*" OR Eeyore* OR toxic* OR dictator* OR unreasonabl* OR aggressiv* OR "iron fist*" OR axe OR unqualif* OR highway OR tone OR disregard* OR ignor* OR brutal* OR quit* OR incompeten* OR tyrant OR experience* OR inexperience* OR autocrat* OR oblivious* OR blind* OR reckless* OR careless* OR pressur*) | 30,267 | In connection with Plaintiffs' tone at the top allegations, the Complaint pleads that Chapek referred to Disney executives who disagreed with him as *"mean girls" or "Eeyores," and that Chapek's and Daniel's management style was a "dictatorship" and that it was "their way or the highway."* ¶348. The Complaint further alleges that Chapek ruled with an "iron fist" and hired Daniel to be his "axe man." ¶¶62, 65. | Defendants' search protocol omits the terms *"mean girl*" and "Eeyore,"* which are nicknames the Complaint pleads Chapek used to disparage Disney+ employees who criticized him. ¶348. Defendants' search protocol also *omits the terms "toxic," "dictator*," "unreasonable*," "aggresiv*," "iron fist," "axe," "highway," "disregard*," "ignor*," "brutal*," "quit*," "incompeten*," "tyrant," "autocrat*," oblivious*," "blind*," "reckless*," "careless*," and "pressur*,"* and will therefore likely miss documents relating to employees' criticisms of Chapek's and Daniel's leadership style and tone at the top. |

4911-3525-1588.v1

Exhibit 3
Page 67

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 38 | Compens* OR comp OR salar* OR severance OR "perform* based" OR "performance based" OR stock* OR "RSU*" OR "PBU*" OR KPI* OR claw* OR vest* OR "key performance" OR defer* OR pension OR "key strategic goal*" OR parachute* OR perk* OR bonus* OR incentiv* OR equit* OR inequit* OR variab* | 124,473 | *This search is limited to the custodial files of the four Individual Defendants.*<br><br>The Complaint alleges that the *Individual Defendants' compensation*, which was tied to the success of Disney+, provided a motive for the alleged misconduct. ¶¶372-379.  The Complaint further alleges that McCarthy engaged in illegal insider sales.  ¶¶380-381. | Defendants' search protocol *omits the commonly used term "comp," and requires terms like "RSU" and "stock" to appear with one of twelve other terms, like "trade"* (*see* Defendants' Dec. 16 Appendix A, Search Term No. 30), and will therefore likely miss key documents relating to executive compensation, one of the alleged motives behind the fraud. |

- 20 -

Exhibit 3
Page 68

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 39 | (Chapek* OR Bob* OR Christine* OR McCarthy* OR BC OR KD OR CMM OR Kareem* OR Daniel* OR Iger* OR Robert* OR CEO OR CFO) w/25 (compensat* OR pay* OR salar* OR severance OR perform* OR "RSU*" OR "PBU*" OR KPI*) | 2,422 | ***This search is limited to the custodial files of six Disney executives***, who are likely to have information regarding the Individual Defendants' compensation, stock sales and severance agreements.<br><br>The Complaint alleges that the Individual Defendants' compensation, which was tied to the success of Disney+, provided a motive for the alleged misconduct. ¶¶372-379. The Complaint further alleges that McCarthy engaged in illegal insider sales. ¶¶380-381. | Defendants' only search thread including the term ***"compens*" requires the term to appear with "(sub OR subs OR subscriber*) AND perform*,"*** and would therefore miss discussions regarding executive compensation that do not simultaneously discuss subscribers. *See* Defendants' Dec. 16 Appendix A, Search Term No. 29. |

- 21 -

Exhibit 3
Page 69

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 40 | Chapek* OR Bob* OR Christine* OR McCarthy* OR Kareem* OR Daniel* OR Iger* OR Robert* OR CEO OR CFO OR BC OR KD OR CMM) w/25 (stock* OR share* OR bonus* OR award* OR incentiv* OR option OR options) | 5,217 | *This search is limited to the custodial files of six Disney executives,* who are likely to have information regarding the Individual Defendants' compensation and stock awards.<br><br>The Complaint alleges that the *Individual Defendants' compensation,* which was tied to the success of Disney+, provided a motive for the alleged misconduct. ¶¶372-379.  The Complaint further alleges that McCarthy engaged in illegal insider sales.  ¶¶380-381. | Defendants' search terms regarding executive compensation are unduly narrow and likely to miss highly relevant documents. For example, *Defendants' only search thread including the term "bonus" requires that the term appear with "(sub OR subs OR subscriber*) AND perform*,"* and would therefore miss discussions regarding executive bonuses that do not also discuss subscribers. |

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 52 | "10b5*1" OR "trading plan*" | 83 | Defendants assert in their Twelfth Affirmative Defense that "***Defendants are not liable because they did not trade on or possess material non-public information, nor trade contemporaneously, but rather pursuant to a pre-existing 10b5-1 trading plan adopted in good faith***." Defendants' Answer at 81. The documents sought by this search are relevant to rebut that defense. They are also relevant to Plaintiffs' insider sales/scienter allegations. ¶¶380-381. | Defendants' search protocol lacks both of these terms. Although Defendants have agreed to produce 10b5-1 trading plans for Chapek, McCarthy, Daniel, and Iger (*see* September 12, 2025 Letter from Stacy Nettleton at 6; October 7, 2025 Letter from Stacy Nettleton at 6), Defendants' protocol will likely fail to yield documents regarding ***changes*** that Chapek, Daniel, McCarthy, or Iger wanted to make to their 10b5-1 trading plans during the Relevant Time Period. |

4911-3525-1588.v1

Exhibit 3
Page 71

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 54 | "separation agreement" OR retir* OR resign* OR severance OR terminat* OR "step* down" OR "for cause" OR "without cause" | 17,023 | *This search is limited to a subset of custodians who would likely have information regarding the terminations or resignations of Chapek, Daniel, McCarthy, and Bochner.*<br><br>The Complaint specifically alleges that these departures by top Disney executives support scienter. ¶¶351-357. | Defendants' insistence that *terms like "terminat*" appear with Chapek, Daniel, McCarthy, and Bochner's names*, or a version thereof, is contrary to common parlance. *See* Defendants' Dec. 16 Appendix A, Search Term No. 32.  For example, Defendants' proposed search would exclude documents or communications discussing *his* resignation or why *she* stepped down – *i.e.*, documents regarding executive departures that are likely highly probative of scienter. |

- 24 -

Exhibit 3
Page 72

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 56 | (("Disney+" OR D+ OR "Disney Plus" OR DTC OR sub OR subs OR subscriber*) w/15 (dashboard* OR data OR Snowflake OR Databricks OR Tableau OR "Looker Studio")) w/15 (access* OR restrict* OR grant* OR lock* OR "R internal*" OR live* OR "real-time" OR "real time" OR polic* OR procedur* OR "cut* off" OR "cut off" OR "reports@analytics.disneystreaming.com" OR "DEET.Tableau.-.Do.Not.Reply@disney.com" OR "Tableau-56donotreply@disneystreaming.com") | 7,910 | To support Plaintiffs' scienter allegations, the Complaint alleges that *Disney used sophisticated data analytics tools to access key data points like profitability, churn, and user engagement*, but that Defendants disregarded the data that contradicted their Class Period statements.  ¶¶318-334.  *Terms such as "Snowflake," "Tableau," and "Databricks"* are designed to capture this performance-based data. | Defendants' search protocol *omits the terms "dashboard," "data," "Snowflake," "Databricks," "Tableau, and "Looker Studio,"* and will therefore likely miss documents relating to the data analytics tools Disney used to track key data points like profitability, churn, and user engagement. |

- 25 -

Exhibit 3
Page 73

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 57 | (Board* OR "BOD" OR Florida OR "New York" OR "NYC" OR Manhattan OR Orlando OR retreat* OR strateg*) w/20 (meet* OR met OR present* OR preliminar* OR executiv* OR deck* OR earn* OR miss* OR consensus OR market* OR Street* OR investor* OR shareholder* OR blam* OR surpris*) | 15,258 | The Complaint alleges that beginning in September 2022, a series of *meetings occurred in Orlando and New York involving top Disney executives and its Board*, where concerns that Disney would miss consensus market estimates for 4Q 22 were discussed. ¶¶245-249. These meetings ultimately culminated in Chapek's and Daniel's terminations in November 2022. ¶¶251-252. | Defendants' search protocol *omits terms related to the Board and retreat meetings that led up to Chapek's firing (e.g., "Manhattan," "Orlando," "New York")*. Additionally, Defendants' search protocol omits the term "Street*," and will therefore likely miss highly relevant discussions regarding Disney's preparation of public statements to the market, as well as "the Street's" reaction to Defendants' public statements. |

4911-3525-1588.v1

Exhibit 3
Page 74

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 58 | ("fourth quarter*" OR "Q4*" OR "4Q*" OR "FY*" OR "fiscal year*") w/20 (call* OR result* OR releas* OR loss* OR present* OR meet* OR met OR earn* OR financ* OR miss* OR consensus OR short OR below OR market OR markets OR Street* OR investor* OR shareholder* OR "executive session*") | 23,894 | The Complaint alleges that by at least September 2022, Disney was concerned that it would *miss consensus market estimates for 4Q 22*. ¶¶245-249. | Defendants' insistence that *variations of the term "fourth quarter" appear with the term "financ*" will exclude highly relevant documents relating to missing analyst expectations or market estimates*. *See* Defendants' Dec. 16 Appendix, Search Term No. 33. Additionally, Defendants' search protocol omits the terms "Street*," "investor," and "executive session" altogether, and will therefore likely miss highly relevant discussions regarding Defendants' preparation of public statements to the market. |

4911-3525-1588.v1

Exhibit 3
Page 75

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 59 | DMED* OR "Disney Media and Entertainment Distribution" OR "Disney Media & Entertainment Distribution" w/10 (restructur* OR reorg*) | 1,358 | ***This search is limited to parent emails only (i.e., not attachments)***. <br><br> The Complaint alleges Chapek and Daniel ***completely rearranged the Company to create DMED*** to oversee all of Disney's media and entertainment operations.  ¶¶155-163.  It further alleges that the DMED reorganization was met with significant backlash from key executives inside Disney, including Iger.  ¶¶160-161. | Defendants' search protocol ***omits the term "restructur*," a logical and likely common synonym for "reorg*,"*** and will therefore likely miss documents relating to the creation of DMED and internal impressions and criticisms thereof. |

- 28 -

4911-3525-1588.v1

Exhibit 3
Page 76

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 60 | (("Disney+" OR D+ OR "Disney Plus" DTC OR "direct to consumer" OR "direct-to-consumer") w/15 (cut* OR decreas* OR lower* OR reduc* OR minimiz* OR eliminat* OR "writ* off" OR write*off OR rationaliz* OR reset* OR releas*)) w/15 (cost* OR expens*) | 1,879 | The Complaint alleges that after Iger returned as CEO in November 2022, he "began taking drastic measures in order to stop the bleeding and ensure Disney+'s survival" (¶252) – "Disney '*reset the whole business*.'" ¶336. These measures included *writing off* billions of dollars' worth of shows and films to stop runaway content costs (¶252), "*rationaliz[ing]*" the volume of content created for Disney+ (¶134), and *lowering/reducing marketing budgets*. ¶253. | Defendants' search protocol omits logical and likely common synonyms to the term "cost* w/5 cut*" (*see* Defendants' Dec. 16 Appendix A, Search Term Nos. 37-38 and 50) *such as "cut*," "decrease*," "lower*," "reduc*," "minimiz*," "eliminate*," "rationaliz*," "reset*," and "release*,"* and will therefore likely miss documents relating to Disney's multi-billion dollar write-off of runaway content costs. |

- 29 -

Exhibit 3
Page 77

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 62 | (market* OR analyst* OR Street* OR investor* OR shareholder*) w/10 (react* OR disappoint* OR messag* OR surpris* OR concern* OR worr* OR shock* OR downgrad* OR lower* OR rating* OR reduc* OR fail* OR critic* OR miss*) | 78,538 | The Complaint alleges *the manner in which analysts and the market reacted to Defendants' corrective disclosures*. ¶¶389, 392, 396. | Defendants' search protocol *omits the terms "analyst*," "Street*," "investor*," "shareholder*," "react*," "disappoint*," "messag*," "surprise*," "concern*," "worr*," "shock*," "rating*," "fail*," "critic*," and "miss*,"* and will therefore likely miss documents relating to the market's reaction to the alleged corrective disclosures. |
| 64 | ("Disney+" OR D+ OR "Disney Plus" OR sub OR subs OR subscriber*) w/10 (hit* OR grow* OR expect*) | 55,886 | The Complaint alleges that Defendants' scheme was designed to convince investors that Disney+ would *hit* the subscriber targets Defendants provided.  ¶¶121-124. | Defendants' search protocol omits the term *"expect*,"* and will therefore likely miss documents relating to internal and external expectations for Disney+'s growth during the Class Period. |

4911-3525-1588.v1

Exhibit 3
Page 78

| Row No.[1] | Plaintiffs' Proposed Search | Unique Hits Per Search Against Defendants' Search Protocol[2] | Relevance of Plaintiffs' Search | Why Defendants' Search Protocol Is Insufficient |
|---|---|---|---|---|
| 66 | Impair* w/3 charg* | 4,712 | The Complaint alleges that, upon his return, Iger revealed "*the $2.4 billion in impairment charges*" (recorded in 2023) caused by Chapek's content strategy. ¶146. | Defendants' protocol improperly limits this search to documents that also mention "Disney+." This *excludes critical documents regarding the $2.4 billion charge* that discuss the "impairment" generally without the specific platform tag. *See* Defendants' Dec. 16 Appendix A, Search Term No. 50. |
| 68 | "Disney+" OR D+ OR "Disney Plus" OR sub OR subs OR subscriber* OR Chapek* OR Kareem* OR McCarthy* OR Iger* OR KD OR BC OR CMM | 21,524 | This search targets *forensic files* of the Individual Defendants *only*. Documents in these files are unique and central to proving the allegations in the Complaint. | Defendants have *no similar search* designed to capture relevant forensic files. This is a categorical refusal to search a primary source of relevant evidence. |

- 31 -

4911-3525-1588.v1

Exhibit 3
Page 79

**Plaintiffs' Appendix B: Reasons for Plaintiffs' December 8, 2025 Proposed Modifications to Defendants' Searches**

| Row No. | Plaintiffs' Proposed Modifications to Defendants' Searches | Reasons for Plaintiffs' Proposed Modifications |
|---|---|---|
| 1 | ("Disney+ subscriber" OR "D+" OR "Disney+" OR "Disney Plus" OR (sub or subs or subscriber*)) AND (projection* OR projected OR projecting OR target* OR forecast* OR goal* OR hit* OR number* OR guid* OR objective*) AND 2024 | • Defendants do not address (a) their refusal to add "projected" or "projecting" as different forms of the agreed-upon term "projection," (b) their refusal to add a root expander to the terms "projection," "target," "forecast," "goal," or "hit," to capture plural words and other forms of the same words, or (c) their refusal to add "guid*" or "objective" as synonyms for these agreed-upon terms.<br><br>• Defendants assert that the limiter "AND 2024" was "designed to target documents related to Plaintiffs' allegations about Disney's 2024 subscriber and profitability projections for Disney+." Dec. 16, 2025 Letter from Stacy Nettleton to Jessica Shinnefield ("Nettleton Letter") at 3. However, during the Relevant Period, 2024 was the only year for which Defendants provided Disney+ subscriber and profitability projections. ¶¶110, 124, 140, 149, 152.[1] As such, it would have been unnecessary and unlikely for Disney employees to consistently use the term "2024" when referring to the subscriber and profitability projections at issue. Defendants' own statements during the Class Period confirm this. *See, e.g.,* ¶286 (***"[W]e're very confident that going forward, we're going to hit both of those sub guidance and profitability guidance by bringing in the cost at a reasonable level relative to their ability to attract and retain our subs."***).<br><br>• Defendants also reference Search No. 3, which does not include an "AND 2024" limiter, as a purported justification for requiring that limiter in Search No. 1. That search, however, includes other required elements (specifically, a narrow "within" limiter and a short list of other required terms), causing it to return only 233 unique hits. |

---

[1]    All "¶¶" and "¶" references are to the Corrected Consolidated Complaint for Violations of the Federal Securities Laws (ECF 68).

- 1 -

4903-2509-5812.v1

Exhibit 3
Page 80

| Row No. | Plaintiffs' Proposed Modifications to Defendants' Searches | Reasons for Plaintiffs' Proposed Modifications |
|---|---|---|
| 6 | "Disney Media and Entertainment Distribution" OR "DMED" OR reorg* OR ("intersegment transfer" W/10 pric*)<br><br>Timeframe:  September 1, 2020 – December 31, 2020 March 1, 2021 | • Defendants make no attempt to defend their refusal to remove the limiter "w/10 pric*" from the term "intersegment transfer."  The term "intersegment transfer" is highly specific to an important concept in this case (specifically, transferring content costs from one distribution platform to another for accounting purposes).  *See* ¶¶215-219, 222-223, 288-295.  Applying a further "within" limiter is unnecessary and overly restrictive.<br>• All parties agree that this search will have a start date of September 1, 2020, but Defendants object to Plaintiffs' proposal to extend the end date for this search by three months – from December 31, 2020 to March 1, 2021.<br>• This modest three-month extension is proportionate to the needs of this case.  This search concerns DMED, a group whose formation and operations are a central part of Plaintiffs' allegations.  *See* ¶¶155-163.  Defendants own statements during the Class Period confirm the relevance of this time period.  For example, although Disney first announced the DMED reorganization on October 12, 2020, Disney announced that it would "transition to financial reporting under this structure in the first quarter of fiscal 2021."  *See* https://thewaltdisneycompany.com/the-walt-disney-company-announces-strategic-reorganization-of-its-media-and-entertainment-businesses/; *see also* ¶218.  In addition, at a March 1, 2021 investor conference, Chapek described the implementation of DMED, as well as the ongoing response it was receiving from employees within the Company months after the initial announcement: "I'll tell you, we've had very strong buy-in. People like the idea of clear accountability. . . . And it ***requires a very collaborative environment, which I'm pleased to say we're seeing***."  ¶304.<br>• In response to Defendants' concerns regarding volume, Plaintiffs have agreed not to seek the term "DMED" for the entirety of the relevant time period.  However, documents containing that term that were created |

- 2 -

4903-2509-5812.v1

Exhibit 3<br>Page 81

| Row No. | Plaintiffs' Proposed Modifications to Defendants' Searches | Reasons for Plaintiffs' Proposed Modifications |
|---|---|---|
| | | around the time of DMED's formation are likely to include highly relevant materials concerning the reasons DMED was formed and the effects of that corporate reorganization. *See* ¶¶155-163, 216, 295(b), 295(b) n.26. A six-month time period for this search is therefore entirely appropriate to capture documents discussing those effects. |
| 9 | ("Disney+" OR "D+" OR "Disney Plus" OR "DTC" OR "direct-to-consumer") AND (distribut* OR release* OR content) AND content AND ((linear OR cable OR network OR window*) OR theater OR (pay*per*view)) | • Defendants' proposed search is overly restrictive because it requires that four elements come together in a single document. In particular, Defendants' proposed search requires the exact term "content" together with three other elements (terms regarding Disney+, terms regarding distribution, and terms regarding distribution windows or methods). It is common sense that terms concerning entertainment content often will not use the exact term "content," and instead may refer to movies, television shows, and the like. Thus, a search that requires the exact word "content" along with three other sets of terms is overly restrictive. |
| | | • Defendants' use of "distribution" and "windowing" strategies to artificially shift costs away from Disney+ is a highly specific, and a critically important concept in this case. *See* ¶¶222-223. |
| | | • In response to Defendants' volume concerns, Plaintiffs have removed numerous proposed search terms concerning particular categories of movies and television shows from Plaintiffs' proposed searches, and have endeavored to edit Defendants' proposed search to generate adequate coverage. |
| | | • Defendants' proposed search generates only 1,550 unique hits, which underscores the fact that it is overly restrictive. |
| | | • Plaintiffs' proposed revision would add the word "content" to the set of terms concerning distribution, and would still require each of the other two elements (terms regarding Disney+ and terms regarding distribution windows or methods). |

- 3 -

4903-2509-5812.v1

Exhibit 3
Page 82

| Row No. | Plaintiffs' Proposed Modifications to Defendants' Searches | Reasons for Plaintiffs' Proposed Modifications |
|---|---|---|
| 20 | ("Disney+" OR "D+" OR "Disney Plus" OR DTC OR "direct-to-consumer" OR "direct to consumer") AND (profit* OR cost* OR expens* OR unprofitab* OR underperform* OR loss* or ARPU) AND (international OR market OR markets OR territor* OR countr* OR region* OR global OR local) AND market AND (sub OR subs OR subscriber*) | • Defendants make no substantive attempt to defend (a) their refusal to add synonyms for agreed-upon terms "profit*" or "cost*," namely "expens*" or "unprofitab*" or "underperform*" or "loss*" or "ARPU" (*i.e.*, average revenue per user), or (b) their refusal to add synonyms for agreed-upon terms "international" or "local," namely "market" or "markets" or "territor*" or "countr*" or "region*" or "global." Defendants describe these terms as "generic" (Nettleton Letter at 2), but they are synonyms of similar terms Defendants have already agreed to run, so they are fully appropriate.<br>• Defendants make no attempt to defend their insistence that this search string include the limiter "AND (sub or subs or subscriber*)." This search relates to Defendants' unprofitable effort to expand Disney+ into numerous international markets (*see* ¶¶137-138, 191-203), and there is no reason to expect that documents on that topic would necessarily include the term "subscriber."<br>• In response to Defendants' volume concerns, Plaintiffs have removed numerous proposed search terms concerning the expansion of Disney+ to specific countries and regions around the world from Plaintiffs' proposed searches, and have endeavored to edit Defendants' proposed search to provide adequate coverage.<br>• Defendants' proposed search generates zero unique hits, which underscores the fact that it is overly restrictive. |
| 21 | ("Disney+" OR "D+" OR "Disney Plus" OR DTC OR "direct-to-consumer" OR "direct to consumer" OR "Hotstar") AND ((international w/25 OR market OR markets OR territor* or countr* OR region* OR foreign OR world OR global OR local) AND w/25 (launch* OR expan* "roll* out" | • Defendants do not address Plaintiffs' proposed modifications to Search No. 21 in their correspondence to Plaintiffs, but nonetheless refuse to make those modifications.<br>• Defendants would require that the term "international" appear within 25 words of the term "market," even though discussions of expanding Disney+ to new markets often would not use those exact terms in close proximity. |

4903-2509-5812.v1

Exhibit 3
Page 83

| Row No. | Plaintiffs' Proposed Modifications to Defendants' Searches | Reasons for Plaintiffs' Proposed Modifications |
|---|---|---|
| | OR rollout)) AND (sub OR subs OR subscriber*) | • Defendants refuse to add synonyms for agreed-upon terms "international" and "market," namely "markets" or "territor*" or "countr*" or "region*" or "foreign" or "world" or "global" or "local."<br>• Defendants refuse to add synonyms for the agreed-upon term "launch*," namely "expan*" or "roll* out" or "rollout."<br>• Defendants insist that this search include the limiter "AND (sub or subs or subscriber*)." This search relates to Defendants' effort to expand Disney+ into numerous international markets, and there is no reason to expect that documents on that topic would necessarily include the term "subscriber." *See* ¶¶137-138, 191-203.<br>• Defendants' proposed search generates zero unique hits, which underscores the fact that it is overly restrictive.<br>• To limit burden, Plaintiffs have agreed to a "within 25" limiter between the terms relating to international expansion and those relating to "launch." |
| 30 | (securit* OR stock* OR option* OR RSU* OR PBU*) AND (award* OR exercis*e OR purchase* OR sale* OR sell OR buy OR bought OR vest* OR execut* OR trade* or trading or plan*) | • Defendants make no attempt to defend (a) their refusal to add synonyms for the agreed-upon term "securit*," namely "stock*" or "option*" or "RSU*" or PBU*", or (b) their refusal to add root expanders to agreed-upon terms "award" or "exercise" or "purchase" or "sale" to capture plural words and other word forms.<br>• Defendants make no substantive attempt to defend their refusal to add synonyms for agreed-upon terms "award" or "exercise" or "purchase" or "sale," namely "sell" or "buy" or "bought" or "vest*" or "execut*" or "trade*" or "trading" or "plan*." Defendants describe these terms as "generic" (Nettleton Letter at 2), but they are synonyms of similar terms Defendants have already agreed to run, so they are fully appropriate. Indeed, one of the terms that Defendants describe as generic ("purchase") was proposed by Defendants themselves. |
| 31 | (depart* OR resign* OR terminat* OR fire* OR firing OR sacked OR sack OR retir* OR | • Defendants make no attempt to defend (a) their refusal to add synonyms for agreed-upon terms "depart*" or "resign" or "terminat*," namely |

4903-2509-5812.v1

Exhibit 3
Page 84

| Row No. | Plaintiffs' Proposed Modifications to Defendants' Searches | Reasons for Plaintiffs' Proposed Modifications |
|---|---|---|
| | "step* down" OR oust* OR "let* go" OR depart* OR "for cause" OR "without cause" OR separat* OR boot) AND (Chapek OR McCarthy OR Daniel OR Bochner OR Bob OR Kareem OR Christine OR Arthur OR BC OR KD OR CMM) | "fire*" or "firing" or "sacked" or "sack" or "retir*" or "step* down" or "oust*" or "let* go" or "depart*" or "for cause" or "without cause" or "boot," or (b) their refusal to add first names and commonly-used abbreviations for Chapek, McCarthy, Daniel, and Bochner, namely "Bob" or "Kareem" or "Christine" or "Arthur" or "BC" or "KD" or "CMM."<br><br>• Defendants complain about the Plaintiffs' proposal to use the term "separat*" as a synonym for an executive's departure.  In the interest of compromise, Plaintiffs can agree to remove the term "separat*." |
| 40 | (stock* ~~W/5 price~~OR shares OR "share price") AND (move* OR declin* OR increase* OR chang* OR up OR down OR fall* OR plummet* OR fell OR decreas* OR drop OR reduc* OR weak* OR soft* OR impact* OR low* OR high OR downgrad* OR upgrad* OR gain* OR loss* OR lose OR target* OR consensus) | • Defendants make no attempt to defend (a) their refusal to add synonyms for the agreed-upon term "stock," namely "shares" or "share price," or (b) their refusal to remove the "e" in agreed-upon terms "move*" and "increase*" in order to capture word forms such as "moving" or "increasing."<br><br>• Defendants make no substantive attempt to defend their refusal to add synonyms for agreed-upon terms "mov*," declin*," "increas*," or "chang*," such as "decreas*," "drop*," and other similar terms. Defendants describe these terms as "generic" (Nettleton Letter at 2-3), but they are synonyms of similar terms Defendants have already agreed to run, so they are fully appropriate. |

- 6 -