ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN (200643)
RYAN A. LLORENS (225196)
JESSICA T. SHINNEFIELD (234432)
DARRYL J. ALVARADO (253213)
JEFFREY J. STEIN (265268)
NICOLE Q. GILLILAND (335132)
JESSICA E. ROBERTSON (352207)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
ryanl@rgrdlaw.com
jshinnefield@rgrdlaw.com
dalvarado@rgrdlaw.com
jstein@rgrdlaw.com
ngilliland@rgrdlaw.com
jrobertson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LOCAL 272 LABOR-MANAGEMENT PENSION FUND, on Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE WALT DISNEY COMPANY, et al.,<br><br>Defendants. | Case No. 2:23-cv-03661-CBM (ASx)<br><br>CLASS ACTION<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE SAGAR'S NON-DISPOSITIVE ORDER DATED JANUARY 7, 2026 GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL CUSTODIAN AND SEARCH TERMS (ECF 207) **[REDACTED]**<br><br>Date:    February 24, 2026<br>Time:    10:00 a.m.<br>Ctrm:    8D<br>Judge:    Hon. Consuelo B. Marshall |

4928-2741-9273.v1

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................ 3

III.  LEGAL STANDARD ........................................................................................ 5

IV.  ARGUMENT ..................................................................................................... 6

    A.  The Order Incorrectly Denied Plaintiffs' Request to Add Lewerke as a Custodian ............................................................................ 6

    B.  Judge Sagar's Refusal to Add Claire Lee as a Custodian Is Both Clearly Erroneous and Contrary to Law ............................................... 8

        1.  Judge Sagar's Finding that Claire Lee's Communications Are Only "Marginal[ly] Relevan[t]" to Plaintiffs' Claims Is Clearly Erroneous ................................................................. 8

        2.  Judge Sagar's Factual Findings with Respect to Claire Lee Are Inconsistent with Other Rulings in the Order ............ 10

        3.  Judge Sagar's Ruling Regarding Claire Lee Also Rests on the Unsupported Factual Assumption that She Likely Possesses Few Unique, Non-Duplicative Documents ............. 12

        4.  Judge Sagar's Order with Respect to Claire Lee Is Also Contrary to Law ................................................................. 15

    C.  Judge Sagar's Refusal to Add Nancy Lee as a Custodian Is Also Clearly Erroneous and Contrary to Law ............................................. 17

V.  CONCLUSION ................................................................................................ 20

4928-2741-9273.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Asus Comput. Int'l v. Round Rock Rsch., LLC*,
2013 WL 12131285 (C.D. Cal. 2013) .................................................................5

*Bible v. Rio Props., Inc.*,
246 F.R.D. 614 (C.D. Cal. 2007) ......................................................................15

*Blankenship v. Fox News Network, LLC*,
2020 WL 9718873 (S.D.W. Va. 2020).............................................................13

*Calendar Rsch. LLC v. StubHub, Inc.*,
2019 WL 4138660 (C.D. Cal. 2019) ...................................................................5

*Crispin v. Christian Audigier, Inc.*,
717 F. Supp. 2d 965 (C.D. Cal. 2010)..........................................................5, 10

*Fam. Wireless #1, LLC v. Auto. Techs., Inc.*,
2016 WL 2930887 (D. Conn. 2016)..................................................................13

*Gonzalez-Tzita v. City of L.A.*,
2018 WL 10111333 (C.D. Cal. 2018) .................................................................6

*H-E-B, LP v. Olympia Tools Int'l, Inc.*,
2021 WL 3171890 (S.D. Cal. 2021) ....................................................................5

*In re Bank of Am. Cal. Unemployment Benefits Litig.*,
2024 WL 3174874 (S.D. Cal. 2024) ..................................................................10

*In re BofI Holding, Inc. Sec. Litig.*,
2021 WL 4460751 (S.D. Cal. 2021) ....................................................................6

*In re Envision Healthcare Corp. Sec. Litig.*,
2020 WL 6750397 (M.D. Tenn. 2020) ..............................................................13

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
2025 WL 1009362 (N.D. Cal. 2025)..................................................................14

*Intex Recreation Corp. v. Bestway USA Inc.*,
2021 WL 6618494 (C.D. Cal. 2021) ...................................................................6

- ii -

**Page**

*Kleen Prods. LLC v. Packaging Corp. of Am.*,
   2012 WL 4498465 (N.D. Ill. 2012) .................................................................... 13

*Laub v. Horbaczewski*,
   2019 WL 1744846 (C.D. Cal. 2019) ..................................................................... 5

*Pappas v. Naked Juice Co. of Glendora, Inc.*,
   2012 WL 12885108 (C.D. Cal. 2012) ....................................................... 14, 15, 16

*Pom Wonderful LLC v. Coca-Cola Co.*,
   2009 WL 10655335 (C.D. Cal. 2009) ................................................................. 15

*SPS Techs., LLC v. Briles Aerospace, Inc.*,
   2019 WL 13108021 (C.D. Cal. 2019) ............................................................ 15, 16

*Stetsyk v. Kelly Mitchell Grp., Inc.*,
   2020 WL 10457861 (C.D. Cal. 2020) ................................................................. 15

*Strategic Partners, Inc. v. FIGS, Inc.*,
   2020 WL 2527056 (C.D. Cal. 2020) ................................................................... 16

**STATUTES, RULES, AND REGULATIONS**

28 U.S.C.
   §636(b)(1)(A) ......................................................................................................... 5

Federal Rules of Civil Procedure
   Rule 26 .........................................................................................................*passim*
   Rule 26(b)(1) ...............................................................................................*passim*
   Rule 72(a) ....................................................................................................*passim*

Civil Local Rules
   Rule 7-18 .............................................................................................................. 1
   Rule 37-2.3 ........................................................................................................... 4

4928-2741-9273.v1

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 72(a), Lead Plaintiffs Central Pennsylvania Teamsters Pension Fund, Central Pennsylvania Teamsters Pension Fund – Retirement Income Plan 1987, and Central Pennsylvania Teamsters Health and Welfare Fund, and plaintiffs Local 272 Labor-Management Pension Fund and John Patrick Talbot (collectively, "Plaintiffs") respectfully submit this objection to United States Magistrate Judge Alka Sagar's January 7, 2026 Order Granting in Part Plaintiffs' Motion to Compel Custodian and Search Terms (ECF 207) (the "Order").[1]

Plaintiffs do not seek to revisit the Order wholesale. This Objection instead challenges discrete but consequential discovery rulings that rest on clearly erroneous factual findings, internally inconsistent reasoning and legal errors – and that improperly foreclose discovery from individuals who were centrally involved in the conduct at issue and whose relevance is established by the record. Specifically, Plaintiffs object to the denial of their request to add three custodians – Lewerke, Claire Lee, and Nancy Lee – each of whom occupied a distinct but critical role during the period December 10, 2020 to May 10, 2023 (the "Class Period"). As set forth below, the Order's treatment of each custodian suffers from a defect requiring relief under Rule 72(a).

***First***, the Order erroneously denies Plaintiffs' request to add Lewerke as a custodian notwithstanding Judge Sagar's clear, unequivocal, and unqualified oral ruling at the January 6, 2026 hearing granting that very request. The written Order reverses the Court's on-the-record ruling, and no intervening facts, legal authority, or explanation were offered to justify a departure from that ruling. This inconsistency

---

[1] To avoid any potential waiver of Plaintiffs' rights to challenge the Order, Plaintiffs have contemporaneously filed a motion for reconsideration pursuant to Local Rule 7-18 (the "Motion"), respectfully requesting that Judge Sagar reconsider the denial of Plaintiffs' motion to add Nick Lewerke ("Lewerke"), Claire Lee, and Nancy Lee as custodians. That Motion is noticed to be heard by Judge Sagar on February 19, 2026. If Judge Sagar grants Plaintiffs the requested relief, Plaintiffs will promptly withdraw this Objection as moot.

- 1 -

constitutes clear error and requires correction to conform the written Order to Judge Sagar's oral decision.

***Second***, the Order's denial of Plaintiffs' request to add Claire Lee, Chief of Staff to defendant Robert Chapek ("Chapek"), on the ground that her communications would be only "marginal[ly] relevan[t]" and largely duplicative rests on clearly erroneous factual assumptions and the incorrect application of Federal Rule of Civil Procedure 26(b)(1). That conclusion is irreconcilable with the record. In their opposition to Plaintiffs' motion to compel, Defendants[2] affirmatively conceded that a Chief of Staff is a member of Disney's senior management and "may potentially possess communications relevant to, among other allegations, … publicly announced subscriber targets, the DMED reorganization subscriber growth strategy, public disclosures, and Chapek's renewal as CEO." ECF 193 at 58-59. Defendants' own admissions establish relevance. Defendants made that concession to justify their designation of Arthur Bochner ("Bochner"), Chapek's former Chief of Staff, as a custodian. Having conceded that the Chief of Staff role entails senior-management-level involvement across all facets of the alleged fraud, Defendants cannot plausibly contend, and the Order cannot properly find, that Claire Lee's custodial files are merely marginal or duplicative.

***Third***, the same errors infect the Order's denial of Plaintiffs' request to add Nancy Lee, Chief of Staff to defendant Iger. Nancy Lee occupied the identical senior gatekeeping role for Disney's Executive Chairman and CEO, controlling the flow of information to and from Iger and participating directly in matters bearing on Disney+ subscriber growth, disclosures, and strategy. Defendants' concession that a Chief of Staff is senior management with broad substantive involvement applies with equal force to Nancy Lee, and no evidence was offered to suggest her role was materially

---

[2]    Defendants" collectively refers to The Walt Disney Company ("Disney"), Robert Iger ("Iger"), Chapek, Christine M. McCarthy, and Kareem Daniel.

- 2 -

different or less relevant than the other Chief of Staff from whom Defendants agreed to produce. The Order's contrary finding is thus clearly erroneous.

Across all three custodians, the Order misapplies the governing legal standard. Rule 26(b)(1) places the burden of proof on the party resisting discovery – the Defendants – to demonstrate that proposed discovery is disproportionate. Defendants failed to proffer *any* evidence regarding the burden, cost, or volume associated with adding any of these custodians. Denying discovery from concededly senior, centrally involved custodians in the absence of such a showing is contrary to law.

## II. BACKGROUND

On August 15, 2025, Defendants gave Plaintiffs their initial proposed search protocol in response to Plaintiffs' First and Second Sets of Requests for Production of Documents.[3] Pursuant to the parties' Stipulated Electronic Discovery Agreement (ECF 174) (the "ESI Agreement"), Plaintiffs requested the addition of 22 custodians reasonably necessary to obtain relevant, responsive discovery. Plaintiffs' request was grounded in detailed factual showings of relevance tied directly to the alleged fraud. Defendants rejected *all* 22 proposed custodians outright, without disputing the relevance of any individual custodian and without making any evidentiary showing of burden, cost, or disproportionality. Plaintiffs provided Defendants with a detailed written submission, explaining why each proposed individual was reasonably likely to possess unique, relevant, and non-duplicative evidence. Despite this showing, Defendants agreed to add only two custodians: Susan Arnold and Rebecca Campbell. Defendants declared they had "already gone beyond what Rule 26 requires" (ECF 189-13) by adding those two custodians, thereby necessitating Court intervention.

On December 1, 2025, the parties submitted the Joint Stipulation Regarding Plaintiffs' Motion to Compel Custodians and Search Terms (ECF 189, 193) (the

---

[3] Plaintiffs do not include the background pertaining to the parties' search term negotiations, as Plaintiffs do not object to Judge Sagar's rulings concerning search terms.

4928-2741-9273.v1

"Joint Stipulation").  In the Joint Stipulation, Plaintiffs narrowed their request from 22 to 16 additional custodians while continuing to seek discovery from individuals who were central to the alleged misconduct, including Lewerke, Claire Lee, and Nancy Lee.  Plaintiffs also sought an order compelling Defendants to implement Plaintiffs' October 10, 2025 search proposal and to "apply all searches (from both sides) across all designated custodians with reasonable, topic-appropriate timeframes."  ECF 193 at 35.  On December 23, 2025, the parties filed their respective supplemental memoranda pursuant to Local Rule 37-2.3.

Judge Sagar held a hearing on the Joint Stipulation on January 6, 2026.  After hearing extensive argument from both sides, Judge Sagar unequivocally stated: "I am going to then grant in part the request to add these seven custodians. I'll deny it as to five and grant it as to Chodnowitz [sic] **and [Nick] Lewerke**."  ECF 208 at 16:3-5. That ruling followed argument in which Plaintiffs explained Lewerke's unique role and Defendants conceded that no other custodian covered this function.  *Id.* at 7-10. Judge Sagar separately took under submission Plaintiffs' requests to add Claire Lee and Nancy Lee as custodians.  *Id.* at 36:19-21.

On January 7, 2026, Judge Sagar issued her written ruling on the Joint Stipulation.  ECF 207.  Despite Judge Sagar's clear oral ruling granting Plaintiffs' request to add Lewerke as a custodian, the written Order denied Plaintiffs' request without prejudice.  *Id.* at 3.  The Order also denied without prejudice Plaintiffs' requests to add Claire Lee (Chief of Staff to Chapek) and Nancy Lee (Chief of Staff to Iger), reasoning that "the marginal relevance of responsive communications from these individuals does not outweigh the burden and likely duplication of communications from the senior executives and other custodians."  *Id.* at 4.  As set forth below, those conclusions are inconsistent with the evidentiary record, Defendants' own concessions, and the governing Rule 26 framework.

- 4 -

## III.   LEGAL STANDARD

A magistrate judge's ruling on a non-dispositive discovery matter may be reversed if it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. §636(b)(1)(A); *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 971 (C.D. Cal. 2010) ("'[a]cting as an appellate court, this Court has the power to "affirm, modify, vacate, set aside or reverse" the magistrate judge's order'").[4] "The 'clearly erroneous' standard applies to the magistrate judge's findings of fact, while the 'contrary to law' standard applies to legal determinations." *Asus Comput. Int'l v. Round Rock Rsch., LLC*, 2013 WL 12131285, at *3 (C.D. Cal. 2013). That same framework applies to "'discretionary decisions made in connection with non-dispositive pretrial discovery matters.'" *H-E-B, LP v. Olympia Tools Int'l, Inc.*, 2021 WL 3171890, at *1 (S.D. Cal. 2021).

A factual finding is clearly erroneous where it is unsupported by the record, implausible, or otherwise leaves the reviewing court with the "definite and firm conviction that a mistake has been committed." *Crispin*, 717 F. Supp. 2d at 971 (internal quotation marks omitted). A discovery order is contrary to law where it "'applies an incorrect legal standard or fails to consider an element of the applicable standard.'" *Laub v. Horbaczewski*, 2019 WL 1744846, at *3 (C.D. Cal. 2019). "[T]he 'contrary to law' standard permits *de novo* review of the magistrate judge's 'purely legal determinations.'" *Asus*, 2013 WL 12131285, at *3; *see Crispin*, 717 F. Supp. 2d at 971 (same); *Calendar Rsch. LLC v. StubHub, Inc.*, 2019 WL 4138660, at *2 (C.D. Cal. 2019) (granting Rule 72(a) objection where magistrate judge's discovery order was contrary to law).

Where, as here, a magistrate judge purports to deny discovery on proportionality grounds, the Order must demonstrate that the resisting party carried its burden to show undue burden or disproportionality with record evidence; generalized

---

[4]   Unless otherwise noted, all emphasis is added and citations are omitted.

- 5 -

objections or conclusory assertions of burden are insufficient. *See Intex Recreation Corp. v. Bestway USA Inc.*, 2021 WL 6618494, at *3, *6 (C.D. Cal. 2021) (The Court accepted the argument "that the MJ Order rested on no competent evidence concerning disproportionality" and held "the record does not support the determination that gathering the relevant [discovery] would impose a disproportionate burden in this action.   Because the MJ Order misapplied the burden on proportionality, this ruling was contrary to law."); *In re BofI Holding, Inc. Sec. Litig.*, 2021 WL 4460751, at *6 (S.D. Cal. 2021) (holding magistrate judge's order was "clearly erroneous and contrary to the law governing discovery" because it "failed to appropriately weigh relevance and the proportionality factors enumerated in the text of Rule 26"); *Gonzalez-Tzita v. City of L.A.*, 2018 WL 10111333, at *3 n.3 (C.D. Cal. 2018) (sustaining objection to magistrate judge's order denying discovery and noting "vague and conclusory allegations are insufficient to demonstrate burden").

## IV.   ARGUMENT

### A.   The Order Incorrectly Denied Plaintiffs' Request to Add Lewerke as a Custodian

Judge Sagar unequivocally granted Plaintiffs' motion to add Lewerke as a custodian on the record at the January 6, 2026 hearing. *See* ECF 208 at 16:3-5 ("I am going to then grant in part the request to add these seven custodians.... [I] grant it as to Chodnowitz and Lewerke.").  Yet the Court's January 7, 2026 written Order denied Plaintiffs' request to add Lewerke "without prejudice."   ECF 207 at 3.   This unexplained reversal – between an express bench ruling and the subsequent written Order – renders the denial of Lewerke clearly erroneous warranting correction under Rule 72(a).   *See* ECF 175 (Marshall, J.) (granting Plaintiffs' motion for reconsideration and issuing an amended order on Defendants' motion for judgment on the pleadings after "review[ing] both orders and find[ing] inconsistencies").

Judge Sagar issued her oral ruling after hearing argument from both sides and probing the relevance of Lewerke's role.  *See* ECF 208 at 7:18-8:25, 15:3-16:5.

- 6 -

4928-2741-9273.v1

Plaintiffs explained that Lewerke, who was Disney's Vice President, Content Planning & Analysis, led the team responsible for optimizing "windowing" strategies for distributing Disney content – how and when content moves across platforms like Disney+, theaters, and pay-per-view. ECF 193 at 16-17; ECF 208 at 8:7-20. Those responsibilities go to the heart of Plaintiffs' allegations that Defendants deliberately routed content to Disney+ to inflate subscriber metrics while bypassing lucrative theater and pay-per-view windows. ECF 193 at 17; ECF 208 at 8:7-20. Plaintiffs further demonstrated – through internal Disney documents cited in the Joint Stipulation – that Lewerke personally participated in Disney's windowing decisions affecting Disney+, and emphasized that Defendants had offered no custodian from Content Planning & Analysis. ECF 193 at 17; ECF 208 at 8:1-3 ("[W]e don't have anybody, nobody from that role at all. So if we don't get Nick Lewerke, we just won't have any insight into that particular role.").

Defendants opposed adding Lewerke by minimizing his position as a "low level" employee (ECF 208 at 15:21-23), but Judge Sagar rejected that characterization and granted Plaintiffs' request from the bench. *See id.* at 16:3-5. Importantly, that ruling was definitive: unlike Plaintiffs' requests as to Claire Lee and Nancy Lee, which Judge Sagar expressly took under submission, Judge Sagar did not take the Lewerke request under submission or signal any intent to revisit it. *See id.* at 36:19-21.

The written Order not only contradicts Judge Sagar's oral ruling, it also rests on a factual premise that is unsupported as to Lewerke. ECF 207 at 3. The Order states that "Defendants have designated other custodians in the same business function areas and reporting chains as the individuals Plaintiffs seek to add." *Id.* But the hearing record confirms the opposite: Defendants did not designate any custodians from Disney's Content Planning & Analysis team. ECF 208 at 8:1-3.

Whether the denial of Lewerke in the written Order reflects a clerical/scrivener's error or a substantive change, the result is the same: the written

- 7 -

denial cannot be squared with Judge Sagar's on-the-record ruling or the undisputed record showing that Defendants offered no substitute custodian for Lewerke's function. The Order's denial of Lewerke as a custodian should therefore be reversed as clearly erroneous.

**B.      Judge Sagar's Refusal to Add Claire Lee as a Custodian Is Both Clearly Erroneous and Contrary to Law**

The Order's denial of Plaintiffs' request to add Claire Lee as a custodian is likewise clearly erroneous and contrary to law. Plaintiffs have shown that Claire Lee – defendant Chapek's Chief of Staff during part of the Class Period – is uniquely positioned to have relevant materials.

Defendants' own submissions defeat the "marginal relevance" rationale outright. In designating Chapek's Chief of Staff, Bochner, as a custodian, Defendants expressly conceded that the Chief of Staff is senior management and possesses communications concerning "subscriber targets, the DMED reorganization subscriber growth strategy, public disclosures, and Chapek's renewal as CEO." ECF 193 at 58-59. Having made that concession, Defendants cannot plausibly deny that Claire Lee's custodial files are directly relevant to Plaintiffs' claims; the Order's contrary finding is therefore unsupportable.

As set forth below, Judge Sagar nonetheless denied Plaintiffs' request based on several clearly erroneous factual assumptions, some of which were at odds with other rulings in the same Order. Additionally, this portion of the Order is contrary to law because Judge Sagar failed to engage in Rule 26(b)(1)'s required proportionality and burden analyses.

**1.      Judge Sagar's Finding that Claire Lee's Communications Are Only "Marginal[ly] Relevan[t]" to Plaintiffs' Claims Is Clearly Erroneous**

Claire Lee served as defendant Chapek's Chief of Staff in 2022 and is one of "the most important custodians" from whom Plaintiffs seek discovery. ECF 208 at 31:25-32:3; ECF 193 at 26-27. As Plaintiffs explained at the hearing, she was "a high

- 8 -

4928-2741-9273.v1

level person who [wa]s acting as [Chapek's] alter ego." ECF 208 at 34:7-8. In her critical gatekeeping role, Claire Lee "controlled the flow of information into and out of the CEO and Executive Chairman offices, coordinated cross-functional briefings, and tracked follow-ups." ECF 193 at 26. Thus, she served as the conduit for what adverse data, forecasts, and internal dissent actually reached Chapek, and what direction and messaging flowed from Chapek to the teams implementing the strategy at issue.

This distinction is critical. As Defendants acknowledged at the hearing: "this is a securities fraud case … [s]o what really matters is what the people who are making the decisions and are making the disclosures know or have access to." ECF 208 at 36:9-12. By design, the Chief of Staff is the gatekeeper and documentary record of that information, making her files uniquely probative of what Chapek knew, when he knew it, what he was told, what he asked for, and how internal realities were turned into external messaging. The files of Claire Lee, as the gatekeeper of information flowing to and from Chapek, are uniquely situated to shed light on what Chapek knew or had access to.

Internal Disney documents and media reports confirm her central role in the scheme, tying Claire Lee to Disney's streaming business and investor-facing disclosures. For example, Plaintiffs cited a *CNBC* report describing Claire Lee as "part of the small 'inner circle' that Chapek relied on," and submitted an internal Disney document showing that Claire Lee ███████████████████████████ ███████████████████████████████████████████████████ █████████████████████████████████████████ and that ████████████████████████████████████████████████████ █████████████████████████ ECF 193 at 26; ECF 193-14 at -1750. That is not "marginal relevance"; it is direct involvement in the internal streaming data and the investor communications at the heart of this case.

Far from being "marginal[ly] relevan[t]," the evidence Plaintiffs supplied in support of the Joint Stipulation shows that Claire Lee's documents are critical and should thus leave this Court with the "definite and firm conviction that a mistake has been committed" by the exclusion of Claire Lee as a custodian. *Crispin*, 717 F. Supp. 2d at 971 (internal quotation marks omitted); *In re Bank of Am. Cal. Unemployment Benefits Litig.*, 2024 WL 3174874, at *7 (S.D. Cal. 2024) (sustaining plaintiffs' Rule 72(a) objection to the Magistrate Judge's denial of their request to add two custodians where Magistrate Judge's relevance finding was "clearly erroneous"). The Order's contrary conclusion is not supported by the record and cannot be reconciled with Defendants' own concession that a Chief of Staff is senior management with communications relevant to the very topics at issue in this case.

### 2. Judge Sagar's Factual Findings with Respect to Claire Lee Are Inconsistent with Other Rulings in the Order

Judge Sagar's denial of discovery from Claire Lee is also clearly erroneous because it contradicts two other rulings in the Order. The Order cannot simultaneously: (i) recognize that similarly situated custodians must be added based on Defendants' own relevance concessions and succession logic; and (ii) inexplicably deny Claire Lee (who fits those same criteria) based on unsupported assumptions about "marginal relevance" and "duplication."

*First*, the denial is inconsistent with the Order's ruling that Defendants must add David Chodniewicz ("Chodniewicz"), a Vice President of Data Science & Analytics for Disney Streaming Services, as a custodian. Judge Sagar held that Plaintiffs were entitled to discovery from Chodniewicz because he was a successor during the Class Period to a custodian likely to have relevant information. ECF 207 at 3-4. Chodniewicz succeeded Laura Evans ("Evans"), whom Defendants agreed to designate as a custodian. ECF 208 at 6:19-7:17, 11:20-12:1; ECF 193 at 16. Judge Sagar found that because Defendants conceded Evans likely had responsive information, Chodniewicz also likely possessed responsive materials as her successor.

- 10 -

4928-2741-9273.v1

ECF 207 at 3. Judge Sagar therefore granted Plaintiffs' motion to add Chodniewicz. *Id*. That ruling reflects an unavoidable conclusion: Defendants cannot concede a role's relevance only to deny discovery from another individual who held ***the identical role*** during the Class Period.

Claire Lee should be added as a custodian for the same reason: ***she succeeded a custodian during the Class Period that Defendants added because he had responsive information***. Defendants designated Bochner, who served as Chapek's Chief of Staff, as a custodian. Defendants affirmatively represented that the Chief of Staff role is "senior leadership" and includes communications directly bearing on "subscriber targets, the DMED reorganization subscriber growth strategy, public disclosures, and Chapek's renewal as CEO" – precisely the issues at the center of this case. ECF 193 at 58-59. Yet they inexplicably refused to add Claire Lee, who succeeded Bochner as Chapek's Chief of Staff later in the Class Period. Judge Sagar ignored this contradiction and denied Plaintiffs' request after taking the matter under submission. ECF 207 at 4; ECF 208 at 36:19-21. That result is untenable under the Order's own reasoning: if succession justified compelled discovery for a Vice President of Data Science, it necessarily compels discovery from the successor Chief of Staff to the CEO, where Defendants have expressly conceded that the Chief of Staff is senior leadership with communications directly relevant to the alleged fraud. This ruling is clearly erroneous, as it is inconsistent with Judge Sagar's ruling regarding Chodniewicz.

***Second***, Judge Sagar's ruling regarding Claire Lee contradicts the Order's finding that senior managers are the most likely individuals to possess relevant information. As Judge Sagar held, because "this securities litigation alleges that ***senior management engaged in a scheme to mislead investors*** about subscriber targets and profitability projections," it is members of Disney's senior management "who are most likely to have relevant information regarding the purported scheme and disclosures to investors." ECF 207 at 4. Claire Lee ***was*** a member of senior

- 11 -

4928-2741-9273.v1

management who is likely to have precisely the type of information Judge Sagar ruled would be relevant to proving Plaintiffs' claims. Indeed, Defendants' own position confirms that conclusion: Defendants described the Chief of Staff role as "senior leadership" and conceded that the Chief of Staff may "possess communications relevant to, among other allegations, Plaintiffs' allegations regarding publicly announced subscriber targets, the DMED reorganization subscriber growth strategy, public disclosures, and Chapek's renewal as CEO" in the Joint Stipulation. ECF 193 at 58-59.

Despite the compelling evidence confirming Claire Lee's senior management status, which by Judge Sagar's reasoning would render her reasonably likely to possess information relevant to Plaintiffs' claims, Judge Sagar improperly excluded her as custodian. The Order is internally inconsistent: it deems senior management the proper focus of discovery but excludes a concededly senior-management Chief of Staff who acted as the CEO's alter ego and gatekeeper for the information that "really matters" in a securities fraud case.

### 3. Judge Sagar's Ruling Regarding Claire Lee Also Rests on the Unsupported Factual Assumption that She Likely Possesses Few Unique, Non-Duplicative Documents

Judge Sagar's ruling regarding Claire Lee is also clearly erroneous because it is based on speculation that any relevant documents in her possession "will be captured by documents from Chapek" or other members of senior management designated custodians. ECF 207 at 4. That premise is unsupported by any evidence and effectively adopts a categorical (and incorrect) rule that a CEO's custodial files necessarily subsume the custodial files of the CEO's Chief of Staff. Rule 26 contains no such presumption, and the record here affirmatively refutes it.

In the Joint Stipulation and at the hearing, Plaintiffs explained that Chiefs of Staff are gatekeepers whose core function is to control the flow of information to and from the executives they serve. ECF 193 at 27; ECF 208 at 33-34. They coordinate

- 12 -

initiatives, manage communications, and act as intermediaries across business units. Those responsibilities generate unique, non-duplicative ESI, including scheduling and briefing materials, follow-up tracking, drafts and talking points circulated for approval, and contemporaneous notes of meetings – roles that make them likely to possess unique, non-duplicative documents.

As an executive's eyes and ears, a Chief of Staff often possesses information known to the executive, but absent from the executive's physical or digital files. This is particularly true when a Chief of Staff communicates with an executive verbally, such as in person or over the phone. Such conversations would likely be documented in the Chiefs of Staff's files – since that is their role – but not necessarily in their executive's files.

As such, courts consistently recognize that aides, senior staff, and other non-defendant employees often possess unique drafts, analyses, and communications that may not be found in the defendants' files. *See, e.g.*, *In re Envision Healthcare Corp. Sec. Litig.*, 2020 WL 6750397, at *3 (M.D. Tenn. 2020) (holding it is "not necessary" to allege that proposed custodians had any involvement in the alleged misstatements "in order to establish that they may have relevant ESI" and ordering defendants to search the files of 22 custodians in addition to the existing 57 custodians); *Kleen Prods. LLC v. Packaging Corp. of Am.*, 2012 WL 4498465, at *15 (N.D. Ill. 2012) ("[E]ven if the conspiracy is among higher-level executives, lower-level employees may ***possess*** important, relevant information which could reasonably lead to admissible evidence.") (emphasis in original); *Blankenship v. Fox News Network, LLC*, 2020 WL 9718873, at *14-*15 (S.D.W. Va. 2020) (compelling production of communications among employees beyond those who allegedly engaged in wrongdoing); *Fam. Wireless #1, LLC v. Auto. Techs., Inc.*, 2016 WL 2930887, at *3 (D. Conn. 2016) (communications "below the highest echelon of management" in which "lower-level employees may discuss execution of policies amongst themselves and with third parties other than their superiors ... may be

- 13 -

4928-2741-9273.v1

particularly revealing"); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2025 WL 1009362, at *3 (N.D. Cal. 2025) (granting motion to compel additional custodians and noting: "[defendant's] argument that thousands of other documents 'relating to' these two [requested custodians] were already produced does not cure the prejudice flowing from the lack of documents that have not been produced").

Defendants present no evidence that Claire Lee – who was amongst Chapek's narrow "'inner circle'" (ECF 193 at 26) – interacted with Chapek any differently. Nor do Defendants identify any concrete basis to conclude that Chapek's own custodial files would capture distinct categories of materials a Chief of Staff routinely generates and maintains. For example, ███████████████████████████████

███████████████████████████████████████████████

███  *Id.*; ECF 193-14. That alone demonstrates why the duplication assumption is flawed: where the CEO is not present, the Chief of Staff's notes, follow-ups, and communications are not "captured" by the CEO's files because the Chief of Staff is the sole record-keeper.

Defendants further present no evidence that Chapek memorialized his every conversation with Claire Lee concerning Disney+ such that her files would be duplicative of his own. Defendants likewise present no evidence that Claire Lee's notes and files would be duplicative of other designated custodians' materials. Instead, Defendants offered only conjecture – and the Order adopted it. Excluding Claire Lee as a custodian based on a generalized, unproven assumption is inconsistent with Rule 26's broad relevance standard. *Pappas v. Naked Juice Co. of Glendora, Inc.*, 2012 WL 12885108, at *2 (C.D. Cal. 2012).

Finally, even if Judge Sagar was correct that Claire Lee mostly possesses duplicative documents, Defendants still would face no undue burden. Duplicate documents can be screened from review with de-duplication methods. Indeed, Judge Sagar made this very point in granting Plaintiffs' request to add two other custodians.

- 14 -

4928-2741-9273.v1

*See* ECF 208 at 29:16-24 ("So to the extent that, you know, the documents that pop up for these two custodians are duplicative of the records, it'll come up for the other custodians he's designated[.]  I don't know how that's really burdensome" because duplicate records "won't be included" in the review.).  Yet Judge Sagar failed to apply the same logic in ruling on Claire Lee.  That inconsistency is itself telling: the Order assumes duplication as a reason to deny Claire Lee, while the transcript confirms the Court recognized duplication is not burdensome because it can be eliminated through deduplication.  Because Judge Sagar's factual conclusion that Claire Lee likely possesses only duplicative documents rests on speculation, lacks evidentiary support, and conflicts with Judge Sagar's own reasoning on the record, it is clearly erroneous and should be overruled.

### 4.    Judge Sagar's Order with Respect to Claire Lee Is Also Contrary to Law

Lastly, the Order is contrary to law because it denies discovery on purported proportionality grounds without conducting the analysis Rule 26(b)(1) requires.  Rule 26(b)(1) requires courts to weigh the importance of discovery against any demonstrated burden.  An unsupported assertion of disproportionality, untethered to record evidence, does not satisfy that obligation, which is borne by the party resisting discovery.  *See SPS Techs., LLC v. Briles Aerospace, Inc.*, 2019 WL 13108021, at *1 (C.D. Cal. 2019) (quoting *Pom Wonderful LLC v. Coca-Cola Co.*, 2009 WL 10655335, at *3 (C.D. Cal. 2009) ("'It is well-established that the burden is on the objecting party to show grounds for failing to provide the requested discovery.'"); *Bible v. Rio Props., Inc.*, 246 F.R.D. 614, 618 (C.D. Cal. 2007) (same).

To satisfy this burden, the party resisting discovery must demonstrate "'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant or how each question is overly broad, burdensome or oppressive.'"  *Pappas*, 2012 WL 12885108, at *2; *Stetsyk v. Kelly Mitchell Grp., Inc.*, 2020 WL 10457861, at *2 (C.D. Cal. 2020) (similar).  Conclusory

- 15 -

4928-2741-9273.v1

assertions of "burden" or "duplication" do not suffice, particularly where the requested custodian is concededly senior leadership and directly tied to the core issues in dispute.

Here, Defendants made *no* evidentiary showing that searching Claire Lee's documents would be unduly burdensome. The Order includes *no* findings regarding: (i) the cost or effort required to search Claire Lee's custodial file; (ii) the volume of potentially responsive material; or (iii) any marginal burden relative to custodians already being searched. Nor did Defendants provide the kind of concrete evidence Rule 26 demands – such as data size estimates, hit counts, projected review populations, review hours, or cost projections – tied specifically to Claire Lee.

Courts in this Circuit have held that discovery may not be denied on proportionality grounds absent an evidentiary showing or reasoned analysis. *See Strategic Partners, Inc. v. FIGS, Inc.*, 2020 WL 2527056, at *7 (C.D. Cal. 2020) (quoting *Pappas*, 2012 WL 12885108, at *2) (rejecting "'generalized objections of burdensomeness'"); *Pappas*, 2012 WL 12885108, at *2 ("'[t]he objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant or how each question is overly broad, burdensome or oppressive'"); *SPS Techs.*, 2019 WL 13108021, at *1 ("'It is well-established that the burden is on the objecting party to show grounds for failing to provide the requested discovery.'"). Because the Order relieves Defendants of their burden and denies discovery without record findings supporting disproportionality, it is contrary to law.

Judge Sagar's failure to consider proportionality is alone grounds for reversing Judge Sagar's Order. Further, the requisite proportionality analysis supports the production of Claire Lee's documents. Plaintiffs seek Claire Lee's documents for only the short, *three month window* (September 1, 2022 to December 1, 2022) of time when she served as Chapek's Chief of Staff. That timeframe is narrowly tailored to the period when Claire Lee acted as the CEO's gatekeeper and alter ego, when her

- 16 -

4928-2741-9273.v1

custodial files are most likely to contain the unique briefing materials, meeting notes, follow-up items, and communications bearing on streaming performance and investor-facing disclosures.  Additionally, the review of her unique documents would impose a *de minimis* burden; as described above, duplicate documents do not require review. Judge Sagar's failure to properly conduct the Rule 26(b)(1) analysis renders the Order contrary to law and warrants relief under Rule 72(a).

### C.    Judge Sagar's Refusal to Add Nancy Lee as a Custodian Is Also Clearly Erroneous and Contrary to Law

The same reversible errors underpin the Order's findings concerning the addition of Iger's Chief of Staff, Nancy Lee, as a custodian.  Indeed, Nancy Lee presents a clear case for compelled discovery: Plaintiffs submitted documentary evidence tying her directly to the subscriber metrics issues and senior executive decision-making at the heart of this action, and Defendants offered no record-based burden showing to justify excluding her.

***First***, as with Claire Lee, Judge Sagar's finding that Nancy Lee's documents would likely only be "marginally relevant" to Plaintiffs' claims is belied by the unrefuted record.  Nancy Lee served as defendant Iger's Chief of Staff at the beginning of the relevant period, while Iger was Disney's Executive Chairman (approximately January 1, 2020 to December 31, 2020), and resumed the role in late 2022 when Iger returned as Disney's CEO.  As Iger's Chief of Staff, Nancy Lee occupied a senior gatekeeping role: she "controlled the flow of information into and out of the CEO and Executive Chairman offices, coordinated cross-functional briefings, and tracked follow-ups."  ECF 193 at 26.  In a securities fraud case – where Defendants themselves told the Court "what really matters is what the people who are making the decisions and are making the disclosures know or have access to" (ECF 208 at 36:10-12) – Nancy Lee's files are uniquely probative of what Iger was told, what he asked for, and what was escalated to (or filtered from) him.

- 17 -

Additionally, as Plaintiffs explained in the Joint Stipulation, Nancy Lee was involved in ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████ ECF 193 at 26; ECF 193-15. That is direct evidence of involvement in the very type of subscriber-focused conduct Plaintiffs allege Defendants used to manufacture the appearance of growth. Plaintiffs also offered evidence that ███████████████████████████████ ███████████████████████████████████████████ ██████, and explained that these kinds of records, by their very nature, almost certainly would not be found in Iger's own custodial files. ECF 193 at 27; ECF 193-16. Chief of Staff notes and follow-up lists exist precisely because senior executives do not personally document every meeting and action item. Excluding Nancy Lee therefore excludes precisely the contemporaneous records that would illuminate what Iger knew and how Disney's streaming narrative was managed internally.

Defendants ignored Plaintiffs' evidence regarding Nancy Lee's relevance and offered no competing evidence to suggest she was a "marginal" player in the fraud. Instead, Defendants merely stated that Disney knows its employees' roles better than Plaintiffs do and asserted without support that Nancy Lee's documents would be captured by other designated custodians. ECF 208 at 34:22-25, 35:24-36:4. But "trust us" is not evidence. Nor does a corporation's self-interested characterization of its employees' roles satisfy Rule 26 or justify denying discovery where Plaintiffs have offered concrete documentary proof of relevance. Defendants' say-so cannot displace record evidence showing Nancy Lee's direct involvement in subscriber-signup initiatives and her contemporaneous documentation of Iger's views on disclosures and streaming performance.

**Second**, like Claire Lee, Nancy Lee was a member of Disney's senior leadership, which includes the custodians Defendants and Judge Sagar agreed were "most likely to have relevant information regarding the purported scheme and

- 18 -

disclosures to investors." ECF 207 at 4. Defendants admitted as much in the Joint Stipulation by explaining that they designated a different Chief of Staff – Bochner – as a custodian because he was a member of "senior management" who possessed relevant information. ECF 193 at 58-59. Defendants' concession is categorical: the Chief of Staff role is senior management and is involved across the very subjects at issue in this case. That concession applies with full force to Nancy Lee, who served as Chief of Staff to Iger, a defendant and the most senior executive at Disney. Given Defendants' admission, in conjunction with the evidence Plaintiffs presented demonstrating that Nancy Lee likely possesses relevant evidence, the Order's factual findings denying discovery from Nancy Lee were clearly erroneous.

*Third*, as with Claire Lee, the Order is contrary to law because it denied discovery without applying the proportionality framework required by Rule 26(b)(1), and failed to hold Defendants to *their* burden of proving that the expense or burden of the proposed discovery outweighs its likely benefit. *See supra*, §IV.B.4. Defendants offered *no* evidence showing that searching Nancy Lee's custodial files would be unduly burdensome, *no* evidence regarding the cost or effort required to search her files, and *no* evidence regarding the volume of potentially responsive material. Absent a concrete, evidentiary showing, discovery cannot be denied on proportionality grounds.

Instead, a proportionality analysis shows that the production of Nancy Lee's files is warranted: Plaintiffs seek Nancy Lee's documents for the discrete timeframe during which she served as Iger's Chief of Staff. Moreover, if she only communicated with designated custodians, as Defendants speculated, then any duplicate documents would not require review, leaving only her unique documents. Because the factual record established that Nancy Lee is a relevant custodian whose documents would be minimally burdensome to collect and produce, the Order denying discovery from her was clearly erroneous and contrary to law.

- 19 -

4928-2741-9273.v1

## V.    CONCLUSION

The Order's denial of Plaintiffs' request to add Lewerke as a custodian cannot be reconciled with Judge Sagar's unequivocal oral ruling granting that request, and is therefore clearly erroneous. The written Order reverses the Court's on-the-record ruling without explanation, and thus should be reversed under Rule 72(a).

Additionally, the Order's denial of Plaintiffs' request to add Claire Lee and Nancy Lee as custodians is clearly erroneous and contrary to law. It is belied by the unrefuted evidentiary record establishing the Chiefs of Staff's central gatekeeping roles, and it is irreconcilable with Defendants' own concession that a Chief of Staff is "senior management" who may possess communications relevant to subscriber targets, DMED, subscriber-growth strategy, and public disclosures. The denial also conflicts with the Order's other rulings applying succession logic and senior-management relevance, rests on unsupported speculation about duplication, and fails to hold Defendants to their burden of proving undue burden or disproportionality under Rule 26(b)(1).

Accordingly, Plaintiffs respectfully submit that the Order should be reversed on these three narrow grounds and respectfully request that the Court sustain this Objection and order Defendants to designate Lewerke, Claire Lee, and Nancy Lee as custodians and to collect, search, and produce responsive documents and ESI from their custodial files.

DATED: January 21, 2026

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP

s/ Daniel S. Drosman
DANIEL S. DROSMAN

- 20 -

4928-2741-9273.v1

DANIEL S. DROSMAN
RYAN A. LLORENS
JESSICA T. SHINNEFIELD
DARRYL J. ALVARADO
JEFFREY J. STEIN
NICOLE Q. GILLILAND
JESSICA E. ROBERTSON
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
ryanl@rgrdlaw.com
jshinnefield@rgrdlaw.com
dalvarado@rgrdlaw.com
jstein@rgrdlaw.com
ngilliland@rgrdlaw.com
jrobertson@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
CRISTELLE R. RABBAN (*pro hac vice*)
420 Lexington Avenue, Suite 1832
New York, NY  10170
Telephone:  212/432-5100
crabban@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SCOTT I. DION (*pro hac vice*)
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone: 561/750-3000
561/750-3364 (fax)
sdion@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 21 -

4928-2741-9273.v1

**L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 20 pages, which complies with the page limit set by the Court's Standing Order (ECF 18), dated January 21, 2026.

DATED:  January 21, 2026

s/ Daniel S. Drosman
DANIEL S. DROSMAN

- 22 -

4928-2741-9273.v1