JONATHAN D. POLKES (admitted *pro hac vice*)
jonathan.polkes@whitecase.com
STACY NETTLETON (admitted *pro hac vice*)
stacy.nettleton@whitecase.com
ADAM B. BANKS (admitted *pro hac vice*)
adam.banks@whitecase.com
SUSAN L. GRACE (admitted *pro hac vice*)
susan.grace@whitecase.com
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200

JOHN W. SPIEGEL (SB 78935)
john.spiegel@mto.com
JOHN M. GILDERSLEEVE (SB 284618)
john.gildersleeve@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Attorneys for Defendants
The Walt Disney Company, Robert Iger,
Robert Chapek, Christine M. McCarthy
and Kareem Daniel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOCAL 272 LABOR-MANAGEMENT PENSION FUND, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THE WALT DISNEY COMPANY, *et al.*,<br><br>Defendants. | Case No. 2:23-cv-03661-CBM(ASx)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE SAGAR'S NON-DISPOSITIVE ORDER DATED JANUARY 7, 2026 GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL CUSTODIANS AND SEARCH TERMS (ECF 207)**<br><br>Date:    February 24, 2026<br>Time:    10:00 a.m.<br>Ctrm:    8D<br>Judge:   Hon. Consuelo B. Marshall |

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................ 1

II.    FACTUAL BACKGROUND AND PROCEDURAL POSTURE................... 4

III.   LEGAL STANDARD .................................................................................... 8

IV.   ARGUMENT ................................................................................................ 10

     A.    Judge Sagar Correctly Heard, Weighed, and Denied Plaintiffs' Arguments for Designating Nick Lewerke. ............................................ 10

     B.    Judge Sagar Correctly Heard, Weighed, and Denied Plaintiffs' Arguments for Designating Claire Lee and Nancy Lee........................ 12

     C.    Judge Sagar Correctly Applied Rule 26's Proportionality Requirement. .................................................................................... 17

V.    CONCLUSION .............................................................................................. 22

DEFENDANTS' OPPOSITION TO PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE SAGAR'S ORDER

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alcantar v. Madden*,
2022 WL 4554361 (C.D. Cal. Sept. 28, 2022)......................................................14

*Anderson v. City of Bessemer City, N.C.*,
470 U.S. 564 (1985) .................................................................................................9

*Anderson v. Nevada Dep't of Corrections*,
2018 WL 3550214 (D. Nev. July 24, 2018).......................................................3, 9

*Asus Compt. Int'l v. Rock Round Rsch., LLC*,
2013 WL 12131285 (C.D. Cal. June 28, 2013)................................................9, 18

*Babakhanlou v. Los Angeles Cnty.*,
2025 WL 2304271 (C.D. Cal. May 29, 2025)...................................................2, 8

*In re Bank of Am. California Unemployment Benefits Litig.*
2024 WL 3174874 (S.D. Cal. June 25, 2024).....................................................21

*In re BofI Holding, Inc. Sec. Litig.*,
2021 WL 4460751 (S.D. Cal. 2021).....................................................................18

*Bible v. Rio Props, Inc.*,
246 F.R.D. 614 (C.D. 2007) .................................................................................20

*Calendar Rsch. LLC v. StubHub, Inc.*,
2019 WL 4138660 (C.D. Cal. June 11, 2019).....................................................18

*Cap Export v. Zinus*,
2020 WL 13588764 (C.D. Cal. Nov. 3, 2020) .....................................................19

*Conant v. McCoffey*,
1998 WL 164946 (N.D. Cal. Mar. 16, 1998) ........................................................9

*Contemp. Servs. Corp. v. Landmark Event Staffing*,
2013 WL 12142953 (C.D. Cal. Feb. 4, 2013).......................................................12

*Crispin v. Christian Audigier, Inc.*,
717 F. Supp. 2d 965 (C.D. Cal. 2010).............................................................9, 18

DEFENDANTS' OPPOSITION TO PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE SAGAR'S ORDER

*Fisher v. Roe*,
   263 F.3d 906 (9th Cir. 2001) ................................................................................. 9

*Franklin D. Azar & Assocs. v. Miller*,
   2025 WL 1832831 (D. Colo. July 3, 2025) ....................................................... 2, 3

*Gaina v. Northridge Hosp. Med. Ctr.*,
   2019 WL 1751825 (C.D. Cal. Feb. 25, 2019) ....................................................... 9

*Gibson Brands Inc. v. John Hornby Skewes & Co.*,
   2015 WL 12681376 (C.D. Cal. July 20, 2015) .................................................... 19

*Gonzalez-Tzita v. City of Los Angeles*,
   2018 WL 10111333 (C.D. Cal. Sept. 30, 2018) ............................................... 9, 21

*Greenhow v. Sec'y of Health & Hum. Servs.*,
   863 F.2d 633 (9th Cir. 1988) ............................................................................... 22

*Grimes v. City and Cty. of San Francisco*,
   951 F.2d 236 (9th Cir. 1991) ........................................................................... 9, 18

*H-E-B, LP v. Olympia Tools Int'l, Inc.*,
   2021 WL 3171890 (S.D. Cal. 2021) .................................................................. 8, 9

*Hallet v. Morgan*,
   296 F.3d 732 (9th Cir. 2002) ............................................................................ 3, 19

*Hernandez v. Mongomery*,
   2024 WL 3818136 (C.D. Cal. June 25, 2024) ..................................................... 20

*Intex Recreation Corp. v. Bestway USA Inc.*,
   2021 WL 6618494 (C.D. Cal. Nov. 10, 2021) .................................................... 8, 9

*Kleen Prods. LLC v. Packaging Corp of Am.*,
   2012 WL 4498465 (N.D. Ill. Sept. 28, 2012) ...................................................... 17

*Laub v. Horbaczewski*,
   2019 WL 1744846 (C.D. Cal. Feb. 8, 2019) ........................................................ 18

*MedEnvios Healthcare, Inc. v. U.S. Dep't of Health and Human Servs.*,
   2024 WL 551837 (S.D. Fla. Feb. 12, 2024) ......................................................... 18

*Merritt v. Int'l Brotherhood of Boilermakers*,
   649 F.2d 1013 (5th Cir.1981) .............................................................................. 10

-iii-

*Pappas v. Naked Juice Co. of Glendora, Inc.*,
2012 WL 12885108 (C.D. Cal Oct. 12, 2012) ......................................................21

*Perfect 10, Inc. v. Giganews, Inc.*,
2015 WL 12732708 (C.D. Cal. May 7, 2015).................................................passim

*Pom Wonderful LLC v. Coca-Cola Co,.*
2009 WL 10655335 (C.D. Cal. 2009) ....................................................................20

*Poulos v. City of Los Angeles*,
2020 WL 8509663 (C.D. Cal. July 15, 2020) .......................................................18

*SPS Techs. LLC v. Briles Aerospace, Inc.*
2019 WL 13108031 (C.D. Cal. 2019) ....................................................................20

*Strategic Partners, Inc. v. FIGS, Inc.*,
2020 WL 2527056 (C.D. Cal. 2020) ......................................................................20

*Strike 3 Holdings, LLC v. Doe*,
2022 WL 22898319 (M.D. Fla. July 23, 2022)......................................................17

*United States v. Abonce-Barrera*,
257 F.3d 959 (9th Cir. 2001) .............................................................. 1, 4, 8, 18

*United States v. Hardesty*,
977 F.2d 1347 (9th Cir. 1992) ...............................................................................22

*Walsh v. Unforgettable Coatings, Inc.*,
2022 WL 3647920 (C.D. Cal. Aug. 23, 2022) ......................................................20

*Wheeler v. BMW of N. Amer. LLC*,
2022 WL 301537 (M.D.N.C. Feb. 1, 2022) ..........................................................16

**FEDERAL STATUTES**

28 U.S.C. § 636(b)(1)(A)....................................................................................8, 9

**RULES**

Local Rule 7-3 ...........................................................................................................8

Federal Rule of Civil Procedure 26 ................................................................passim

Federal Rule of Civil Procedure 72(a).................................................................1, 8

DEFENDANTS' OPPOSITION TO PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE SAGAR'S ORDER

## I.      INTRODUCTION

After reviewing 81 pages of briefing, wading through nearly 900 pages of exhibits and appendices, and holding a two-hour oral argument, Judge Sagar issued a thorough written order denying Plaintiffs' motion to compel in relevant part. Defendants had previously agreed to a robust document discovery protocol that required them to search and review more than one million documents across 38 custodians—including the seniormost officers of the company and the chair of its board. Still, Plaintiffs wanted more: they demanded a set of search terms that more than tripled the review population and another 16 custodians. *See* ECF 193 at 44. Judge Sagar denied that request in part. Expressly undertaking the proportionality analysis set forth in Rule 26, Judge Sagar required Defendants to revise certain searches and add certain custodians. But as to the three additional custodians that are the subject of this Objection, Judge Sagar correctly found that the "marginal relevance" of the additional custodians "does not outweigh the burden to Defendants of collecting and reviewing additional documents." ECF 207 at 3; *see also id.* at 4. That decision, like other non-dispositive matters referred to magistrate judges for determination, is entitled to "great deference." *United States v. Abonce-Barrera*, 257 F.3d 959, 969 (9th Cir. 2001).

Plaintiffs now seek to relitigate their demand for three of the custodians that Judge Sagar denied, simultaneously asking Judge Sagar to reconsider her order *and* filing this Objection. But Plaintiffs fail to shoulder the "heavy burden" imposed by Rule 72(a) to show that Judge Sagar's order is "clearly erroneous or contrary to law." *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 12732708, at *3 (C.D. Cal. May 7, 2015) (citation omitted). Plaintiffs do not identify any finding that is "dead wrong," *id.*; Plaintiffs do not show that Judge Sagar applied an incorrect legal standard; and Plaintiffs provide no reason for the Court to disturb Judge Sagar's sound judgment on this discovery matter.

-1-
DEFENDANTS' OPPOSITION TO PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE SAGAR'S ORDER

Instead, Plaintiffs repeatedly rehash the same arguments they already presented to Judge Sagar, now multiple times. (Indeed, their Objection is nearly a verbatim copy of their motion for reconsideration.) But a "party can't simply raise the same arguments that the magistrate judge considered and expect the reviewing court to treat the filing seriously." *Franklin D. Azar & Assocs. v. Miller*, 2025 WL 1832831, at *2 (D. Colo. July 3, 2025) (internal citation omitted). Given that this Court must be "significantly deferential" to Judge Sagar's discovery order, *Babakhanlou v. Los Angeles Cnty.*, 2025 WL 2304271, at *3 (C.D. Cal. May 29, 2025), Plaintiffs must do more than ask this Court to "substitute its judgment for that of the deciding court." *Perfect 10*, 2015 WL 12732708, at *2 n.1 (quoting *Grimes v. City and Cty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991)). Plaintiffs fail to do so.

Plaintiffs first claim that Judge Sagar's denial (without prejudice) of their request to add lower-level employee Nick Lewerke as a custodian was "clearly erroneous." ECF 214-1 at 6. Specifically, Plaintiffs argue that Judge Sagar clearly erred because her written order is "inconsistent" with her oral comments during the hearing that she would grant Plaintiffs' request as to Lewerke. *Id.* at 1. But Judge Sagar made clear at the hearing that a subsequent written order would be forthcoming, and that written order gives sound reasons for rejecting Plaintiffs' position—it is not an "unexplained reversal" that "warrant[s] correction." *Id.* at 6.

In any event, as Plaintiffs themselves acknowledge, Judge Sagar carefully "prob[ed] the relevance of Lewerke's role," ECF 213 at 6, and ultimately concluded that "the marginal relevance of communications involving [Lewerke] does not – at this stage of the case – outweigh the burden to Defendants of collecting and reviewing additional documents," including because Defendants had already "designated as custodians the senior managers who are most likely to have relevant information regarding the purported scheme and disclosures to investors." ECF 207 at 3-4. Plaintiffs' "mere doubts or disagreement about the wisdom" of Judge Sagar's decision

DEFENDANTS' OPPOSITION TO PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE SAGAR'S ORDER

does not constitute clear error. *Perfect 10*, 2015 WL 12732708, at *2; *Anderson v. Nevada Dep't of Corrections*, 2018 WL 3550214, at *2 (D. Nev. July 24, 2018).

Plaintiffs next claim that Judge Sagar committed "clear error" by denying their request to add Nancy Lee and Claire Lee, both chiefs of staff to Disney's CEOs, as custodians. ECF 214-1 at 8, 17. The crux of Plaintiffs' argument here—as it was before Judge Sagar—is that Defendants supposedly made a binding "concession" that chiefs of staff—by virtue of their position—are senior managers who possess relevant information because Defendants designated a different former chief of staff as a custodian. *Id.* at 8-9, 11, 17-18. But Defendants made no such concession: as Defendants explained at the hearing, Defendants offered a former chief of staff as a custodian because he held an independent, senior, and "substantive role" as Vice President of Strategic Communications during the relevant period. ECF 208 at 34:22-35:23. Considering the actual record as to chiefs of staff Nancy Lee and Claire Lee, Judge Sagar correctly found that documents relevant to Plaintiffs' allegations would be captured by CEOs Robert Chapek and Rober Iger, as well as other custodians who were present at meetings the chiefs of staff attended. That decision, again without prejudice, was sound and well supported. Plaintiffs' "rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge" does not show clear error. *Franklin D. Azar & Assocs.*, 2025 WL 1832831, at *2 (internal citation omitted).

Finally, Plaintiffs contend that Judge Sagar's discretionary Rule 26 decision was "contrary to law" because it supposedly ignored the proportionality standard. ECF 214-1 at 15-17, 19. That is demonstrably false. A magistrate judge's decision is contrary to law only if the decision "applies an incorrect legal standard or fails to consider an element of the applicable standard." *Anderson*, 2018 WL 3550214, at *2. Judge Sagar's order does neither: it clearly outlines Rule 26(b)'s proportionality requirement, *see* ECF 207 at 2-3, and soundly exercises the court's "broad discretion" in balancing Rule 26 considerations to control discovery. *Id.* at 3 (citing *Hallet v.*

-3-

*Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). And Plaintiffs' contention that the order somehow "misapplied the burden on proportionality" ECF 214-1 at 6, ignores that Defendants presented argument and a declaration regarding the additional burden that incremental custodians would generate, *see, e.g.*, ECF 193 at 48, ECF 189-36, and that Judge Sagar explicitly balanced Rule 26(b) considerations in her written ruling. ECF 207 at 3-5. At bottom, Plaintiffs do what the authority they cite forbids: dispense with the "great deference" to which Judge Sagar's Order is entitled and ask this Court to substitute "its judgment for that of the deciding court." *Abonce-Barrera*, 257 F.3d at 969; *Perfect 10, Inc.*, 2015 WL 12732708, at *2 n.1.

Reversal of the magistrate judge is reserved for a court's "dead wrong" findings or its failure to consider and apply governing law. Judge Sagar's decision did neither. The Court should overrule the Objection.

## II.    FACTUAL BACKGROUND AND PROCEDURAL POSTURE

### A. Defendants Designated 38 Custodians Likely to Possess Information Relevant to Plaintiffs' Securities Allegations

This discovery dispute has been going on for nearly six months. In August 2025, Defendants proposed a robust set of search terms and designated an extensive list of custodians. By the time Plaintiffs moved to compel, Defendants had designated 38 custodians, including current and former senior executives and key personnel in business functions relevant to Plaintiffs' allegations that senior management engaged in a scheme to mislead investors about the attainability of subscriber targets and profitability projections for Disney+. Specifically, Defendants designated board chair Susan Arnold and each Individual Defendant, including CEO Robert Iger, former CEO Robert Chapek, former CFO Christine McCarthy, and former Vice President of Disney Media and Entertainment Division (DMED), Kareem Daniel. Defendants also designated 34 other custodians with potentially relevant documents relating to Plaintiffs' allegations. These custodians included:

-4-

- Eleven finance and strategy personnel (content distribution, subscriber growth, forecasting both subscriber numbers and profitability). ECF 193 at 58-60.

- Three accounting personnel (Disney's accounting processes, including during and after the DMED reorganization, and the allocation of content costs). *Id.*

- Five members of Disney's investor relations team (disclosures to investors, communications concerning subscriber growth, profitability, content costs). *Id.*

- Four members responsible for DMED operations (formation of DMED, internal operations at DMED, decisions about content development and releases, decisions related to content costs, and accounting). *Id.*

Defendants also proposed 51 unique searches designed to capture documents responsive to each of Plaintiffs' 58 document requests. *Id.* at 46; *see also* ECF 189-5. In addition to email communications, Defendants' search protocol entailed reviewing short-form communications and numerous noncustodial sources such as Disney+ subscriber projection files, organizational data, forensic investigation files, and personnel files. By the time Magistrate Judge Sagar heard argument on Plaintiffs' Motion to Compel, Defendants had agreed to review over 1 million documents. ECF 198 at 1.

### B. Plaintiffs Demanded Additional Duplicative Custodians Who Were Unlikely to Possess Relevant Unique Information

Plaintiffs' initial counterproposal demanded that Defendants add 22 additional custodians which they reduced to 16 in their Motion to Compel. Plaintiffs' additional custodians were not involved in decision-making or disclosures relevant to Plaintiffs' allegations, and many duplicated multiple other custodians in the same business functions and reporting lines Defendants had already designated. ECF 193 at 63-65. As relevant here, Nick Lewerke was involved in content analysis concerning where to debut particular titles on Disney's DTC platforms, ECF 208 at 15:14-20, ECF 193 at Ex. Z (seeking information to analyze the subscriber impact of placing Wonder Years on Disney+ when it was already on Hulu), and reported to existing custodians

-5-

Kareem Daniel and Justin Warbrooke, who were directly responsible for making decisions regarding content allocation and strategy. ECF 193 at 64. Claire Lee and Nancy Lee were Iger's and Chapek's chiefs of staff, respectively, whom Plaintiffs describe as "gatekeepers" of information that ultimately passed into the possession of Iger and Chapek. ECF 214-1 at 9. These chiefs of staff were present at meetings among senior leadership who are already on Defendants' custodian list. ECF 208 at 35:23-36:4; ECF 193 at Ex. II.

Plaintiffs also proposed 91 additional search terms for Defendants to run in addition to Defendants' terms. Altogether, Plaintiffs' search terms more than doubled Defendants' search universe even before accounting for Plaintiffs' 16 additional custodians. Defendants worked to resolve the parties' disputes through extensive meet and confers. Defendants added two custodians to their original proposal, including Disney's Board chair, and continuously modified their search terms in response to Plaintiffs' requests. Ultimately, Defendants' proposed review universe grew to approximately 1.092 million documents, after accounting for modifications and additional collections. ECF 198 at 1.

Yet Plaintiffs Motion to Compel asked for even more: that Defendants more than triple their review population. ECF 193 at 44. Specifically, Plaintiffs Motion to Compel sought to compel Defendants to extensively modify their search terms and add 16 custodians, including Lewerke, Claire Lee, and Nancy Lee. The Parties submitted 81 pages of briefing and hundreds of pages of exhibits documenting the Parties' negotiations. To demonstrate the burden of Plaintiffs' demand, Defendants submitted the Declaration of Andrew Johnston (the "Johnston Declaration"), Senior Managing Director at FTI Consulting, which drew on Defendants' collected data to estimate the additional review burden imposed by Plaintiffs' request for 16 additional custodians, including Lewerke, Claire Lee and Nancy Lee. ECF 189-36 at ¶¶ 19-23. This estimate included (i) the additional documents (and pages) that Plaintiffs' demand would add to Defendants' review, after accounting for deduplication; and (ii)

-6-

the number of first-level review hours Plaintiffs' proposed review universe would require based on FTI's historical review in the case. *Id.*

On December 23, 2025, Plaintiffs and Defendants each filed Supplemental Memoranda of Law. ECF 198 at 5 & 199 at 1-2. By this time, Plaintiffs had attempted to modify their requests, but continued to demand 16 additional custodians, including Lewerke, Claire Lee, and Nancy Lee. Even as modified, Plaintiffs' proposal still nearly doubled Defendants' review burden. ECF 198 at 2. Altogether, the parties submitted 81 pages of briefing and nearly 900 pages of exhibits and appendices.

### C. Judge Sagar Finds Lewerke, Claire Lee, and Nancy Lee Marginally Relevant, Duplicative, and Disproportionate

On January 6, 2026, Judge Sagar heard oral argument on the Motion to Compel over two hours. Counsel for both sides addressed Lewerke, Claire Lee, and Nancy Lee, answering specific questions from Judge Sagar about those custodians. ECF 208 at 7:18-8:25, 15:3-16:2, 31:5-36:21. At the conclusion of the hearing, Judge Sagar stated a written order on Plaintiffs' Motion was forthcoming. *Id.* at 75:4-5.

Judge Sagar's written Order granted in part and denied in part Plaintiffs' Motion to Compel, including ordering Defendants to add three of Plaintiffs' requested custodians and certain requested searches. ECF 207 at 3-5. The Order expressly denied without prejudice Plaintiffs' request to add Lewerke, Claire Lee, and Nancy Lee. ECF 207. For Lewerke, Judge Sagar reasoned that because Plaintiffs "allege[] that senior management engaged in a scheme to mislead investors about subscriber targets and profitability projections," Defendants had already "designated other custodians in the same business functions areas and reporting chains," including "the senior managers who are most likely to have relevant information regarding the purported scheme and disclosures to investors." *Id.* at 3-4. As to Claire Lee and Nancy Lee, Judge Sagar considered Plaintiffs' argument that the chiefs-of-staff should be required custodians because they "played critical gatekeeping roles in controlling the flow of information to and from the CEO and Executive Chairman offices[.]" *Id.* at

-7-

4. In denying Plaintiffs' requests, Judge Sagar rejected that argument and agreed with Defendants that the "marginal relevance of responsive communications from these individuals" did not "outweigh the burden and likely duplication of communications from the senior executives and other custodians." *Id.* at 4.

Plaintiffs then filed both a Motion for Reconsideration to Magistrate Judge Sagar and this Objection. ECF 213, 214-1. Plaintiffs' motions are nearly identical; neither raises new arguments or identifies facts disregarded by Judge Sagar's Order. ECF 207. In violation of Local Rule 7-3, Plaintiffs did not meet and confer with Defendants before filing this Objection. Instead, hours before Plaintiffs filed the Objection, Plaintiffs' counsel called Defendants' counsel notifying counsel of Plaintiffs' intent to file the Objection that day.

## III.  **LEGAL STANDARD**

A magistrate judge's decision in non-dispositive matters "is entitled to great deference by the district court." *Abonce-Barrera*, 257 F.3d at 969. Accordingly, "[t]he party seeking to overturn a magistrate judge's decision carries a heavy burden." *Perfect 10*, 2015 WL 12732708, at *3 (citation omitted). The moving party must show that the order "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see* 28 U.S.C. § 636(b)(1)(A).

The clearly erroneous standard is "significantly deferential" and "very exacting." *Babakhanlou*, 2025 WL 2304271, at *3; *Perfect 10.*, 2015 WL 12732708, at *2; *H-E-B, LP v. Olympia Tools Int'l, Inc.*, 2021 WL 3171890, at *1 n. 1. (S.D. Cal. 2021) ("[T]he Magistrate Judge's findings of fact warrant significant deference").  Clear error review "is not whether the district judge would have made a different determination based on the same evidence." *Intex Recreation Corp. v. Bestway USA Inc.*, 2021 WL 6618494, at *1 (C.D. Cal. Nov. 10, 2021) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)) ("This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.").

-8-

"Mere doubts or disagreement about the wisdom of a prior decision . . . will not suffice." *Perfect 10*, 2015 WL 12732708, at *2. Rather, the moving party must prove the magistrate judge's decision was "more than just maybe or probably wrong; it must be dead wrong." *Id.* Or, as courts have alternatively put it: for a district court to overturn a magistrate's non-dispositive decision, the decision "must ... strike [the Court] as wrong with the force of a five-week-old, unrefrigerated dead fish.'" *Gaina v. Northridge Hosp. Med. Ctr.*, 2019 WL 1751825, at *2 (C.D. Cal. Feb. 25, 2019) (quoting *Fisher v. Roe*, 263 F.3d 906, 912 (9th Cir. 2001)).

Plaintiffs' *brief* ignores this deferential standard of review for "clearly erroneous" findings. But five of the eight cases Plaintiffs cite in their "Legal Standard" section are explicit—often in the same sentences that Plaintiffs selectively quote—that the "clearly erroneous standard, which applies to a magistrate judge's findings of fact, is 'significantly deferential[.]'" *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 971 (C.D. Cal. 2010); *Asus Compt. Int'l v. Rock Round Rsch., LLC*, 2013 WL 12131285 at *3 (C.D. Cal. June 28, 2013) (same); *Gonzalez-Tzita v. City of Los Angeles*, 2018 WL 10111333, at *2 (C.D. Cal. Sept. 30, 2018) (same); *H-E-B, LP*, 2021 WL 3171890, at *2 n.1 ("Magistrate Judges' findings of fact warrant significant deference"); *Intex Recreation Corp.*, 2021 WL 6618494, at *1 ("entitled to great deference").

"A magistrate judge's decision is contrary to law only if the decision "applies an incorrect legal standard or fails to consider an element of the applicable standard." *Anderson*, 2018 WL 3550214, at *2 (quoting *Conant v. McCoffey*, 1998 WL 164946, at *2 (N.D. Cal. Mar. 16, 1998)). Significantly, "[p]retrial orders of a magistrate under [28 U.S.C. §] 636(b)(1)(A) are . . . not subject to *de novo* determination." *Grimes*, 951 F.2d at 241 (quoting *Merritt v. Int'l Brotherhood of Boilermakers*, 649 F.2d 1013, 1016–17 (5th Cir. 1981)). And where, as here, "a magistrate is asked to exercise some level of legal discretion," "the import of a 'contrary to law' standard becomes more salient," because "[u]nlike *de novo* review, under the 'contrary of law' standard . . .

-9-

the reviewing court may not simply substitute its judgment for that of the deciding court." *Perfect 10*, 2015 WL 12732708, at *2 n.1 (quoting *Grimes*, 951 F.2d at 241).

## IV.  ARGUMENT

### A.    Judge Sagar Correctly Heard, Weighed, and Denied Plaintiffs' Arguments for Designating Nick Lewerke.

Plaintiffs contend that Judge Sagar's written order is "clearly erroneous" because Judge Sagar's denial of Plaintiffs' request to add Lewerke as a custodian is an "unexplained reversal" from her initial inclination at the hearing to grant that request. ECF 214-1 at 6. Tellingly, Plaintiffs cite no authority for the proposition that a court commits "clear error" when it revises its view between a motion hearing and a written order—especially when the court explains the basis for its written order. Nor do Plaintiffs even claim that such a revised view is "contrary to law."[1] Here, Judge Sagar stated at the hearing that a subsequent written order would be forthcoming. ECF 208 at 75:4-7. And that subsequent order contained a well-reasoned decision explaining why Judge Sagar concluded that the burden on Defendants for collecting and reviewing Mr. Lewerke's documents outweighed the "marginal relevance" of his communications. ECF 207 at 3. That is exactly the analysis Rule 26 requires; it was hardly an "unexplained reversal." ECF 214-1 at 6.

Plaintiffs also argue that Judge Sagar's order is "clearly erroneous" because it "rests on a factual premise that is unsupported as to Lewerke." *Id.* at 7. According to Plaintiffs, Judge Sagar denied their request for Lewerke because "Defendants have designated other custodians in the same business functions and reporting chains" as Lewerke, but there are supposedly no other custodians from Lewerke's Content

---

[1] The only thing Plaintiffs cite is this Court's order on their motion for reconsideration, which asked the Court to clear up purported inconsistencies in its own written orders on dispositive motions. ECF 214-1 at 6. Plaintiffs have already filed a motion for reconsideration asking Judge Sagar to clarify her written order to extent it reflects a "scrivener's error" as to Lewerke. *Id.* at 7. If it does reflect such an error, Judge Sagar can correct her order; but Plaintiffs' speculation is not clear error warranting this Court's reversal.

-10-

Planning & Analytics team. *See id.* This is an argument Plaintiffs made to Judge Sagar; indeed, they concede that the Court "hear[d] argument from both sides and prob[ed] the relevance of Lewerke's role," including this exact issue. *Id.* at 6. Judge Sagar correctly rejected it. In particular, as Defendants showed, the "Content Planning and Analysis" team was a unit within DMED Strategic Planning, and Defendants had already designated multiple custodians in Lewerke's reporting chain from that unit, including Kareem Daniel (Vice President of DMED) and Justin Warbrooke (Executive Vice President of DTC/International Operations). ECF 193 at 64. These were the individuals directly responsible for making decisions regarding content allocation and strategy—the subjects of Plaintiffs' allegations. By contrast, as Defendants also showed at the hearing, Lewerke's role focused primarily on title-level performance, ECF 208 at 15:14-20; ECF 193 at Ex. Z (email regarding impact of placing Wonder Years on Disney+ in addition to Hulu), and Hulu performance, ECF 208 at 15:17-20, ECF 193 at Ex. Y (email regarding simulating subscribers and viewership if Disney placed additional on Hulu)—subjects of marginal (at best) relevance to this litigation,

Accordingly, Judge Sagar had ample support to conclude that Defendants had designated custodians "in the same business function areas and reporting chains" as Lewerke, and that Defendants' already-identified custodians were more pertinent to Plaintiffs' securities fraud allegations that Disney senior management engaged in a scheme to misled investors. ECF 207 at 3-4. Judge Sagar found the marginal relevance of Lewerke's role does not "outweigh the burden to Defendants of collecting and reviewing additional documents," where Defendants already "designated as custodians the senior managers who are most likely to have relevant information regarding the purported scheme and disclosures to investors." ECF 207 at 3. Plaintiffs disagree with this conclusion, but that does not translate into clear error. *See Contemp. Servs. Corp. v. Landmark Event Staffing*, 2013 WL 12142953, at *2 (C.D. Cal. Feb.

-11-

4, 2013) (affirming discovery limitations where the magistrate judge's order "provide[d] a rational basis for limiting the scope of discovery").

**B.      Judge Sagar Correctly Heard, Weighed, and Denied Plaintiffs' Arguments for Designating Claire Lee and Nancy Lee.**

Plaintiffs reiterate their written and oral arguments as to why the Court must order Defendants to designate Claire and Nancy Lee as custodians, asserting that Judge Sagar's ruling is "belied by the unrefuted record" and constitutes "reversible error." ECF 214-1 at 17. The lynchpin of Plaintiffs' argument—which Plaintiffs repeat seven times—is that Defendants "expressly conceded" Claire Lee and Nancy Lee are senior management with relevant information because Defendants designated Arthur Bochner, Chapek's prior chief of staff, as a custodian. *Id.* at 2, 10, 11, 12, 17, 19, 20. In particular, Plaintiffs argue that Defendants "conceded" the "relevance" of Claire Lee because she was Bochner's successor as Iger's chief of staff. *Id.* at 11. Plaintiffs' arguments rise—and necessarily fall—with the false assumption that Defendants conceded that all chiefs of staff perform substantive senior responsibilities and therefore possess relevant nonduplicative communications.

But Defendants did not concede anything. As Defendants' counsel explained during oral argument, they designated Bochner because he held the separate "substantive role" of Vice President of Strategic Communications. It was in that capacity, not as chief of staff, that Mr. Bochner was one of many senior managers who may possess potentially relevant information. ECF 208 at 34:22-35:25. Neither Claire Lee nor Nancy Lee had that separate position. Plaintiffs also mischaracterize Defendants' brief. Specifically, Defendants wrote that "these [eleven senior leadership custodians including Arthur Bochner] may potentially possess communications relevant to, among other allegations, Plaintiffs' allegations regarding publicly announced subscriber targets, the DMED reorganization subscriber growth strategy, public disclosures, and Chapek's renewal as CEO." ECF 193 at 58-59. But as counsel explained at the hearing, Defendants "weren't making a representation that

-12-

Arthur Bochner was responsible for all of those areas." *Id.* at 35:18-20. Rather, as Defendants' counsel explained, "there's . . . several people mentioned there," and collectively, as a group, they might possess communications relevant to Plaintiffs' allegations. *Id.* at 22-23. None of this is a categorical "concession" that all chiefs of staff are senior managers with relevant information as to all these areas and thus, should be custodians. ECF 214-1 at 19.

Moreover, Plaintiffs already raised this purported concession with Judge Sagar, who rejected this argument. Indeed, Plaintiffs quote the parties' Joint Statement to Judge Sagar to argue Defendants "expressly conceded that the Chief of Staff is senior management and possesses" relevant communications. *Id.* at 8 (quoting ECF 193 at 58-59). Plaintiffs also reiterated this argument during the hearing, asserting that that "[t]he defendants concede" that "these people are extremely important" "in their own submission when they talk about Arthur Bochner. I don't know how we get around that." ECF 208 at 34:13-17. Judge Sagar specifically asked Defendants' counsel for a response, ECF 208 at 34:18-20 ("Ms. Nettleton, how is it that you concede that Chapek's former chief of staff is a relevant custodian but . . . the one that plaintiffs' want [c]learly is not?"), and Defendants' counsel provided a complete answer, as discussed above. ECF 208 at 34:22-35:25. Hearing and weighing all of this, Judge Sagar denied Plaintiffs' request. Because Plaintiffs now simply "'relitigate the same arguments carefully considered and rejected by the Magistrate Judge,'" the objections should be overruled. *Alcantar v. Madden*, 2022 WL 4554361, at *1 (C.D. Cal. Sept. 28, 2022).

Plaintiffs' related contention that Judge Sagar's order is clearly erroneous because it inconsistently applies so-called "succession logic" also fails. ECF 214-1 at 10, 20. Defendants designated Laura Evans, who was VP of Data Science for a portion of the purported Class Period; Judge Sagar's order separately requires Defendants to include her successor, David Chodniewicz, as a custodian, too. ECF 207 at 3. On this premise, Plaintiffs assert that Judge Sagar (i) "***found*** that because Defendants

-13-

conceded Evans likely had responsive information, Chodniewicz also likely possessed responsive materials as her successor"; and (ii) "***held*** that Plaintiffs were entitled to discovery from Chodniewicz because he was a successor during the [purported] Class Period to a custodian likely to have relevant information." *Id.* at 10 (citing ECF 207 at 3-4) (emphasis added). Accordingly, Plaintiffs contend that Judge Sagar's exclusion of Claire Lee is "untenable under the Court's own reasoning: if succession compelled discovery for a Vice President of Data Science, it necessarily compels discovery from [Claire Lee as] the successor Chief of Staff to the CEO[.]" *Id.* at 11.

This argument fails for two reasons. First, it rests on manufactured findings: nothing in Judge Sagar's order "finds" or "holds" that Chodniewicz should be a custodian solely by virtue of succeeding Evans; indeed, Judge Sagar's written order does not use the word "successor" or mention Plaintiffs' succession argument. The findings that Plaintiffs leverage to generate "clear error" do not exist. Second, even if Judge Sagar *had* explicitly included such findings in her order, it would not amount to an inconsistency or "clear error." As shown above, Defendants did not "concede" the chief of staff role was "relevan[t]," so no inconsistency arises from Judge Sagar "deny[ing] discovery from another individual who held the identical role during the [purported] Class Period." *Id.* at 11.

The remainder of Plaintiffs' arguments do not show that Judge Sagar's order is clearly erroneous or contrary to law. Plaintiffs characterize chiefs of staff as "gatekeepers" whose files will reveal what the Individual Defendants knew and when, ECF 214-1 at 9;[2] they also argue that the documentary evidence before Judge Sagar—

---

[2] Plaintiffs twice quote their prior characterizations of these custodians' "gatekeeping" roles and responsibilities, *see* ECF 214-1 at 9, 17 (quoting the Joint Statement at 26) (arguing that the chiefs of staff 'controlled the flow of information into and out of the CEO and Executive Chairman offices, coordinated cross-functional briefings, and tracked follow-ups.'"), and paraphrase it once more for good measure, *see id.* at 2 (arguing Nancy Lee held a "gatekeeping role" to "control[] the flow of information to and from Iger").

-14-

emails Defendants *produced* from *other* custodians and a news report—show that Judge Sagar's order is "belied by the unrefuted record," *id.* at 17. In particular, Plaintiffs rely upon: (i) a news report contending that Claire Lee was part of Chapek's "inner circle," *see id.* at 9, (ii) a scheduling email relaying Nancy Lee's request that senior executives attend a meeting, *see* ECF 193 Ex. II; (iii) notes from an executive meeting that Nancy Lee circulated to senior Investor Relations custodians, *see id.* at Ex. JJ; and (iv) notes from an Investor Relations meeting attended by Claire Lee. *See id.* at Ex. HH. From these documents, Plaintiffs allege that the chiefs of staff were not "'marginal' player[s] in the fraud," but had "direct involvement" in Plaintiffs' allegations, including that Nancy Lee was "involved in manipulating subscriber metrics." ECF 214-1 at 18. Tellingly, to substantiate these claims, Plaintiffs repeatedly quote their *themselves* characterizing the evidence before Judge Sagar rather than the evidence itself. *See e.g., id.* at 9 (quoting ECF 193 (Joint Statement)). For example, Plaintiffs' assertion that Nancy Lee was "involved in manipulating subscriber metrics" is based solely on a distorted reading of one email in which Nancy Lee attempted to organize a meeting with senior staff to brainstorm possible Disney+ promotions. *See* ECF 193-15 (outlining price options for Disney+).

Judge Sagar's written order acknowledged each of these arguments: that the chiefs of staff "played critical gatekeeping roles in controlling the f[low] of information to and from the CEO and Executive Chairman offices, attending meetings and took notes, Claire Lee was part of Chapek's inner circle, and Nancy Lee was involved in metrics manipulation." ECF 207 at 4. Indeed, Judge Sagar considered the same evidence Plaintiffs cite here. ECF 214-1 at 9 (citing 193 at 26; ECF 193-14 at -1750), 14 (citing ECF 193-14). The mere fact that she rejected that these arguments required Claire Lee and Nancy Lee to serve as custodians does not mean the order is "dead wrong." *Perfect 10*, 2015 WL 12732708, at *2. Rather, Plaintiffs' Objection improperly "makes, and relies on, the same arguments already presented to and rejected by the Magistrate Judge rather than sufficiently presenting to the Court the

-15-

reasons that the Magistrate Judge's Order is clearly erroneous or contrary to law." *Wheeler v. BMW of N. Amer. LLC*, 2022 WL 301537, at \*2 (M.D.N.C. Feb. 1, 2022).

As Defendants noted in both their briefing and oral argument, the chiefs of staff were not involved in the decision-making at issue in this securities fraud case, which concerns subscriber growth and profitability targets for Disney+. *Id.*; ECF 208 at 36:9-12. In a securities fraud case, a plaintiff's allegations are proven by what the decision-makers knew and what information was at their fingertips. Here, relevant, non-duplicative evidence will come from the files of senior leadership—those who were already custodians—because they were "involved in the actual substantive issues." *Id.*at 36:1. As Judge Sagar similarly observed, Claire Lee and Nancy Lee "don't appear to be in decision-making roles and it would appear that whatever communications they had with respect to . . . conveying information to their respective bosses, that's going to get captured . . . because Chapek and Iger are going to be . . . searched." *Id.*at 31:17-22. After taking both chiefs of staff under advisement, Judge Sagar "agree[d]" that "information relevant to Plaintiffs' allegations will be captured by documents from Chapek and Iger, and the designated custodians these individuals reported to and who were also present during the meetings," so "the marginal relevance of responsive communications from these individuals does not outweigh the burden and likely duplication of communications from the senior executives and other custodians." ECF 207 at 4.

Plaintiffs offer no sufficient reason why this Court should disturb Judge Sagar's ruling regarding relevance and burden. "A court should not disturb a Magistrate Judge's relevance determination except where it is based on an erroneous conclusion of law or where the record contains *no evidence* on which the Magistrate Judge rationally could have based that decision." *Strike 3 Holdings, LLC v. Doe*, 2022 WL 22898319, at \*2 (M.D. Fla. July 23, 2022) (internal citation and alteration omitted, emphasis added). Indeed, even the concept of "gatekeeping" advanced by Plaintiffs presumes these individuals are receiving and conveying information *from others*.

-16-

Here, the same emails that Plaintiffs cite as evidence of "clear error" support Judge Sagar's ruling: Plaintiffs have these documents precisely because Defendants produced them from the files of Defendants' *existing* custodians. *See* ECF 193 at 66. For example, Nancy Lee circulated notes from a meeting with executive leadership to three existing Investor Relations custodians: Jennifer Kettnich, Lowel Singer, and Zenia Municha. *See id* at Ex. JJ. And notes from an Investor Relations meeting attended by Claire Lee were also circulated to three existing custodians: Bryan Castellani (strategy and finance), Jeffrey Grenn (same), and Jennifer Kettnich (investor relations). *See id.* at Ex. HH; *id.* at 59. This evidence supports Judge Sagar's finding that "the marginal relevance of responsive communications from these individuals does not outweigh the burden and likely duplication of communications from the senior executives and other custodians." ECF 207 at 3. "[J]ust because a proposed custodian exchanged a large number of emails with a current custodian does not mean that the proposed custodians will have a significant number of important, *non-cumulative* information. *Kleen Prods. LLC v. Packaging Corp of Am.*, 2012 WL 4498465, at *14 (N.D. Ill. Sept. 28, 2012) (emphasis in original). Plaintiffs' desire for a different ruling is not ground for reversal.

## C.    Judge Sagar Correctly Applied Rule 26's Proportionality Requirement.

Finally, Plaintiffs argue that Judge Sagar's order is "contrary to law" because it failed to apply the "proportionality framework" of Rule 26. ECF 214-1 at 15-17, 19. At the outset, Plaintiffs misconstrue the governing standard of review. Seeking an "improper . . . second bite at the apple," *MedEnvios Healthcare, Inc. v. U.S. Dep't of Health and Human Servs.*, 2024 WL 551837, at *2 (S.D. Fla. Feb. 12, 2024) (internal citation omitted), Plaintiffs suggest that Judge Sagar's Rule 26 determination is subject to de novo review. *See* ECF 214-1 at 5. It is not. The Ninth Circuit has explained that the "contrary to law" standard is "far more deferential" than *de novo* review. *Abonce-Barrera*, 257 F.3d at 968; *see also Grimes*, 951 F.2d at 241 ("Pretrial

-17-

orders of a magistrate under 636(b)(1)(A) are reviewable under the 'clearly erroneous and contrary to law' standard; they are not subject to *de novo* determination."). Especially where, as here, a magistrate "exercise[s] some level of legal discretion . . . the reviewing court may not simply substitute its judgment for that of the deciding court." *Perfect 10*, 2015 WL 12732708, at *2 n.1 (quoting *Grimes*, 951 F.2d at 241).[3]

Plaintiffs are wrong on the merits, too. They argue the Order is contrary to law because Judge Sagar "denies discovery . . . without conducting the analysis Rule 26(b)(1) requires." ECF 214-1 at 15. That is demonstrably wrong. Judge Sagar expressly set forth the governing standard and explicitly "weigh[ed] the importance of discovery against any demonstrated burden." *Id.* Guiding principles for the Rule 26 proportionality analysis are judicial discretion and common sense. *See, e.g., Poulos v. City of Los Angeles*, 2020 WL 8509663, at *3 (C.D. Cal. July 15, 2020) ("The 2015 amendments to Rule 26(b)(1) emphasize the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'") (citation omitted). "The district court enjoys broad discretion when resolving discovery disputes." *Gibson Brands Inc. v. John Hornby Skewes & Co.*, 2015 WL 12681376, at *2 (C.D. Cal. July 20, 2015); *Cap Export v. Zinus*, 2020 WL 13588764, at *2 (C.D. Cal. Nov. 3, 2020) ("The resolution of most discovery disputes, including issues regarding the 'proportionality' component of Rule 26(b)(1), typically

---

[3] The cases Plaintiffs cite are readily distinguishable because they concern orders that turn on pure legal determinations, not requiring any element of judicial discretion. *See Crispin*, 717 F. Supp. 2d at 971 (magistrate misinterpreted the Stored Communications Act); *Asus Compt. Int'l*, 2013 WL 1213285 at *3 (magistrate misapplied Local Patent Rule 3-1); *Laub v. Horbaczewski*, 2019 WL 1744846, at *4 (C.D. Cal. Feb. 8, 2019) (magistrate judge erroneously applied federal rather than state privilege law); *Calendar Rsch. LLC v. StubHub, Inc.*, 2019 WL 4138660, at *2 (C.D. Cal. June 11, 2019) (evidentiary showing for *in camera* is reviewed de novo); *see also In re BofI Holding, Inc. Sec. Litig.*, 2021 WL 4460751, at *6 (S.D. Cal. 2021) (magistrate's order "clearly erroneous" for failing to consider the "unfair" "asymmetry" created by Defendants' "conditional production" of relevant depositions).

DEFENDANTS' OPPOSITION TO PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE SAGAR'S ORDER

involves the exercise of judicial discretion."); *see also* ECF 207 at 3 (citing *Hallet v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).  Judge Sagar expressly explained Rule 26(b)(1)'s proportionality requirement, which was "designed to avoid . . . sweeping discovery that is untethered to the claims and defenses in litigation," ECF 207 at 2-3, and appropriately applied that requirement to determine Plaintiffs' requests.

Indeed, Judge Sagar's deliberation reflects the careful application of these principles. Certain facts remain undisputed: by oral argument, Defendants had already agreed to review over 1.092 million documents from 51 searches, ECF 198 at 1, and had designated 38 custodians including the seniormost current and former executives of the Company, Disney's board chair, senior personnel in the relevant lines of business, and lower level personnel in relevant business functions. ECF 193 at 36. Defendants also submitted the Declaration of Andrew Johnston, a Senior Managing Director at FTI Consulting with more than twenty years of experience in electronic discovery. ECF 189-36. Johnston detailed FTI's use of hard data regarding Defendants' collections and review of 38 existing custodians to analyze the volume of collecting and reviewing communications from 16 more custodians, including Lewerke, Claire Lee, and Nancy Lee. ECF 189-36 at ¶¶ 19-22. FTI then quantified the effort required to collect and review the additional custodians' communications through a measurement of attorney hours, noting that uncounted attorney time would be needed for collection and privilege review. *Id.* at ¶ 23.

Judge Sagar considered the burden of collecting, searching and reviewing documents from the additional custodians and running additional searches in granting in part and denying in part Plaintiffs' Motion.  Judge Sagar granted Plaintiffs' Motion with respect to three of Plaintiffs' proposed custodians and certain searches, concluding the potential relevance was not outweighed by the burden. ECF 207 at 3-4. Judge Sagar further expressly weighed the potential relevance versus burden in finding "the marginal relevance of responsive communications from [Nancy and Claire Lee] does not outweigh the burden and likely duplication of communications

-19-

from the senior executives and other custodians." ECF 207 at 4; *see also id.* at 3 (same as to Lewerke); *see also Walsh v. Unforgettable Coatings, Inc.*, 2022 WL 3647920, at *3 (C.D. Cal. Aug. 23, 2022) (quoting Fed. R. Civ. P. 26(b)(1), Advisory Committee Notes) ("The Committee Notes to the 2015 amendment to Rule 26(b)(1) emphasized the importance of proportionality and the objective of 'encourage[ing] judges to be more aggressive in identifying and discouraging overuse.'"). At bottom, Rule 26 requires a court to balance the marginal relevance against the burden, exactly what Judge Sagar did. Plaintiffs certainly have not shown that any of Judge Sagar's proportionality analysis was "dead wrong." *Hernandez v. Mongomery*, 2024 WL 3818136, at *3 (C.D. Cal. June 25, 2024).

Instead, Plaintiffs complain that Defendants did not provide burden data "tied specifically" to Claire Lee or Nancy Lee alone, ECF 214-1 at 16, 19, but it is Plaintiffs that moved to compel Defendants' addition of 16 custodians total—and Defendants' responded by calculating the burden associated with those 16 custodians. ECF 189-36 at ¶¶ 19-22. This distinguishes this case from those Plaintiffs cite, where the non-movant submitted zero evidence and no declaration to substantiate its burden. *See Pom Wonderful LLC v. Coca-Cola Co.*, 2009 WL 10655335, at *3 (C.D. Cal. 2009); *SPS Techs. LLC v. Briles Aerospace, Inc.*, 2019 WL 13108031, at *1 (C.D. Cal. 2019) (same); *Strategic Partners, Inc. v. FIGS, Inc.,* 2020 WL 2527056, at *7 (C.D. Cal. 2020) (same); *Bible v. Rio Props, Inc.*, 246 F.R.D. 614, 618 (C.D. 2007) (same); *Pappas v. Naked Juice Co. of Glendora, Inc.*, 2012 WL 12885108 (C.D. Cal 2012), at *2 (same); *Gonzalez-Tzita*, 2018 WL 10111333, at *3 (same). Plaintiffs also argue that Judge Sagar failed to consider the effect of de-duplication to reduce burden. ECF 214 at 15. But FTI's analysis specifically accounted for the de-duplication of Plaintiffs' custodians' collections. ECF 189-36 at ¶ 20.

Indeed, the authority Plaintiff cites demonstrates that Judge Sagar properly applied the proportionality framework under Rule 26. In *In re Bank of Am. California Unemployment Benefits Litig.*, the plaintiffs moved to compel the addition of Bank of

DEFENDANTS' OPPOSITION TO PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE SAGAR'S ORDER

America's CEO and CFO as custodians. 2024 WL 3174874, at *2 (S.D. Cal. June 25, 2024). The court held that "on a motion to compel, the moving party bears the burden of demonstrating relevance, proportionality, and other Rule 26 requirements." *Id.* at *4. Like here, the magistrate judge denied plaintiffs' motion because "Plaintiffs had not shown that [the proposed custodians] possess 'uniquely relevant information that is not available from the sources already designated.'" *Id.* at *5. Accordingly, the district court found the magistrate "applied the correct legal standard by placing the initial burden on Plaintiffs to show proportionality on the threshold inquiry under Rule 26." *Id.* The same is true here. Judge Sagar found that "information relevant to Plaintiffs' allegations will be captured by documents from Chapek and Iger," ECF 207 at 4; in other words, "that Plaintiffs failed to meet their initial burden demonstrating proportionality by concluding that they did not demonstrate [the witnesses] possessed relevant information that is not available from existing sources." *In re Bank of Am.*, 2024 WL 3174874 at *5. Under those circumstances, like here, the "the Magistrate Judge applied the correct legal standard by placing the initial burden on Plaintiffs to show proportionality on the threshold inquiry under Rule 26." *Id.*

Finally, Plaintiffs argue that any burden is minimal because they requested Claire Lee's communications only over a three-month period. ECF 214 at 16. This request is new. In their Motion to Compel, Plaintiffs requested Claire Lee's documents for the entire purported relevant period—not some three-month subset. This revised request appeared for the first time in their (still pending) motion for reconsideration. *See Greenhow v. Sec'y of Health & Hum. Servs.*, 863 F.2d 633, 638 (9th Cir. 1988), *overruled on other grounds, United States v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992) ("[T]he Magistrates Act was [not] intended to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court."). Plaintiffs' belated request should be rejected, anyway. Judge Sagar's reasons for rejecting Plaintiffs' request for Claire Lee—*i.e.*, that documents in her possession "will be captured by documents from Chapek and Iger," and their

-21-

"marginal relevance . . . does not outweigh the burden and likely duplication of communications from senior executives and other custodians," ECF 207 at 4—applies with equal force regardless of the time frame of Plaintiffs' request.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs' Objection should be overruled.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE SAGAR'S ORDER

Respectfully submitted,

Dated:  February 3, 2026

/s/  Stacy Nettleton
WHITE & CASE LLP
Jonathan D. Polkes
Stacy Nettleton
Adam B. Banks
Susan L. Grace
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
jonathan.polkes@whitecase.com
stacy.nettleton@whitecase.com
adam.banks@whitecase.com
susan.grace@whitecase.com

/s/  John M. Gildersleeve
MUNGER TOLLES & OLSON LLP
John W. Spiegel
John M. Gildersleeve
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Telephone: (212) 683-9100
john.spiegel@mto.com
john.gildersleeve@mto.com

*Attorneys for Defendants*
*The Walt Disney Company, Robert Iger,*
*Robert Chapek, Christine McCarthy*
*And Kareem Daniel*

-23-

**L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Defendants, certifies that this brief contains 22 pages, which complies with the page limit set by the Court's Standing Order Rule 7(c).

Dated: February 3, 2026                              /s/ John M. Gildersleeve

-24-