ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN (200643)
RYAN A. LLORENS (225196)
JESSICA T. SHINNEFIELD (234432)
DARRYL J. ALVARADO (253213)
JEFFREY J. STEIN (265268)
NICOLE Q. GILLILAND (335132)
JESSICA E. ROBERTSON (352207)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
ryanl@rgrdlaw.com
jshinnefield@rgrdlaw.com
dalvarado@rgrdlaw.com
jstein@rgrdlaw.com
ngilliland@rgrdlaw.com
jrobertson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LOCAL 272 LABOR-MANAGEMENT PENSION FUND, on Behalf of Itself and All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>　vs.<br><br>THE WALT DISNEY COMPANY, et al.,<br><br>　　　　　　　　Defendants. | Case No. 2:23-cv-03661-CBM (ASx)<br><br><u>CLASS ACTION</u><br><br>REPLY IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER DATED JANUARY 7, 2026 GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL CUSTODIAN AND SEARCH TERMS (ECF 207) **[REDACTED]**<br><br>Date:　　　February 19, 2026<br>Time:　　　10:00 a.m.<br>Ctrm:　　　540<br>Judge:　　　Hon. Alka Sagar |

4928-0210-6765.v1

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................... 1

II.     ARGUMENT ............................................................................................ 2

        A.      The Order Denying Lewerke as a Custodian Should Be Corrected .......... 2

                1.      The Record Demonstrates that the Court's Ruling Was Simply a Mistake .................................................................. 2

                2.      The Order's Stated Rationale Is Factually Incorrect ...................... 4

                3.      Defendants' Speculation that the Court Purportedly Changed Its Mind Is Baseless .......................................................... 5

        B.      The Court's Denial of Claire Lee and Nancy Lee as Custodians Should Be Reconsidered ............................................................... 7

        C.      The Order Is Clearly Erroneous Because Defendants Failed to Show Undue Burden Under Rule 26(b)(1) ............................................. 9

III.    CONCLUSION ...................................................................................... 10

4928-0210-6765.v1

## I.    INTRODUCTION[1]

The Motion does not ask the Court to rethink close judgment calls or revisit discretionary discovery rulings.  It asks the Court to correct clear errors that are apparent on the face of the record and that, if left uncorrected, will materially impair Plaintiffs' ability to obtain discovery from the very custodians the Court itself recognized as uniquely relevant.

***First***, the Court unequivocally granted Plaintiffs' request to add Nick Lewerke as a custodian from the bench.  The written Order, however, denies that same request without explanation and on a factual premise that is demonstrably incorrect.  Defendants now ask the Court to accept the improbable notion that it silently reversed its own unambiguous oral ruling, without notice, briefing, or reasoning.  The record forecloses that theory.  The far more reasonable conclusion – and the only one consistent with the transcript, the Order as a whole, and governing law – is that Lewerke was inadvertently swept into the wrong category when the Order was drafted.

***Second***, the Court's denial of Claire Lee and Nancy Lee rests on premises that Defendants themselves abandoned once confronted with their prior admissions.  Defendants expressly conceded, by designating Robert Chapek's Chief of Staff (Arthur Bochner) as a custodian, that Chiefs of Staff are senior management and possess relevant communications.  Only after that concession became outcome-determinative did Defendants attempt to rewrite history, advancing a post hoc rationale that collapses under scrutiny and, in fact, further demonstrates why the Lees' custodial files are critical.

***Finally***, none of these denials can be sustained on burden grounds.  Federal Rule of Civil Procedure 26 places a heavy burden on the party resisting discovery, and Defendants failed to carry it.  Their attempted showing was speculative, inflated, and

---

[1]    Capitalized terms herein have the same meaning as in Plaintiffs' motion for reconsideration (ECF 227) ("Motion").

- 1 -

untethered to any custodian-specific analysis, particularly as to the Lees, whose documents were never even collected.  That is not a legally sufficient basis to deny discovery from central senior-management custodians in a securities fraud case of this magnitude.

Taken together, the errors identified here are not matters of discretion.  They are correctable mistakes that, once fixed, will bring the Order into alignment with the Court's oral rulings, the evidentiary record, and settled discovery law.  Plaintiffs respectfully ask the Court to do just that.

## II.     ARGUMENT

### A.     The Order Denying Lewerke as a Custodian Should Be Corrected

When a written order contradicts a definitive oral ruling announced on the record, the discrepancy must be corrected by amending the order to conform to the court's expressed intent.  *See, e.g.*, *Huey v. Teledyne, Inc.*, 608 F.2d 1234, 1236-37 (9th Cir. 1979) (correcting a dismissal "without prejudice" to "with prejudice," where the written order failed to conform to the court's  oral ruling); *G.P.P., Inc. v. Guardian Prot. Prods., Inc.*, 2018 WL 385372, at *9-*14 (E.D. Cal. 2018) (correcting judgment where it did not reflect the court's intended disposition).[2]

Defendants' contention that this Court ***intentionally*** reversed its unambiguous oral ruling concerning Lewerke is implausible, unsupported by the record, and rests entirely on post hoc speculation rather than evidence.

### 1.     The Record Demonstrates that the Court's Ruling Was Simply a Mistake

***First***, Defendants' speculation that the Court silently reconsidered its oral ruling after the hearing finds no support anywhere in the record.  The Court gave no indication

---

[2]     Meeting and conferring regarding the Motion was unnecessary because Defendants were incapable of granting Plaintiffs the relief they seek – amendment of the erroneous Order.  Nor would it have been appropriate for Plaintiffs to seek reconsideration of the Order utilizing this Court's informal procedures, as Local Rule 7-18 prescribes that a "motion" be filed in order for such relief to be granted.

- 2 -

4928-0210-6765.v1

that it intended to revisit its decision regarding Lewerke, and the parties submitted no additional briefing or materials after the hearing that could have prompted reconsideration. To the contrary, the Court's oral ruling was definitive and unconditional: "I'll deny it as to five and grant it as to Chodnowitz [sic] and Lewerke." ECF 208 at 16:4-5. Unlike Plaintiffs' request to add Claire Lee and Nancy Lee as custodians, which the Court expressly took under submission, the Court did not reserve decision or signal further consideration as to Lewerke. *Compare id.* at 16:3-5 (granting Lewerke), *with id.* at 36:19-21 (taking Chiefs of Staff under submission).

*Second*, if this Court intended to reverse its unequivocal oral ruling regarding Lewerke, basic principles of judicial decision-making compel the conclusion that the Court would have said so. A reversal of an on-the-record ruling would reasonably be expected to be acknowledged and explained. The Order does neither. It does not state that the Court was reconsidering or reversing its prior oral ruling, nor does it articulate any basis for doing so. That silence is incompatible with Defendants' theory of an intentional reversal and strongly indicates that the inconsistency was inadvertent.

*Third*, the written Order otherwise tracks the Court's oral rulings from the January 6, 2026 hearing, confirming that the Court intended the Order to reflect its on-the-record decisions. Indeed, the Court's written rulings concerning ***every other challenged custodian*** and multiple search term disputes all matched the Court's oral rulings.[3] The Lewerke ruling is the ***lone*** exception. Because the Order's treatment of Lewerke is the only inconsistency between the Court's oral rulings and the written Order, the most reasonable and record-supported conclusion is that the discrepancy resulted from a drafting error, not a substantive change in the Court's decision. Such an error is properly corrected

---

[3]   *Compare* ECF 208 at 16:3-5 ("I am going to then grant in part the request . . . as to Chodnowitz [sic] and Lewerke), *with* ECF 207 at 3-4; *compare* ECF 208 at 19:10-11 ("I'm going to deny the request to add the directors on the compensation committee as custodians."), *with* ECF 207 at 4; *compare* ECF 208 at 27:17-18 ("I'm going to deny the request to add Bergman and Walden as custodians."), *with* ECF 207 at 4; *compare* ECF 208 at 30:8-9 ("So I'm going to grant that request to add those two [Horacio Gutierrez and Paul Richardson] as custodians."), *with* ECF 207 at 4; *compare* ECF 208 at 36:19-21 (taking Plaintiffs' request to add Claire Lee and Nancy Lee under submission), *with* ECF 207 at 4.

- 3 -

4928-0210-6765.v1

through an amended order.  *See* ECF 175 (Marshall, J.) (granting motion for reconsideration and issuing an amended order after "review[ing] both orders and find[ing] inconsistencies").

### 2.      The Order's Stated Rationale Is Factually Incorrect

The Order's stated rationale for denying Lewerke as a custodian – *i.e.*, that "Defendants have designated other custodians in the same business function area and reporting chain" – is flatly incorrect as to Lewerke and therefore confirms that the Order contains a drafting error that should be corrected.  ECF 207 at 3.

At the January 6 hearing, the Court expressly recognized Lewerke's unique, non-duplicative role and granted Plaintiffs' request to add him from the bench.  ECF 208 at 16:3-5.  Plaintiffs' counsel explained on the record that Lewerke (then Disney's Vice President, Content Planning & Analysis) was in charge of windowing and that his team's work on content-placement and windowing decisions goes directly to Plaintiffs' theory that content was routed to Disney+ to affect subscriber metrics and profitability. *Id.* at 7:18-8:3, 8:7-20.  Plaintiffs also told the Court that no other designated custodian occupied that Content Planning & Analysis function, so there was no duplication to justify excluding Lewerke. *See, e.g.*, *id.* at 7:22-8:3 (explaining that because there were no other custodians in the highly relevant Content Planning & Analysis business function, if the Court did not add Lewerke as a custodian, Plaintiffs "just won't have any insight into that particular role").  At the conclusion of the parties' arguments concerning Lewerke and six other managers, the Court found that Lewerke and David Chodniewicz specifically possessed relevant, non-duplicative documents, and unequivocally granted Plaintiffs' request to add them as custodians.  ECF 208 at 16:3-5.

The written Order, by contrast, denies Lewerke's addition on the ground that "Defendants have designated other custodians in the same business function areas and reporting chain," effectively treating Lewerke as if he were interchangeable with other designated custodians for whom discovery was denied.  ECF 207 at 3-4.  That factual premise is unsupportable: Defendants identified no custodian from Disney's Content

- 4 -

Planning & Analysis team, and the record shows Plaintiffs repeatedly represented to the Court that no such duplication existed.  ECF 208 at 7:22-8:3; ECF 193 at 11-17.

Because the Order's justification for excluding Lewerke cannot be reconciled with (1) the Court's bench ruling granting Lewerke, (2) Plaintiffs' uncontradicted representations that no other custodian served in his content-planning role, and (3) the absence of any post-hearing briefing or explanation that might evidence an intentional change of course, the only plausible explanation is a drafting error that inadvertently swept Lewerke into the group denied discovery.  That type of one-off inconsistency – an Order that otherwise tracks the Court's on-the-record rulings but for a single custodian – is precisely the circumstance in which courts correct written orders to conform to their oral pronouncements.  Accordingly, the Court should amend the Order to reflect its on-the-record granting of Lewerke as a custodian so that the written disposition aligns with the ruling the Court actually made at the January 6 hearing.

### 3. Defendants' Speculation that the Court Purportedly Changed Its Mind Is Baseless

Because Defendants failed to dispute – and still cannot dispute – that *no* other designated custodian served in the "same business function" as Lewerke, they instead advance an argument grounded in speculation that the Court reversed itself, without explanation, because "Defendants had already designated multiple custodians in Lewerke's reporting chain, including Kareem Daniel (Vice President of DMED) and Justin Warbrooke (Executive Vice President of DTC/International Operations)." ECF 228 at 10. Whatever Defendants may now argue in hindsight, this purported "reporting chain" rationale was not mentioned or relied upon at the January 6 hearing, where the Court granted Lewerke from the bench.  Because the Court did not base its on-the-record ruling on any "reporting chain" theory, that theory cannot plausibly explain a later, unannounced change in the Court's decision.

- 5 -

4928-0210-6765.v1

*First*, Defendants fail to note that at the beginning of 2020, Lewerke was at least *four degrees of separation below* Daniel and Warbrooke in the reporting chain. Ex. 1.[4] Thus, they cannot credibly contend that Lewerke's inclusion in this "reporting chain" renders Daniel and Warbrooke the *de facto* substitutes for the most inclusive custodians. *Second*, ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████. *Id.*

Discovery has confirmed the unique relevance of these roles. For example, in his Senior Vice President role, Lewerke led a team responsible for ███████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ Ex. 2 at -5513.008. That no other individual maintained Lewerke's highly relevant titles underscores the importance of *his* custodial files, not the files of his significantly more senior supervisors. *In re Arby's Rest. Grp. Inc. Litig.*, 2018 WL 8666473, at *3 (N.D. Ga. 2018) (compelling lower-level custodians because "information does not always rise to the attention of the most senior employees in stratified organizations"). Defendants flip that logic on its head by asking the Court to deny the one uniquely situated custodian precisely because higher-level executives exist somewhere above him on an organizational chart.

*Third*, Defendants' organizational chart shows that Lewerke directly reported to ██████████ from the first quarter of 2020 ("1Q20") to the third quarter of 2020 ("3Q20") and ██████████ from 3Q20 to the third quarter of 2021 ("3Q21"), not Daniel or Warbrooke. Ex. 1.[5] Accordingly, searching Daniel's and Warbrooke's files from 1Q20 to 3Q21 is unlikely to capture Lewerke's files. And Defendants identify no mechanism – no forwarding practice, no centralized repository, no routine escalation process – by which Lewerke's analytics and content-planning work would reliably "rise" to Daniel or Warbrooke such that Lewerke could be excluded without prejudice to Plaintiffs.

---

[4]    All exhibits referenced herein are attached to the concurrently filed declaration of Daniel S. Drosman in support of this Reply.

[5]    Lewerke began directly reporting to Warbrooke in 3Q21. Ex. 1.

4928-0210-6765.v1

**B.    The Court's Denial of Claire Lee and Nancy Lee as Custodians Should Be Reconsidered**

Plaintiffs' Motion explains in detail why the Court's refusal to add Claire Lee (Chapek's Chief of Staff) and Nancy Lee (Robert Iger's Chief of Staff) as custodians was clearly erroneous. *See* ECF 227 at 7-18. Rather than grapple with the record showing that the Lees served as core members of the CEO/Executive Chairman offices with direct access to (and involvement in) Disney+ strategy, metrics, and investor-facing messaging, Defendants attempt to backpedal from a damaging admission in the Joint Stipulation. ECF 228 at 11-12. In the Joint Stipulation, Plaintiffs emphasized that by designating Chapek's Chief of Staff, Bochner, as a custodian, Defendants expressly conceded that Chiefs of Staff are senior management and possess communications relevant to Plaintiffs' allegations. ECF 193 at 58-59. That concession is a proportionality and relevance determination Defendants themselves made when selecting custodians. Having made that concession, Defendants cannot plausibly deny that the Lees' custodial files are similarly relevant. *Id.* Plaintiffs further explained that Defendants offered no evidence showing that the Lees' roles were materially different from or less relevant than the other Chiefs of Staff from whom Defendants agreed to produce. ECF 227 at 7, 9-10. Defendants still offer none.

Confronted with these inconsistencies, Defendants responded – *for the first time at the January 6 hearing* – that, contrary to their prior assertions, they designated Bochner as a custodian not because he served as Chief of Staff, but because he was also Vice President of Strategic Communications, a role he held *for only a few months* at the end of fiscal year 2022. ECF 208 at 35:1-6. According to Defendants, this was a "substantive role" in which Bochner might have "responsive relevant material to plaintiffs' requests." *Id.* This after-the-fact pivot proves Plaintiffs' point: Defendants did not identify Bochner's "VP" title anywhere in their prior custodian-justification briefing, yet now invoke it as the sole basis to avoid the straightforward implication of their Joint Stipulation. Bochner served as Chapek's Chief of Staff for two and a half years (nearly the entirety of the relevant period); yet Defendants referred to him only as Chief of Staff in prior briefing regarding the

- 7 -

4928-0210-6765.v1

sufficiency of their proposed custodians; and only claim his relevance is tied to a separate role he held for a mere few months before he left Disney in 2022.

This post hoc rationale fails. But even accepting Defendants' logic for the sake of argument, it only strengthens the case for adding Claire Lee as a custodian for the full relevant period. Defendants now contend that Bochner's relevance stemmed not from his service as Chief of Staff, but from a separate, "substantive" senior role he held concurrently. That concession applies with equal or greater force to Claire Lee. Long before (and independent of) her service as Chapek's Chief of Staff, Claire Lee occupied a senior, substantive position at the center of Disney's streaming operations. From 2020 through mid-2022, Claire Lee served as "Director, Office of the Chairman (DTC & International)," a high-level role through which she functioned as a key strategic and operational liaison among Disney's most senior executives, Investor Relations, and streaming leadership, and in which she necessarily sent and received communications directly relevant to Plaintiffs' claims.

Documents produced to date confirm that in this role, Claire Lee served as an intermediary between Disney streaming executives, including Daniel, and other relevant Disney+ employees. For example, in a July 2021 email, Claire Lee coordinates with other senior managers on behalf of Daniel for an upcoming earnings announcement, stating:

Ex. 3 at -6448. In another July 2021 email, she emailed other employees regarding

Ex. 4.

Claire Lee also served as a critical interface between Disney's Investor Relations and the individual defendants on issues pertaining to Disney+. For example, in a

- 8 -

4928-0210-6765.v1

November 2020 email regarding the script for Disney Investor Day, a key event in this case, Claire Lee discusses her review meeting with Iger and Chapek: ██████████ ████████████████████████████████████████████████ Ex. 5 at -2609. In March 2021, Claire Lee was designated as Investor Relations' primary contact for ██████████████████████████ concerning Disney's streaming services. ECF 193-14 at -1750. Claire Lee, like Bochner, served in two critical roles during the relevant period, and the Court erred in denying her as a custodian.

### C.     The Order Is Clearly Erroneous Because Defendants Failed to Show Undue Burden Under Rule 26(b)(1)

The Order is clearly erroneous because the Court failed to require Defendants to meet their "'heavy burden'" of showing that collecting and producing the Lees' documents would be unduly burdensome under Rule 26(b)(1). *N. Am. Co. for Life & Health Ins. v. Philpot*, 2009 WL 10672468, at *2 (S.D. Cal. 2009) (quoting *Blankenship v. Hearst Corp.*, 519 F. 2d 418, 429 (9th Cir. 1975)); *see also United Ass'n Nat'l Pension Fund v. Carvana Co.,* 2026 WL 266600, at *4 (D. Ariz. 2026) (denying discovery where defendants failed to meet their "heavy burden"); *Pappas v. Naked Juice Co. of Glendora, Inc.*, 2012 WL 12885108, at *2 (C.D. Cal. 2012) (to satisfy Rule 26(b)(1), the party resisting discovery must demonstrate "'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant or how each question is overly broad, burdensome or oppressive'") (citation omitted).

In an after-the-fact attempt to show undue burden, Defendants lean heavily on the Declaration of Andrew Johnston ("Johnston Declaration") (ECF 189-36), which they submitted in connection with the Joint Stipulation. But as Plaintiffs' e-discovery expert explained in his rebuttal declaration, Johnston's approach to estimating the impact of adding custodians was "fundamentally flawed," "methodologically unreliable," and "grossly inflate[d] the likely volume of documents requiring review," including because deduplication cannot be reliably quantified for uncollected custodians and hit counts are not a proxy for review burden. ECF 199-2, ¶¶6-9, 20-22, 30-31. A declaration built on

- 9 -

4928-0210-6765.v1

guesswork and inflated assumptions is not competent evidence of "undue burden." The law is well-established that claims of burden cannot rest on such a faulty and speculative foundation. *See, e.g.*, *United States ex rel. Poehling v. Unitedhealth Grp., Inc.*, 2022 WL 19913651, at *3 (C.D. Cal. 2022) (holding that "conclusory and speculative assertions that do not quantify any burden" do not satisfy Rule 26(b)(1)); *Tessera, Inc. v. Sony Corp.*, 2012 WL 5915417, at *2 (N.D. Cal. 2012) (no undue burden shown where the party resisting discovery merely argued that "compelling production ***could*** impose an extreme burden," but "could not describe the process that would be involved in such an undertaking") (emphasis in original). That is precisely what Defendants did: they offered inflated top-line numbers untethered to any custodian-specific, review-specific showing.

Moreover, though the Johnston Declaration provided unreliable and inflated estimates of the total collection size for all of Plaintiffs' proposed additional custodians, Defendants never collected the Lees' documents and therefore have never provided a reliable estimate of the number of responsive, non-duplicative documents they possess. Defendants' failure to do so is fatal to their claim of undue burden. *See, e.g.*, *In re Envision Healthcare Corp. Sec. Litig.*, 2020 WL 6750397, at *6 (M.D. Tenn. 2020) (compelling additional custodians where defendants failed to "address th[eir] burden on a custodian-by-custodian basis"); *Remy Inc. v. Tecnomatic, S.P.A.*, 2013 WL 1310216, at *7 (S.D. Ind. 2013) (ordering party resisting discovery to make "a particularized showing of undue burden" on a "custodian-by-custodian basis" as well as provide "a good faith estimate of the costs for searching and producing the documents of such custodians").

Because Defendants failed to meet their heavy burden of establishing that collecting and producing the responsive, non-duplicative documents in the Lees' custodial files would be unduly burdensome, the Court's finding of undue burden rests on an insufficient evidentiary showing, misapplies Rule 26(b)(1), and is clearly erroneous.

## III.    CONCLUSION

Plaintiffs respectfully request that the Court reconsider its Order and designate Nick Lewerke, Claire Lee, and Nancy Lee as custodians.

- 10 -

4928-0210-6765.v1

DATED: February 5, 2026

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN
RYAN A. LLORENS
JESSICA T. SHINNEFIELD
DARRYL J. ALVARADO
JEFFREY J. STEIN
NICOLE Q. GILLILAND
JESSICA E. ROBERTSON

s/ Daniel S. Drosman
DANIEL S. DROSMAN

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
ryanl@rgrdlaw.com
jshinnefield@rgrdlaw.com
dalvarado@rgrdlaw.com
jstein@rgrdlaw.com
ngilliland@rgrdlaw.com
jrobertson@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
CRISTELLE R. RABBAN (*pro hac vice*)
420 Lexington Avenue, Suite 1832
New York, NY  10170
Telephone:  212/432-5100
crabban@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SCOTT I. DION (*pro hac vice*)
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdion@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 11 -

4928-0210-6765.v1

**L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 10 pages, which complies with the page limit set by the Court's Standing Order (ECF 18), dated May 19, 2023.

DATED:  February 5, 2026

_____
s/ Daniel S. Drosman
DANIEL S. DROSMAN

- 12 -

4928-0210-6765.v1