ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN (200643)
RYAN A. LLORENS (225196)
JESSICA T. SHINNEFIELD (234432)
DARRYL J. ALVARADO (253213)
JEFFREY J. STEIN (265268)
NICOLE Q. GILLILAND (335132)
JESSICA E. ROBERTSON (352207)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
ryanl@rgrdlaw.com
jshinnefield@rgrdlaw.com
dalvarado@rgrdlaw.com
jstein@rgrdlaw.com
ngilliland@rgrdlaw.com
jrobertson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LOCAL 272 LABOR-MANAGEMENT PENSION FUND, on Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE WALT DISNEY COMPANY, et al.,<br><br>Defendants. | Case No. 2:23-cv-03661-CBM (ASx)<br><br>CLASS ACTION<br><br>REPLY IN FURTHER SUPPORT OF PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE SAGAR'S NON-DISPOSITIVE ORDER DATED JANUARY 7, 2026 GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL CUSTODIAN AND SEARCH TERMS (ECF 207)<br><br>Date:     February 24, 2026<br>Time:     10:00 a.m.<br>Ctrm:     8D<br>Judge:    Hon. Consuelo B. Marshall |

4900-0657-0126.v1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   ARGUMENT ................................................................................................. 2

A.    The Order's Denial of Lewerke Should Be Reversed .............................. 2

1.    The Order's Denial of Lewerke Was Inadvertent ...................... 2

2.    The Order's Stated Rationale Is Factually Erroneous ................ 4

3.    Defendants' Speculation that Judge Sagar Purportedly Changed Her Mind Is Baseless ........................................................ 5

B.    The Order's Denial of Claire Lee and Nancy Lee as Custodians Should Be Reversed ............................................................................... 6

C.    The Order Is Clearly Erroneous and Contrary to Law Because Defendants Failed to Show Undue Burden ........................................... 9

III.  CONCLUSION ............................................................................................ 10

4900-0657-0126.v1

## I.    INTRODUCTION[1]

The Objection is not a mere rehashing of arguments that Judge Sagar previously considered nor does it ask this Court to substitute its judgment for that of the Magistrate Judge.  It seeks the reversal of clear errors in Judge Sagar's Order that are apparent on the face of the record and will materially impair Plaintiffs' ability to obtain discovery from the very custodians Judge Sagar explicitly recognized as uniquely relevant.  If these errors are left uncorrected, Plaintiffs will be denied access to critical evidence concerning the core of their fraud claims, undermining the truth-seeking function of discovery.

***First***, Judge Sagar unequivocally granted Plaintiffs' request to add Nick Lewerke as a custodian from the bench.  The written Order, which Judge Sagar issued the following day, denied that same request without explanation and on a factual premise that is demonstrably incorrect.  Defendants now ask this Court to accept the improbable notion that Judge Sagar silently reversed her own unambiguous oral ruling, without notice, briefing, or reasoning.  The record forecloses that theory.  The far more reasonable conclusion – and the only one consistent with the hearing transcript, the Order as a whole, and governing law – is that Judge Sagar inadvertently swept Lewerke into the wrong category when drafting the Order.  Because the written Order fails to reflect the Court's stated intent, it is "clearly erroneous" under Federal Rule of Civil Procedure 72(a).

***Second***, Judge Sagar's denial of Claire Lee and Nancy Lee as custodians rests on premises that Defendants themselves abandoned once confronted with their prior admissions.  Defendants expressly conceded, by designating Robert Chapek's Chief of Staff (Arthur Bochner) as a custodian, that Chiefs of Staff are senior management and possess relevant communications.  Only after that concession became outcome-determinative did Defendants attempt to rewrite history, advancing a post hoc rationale that collapses under scrutiny and further demonstrates why the Lees' custodial files are critical and why reversal is warranted.  The inconsistent application of discovery

---

[1]    Capitalized terms herein have the same meaning as in Plaintiffs' objection to Magistrate Judge Sagar's Order dated January 7, 2026 (ECF 207) (ECF 212) (the "Objection").

- 1 -

principles to identical roles is "contrary to law" and warrants reversal.

*Finally*, none of these denials can be sustained on burden grounds. Federal Rule of Civil Procedure 26 places a heavy burden on the party resisting discovery, and Defendants failed to carry it. Defendants' attempted showing was speculative, inflated, and untethered to any custodian-specific analysis, particularly as to the Lees and Lewerke, whose documents were never even collected. That is not a legally sufficient basis for denying discovery from central senior management custodians in a securities fraud case of this magnitude. Denying discovery based on generalized assertions of burden without a specific evidentiary showing is a clear legal error. Judge Sagar's burden ruling was therefore clearly erroneous and contrary to law, requiring reversal.

Taken together, the errors identified here are not matters of judicial discretion. They are clear legal and factual errors that must be reversed to prevent a manifest injustice in this litigation. Plaintiffs respectfully ask this Court to do just that.

## II.    ARGUMENT

### A.    The Order's Denial of Lewerke Should Be Reversed

When a written order contradicts a definitive oral ruling announced on the record, the discrepancy must be corrected by amending the order to conform to the court's expressed intent. *See, e.g.*, *Huey v. Teledyne, Inc.*, 608 F.2d 1234, 1236-37 (9th Cir. 1979) (correcting a dismissal where the written order failed to conform to the court's oral ruling); *G.P.P., Inc. v. Guardian Prot. Prods., Inc.*, 2018 WL 385372, at *9-*14 (E.D. Cal. 2018) (correcting judgment where it did not reflect the court's intended disposition).[2]

Defendants' contention that Judge Sagar *intentionally* reversed her unambiguous oral ruling concerning Lewerke is implausible, unsupported by the record, and rests entirely on post hoc speculation rather than evidence.

### 1.    The Order's Denial of Lewerke Was Inadvertent

*First*, Defendants' speculation that Judge Sagar silently reconsidered her oral

---

[2]    Meeting and conferring regarding the Objection was unnecessary because Defendants were incapable of granting Plaintiffs the relief they seek – reversal of Judge Sagar's erroneous Order.

- 2 -

4900-0657-0126.v1

ruling after the hearing finds no support anywhere in the record.  Judge Sagar gave no indication at the January 6 hearing that she intended to revisit her decision regarding Lewerke, and the parties submitted no additional briefing or materials after the hearing that could have prompted reconsideration before Judge Sagar issued her written ruling the following day.   To the contrary, Judge Sagar's oral ruling was definitive and unconditional: "I'll deny it as to five and grant it as to Chodnowitz [sic] and Lewerke." ECF 208 at 16:4-5.  Unlike Plaintiffs' request to add Claire Lee and Nancy Lee as custodians, which Judge Sagar expressly took under submission, Judge Sagar did not reserve decision or signal further consideration as to Lewerke.  *Compare id.* at 16:3-5 (granting Lewerke), *with id.* at 36:19-21 (taking Chiefs of Staff under submission).

***Second***, if Judge Sagar intended to reverse her unequivocal oral ruling regarding Lewerke, basic principles of judicial decision-making compel the conclusion that Judge Sagar would have said so.  A reversal of an on-the-record ruling would reasonably be expected to be acknowledged and explained.  The Order does neither.  It does not state that Judge Sagar was reconsidering or reversing her prior oral ruling, nor does it articulate any basis for doing so.  That silence is incompatible with Defendants' theory of an intentional reversal and strongly indicates that the inconsistency was inadvertent.

***Third***, the written Order otherwise tracks Judge Sagar's oral rulings from the January 6 hearing, confirming that Judge Sagar intended the Order to reflect her on-the-record decisions.  Indeed, Judge Sagar's written rulings concerning ***every other challenged custodian*** and multiple search term disputes all matched her oral rulings.[3] The Lewerke ruling is the ***lone*** exception.  Because the Order's treatment of Lewerke is the only inconsistency between Judge Sagar's oral rulings and the written Order, the most reasonable and record-supported conclusion is that the discrepancy resulted from a

---

[3]   *Compare, e.g.*, ECF 208 at 16:3-5 ("I am going to then grant in part the request . . . as to Chodnowitz [sic] and Lewerke"), *with* ECF 207 at 3-4; *compare* ECF 208 at 30:8-9 ("So I'm going to grant that request to add those two [Horacio Gutierrez and Paul Richardson] as custodians."), *with* ECF 207 at 4; *compare* ECF 208 at 36:19-21 (taking Plaintiffs' request to add Claire Lee and Nancy Lee under submission), *with* ECF 207 at 4.

- 3 -

drafting error, not a substantive change in Judge Sagar's decision. A mistake such as this constitutes a clear error that requires reversal.

**2.      The Order's Stated Rationale Is Factually Erroneous**

The Order's stated rationale for denying Lewerke as a custodian – *i.e.*, that "Defendants have designated other custodians in the same business function areas and reporting chains" – is flatly incorrect as to Lewerke and therefore confirms that the Order contains a drafting error that requires reversal. ECF 207 at 3.

At the January 6 hearing, Judge Sagar expressly recognized Lewerke's unique, non-duplicative role and granted Plaintiffs' request to add him from the bench. ECF 208 at 16:3-5. Plaintiffs' counsel explained on the record that Lewerke (then Disney's Vice President, Content Planning & Analysis) was in charge of windowing and that his team's work on content-placement and windowing decisions is directly relevant to Plaintiffs' theory that Defendants routed content to Disney+ to inflate subscriber metrics and profitability. *Id.* at 7:18-8:3, 8:7-20. Plaintiffs also explained that no other designated custodian occupied that Content Planning & Analysis function, so there was no duplication to justify excluding Lewerke. *See, e.g.*, *id.* at 7:22-8:3 (explaining that because there were no other custodians in the highly relevant Content Planning & Analysis business function, if Judge Sagar did not add Lewerke as a custodian, Plaintiffs "just won't have any insight into that particular role"). At the conclusion of the parties' arguments concerning Lewerke and six other managers, Judge Sagar found that Lewerke and David Chodniewicz specifically possessed relevant, non-duplicative documents, and unequivocally granted Plaintiffs' request to add them as custodians. *Id.* at 16:3-5.

Judge Sagar's written Order, by contrast, denied adding Lewerke as a custodian on the ground that "Defendants have designated other custodians in the same business function areas and reporting chains," effectively treating Lewerke as if he were interchangeable with other designated custodians for whom discovery was denied. ECF 207 at 3-4. That factual premise is erroneous: Defendants identified no custodian from Disney's Content Planning & Analysis team, and the record shows Plaintiffs repeatedly

- 4 -

4900-0657-0126.v1

represented to Judge Sagar that no such duplication existed, which Defendants failed to refute. ECF 208 at 7:22-8:3; ECF 193 at 11-17.

Because the Order's justification for excluding Lewerke cannot be reconciled with (1) Judge Sagar's bench ruling granting Lewerke, (2) Plaintiffs' uncontroverted representations that no other custodian served in his content-planning role, and (3) the absence of any post-hearing briefing or explanation that might evidence an intentional change of course, the only plausible explanation is a drafting error that inadvertently swept Lewerke into the group denied discovery. This type of one-off inconsistency – an Order that otherwise tracks Judge Sagar's on-the-record rulings but for a single custodian – is precisely the circumstance where clear error is apparent and reversal is warranted.

### 3. Defendants' Speculation that Judge Sagar Purportedly Changed Her Mind Is Baseless

Because Defendants failed to dispute – and still cannot dispute – that **no** other designated custodian served in the "same business function" as Lewerke, they instead speculate that Judge Sagar reversed herself, without explanation, because "Defendants had already designated multiple custodians in Lewerke's reporting chain . . ., including Kareem Daniel (Vice President of DMED) and Justin Warbrooke (Executive Vice President of DTC/International Operations)." ECF 229 at 11. Whatever Defendants may now argue in hindsight, this purported "reporting chain" rationale was not mentioned or relied upon at the January 6 hearing, where Judge Sagar granted Lewerke as a custodian from the bench. Because Judge Sagar did not base her on-the-record ruling on any "reporting chain" theory, that theory cannot plausibly explain an unannounced change in Judge Sagar's decision, which she issued the day after the hearing.

*First*, Lewerke was the *only person* with the titles "VP, Analytics & Planning" and "SVP, DMED Content Planning & Analysis" during the relevant time period, and discovery has confirmed the unique relevance of these roles. That no other individual maintained Lewerke's highly relevant titles underscores the importance of *his* custodial files, not the files of his significantly more senior supervisors. *In re Arby's Rest. Grp.*

- 5 -

4900-0657-0126.v1

*Inc. Litig.*, 2018 WL 8666473, at *3 (N.D. Ga. 2018) (compelling lower-level custodians because "information does not always rise to the attention of the most senior employees in stratified organizations"). Defendants flipped that logic on its head by asking Judge Sagar to deny the one uniquely situated custodian, precisely because higher-level executives exist above him on the organizational chart.

*Second*, Defendants fail to note that at the beginning of 2020, Lewerke was at least four degrees of separation below Daniel and Warbrooke in the reporting chain. Thus, they cannot credibly contend that Lewerke's inclusion in this "reporting chain" renders Daniel and Warbrooke the *de facto* substitutes for the most inclusive custodians.

*Third*, Lewerke did not report to Daniel or Warbrooke until the third quarter of 2021 ("3Q21"). Accordingly, searching Daniel's and Warbrooke's files prior to 3Q21 is unlikely to capture Lewerke's files. And Defendants identify no mechanism – no forwarding practice, no centralized repository, no routine escalation process – by which Lewerke's analytics and content-planning work would reliably "rise" to Daniel or Warbrooke such that Lewerke could be excluded without prejudice to Plaintiffs.

### B. The Order's Denial of Claire Lee and Nancy Lee as Custodians Should Be Reversed

Plaintiffs' Objection explains in detail why Judge Sagar's refusal to add Claire Lee (Chapek's Chief of Staff) and Nancy Lee (Robert Iger's Chief of Staff) as custodians was clearly erroneous. *See* ECF 212 at 8-10. Defendants' opposition ignores the record showing that the Lees served as core members of the CEO/Executive Chairman offices with direct access to (and involvement in) Disney+ strategy, metrics, and investor-facing messaging. Instead, Defendants attempt to walk back a critical admission from the Joint Stipulation. ECF 229 at 11-12. In the Joint Stipulation, Defendants justified designating Chapek's Chief of Staff, Bochner, as a custodian by expressly conceding that a Chief of Staff is senior management and possesses communications relevant to Plaintiffs' allegations. ECF 193 at 58-59. That concession is a proportionality and relevance determination made by Defendants themselves when selecting custodians. Having made

- 6 -

4900-0657-0126.v1

that concession, Defendants cannot plausibly deny that the identical roles held by the Lees are relevant. *Id.* And Defendants still identify no record evidence showing that the Lees' roles were materially different from or less relevant than the other Chief of Staff who Defendants designated as a custodian. *See generally* ECF 229.

Confronted with these inconsistencies, Defendants responded – ***for the first time at the January 6 hearing*** – that, contrary to their prior assertions, they designated Bochner as a custodian not because he served as Chief of Staff, but because he was also Vice President of Strategic Communications, a role he held ***for only a few months*** at the end of fiscal year 2022. ECF 208 at 35:1-6. According to Defendants, this was a "substantive role" in which Bochner might have "responsive relevant material to plaintiff[s'] requests." *Id.* This after-the-fact pivot proves Plaintiffs' point: Defendants did not identify Bochner's "VP" title anywhere in their prior custodian-justification briefing, yet now invoke it as the sole basis to avoid the straightforward implication of their admission in the Joint Stipulation. Bochner served as Chapek's Chief of Staff for two and a half years (nearly the entirety of the relevant period), and Defendants referred to him only as Chief of Staff in prior briefing regarding the sufficiency of their proposed custodians. But now they claim his relevance hinges entirely on a separate role he held for a mere few months before he left Disney in 2022.

This post hoc rationale fails. But even accepting Defendants' logic for the sake of argument, it only strengthens the case for adding Claire Lee as a custodian for the full relevant period. Defendants now contend that Bochner's relevance stemmed not from his service as Chief of Staff, but from a separate, "substantive" senior role he held concurrently. That concession applies with equal or greater force to Claire Lee. Long before (and independent of) her service as Chapek's Chief of Staff, Claire Lee occupied a senior, substantive position at the center of Disney's streaming operations. From 2020 through mid-2022, Claire Lee served as "Director, Office of the Chairman (DTC & International)," a high-level role in which she functioned as a key strategic and operational liaison among Disney's most senior executives, Investor Relations, and

- 7 -

4900-0657-0126.v1

streaming leadership, and in which she necessarily sent and received communications directly relevant to Plaintiffs' claims.

Defendants' attempts to dispute the relevance of the Lees' documents fail. For example, Defendants assert that only those "involved in the decision-making at issue" are relevant to proving Plaintiffs' allegations. ECF 229 at 16. This is demonstrably false and directly at odds with Rule 26's "broad" relevance standard. It is especially wrong where, as here, Chiefs of Staff function as the executive Defendants' gatekeepers, document managers, and operational conduits. At a minimum, the Lees' files are reasonably likely to contain unique meeting materials, drafts, and contemporaneous notes bearing on what the Defendants knew and what information was at their fingertips. Indeed, courts have consistently held that it is "not necessary" to allege custodians had *any* involvement in the alleged misstatements "in order to establish that they may have relevant ESI." *In re Envision Healthcare Corp. Sec. Litig.*, 2020 WL 6750397, at *3 (M.D. Tenn. 2020).

Finally, Judge Sagar's denial of Claire Lee as a custodian was clearly erroneous because it failed to apply the same succession logic she applied in compelling David Chodniewicz as a custodian. ECF 207-208. At the hearing, Plaintiffs explained that Chodniewicz succeeded Laura Evans (who Defendants designated as a custodian) as Vice President of Data Science & Analytics for Disney Streaming Services. ECF 208 at 6:19-7:3. Judge Sagar then asked Defendants why Chodniewicz "shouldn't . . . be added as a custodian" given that he "took over as head of data science and nobody else was in that role for a big chunk of the period." *Id.* at 13:8-11. After listening to Defendants' response, Judge Sagar granted Plaintiffs' request to add Chodniewicz from the bench. *Id.* at 16:3-5.[4] Judge Sagar's unexplained failure to apply this same succession logic to Claire Lee (who succeeded Bochner as Chapek's Chief of Staff during the relevant

---

[4] Defendants' quibble that Judge Sagar did not "hold[]" or "find[]" any of the material facts that she considered to reach her determination regarding Chodniewicz is unsupported by the law. ECF 229 at 13-14; *see, e.g.*, *Kaseberg v. Conaco, LLC*, 360 F. Supp. 3d 1026, 1035 (S.D. Cal. 2018) ("'[a] holding consists of those propositions along the chosen decisional path or paths of reasoning that (1) are actually decided, (2) are based upon the facts of the case, and (3) lead to the judgment'") (citation omitted).

- 8 -

4900-0657-0126.v1

period) was clearly erroneous and requires reversal.

### C. The Order Is Clearly Erroneous and Contrary to Law Because Defendants Failed to Show Undue Burden[5]

The Order is clearly erroneous because Judge Sagar failed to require Defendants to meet their "'heavy burden of showing'" that collecting and producing the Lees' and Lewerke's documents would be unduly burdensome under Rule 26(b)(1). *N. Am. Co. for Life & Health Ins. v. Philpot*, 2009 WL 10672468, at *2 (S.D. Cal. 2009) (citation omitted); *see also United Ass'n Nat'l Pension Fund v. Carvana Co.*, 2026 WL 266600, at *4 (D. Ariz. 2026) (denying discovery where defendants failed to meet their "heavy burden"); *Pappas v. Naked Juice Co. of Glendora, Inc.*, 2012 WL 12885108, at *2 (C.D. Cal. 2012) (party resisting discovery must demonstrate "'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant or how each question is overly broad, burdensome or oppressive'") (citation omitted).

In an after-the-fact attempt to show undue burden, Defendants lean heavily on the Declaration of Andrew Johnston (ECF 189-36), submitted in connection with the Joint Stipulation. But as Plaintiffs' e-discovery expert explained in his rebuttal declaration, Johnston's approach to estimating the impact of adding custodians was "fundamentally flawed," "methodologically unreliable," and "grossly inflate[d] the likely volume of documents requiring review," including because deduplication cannot be reliably quantified for uncollected custodians and hit counts are not a proxy for review burden. ECF 199-2, ¶¶6-9, 20-22, 30-31. Crucially, Defendants provided ***no*** burden data specific to the three custodians at issue here. A declaration built on guesswork and inflated assumptions is not competent evidence of "undue burden." *See United States ex rel. Poehling v. Unitedhealth Grp., Inc.*, 2022 WL 19913651, at *3 (C.D. Cal. 2022) ("conclusory and speculative assertions that do not quantify any burden" do not satisfy

---

[5] Defendants' claim that Judge Sagar's Order is not subject to *de novo* review is contrary to law. *See Osband v. Woodford*, 290 F.3d 1036, 1041 (9th Cir. 2002) ("questions of law are reviewed de novo" in the context of reviewing a motion to reconsider a magistrate's pretrial order).

4900-0657-0126.v1

Rule 26(b)(1)); *Tessera, Inc. v. Sony Corp.*, 2012 WL 5915417, at *2 (N.D. Cal. 2012) (no undue burden shown where the party resisting discovery merely argued that "compelling production ***could*** impose an extreme burden," but "could not describe the process that would [be] involved in such an undertaking") (emphasis in original). That is precisely what Defendants did: they offered inflated top-line numbers untethered to any custodian-specific, review-specific showing.[6]

Moreover, Defendants never collected the Lees' or Lewerke's documents and therefore have never provided a reliable estimate of the number of responsive, non-duplicative documents they possess. Defendants' failure to do so is fatal to their claim of undue burden. *See, e.g.*, *Envision*, 2020 WL 6750397, at *6 (compelling additional custodians where defendants failed to "address th[eir] burden on a custodian-by-custodian basis"); *Remy Inc. v. Tecnomatic, S.P.A.*, 2013 WL 1310216, at *7 (S.D. Ind. 2013) (ordering party resisting discovery to make "a particularized showing of undue burden" on a "custodian-by-custodian basis" as well as "provide a good faith estimate of the costs for searching and producing the documents of such custodians").

Because Defendants failed to meet their heavy burden of establishing that collecting and producing the responsive, non-duplicative documents in the Lees' or Lewerke's custodial files would be unduly burdensome, the Order's finding of undue burden rests on an insufficient evidentiary showing, misapplies Rule 26(b)(1), and is clearly erroneous and contrary to law. Reversal by this Court is therefore warranted.

## III.  CONCLUSION

Plaintiffs respectfully request that the Court reverse Judge Sagar's Order and designate Nick Lewerke, Claire Lee, and Nancy Lee as custodians.

---

[6]  *In re Bank of Am. Cal. Unemployment Benefits Litig.*, 2024 WL 3174874, at *2 (S.D. Cal. 2024), actually supports ***Plaintiffs***' position rather than Defendants'. There, in granting the plaintiffs' Rule 72(a) objection, the district court held "that the Magistrate Judge clearly erred in concluding that Plaintiffs had not shown that [the custodians requested] possess 'uniquely relevant information that is not available from the sources already designated'" because the ESI from those custodians could "only be obtained by them, and not from sources already designated." *Id.* at *6-*7.

- 10 -

DATED:  February 10, 2026

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN
RYAN A. LLORENS
JESSICA T. SHINNEFIELD
DARRYL J. ALVARADO
JEFFREY J. STEIN
NICOLE Q. GILLILAND
JESSICA E. ROBERTSON

                    s/ Daniel S. Drosman
            DANIEL S. DROSMAN

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
ryanl@rgrdlaw.com
jshinnefield@rgrdlaw.com
dalvarado@rgrdlaw.com
jstein@rgrdlaw.com
ngilliland@rgrdlaw.com
jrobertson@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
CRISTELLE R. RABBAN (*pro hac vice*)
420 Lexington Avenue, Suite 1832
New York, NY  10170
Telephone:  212/432-5100
crabban@rgrdlaw.com

- 11 -

4900-0657-0126.v1

ROBBINS GELLER RUDMAN
  & DOWD LLP
SCOTT I. DION (*pro hac vice*)
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdion@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 12 -

**L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 10 pages, which complies with the page limit set by the Court's Standing Order (ECF 18), dated May 19, 2023.

DATED:  February 10, 2026

_____s/ Daniel S. Drosman_____
DANIEL S. DROSMAN

- 13 -

4900-0657-0126.v1