UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION - LOS ANGELES)

| | | |
|---|---|---|
| LOCAL 272 LABOR-MANAGEMENT PENSION FUND, | ) ) | CASE NO: 2:23-cv-03661-CBM-ASx |
| | ) | CIVIL |
| Plaintiff, | ) | |
| | ) | Los Angeles, California |
| vs. | ) | |
| | ) | Thursday, February 19, 2026 |
| THE WALT DISNEY COMPANY, ET AL, | ) ) | (10:01 a.m. to 10:31 a.m.) |
| | ) | |
| Defendants. | ) | |

HEARING RE:

MOTION FOR RECONSIDERATION RE ORDER ON MOTION TO COMPEL
[DKT.NO.215]

BEFORE THE HONORABLE ALKA SAGAR,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:                    SEE PAGE 2

Court Reporter:              Recorded; CourtSmart

Courtroom Deputy:            Alma Felix

Transcribed by:              Exceptional Reporting Services, Inc.
                             20079 Stone Oak Pkwy., Ste 1105-237
                             San Antonio, TX 78258
                             361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

EXCEPTIONAL REPORTING SERVICES, INC

2

**APPEARANCES**:


For Plaintiff:                DANIEL S. DROSMAN, ESQ.
                              DARRYL J. ALVARADO, ESQ.
                              JESSICA T. SHINNEFIELD, ESQ.
                              Robbins Geller Rudman & Dowd
                              655 West Broadway
                              Suite 1900
                              San Diego, CA 92101
                              619-231-1058

For Defendants:               STACY NETTLETON, ESQ.
                              White & Case
                              1221 Avenue of the Americas
                              New York, NY 10020
                              212-819-8301

                              BRIAN RIVAS BOESSENECKER, ESQ.
                              Munger Tolles & Olson
                              350 S. Grand Ave.
                              50th Floor
                              Los Angeles, CA 90071
                              213-683-9580

**Los Angeles, CA; Thursday, February 19, 2026; 10:01 a.m.**

**(Call to Order)**

THE CLERK:  Calling Case No. cv-23-3661-CBM-ASx, Local 272 Labor-Management Pension Fund versus The Walt Disney Company, et al.

Beginning with plaintiff's counsel, please state your appearance for the record.

MR. DROSMAN:  Good morning, Your Honor, Daniel Drosman on behalf of the plaintiffs with my colleagues Jessica Shinnefield and Darryl Alvarado.

THE COURT:  Good morning.

MR. ALVARADO:  Good morning.

MS. SHINNEFIELD:  Good morning.

MS. NETTLETON:  Good morning, Your Honor, it's Stacy Nettleton on behalf of defendants.  With me is Brian Boessenecker from Munger Tolles.

THE COURT:  Okay.  Good morning, please be seated.

This is the hearing on plaintiff's motion for reconsideration of the Court's order on motion to compel custodians and search terms.  Plaintiffs filed their motion for reconsideration on January 21st at Docket 207 -- sorry at 215 and 216, challenging the order the Court issued on January 7th, which was at Docket 207.

Then on January 29th, defendants filed their opposition to the motion at Docket 228 and on February 5th, the

4

plaintiffs filed the reply at Docket 230.  And then the Court also granted the parties' applications to file their submissions, part of their submissions under seal.  The unredacted motion is filed at Docket 227 and the unredacted reply was filed at Docket 234.

Was anything else filed in connection with this motion?

**MS. NETTLETON:**  No, Your Honor.

**MR. DROSMAN:**  No, Your Honor.

**THE COURT:**  Okay.  So the Court has reviewed the submissions, reviewed relevant portions of the transcript of the hearing on January 6th and has also reviewed its notes of the hearing on January 6th.

So now with -- and so now the issue here is plaintiffs request that the Court designate -- reconsider its order denying without prejudice the plaintiff's request to designate three custodians, Nick Lewerke (phonetic) I think is one and then the other two are Nancy Lee and Claire Lee (phonetic).

So now with respect to Lewerke the argument is that the Court in its -- at the hearing granted the request with respect to Lewerke and another custodian, but then the written order denied the request for Lewerke.  And frankly, I don't know what happened in that regard because my notes do not really say one way or the other, whether Mr. Lewerke was

5

supposed to be -- whether the Court granted the request for Lewerke but I did read the transcript and it appears that I did say that I was granting the request to have Lewerke designated as a custodian.

So without any sort of information before me that indicates that I changed my mind between the hearing and the issuance of the written order, I am inclined to grant the request for reconsideration as to Lewerke.

Let me ask defendants if they want to be heard on that.

**MS. NETTLETON:**  Yes, Your Honor.

**THE COURT:**  Sure.

**MS. NETTLETON:**  I think Lewerke was the subject of a significant amount of conversation at the last hearing.  And the arguments we made, which were equally applicable to the other custodians that Your Honor denied, was that Lewerke was a lower level employee, that the designees above him that he directly reported to, other people that were in more directly relevant areas to plaintiff allegations or were already custodians, that his responsibilities were really targeting content, specific titles, and where they would be allocated amongst Disney Plus and other distributors within the Disney corporation.

And the point that we made, which I think is reflected in your written ruling, is that his materials would

**EXCEPTIONAL REPORTING SERVICES, INC**

6

be of marginal relevance and largely covered, to the extent relevant to plaintiff's allegations by the other custodians who are directly responsible for the strategy including content allocation with respect to Disney Plus.

So I recognize that Your Honor doesn't have the written notes on all of that, but that was the subject of extensive argument.  And your ruling expressly says that he, along with other individuals, that plaintiffs were moving to add as custodians fell within that category, where their materials would be covered by other already identified custodians, including the folks that Mr. Lewerke is directly reporting to.

So, you know, our position is that your ruling, your written ruling reflects precisely the arguments that we made with respect to why he would be duplicative and not -- certainly the relevance would not outweigh the burden of adding him as an extra custodian.

**THE COURT:**  Right.  I do recall that argument and I also recall that there was some sort of a table that was submitted that said that Lewerke was in charge of like content, streaming or something, and that plaintiffs argued that there was nobody else in that field that had been designated as a custodian.

And it may be that that was the argument that, you know, led the Court to agree to have him designated as a

7

custodian, along with the other individual.

But anyway, I understand the argument.  I'm going to grant the request for Lewerke, just based on what was stated at the oral -- stated by me at the hearing on January 6th, given that I don't see anything that I wrote down that, you know, would indicate that there was a -- something else that I took into account to rule differently.

Now, with respect to the custodian, the chiefs of staff, Nancy Lee and Claire Lee, you know, I don't see how the argument in the motion that plaintiffs have filed is in any way different from the argument that was made at the motion initially and argued at the hearing.

Even to the extent that the motion quotes or the parts that were filed, the redacted information that specifically says what these individuals were responsible for, what their duties were, that's verbatim from what was in the joint stipulation that was filed back in December.

And so I don't see anything new before me.  I don't see anything that's different in the law that would cause the Court to, you know, reconsider its prior ruling.  And I think the Court made it pretty clear at the hearing on the motion that it's not so much what these people's titles are, and what their day to day duties are, but you know, are they the ones that are making the decisions, are they the people that, you know, are responsible for the actions that the -- this

complaint is based on.

And I just didn't see that with respect to the chiefs of staff. And with respect to the argument that well, the defendants sort of conceded that a chief of staff, you know, position is one that would generate responsive information because they had designated I think Chapek's former chief of staff. I think defendants, I think persuasively argue, that hearing that, they designated that person not because of his title as chief of staff, but because he was vice president of strategic communications and it was in that role that they designated him as a custodian who might have relevant information.

So, you know, absent anything new, like if you had come to me with some information that had been turned over in discovery, which shed some, you know, more light on some communications or, you know, decisions that either one of these chiefs of staff made, that would be something that I would look at, but I don't have that.

And so -- and with respect to the proportionality argument, I think the Court just adopted what the defendants had argued, which is that there would be a burden with having to have their -- to having to conduct, you know, expansive searches of documents from these additional custodians. And that burden, you know, didn't outweigh the marginal relevance.

And given the fact that the Court had already

9

determined that the relevance of any information that these, you know, these two individuals would have would be marginal because, you know, they reported to Chapek and Iger.  And so any important communications in their records would be reflected in the search of Iger and Chapek's records.

And with respect to the meetings that they attended and took notes, sometimes in place of the people that they reported to, I think defendants made the point that there were other people at those meetings who were designated as custodians and those notes and reports of those meetings would be picked up in searching for those other custodians.

And so based on that, it appeared that a search for the -- for these custodians, these individuals, the chiefs of staff, would really just be marginally relevant and not outweighed by the burden of having to search through their records.

So I am inclined to deny the request to reconsider my ruling on designating Claire Lee and Nancy Lee.  Do you want to be heard on that?

**MR. DROSMAN:**  Yes, Your Honor.

**THE COURT:**  Of course, go ahead.

**MR. DROSMAN:**  Would it be easier if I just took the lectern?

**THE COURT:**  Just as long as you speak into the microphone, you can stay where you are --

EXCEPTIONAL REPORTING SERVICES, INC

10

**MR. DROSMAN:**  Okay.

**THE COURT:**  -- if you feel more comfortable at the lectern, you can move there.

**MR. DROSMAN:**  I'll just take the lectern, thank you.

So, Your Honor, let me start off by saying initially that defendants backpedaled when they were faced with their admission that Bockner (phonetic) as chief of staff was senior manager and relevant to multiple substantive areas in the -- that are alleged in the complaint.

When you look at their joint motion, which I have in front of me, there's absolutely no mention of Bockner's quote other position.  There's only mention of the fact that he was chief of staff and that makes sense, Your Honor, because how long Bockner was this other position?  A couple of months during this multi-year class period.

He was chief of staff for two years.  It makes zero sense that defendants designated him because of this other position that went unmentioned in their joint stipulation, when Bockner was that other position for a couple of months and chief of staff for two.

This is a post hac explanation that really is not credible, Your Honor, that's issue number one.  Defendants have admitted that the chief of staff is relevant, okay.

Now, let's just back up for a moment.  The cases seem to be somewhat split on who bears the burden of establishing

11

relevancy, some cases say it's plaintiffs, some cases say it's the defendants who bear that burden. Let's assume for purposes of argument that plaintiffs bear that burden.

Well, we absolutely carried our burden. We've shown that both Claire Lee and Nancy Lee attended meetings that were directly relevant to plaintiff's allegations in either Iger's stead or in Chapek's stead. That's not -- those notes, those documents are not in the files of either Iger or Chapek, okay.

We've shown in the joint stipulation multiple pieces of evidence that showed that they were not just marginally relevant. These people were acting as the alter egos of the gatekeepers, so to speak, for the two individual defendants, okay. So we've established relevance, no question about that.

Now, we turn to burden and we look at burden and defendants say, well all collectively the custodians that you've asked us to pull from would require us to pull a lot of documents, I think they may have quantified that number.

We contested the quantification as inaccurate, but whatever. They have provided zero, zero custodian level burden data as they're required to do. When they say it would be burdensome for them to collect from Nancy Lee, burdensome for them to collect from Claire Lee. I ask you what exactly is the burden, because I didn't see a single hit count for those two individuals. I didn't see any quantification of a responsiveness review. I didn't see a cost information,

12

nothing. I think we have nothing with respect to their -- the burden.

So it's not enough for them to just sort of say, well, it would be burdensome. That's not enough. They have a burden that they have failed to carry. They have a heavy burden, in fact, is what the courts say to show burden. And they have not done that. They've not even sort of done it, okay.

And, Your Honor, this idea that everything filters up and therefore, because they're not the decision-maker, they're not an appropriate custodian, that ignores how fraud is litigated for two reasons. First, scienter is not the only element that we have to prove. We have to prove falsity in this case, okay, so what the defendants may have known or didn't know is one of the elements we have to prove, but not the only element. We have to prove the defendant's statements were false. And the way we do that is not just by the information that's in front of the defendants, but by information that shows that there was a corporate reality that differed from the public narrative. That's how we show it, okay.

And I can tell you that the information these people had is certainly relevant to falsity. And secondly, Your Honor, this idea that only the decisionmakers, the individual defendant's information is relevant to scienter also

misunderstands, miscomprehends our fraud case.  Because we have a defendant, Disney, and Disney is a corporate defendant and senior managers, as defendants have conceded, a senior manager is a chief of staff, their information, their agent, their information, their knowledge is imputable to the corporation.

So Claire Lee and Nancy Lee are directly relevant to corporate scienter, as well as the information that they have.  They're senior managers.  That's how we prove corporate scienter, okay.

Let me -- Your Honor, I think you mentioned that we didn't have any new information.  We only repeated information we had.  So we found yesterday a document that was produced three weeks after Your Honor issued its order and ten days after we filed our motion for reconsideration, okay.

It is an e-mail that was produced on January 31st, so just about a week ago to us by defendants, and it contains -- it's an e-mail containing information from Claire Lee, I'd like to hand that up, Your Honor, if I may.

THE COURT:  Have the defendants seen it?

MS. NETTLETON:  No.

MR. DROSMAN:  They produced it to us, but I can provide them a copy.

THE COURT:  Do you have any objection to the Court reading --

MS. NETTLETON:  Well, I do have a bit of an objection

14

because this is a motion for reconsideration. All of the papers that have been put in front of us, all the arguments that are being made are all the same arguments that we made a month ago.

THE COURT: Right.

MS. NETTLETON: If this was satisfactory for reconsideration of Your Honor's ruling, we'll be here every month, every couple of weeks, so that they could revisit every argument that they've previously made and disagree with your ruling on.

You know, I flew from cold New York all the way to cold LA to rehash the same arguments. Even the e-mails that they attach to their reply brief, it's all in service of the same point, same arguments with respect to these custodians. And I could repeat all of our arguments as to why that's not right. And I think Your Honor articulated it --

THE COURT: Right.

MS. NETTLETON: -- at the beginning.

But to now -- Your Honor's ruling recognized that we were going to be making productions of documents on a rolling basis through the substantial completion date, that it was without prejudice, that if they have a whole bunch of documents from our productions as we continue to make them, in hundreds of thousands of document batches, if those documents change the landscape, shows something that means, you know, we need to re-

15

up our motion to compel because it turns out this person is critical through the informal procedures that Your Honor has instructed us to use repeatedly but plaintiffs have repeatedly not used it, that could be raised then.

But to sandbag us with something we just produced because we're going through all of our documents at this hearing on a motion for reconsideration where the standard is you were dead wrong a month ago when you reached this decision because the facts that we argued that were all available to everybody at that time did not support your ruling, that -- they can't meet that standard because everything they are saying is a rehash.

I guarantee whatever e-mail they're talking about is more of the same, that's just going to show that this person was included on e-mails because they were a chief of staff. We're not making any substantive decisions whether the chief at Iger level or the people on the ground that were running Disney Plus and making those decisions, I'm sure it is the same. But it is entirely improper to be raising it in the context of this motion for reconsideration.

THE COURT:  All right.

MR. DROSMAN:  Your Honor, if I could just say a couple of things.  First, one of the bases for a motion for reconsideration is new material evidence, that's what I'm offering to provide.

16

Secondly, Your Honor denied Claire Lee and Nancy Lee without prejudice.  There is no reason you shouldn't consider evidence that we could not have included in our opening motion because it was produced to us afterwards.

THE COURT:  Right, but now you're proposing new information that the other side hasn't had a chance to respond to and it's not in your motion.  And I think Ms. Nettleton is right, this should be addressed -- you know, if you have information that you've obtained in discovery that causes you to believe that Claire Lee or Nancy Lee should be designated as custodians either, you know, for the entire relevant period or for a portion of that period or with, you know, reference to communications from certain individuals, I think that should be brought to the Court in an informal discovery conference setting so that the Court can have the benefit of both sides' submissions.

And that was the whole -- I think the purpose of, you know, ruling that those custodians -- denying the request to designate those individuals as custodians without prejudice. Because at the time of the hearing what was before the Court was not sufficient to sway the Court to believe that these individuals had information that was really relevant to the allegations in the complaint.

So to your point about, you know, the fact that defendants didn't mention that this -- Mr. Bockner's position

EXCEPTIONAL REPORTING SERVICES, INC

17

as the second -- the other position that he had, vice president was only for a couple of months, but he was really chief of staff for two months -- two years rather.  I mean I think the essence, like the reason why the Court really denied your request as to Claire Lee to Nancy Lee is just that the lack of any indication that they were pulling the strings, you know, here, that they were the ones that were, you know, telling Chapek and Iger what to do, or you know, the people that were really behind everything.

And absent, you know -- and I'm not trying to sort of downplay the importance of their role as chiefs of staff and I'm not saying that, you know, anybody that's a chief of staff could not possibly be, you know, a person with relevant information.  I think that really depends on the circumstances of each case.

But in this case, you know, they were chiefs of staff to two individuals who, you know, were the ones who were ultimately responsible for making the decisions that are at the heart of the plaintiff's complaint.  And it's not like they were the only people in the room, so to speak.

So, you know, if they took notes and shared them with others, they likely shared them with people who were at those meetings and have been designated as custodians.

Now, if you know, during discovery production you find that, you know, that's not the case, that in fact, they

18

played a more pivotal role and that their communications or notes, you know, information that comes up was not communicated to other people that were custodians, then definitely bring that to the Court's attention and I can revisit that.  Okay?

MR. DROSMAN:  Your Honor, with all due respect, holding the strings and telling Chapek and Iger what to do, that is not the standard for discovery in a multi-billion dollar fraud case.  That's not anywhere to be found in Rule 26, okay.

And, you know, likely shared notes with custodians?  What is the basis for that, Your Honor?  There is simply no evidence that shows that.  We know that these people -- I mean, for example, CNBC reported that Claire Lee was a close confidant in Chapek's inner circle.  I mean, that is enough, Your Honor.  There is no more.  I mean, we have no basis to know whether they likely shared notes or likely sent communications to custodians.  In fact, it would be likely that there are many people who they sent notes and communications and important information to who are not custodians.  That's the far more likely explanation.

THE COURT:  But again it's speculative, right.  Like I don't have anything before me that indicates that that wasn't the case.  I just know that there are a lot of custodians that have already been designated and, you know, the people that were -- there were people at these meetings that Claire Lee and

19

Nancy Lee attended, who have been designated as custodians.

So information took place at those meetings would be captured by the searches of those custodians.  I just don't see how plaintiffs have met their burden to show relevance at this point.

MR. DROSMAN:  Well, Your Honor, I think we've met our burden to show relevance.  They've conceded that the chief of staff position is a senior manager, responsible for many aspects of our complaint.  There's no question these people are relevant.  The issue is --

THE COURT:  Well, they deny that they've conceded that.  They're not saying --

MR. DROSMAN:  Well --

THE COURT:  -- that they designated Bockner because he was chief of staff.  They're saying that they designated him because he had other duties and it may be that in his role as chief of staff he, you know, had other responsibilities that, you know, require them to believe he has relevant information. But they are opposing the request for Claire Lee and Nancy Lee and I think that there's really -- there's nothing that plaintiffs have countered with that would indicate that they should be custodians at this point.

MR. DROSMAN:  Okay.  With all due respect, Your Honor, we disagree.  We got evidence that shows that the rationale for your decision is dead wrong, not maybe wrong, not

20

probably wrong, but dead wrong. I'd like to hand it up. I think we could avoid a lot of -- you know, another return trip here.

It was without prejudice. We have new material information which is certainly one of the prongs for a motion for reconsideration.

THE COURT: But the new information wasn't in your motion for reconsideration, so I can't really look at something that the other side hasn't had a chance to, you know, review and argue against.

I understand that you have -- you've also sort of concurrently with this motion for reconsideration, filed a motion for review of my orders, so I think that's supposed to be heard next week before Judge Marshall. So, you know, you'll be able to seek review at that point.

I will issue an order granting the motion with respect to Lewerke, I hope I'm pronouncing that correctly. All right?

MR. DROSMAN: Thank you, Your Honor.

THE COURT: Is there anything further that we need to take up?

Okay. And then just going forward, if there's any issues that arise with respect to the motion to designate the custodians and the search terms and anything -- actually just given you have a discovery cutoff date that's approaching,

EXCEPTIONAL REPORTING SERVICES, INC

right?  So it probably would be better to use the informal discovery conference procedure to bring any further disputes so that they can be handled in a more expeditious manner.  Okay?

MS. NETTLETON:  Thank you, Your Honor.

THE COURT:  All right.  Everybody have a good rest of your day.

THE CLERK:  Court is adjourned.

**(Proceedings concluded at 10:31 a.m.)**

\* \* \* \* \*

22

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    **February 20, 2026**

       **Signed**                                                      **Dated**


*TONI HUDSON, TRANSCRIBER*

EXCEPTIONAL REPORTING SERVICES, INC